**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. 4:25-cv-00150-RGE-WPK |
| v. | |
| DES MOINES REGISTER AND TRIBUNE CO., INC.; J. ANN SELZER; SELZER & COMPANY; and GANNETT CO., INC., | **DEFENDANTS J. ANN SELZER AND SELZER & COMPANY'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULE 12(b)(6)** |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ALLEGATIONS IN PLAINTIFF'S COMPLAINT ..................................................... 1

LEGAL STANDARD ................................................................................................. 3

ARGUMENT ............................................................................................................. 3

I.     The First Amendment Bars Plaintiff's Claims ..................................................... 3

     A.     The First Amendment Does Not Permit Claims for "Fraudulent News." ................................................................................................... 3

     B.     Plaintiff Illegitimately Seeks to Create a New First Amendment Exception. ............................................................................................. 5

     C.     Plaintiff Cannot Plead Around the First Amendment by Alleging Fraud. ..................................................................................................... 9

     D.     Plaintiff's Theory of Liability Would Eviscerate the First Amendment ............................................................................................. 10

II.     Plaintiff Fails to State a Claim Under the ICFA. .............................................. 12

     A.     Plaintiff's ICFA Class Action Claim Must Be Dismissed Because He Has Not Alleged He Secured the Requisite Approval from Iowa's Attorney General ............................................................................. 12

     B.     Plaintiff Does Not Have a Claim Under the ICFA Because There Was No Actual or Contemplated Transaction with Selzer. ................................. 12

     C.     Plaintiff Cannot Invoke the ICFA, Which Covers Only "Consumer Merchandise" Bought or Leased for "Personal Purposes." ................................. 13

III.     Plaintiff Fails to State a Fraudulent Misrepresentation Claim .......................................... 14

IV.     Plaintiff's Negligence Claims Fail Because Selzer Owed Him No Legal Duty ................................................................................................................ 16

V.     Plaintiff's Voting Interference Claim is Meritless ............................................. 20

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*281 Care Comm. v. Arneson*,
  766 F.3d 774 (8th Cir. 2014) ................................................. 8

*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
  949 F.3d 417 (8th Cir. 2020) ................................................. 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................. 3

*Behlmann v. Century Sur. Co.*,
  794 F.3d 960 (8th Cir. 2015) ................................................. 13

*Bertrand v. Mullin*,
  846 N.W.2d 884 (Iowa 2014) ......................................... 13, 17

*Birmingham v. Fodor's Travel Publications*,
  833 P.2d 70 (Haw. 1992)........................................................ 19

*Brandt v. Weather Channel, Inc.*,
  42 F. Supp. 2d 1344 (S.D. Fla. 1999) .............................. 11, 16

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786 (2011)................................................................. 7

*Burbach v. Radon Analytical Lab'ys, Inc.*,
  652 N.W.2d 135 (Iowa 2002) ......................................... 17, 18

*Butts v. Iowa Health Sys.*,
  863 N.W.2d 36 (Iowa Ct. App. 2015) .................................... 14

*Chaplinsky v. New Hampshire*,
  315 U.S. 568 (1942)................................................................. 7

*Citizens United v. FEC*,
  558 U.S. 310 (2010)................................................................. 8

*Commonwealth v. Lucas*,
  34 N.E.3d 1242 (Mass. 2015) ............................................. 7, 8

*Daily Herald Co. v. Munro*,
  838 F.2d 380 (9th Cir. 1988) ................................................... 8

*De Bardeleben Marine Corp. v. United States*,
  451 F.2d 140 (5th Cir. 1971) ................................................. 16

*Demuth Dev. Corp. v. Merck & Co.*,
    432 F. Supp. 990 (E.D.N.Y. 1977) ....................................................................... 11

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
    518 U.S. 727 (1996) ............................................................................................. 6

*Doe v. Grinnell Coll.*,
    473 F. Supp. 3d 909 (S.D. Iowa 2019) ............................................................... 18

*E-Shops Corp v. U.S. Bank Nat'l Ass'n*,
    678 F.3d 659 (8th Cir. 2012) ................................................................................ 3

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ........................................................................................... 11

*Gibson v. ITT Hartford Ins. Co.*,
    621 N.W.2d 388 (Iowa 2001) ............................................................................. 14

*Gorog v. Best Buy Co.*,
    760 F.3d 787 (8th Cir. 2014) ................................................................................ 2

*Grimmett v. Freeman*,
    59 F.4th 689 (4th Cir. 2023) ................................................................................ 8

*Grosjean v. Am. Press Co.*,
    297 U.S. 233 (1936) ............................................................................................. 5

*Hollander v. CBS News, Inc.*,
    2017 WL 1957485 (S.D.N.Y. 2017) ..................................................................... 4

*Hollander v. Garrett*,
    710 Fed. Appx. 35 (2d Cir. 2018) ......................................................................... 4

*Hustler Mag., Inc. v. Falwell*,
    485 U.S. 46 (1988) ............................................................................................... 7

*Huston v. Conagra Brands, Inc.*,
    2022 WL 4647251 (C.D. Ill. Sept. 30, 2022) ..................................................... 12

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*,
    538 U.S. 600 (2003) ................................................................................... 5, 9, 10

*J.A.H. ex rel. R.M.H. v. Wadle & Associates, P.C.*,
    589 N.W.2d 256 (Iowa 1999) ............................................................................. 17

*Kirk v. Farm & City Ins. Co.*,
    457 N.W.2d 906 (Iowa 1990) ............................................................................. 10

iii

*Lane v. Mitchell*,
    133 N.W. 381 (Iowa 1911) ............................................................................. 20

*McGraw v. Wachovia Sec., L.L.C.*,
    756 F. Supp. 2d 1053 (N.D. Iowa 2010) .................................................. 16, 17, 19

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ....................................................................................... 8

*Mills v. Alabama*,
    384 U.S. 214 (1966) ....................................................................................... 8

*Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*,
    460 U.S. 575 (1983) ....................................................................................... 5

*Monson v. Drug Enf't Agency*,
    589 F.3d 952 (8th Cir. 2009) ......................................................................... 3

*Mulhern v. Cath. Health Initiatives*,
    799 N.W.2d 104 (Iowa 2011) ......................................................................... 13

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ................................................................................. passim

*National Inst. of Family and Life Advocates v. Raoul*,
    685 F.Supp.3d 688 (N.D. Ill. 2023) ............................................................... 4

*Near v. Minnesota ex. rel. Olson*,
    283 U.S. 697 (1931) ....................................................................................... 5

*Pro Com., LLC v. K & L Custom Farms, Inc.*,
    870 N.W.2d 273 (Iowa. Ct. App. 2015) ......................................................... 6

*Republican Party of Minn. v. White*,
    536 U.S. 765 (2002) ....................................................................................... 8

*Rickert v. State Pub. Disclosure Comm'n*,
    168 P.3d 826 (Wash. 2007) ........................................................................... 9

*Sain v. Cedar Rapids Cmty. Sch. Dist.*,
    626 N.W.2d 115 (Iowa 2001) ............................................................... 16, 18, 19

*Sechler v. State*,
    340 N.W.2d 759 (Iowa 1983) ......................................................................... 16

*Shivvers v. Hertz Farm Mgmt.*,
    595 N.W.2d 476 (Iowa 1999) ......................................................................... 17

*Snyder v. Phelps*,
  562 U.S. 443 (2011).................................................................................... 4

*Spreitzer v. Hawkeye State Bank*,
  779 N.W.2d 726 (Iowa 2009) .................................................................. 15

*Stancik v. CNBC*,
  420 F. Supp. 2d 800 (N.D. Ohio 2006).................................................... 16

*Stender v. Blessum*,
  897 N.W.2d 491 (Iowa 2017) .................................................................. 19

*Susan B. Anthony List v. Driehaus*,
  814 F.3d 466 (6th Cir. 2016) ..................................................................... 8

*Thomas v. Collins*,
  323 U.S. 516 (1945)................................................................................. 11

*Tumminello v. Bergen Evening Rec., Inc.*,
  454 F. Supp. 1156 (D.N.J. 1978) ............................................................ 17

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
  441 F.3d 552 (8th Cir. 2006) ..................................................................... 3

*United States v. Alvarez*,
  567 U.S. 709 (2012)......................................................................... 4, 6, 7, 9

*United States v. Kepler*,
  879 F. Supp. 2d 1006 (S.D. Iowa 2011) .................................................. 10

*United States v. Stevens*,
  559 U.S. 460 (2010)........................................................................... 4, 6, 7

*Wash. League for Increased Transparency & Ethics v. Fox News*,
  2021 WL 3910574 (Wash. Ct. App. 2021)................................................ 4

*Young ex rel. Young v. Rally Appraisal, L.L.C.*,
  928 N.W.2d 660 (Iowa Ct. App. 2019) ................................................... 15

**Statutes**

Iowa Code § 714.16 ..................................................................................... 13

Iowa Code § 714H.2 .............................................................................. 13, 14

Iowa Code § 714H.3 ................................................................. 4, 10, 12, 14

Iowa Code § 714H.5 ..................................................................................... 12

Iowa Code § 714H.7 ................................................................................................................ 12

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................... 3

**Other Authorities**

Brianne Pfannenstiel,
    *Iowa Poll: Kamala Harris Leapfrogs Donald Trump to Take Lead Near*
    *Election Day. Here's How*, Des Moines Reg. (Nov. 2, 2024, 6:01PM) .................................... 2

*Fraud*, Black's Law Dictionary (12th ed. 2024) ............................................................................ 9

Nate Cohn,
    *Outlier Poll Results Are Inevitable. They're Also Sometimes Right.*, N.Y. TIMES
    (June 26, 2024) ..................................................................................................................... 1

Restatement (Second) of Torts § 525 .................................................................................... 9, 10

Restatement (Second) of Torts § 865 ...................................................................................... 20

William L. Prosser,
    *Handbook of the Law of Torts* § 105 (4th ed. 1971) ................................................................ 9

## INTRODUCTION

Plaintiff Dennis Donnelly claims he was frustrated by an election poll reported by his local newspaper. Instead of writing a letter to the editor, he filed a multi-million-dollar class action against the paper, its parent company, and the pollster, claiming they supplied him "fake news." The First Amendment's protections for free speech and a free press bar this meritless lawsuit.

## ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Defendant J. Ann Selzer is a resident of Des Moines, Iowa, and holds a Ph.D. in Communication Theory and Research from the University of Iowa. Compl. ¶ 10, ECF No. 1-1. She is the founder and president of Selzer & Company ("Selzer"), which conducts opinion research, including polls. *Id.* ¶ 11. Selzer has been the *Des Moines Register*'s primary pollster for four decades, overseeing its signature Iowa Poll. *Id.* ¶¶ 76, 79. Selzer's polls have a reputation for accuracy, and the Iowa Poll is "regarded by political insiders as the gold standard for its accuracy and insights about the Iowa caucuses." *Id.* ¶ 76.

Pollsters, however, are not seers. Every election has outlier polls, and the results of polls do not always conform to the final tally. *See id.* ¶ 15 (news reports describing 2020 polling results as the "worst polls in decades"); *see, e.g.*, Nate Cohn, *Outlier Poll Results Are Inevitable. They're Also Sometimes Right.*, N.Y. Times (June 26, 2024), https://www.nytimes.com/2024/06/26/upshot/biden-trump-poll-outlier.html. Selzer's polling was no different, occasionally missing the mark. Compl. ¶¶ 18–20, ECF No. 1-1.

The *Des Moines Register* published its final Iowa Poll of the 2024 presidential race on November 2 and 3, 2024. *Id.* ¶ 40.[1] The poll surveyed 808 likely voters in Iowa. *Id.* It showed

---

[1] Brianne Pfannenstiel, *Iowa Poll: Kamala Harris Leapfrogs Donald Trump to Take Lead Near Election Day. Here's How*, Des Moines Reg., https://www.desmoinesregister.com/story/news/politics/iowa-poll/2024/11/02/iowa-poll-kamala-

Plaintiff Donald Trump trailing Kamala Harris at that time by three points. *Id.* at ¶ 23. The results were surprising because Selzer's preceding polls showed Trump leading, and contemporaneous polls showed him with a seven-to-nine-point lead. *Id.* ¶¶ 22, 31. The *Des Moines Register* published Selzer's methodology and detailed poll analysis. *Id.* ¶ 40.

Mr. Trump and other Republicans immediately disputed the poll. The same day Selzer released it, *PollFair* "reweighted" the poll and calculated Mr. Trump leading Iowa by six points. *Id.* ¶ 39. Ultimately, President Trump won Iowa by thirteen points. *Id.* ¶ 42. Winning, however, wasn't enough for Mr. Trump. On December 16, 2024, he filed a lawsuit in Iowa state court, raising one claim under the Iowa Consumer Fraud Act ("ICFA") against Ms. Selzer, Selzer & Company, and the *Des Moines Register* and its parent, Gannett. Gannett removed the case to this Court. Notice of Removal, *Trump v. Selzer*, No. 24-449-RGE-WPK (S.D. Iowa Dec. 17, 2024), ECF No. 1. Mr. Trump alleged the final 2024 Iowa Poll was "fake news" and that it attempted to foster enthusiasm for Democrats. Am. Compl. ¶¶ 19, 81, *Trump*, No. 24-449-RGE-WPK, ECF No. 23.

Weeks later, Plaintiff Dennis Donnelly filed this copycat action in Iowa state court bringing class-action "fake news," Compl. ¶ 2, ECF No. 1-1, claims against the same defendants as Trump, asserting a claim under the ICFA as well as common-law claims for fraudulent misrepresentation, "reckless negligent misrepresentation," professional malpractice, and interference with the right to vote. *Id.* ¶ 1. Donnelly alleges that he pays $69.99 for a digital subscription to the *Register* and was "frustrated by the inaccurate poll and felt like the *Register* was disserving him and other readers when it ran and when its results were compared to the final outcome." *Id.* ¶ 8.

---

harris-leads-donald-trump-2024-presidential-race/75354033007 (Nov. 7, 2024, 9:23 AM CT), *archived at* https://archive.is/UqdGz. As the poll article is core to Plaintiff's claims, the Court may consider it. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014).

Donnelly now seeks to turn his frustration into a multi-million-dollar class-action lawsuit. *Id.* ¶ 109. On April 24, 2025, Defendants *Des Moines Register* and Gannett timely removed the case to this Court and answered the Complaint. Dkts. 1, 3. This motion followed.

## LEGAL STANDARD

Plaintiff's Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). While this Court draws reasonable inferences in his favor, it "ignore[s] legal conclusions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions cast in the form of factual allegations." *Monson v. Drug Enf't Agency*, 589 F.3d 952, 961 (8th Cir. 2009) (quotation marks omitted).

Plaintiff's fraud claims face a heightened pleading standard under Rule 9(b). *See E-Shops Corp v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). Plaintiff "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), including the time, place, and content of the alleged false representations, along with details of the fraudulent acts—including when and who was involved—and what was obtained, *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

## ARGUMENT

I.    **The First Amendment Bars Plaintiff's Claims.**

A.    **The First Amendment Does Not Permit Claims for "Fraudulent News."**

This Court need not even address the elements of Plaintiff's claims because the First Amendment bars the action. In the United States, there is no such thing as a claim for "fraudulent news." No court in any jurisdiction has ever held such a cause of action might be valid, and few plaintiffs have ever attempted even to bring such outlandish claims. Those who have done so were

promptly dismissed.[2] There is good reason for this. History's judgment repudiated the 1798 Sedition Act which prohibited "false, scandalous and malicious writing[s] against the government of the United States" or its president, and that turmoil "crystallized a national awareness of the central meaning of the First Amendment." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964).

Since then, courts at all levels have confirmed our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *id.* at 270, holding that speech is presumptively protected unless it falls within one of a few limited and narrowly defined categories, *United States v. Stevens*, 559 U.S. 460, 468–70 (2010), which do not include a general exception for "false speech," *United States v. Alvarez*, 567 U.S. 709, 722 (2012) (plurality op.). In this regard, civil damages, no less than criminal sanctions, cannot lie against protected speech. *Snyder v. Phelps*, 562 U.S. 443, 460 (2011); *Sullivan*, 376 U.S. at 277.

This case is a transparent attempt to impose civil liability on disliked news coverage and analysis of a political campaign, speech that not only is presumptively protected but "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 451–52 (quotation marks omitted). Given the obvious affront to basic constitutional values, Plaintiff tries to change the subject by framing his claims around a state consumer protection law applicable to misrepresentations "in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3(1). Undaunted by the poor fit

---

[2] *E.g.*, *Hollander v. CBS News, Inc.*, 2017 WL 1957485 (S.D.N.Y. 2017), *aff'd on other grounds sub nom. Hollander v. Garrett*, 710 Fed. Appx. 35 (2d Cir. 2018) (dismissing complaint alleging that purportedly false and misleading news stories about candidate Donald Trump constituted wire fraud); *Wash. League for Increased Transparency & Ethics v. Fox News*, 2021 WL 3910574 (Wash. Ct. App. 2021) (dismissing claims under Washington's consumer protection act against Fox News for allegedly false reporting about COVID-19). *Cf. National Inst. of Family and Life Advocates v. Raoul*, 685 F.Supp.3d 688, 695 (N.D. Ill. 2023) (enjoining amendment to Illinois Consumer Fraud Act extending to anti-abortion advocacy as "likely unconstitutional").

between commercial transactions and reporting on public affairs, Plaintiff tries to pound a square peg into a round hole. But, as the Supreme Court has made clear, "[s]imply labeling an action one for 'fraud' … will not carry the day." *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 617 (2003).

Plaintiff is hardly the first to use artful pleading hoping to evade the First Amendment, and courts are adept at seeing through such artifice. Even at the dawn of modern First Amendment jurisprudence, the Supreme Court recognized government could not suppress a "malicious, scandalous and defamatory newspaper" simply by labeling it a "public nuisance." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 706–08, 720 (1931) ("Characterizing the publication as a business, and the business as a nuisance, does not permit an invasion of the constitutional immunity against restraint.") The Court similarly barred demagogue Governor Huey Long from imposing a "tax on lying" on big city newspapers that criticized him. *See Grosjean v. Am. Press Co.*, 297 U.S. 233, 245–50 (1936); *see Minn. Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 579–80 (1983) (Long denounced "'lying newspapers' as conducting 'a vicious campaign' and the tax as 'a tax on lying'"). In *New York Times v. Sullivan*, the Court barred segregationists from using defamation law as a tool to cripple the civil rights movement, giving no weight "to the epithet 'libel' than … to other 'mere labels' of state law." 376 U.S. at 268–69 (citation omitted). Plaintiff's Complaint fits squarely within this rogue's gallery.

### B.    Plaintiff Illegitimately Seeks to Create a New First Amendment Exception.

Plaintiff's lawsuit assumes "false news" falls outside the First Amendment's protection, but over 200 years of American free speech law and practice prove otherwise. "Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth—whether administered by judges, juries, or administrative officials—and especially one that puts the burden of proving truth on the speaker." *Id.* at 271. As

the Supreme Court recently explained, "[o]ur constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *Alvarez*, 567 U.S. at 723.

"From 1791 to the present, … the First Amendment has permitted restrictions upon the content of speech in a few limited areas, and has never include[d] a freedom to disregard these traditional limitations." *Stevens*, 559 U.S. at 468 (cleaned up). These "historic and traditional categories long familiar to the bar" include obscenity, child pornography, defamation, fraud, incitement, fighting words, and speech integral to criminal activity. *Id.* at 468, 471 (cleaned up) (collecting cases). Former Justice Souter observed that "[r]eviewing speech regulations under fairly strict categorical rules keeps the starch in the standards for those moments when the daily politics cries loudest for limiting what may be said." *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 774 (1996) (Souter, J., concurring). Consequently, the Court steadfastly resists efforts to expand these categories as "startling and dangerous" and has rejected any "freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *Stevens*, 559 U.S. at 470, 472.

Plaintiff tries to shoehorn his claims into an existing category by calling the Iowa Poll "false" and asserting actionable "fraud" occurred. *E.g.,* Compl. ¶¶ 96, 119, ECF No.1-1. But "in the famous words of Inigo Montoya from the movie *The Princess Bride*, 'You keep using that word. I do not think it means what you think it means.'" *Pro Com., LLC v. K & L Custom Farms, Inc.*, 870 N.W.2d 273 (Iowa. Ct. App. 2015) (unpublished table decision), 2015 WL 2406782, at *5 n.3. As a matter of basic law, Plaintiff's allegations about polls and news stories he dislikes have nothing to do with fraud.

Categories of unprotected speech are defined by precise legal tests, and Plaintiff cannot stretch those boundaries to serve a political narrative. The Supreme Court routinely rejects

attempts to broaden those limits based on assertions that the speech at issue is somehow "like" a recognized exception. *See, e.g.*, *Stevens*, 559 U.S. at 470–71 (Other "descriptions are just that—descriptive. They do not set forth a test that may be applied as a general matter …."); *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 793–96 (2011) (rejecting "attempt to shoehorn speech about violence into obscenity," citing a lack of "longstanding tradition in this country" restricting such speech); *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 55–56 (1988) (rejecting bid to leave "outrageous" speech unprotected because it "does not seem to us to be governed by any exception to the … First Amendment"); *Alvarez*, 567 U.S. at 721–22 ("The Government has not demonstrated that false statements … should constitute a new category of unprotected speech ….")

Because the categories are governed by history and tradition, Plaintiff could not have chosen a *worse* candidate for inclusion than "fake news." America's first experience with prohibiting false news—the Sedition Act of 1798—expired under its own terms, and all fines assessed under that misbegotten law were remitted. *Sullivan*, 376 U.S. at 276. President Thomas Jefferson denounced it as an unconstitutional "nullity, as absolute and as palpable as if Congress had ordered us to fall down and worship a golden image." *Id.* at 272–76. While the Supreme Court never adjudicated the Sedition Act's attempt to punish "false" writings about public officials, "the attack upon its validity has carried the day in the court of history," defined "the central meaning of the First Amendment," *id.* at 273, and conditioned "[t]he fabric of jurisprudence woven across the years," *Commonwealth v. Lucas*, 34 N.E.3d 1242, 1253 (Mass. 2015).

Plaintiff's quest to punish "fake news" not only ignores this history, it also fumbles the conceptual basis for unprotected speech categories, which the Court first described as speech of "slight social value." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). Here, Plaintiff

seeks to create a new First Amendment exception for speech that has always received the *highest* level of constitutional protection—political speech and commentary. In a word, it just doesn't fit.

The Supreme Court has repeatedly reaffirmed that the First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (citation omitted). Speech about the political process is "at the core of our First Amendment freedoms," *Republican Party of Minn. v. White*, 536 U.S. 765, 774 (2002), because a "major purpose" of the First Amendment was to protect "free discussion of … candidates," *Mills v. Alabama*, 384 U.S. 214, 218 (1966). The "First Amendment affords the broadest protection" to "[d]iscussion of public issues." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (citation omitted). Thus, election polling is "speech protected by the First Amendment" both because it "requires a discussion between pollster and voter" and the resulting poll itself "is speech." *Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988).

The First Amendment accords speech in this area wide berth because "erroneous statement[s] [are] inevitable in free debate, and [they] must be protected if the freedoms of expression are to have the breathing space that they need to survive." *Sullivan*, 376 U.S. at 271–72 (cleaned up). Efforts to regulate "truth" in political commentary are thus presumptively unconstitutional and subject to strict scrutiny. *See 281 Care Comm. v. Arneson*, 766 F.3d 774, 784–85 (8th Cir. 2014) (invalidating Minnesota law prohibiting knowingly false statements on ballot measures); *Grimmett v. Freeman*, 59 F.4th 689, 692 (4th Cir. 2023) (holding North Carolina statute prohibiting false statements about candidates "knowing such report to be false or in reckless disregard of its truth or falsity" was likely unconstitutional); *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 476 (6th Cir. 2016) (invalidating Ohio law prohibiting knowingly false statements about candidates); *Lucas*, 34 N.E.3d at 1253–57 (invalidating Massachusetts law prohibiting false

statements about candidates and ballot measures); *Rickert v. State Pub. Disclosure Comm'n*, 168 P.3d 826, 856 (Wash. 2007) (*en banc*) (invalidating law prohibiting false statements of material fact about political candidates). Election polls and news reports are not the stuff of which First Amendment exceptions are made.

### C.      Plaintiff Cannot Plead Around the First Amendment by Alleging Fraud.

Plaintiff wields the terms "election interference" and "fraud" like an alchemist's incantation, hoping to transform political dross into legal gold. But no amount of vacuous repetition can convert this expansive concept of "fake news" to the very limited and specific *legal* concept of fraud. The Supreme Court has made clear that slapping the "fraud" label on a claim cannot satisfy the specific showing required, nor can it extinguish the First Amendment. *Madigan*, 538 U.S. at 617. Fraud has "[e]xacting" requirements in order "to provide sufficient breathing room for protected speech," so a "[f]alse statement alone" cannot trigger liability. *Id.* at 620.

Plaintiff's lawsuit simply misunderstands fraud. Fraud is "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." *Fraud*, Black's Law Dictionary (12th ed. 2024). Fraud requires not just a false statement, but one made by the defendant in the context of persuading the plaintiff to "part[] with money, or property of value in reliance upon the defendant's representations." William L. Prosser, *Handbook of the Law of Torts* § 105, at 684 (4th ed. 1971); *see Alvarez*, 567 U.S. at 722–23 (distinguishing false statements generally from fraud). The classic example of fraud is a crooked used-car salesman rolling back an odometer. *See* Restatement (Second) of Torts § 525 cmt. b illus. 1. This is not that.

Plaintiff alleges no representations by Selzer for the purpose of inducing him into a transaction. Instead, he alleges Selzer made false statements and tacks on conclusory allegations that he "relied on" and was "damaged" by the statements. Even if true, *that's not fraud*. He does not allege statements of any kind that Selzer made to him. There is simply no transactional nexus

between the parties, and no purpose by Selzer to induce Plaintiff into doing anything. Being wrong (even intentionally) does not become fraud if someone listens and acts.

This Court illustrated the difference between falsity and fraud in *United States v. Kepler*, 879 F. Supp. 2d 1006, 1012 (S.D. Iowa 2011), where it rejected the argument that a statute prohibiting false claims of receiving Army medals could survive First Amendment scrutiny through the "fraud" exception. The Court explained "fraud is not mere lying," because lying, by itself, "lacks an essential element of a fraud claim: proof of detrimental reliance or actual harm to the plaintiff." *Id.* at 1009 n.1 (citing *Madigan*, 538 U.S. at 620–21).

Fraud claims have commonsense boundaries. To state a claim under the ICFA, Plaintiff must allege a false statement "of a material fact, with the intent that others rely upon [it], … in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3(1). Similarly, fraudulent misrepresentation covers only those situations where a defendant "fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it." *Kirk v. Farm & City Ins. Co.*, 457 N.W.2d 906, 909 (Iowa 1990) (quoting Restatement (Second) of Torts § 525). Both claims require a false statement from the defendant about a critical aspect of a proposed transaction *for the purpose of* inducing the plaintiff to enter that transaction. That is what fraud is and what Plaintiff's "false news" claims against Selzer lack, as described in Section II below.

### D.     Plaintiff's Theory of Liability Would Eviscerate the First Amendment.

No court has ever adopted Plaintiff's extraordinary theory of liability for "false news" because it has no limiting principle. Litigants proposing similar theories have all failed. For example, the Southern District of Florida, affirmed by the Eleventh Circuit, rejected a "novel and unprecedented expansion of the scope of tort law" seeking to hold the Weather Channel liable for

damage caused by an incorrect forecast. *Brandt v. Weather Channel, Inc.*, 42 F. Supp. 2d 1344, 1345–46 (S.D. Fla.), *aff'd*, 204 F.3d 1123 (11th Cir. 1999).

The court explained the plaintiffs' theory contravened core First Amendment principles and declined, as a matter of law, to impose a "forecaster's duty." *Id.* at 1346. "If the court were to impose such a duty … [it] could extend to farmers who plant their crops based on a forecast of no rain, construction workers who pour concrete or lay foundation based on the forecast of dry weather, or families who go to the beach for a week based on a forecast of sunny weather." *Id.* Just as with the election coverage here, "[p]redicting possible future events whose outcome is uncertain is not an exact science for which a [publisher] should be held liable." *Id.*

Similarly, the Eastern District of New York rejected an attempt to contort the elements of fraud against protected speech. *Demuth Dev. Corp. v. Merck & Co.*, 432 F. Supp. 990 (E.D.N.Y. 1977). *Demuth* involved a "novel claim" against chemical encyclopedia publisher Merck for "willful misrepresentation" of the toxicity of a chemical used in Demuth's equipment that it alleged scared away purchasers. *Id.* at 991. The court explained Demuth could not "point to any relationship of the parties, arising out of contract or otherwise, which in morals or good conscience, placed Merck under any duty towards plaintiff or its business." *Id.* at 993 (quotation marks omitted). The court held "Merck's right to publish free of fear of liability is guaranteed by the First Amendment, and the overriding societal interest in the untrammeled dissemination of knowledge." *Id.* (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)).

"Fraud" does not exist when someone believes dishonest behavior took place and they claim it cost them money. Especially in debate over public affairs, "every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us." *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J., concurring). America's

history and tradition protects political commentary; they do not subject "false" reports to liability. Plaintiff's claims are barred by the First Amendment.

## II.    Plaintiff Fails to State a Claim Under the ICFA.

### A.    Plaintiff's ICFA Class Action Claim Must Be Dismissed Because He Has Not Alleged He Secured the Requisite Approval from Iowa's Attorney General.

Plaintiff's class action claim under the ICFA is statutorily deficient. The ICFA provides that a "class action alleging a violation of this chapter shall not be filed with a court unless it has been approved by the attorney general." Iowa Code § 714H.7. Plaintiff's Complaint does not allege he has secured such approval. Instead, Plaintiff alleges he "is providing a copy of this Complaint to the Iowa Attorney General with a request to permit a class action" on his ICFA claim. Compl. ¶ 113, ECF No. 1-1. Because Plaintiff has not pled he received the required attorney general approval, the Court must dismiss the claim. *See Huston v. Conagra Brands, Inc.*, 2022 WL 4647251, at *6, n.12 (C.D. Ill. Sept. 30, 2022).

### B.    Plaintiff Does Not Have a Claim Under the ICFA Because There Was No Actual or Contemplated Transaction with Selzer.

Plaintiff has no ICFA claim against Selzer because he does not allege he purchased or leased anything from Selzer. In short, there was no transaction. The ICFA is a consumer fraud statute designed to protect Iowa consumers who are deceived into buying or leasing a product. It provides a cause of action for victims of "deception" and "fraud" "in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3. And it allows consumers to recover damages if they suffer an "ascertainable loss of money or property as the result." *Id*. § 714H.5(1). Plaintiff alleges no "fraud" or "deception" by Selzer to induce him into a transaction with Selzer, nor does he allege an "ascertainable loss of money or property" from such a transaction. And Plaintiff identifies no instance of the ICFA ever being applied to a context other than actual or attempted contractual privity between a seller/lessor and a consumer.

### C.    Plaintiff Cannot Invoke the ICFA, Which Covers Only "Consumer Merchandise" Bought or Leased for "Personal Purposes."

The Court should also dismiss Plaintiff's ICFA claim based on the statute's unambiguous text. When interpreting state statues, federal courts "appl[y] that state's rules of statutory construction." *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015). "The first step in ascertaining the true intent of the legislature is to look at the statute's language." *Mulhern v. Cath. Health Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011) (citation omitted). When that "language is plain and unambiguous, [courts] will look no further." *Id.* The ICFA's plain text forecloses Plaintiff's ICFA claim against Selzer.[3]

First, Plaintiff does not allege Selzer sold or leased anything to him. And the ICFA defines "advertisement" as "the attempt by publication, dissemination, solicitation, or circulation to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." Iowa Code § 714H.2(2) (citing and incorporating *id.* § 714.16(1)(a)). The Iowa Poll offered and induced no obligation or transaction; *it's an opinion poll.* It did nothing more than attempt to measure which candidates were leading and set out its methodology for its findings. Compl. ¶ 82, ECF No. 1-1. The Iowa Poll is textually outside the ICFA's scope.

Second, a political opinion poll of the Iowa electorate is not "consumer merchandise." Under the ICFA, "consumer merchandise" is "merchandise offered for sale or lease, or sold or leased, *primarily for personal, family, or household purposes*." Iowa Code § 714H.2(4) (emphasis added). In other words, "consumer merchandise" refers to the everyday goods Iowans purchase. Any logical and plain reading of the ICFA shows a comprehensive opinion poll of the Iowa

---

[3] By its plain terms, the ICFA applies to commercial transactions, not political commentary. Plaintiff's attempt to extend the law outside its traditional context renders it unconstitutional as applied because it would reach political speech and news coverage the speaker "reasonably should know" are false. *See Sullivan*, 376 U.S. at 288 (evidence of negligently false speech is constitutionally insufficient); *Bertrand v. Mullin*, 846 N.W.2d 884, 894 (Iowa 2014) (same).

electorate intended for general publication is not "merchandise" "primarily for personal, family, or household purposes." *Id.*; *see Butts v. Iowa Health Sys.*, 863 N.W.2d 36 (Iowa Ct. App. 2015) (unpublished table decision), 2015 WL 1046119, at *9 (determining the ICFA inapplicable when defendant "does not offer or sell consumer merchandise").

Finally, the Iowa Poll did not "relate[] to a material fact or facts" in an advertisement, sale, or lease. Iowa Code § 714H.3(1). Under the ICFA, it is not enough to allege a "deceptive" or "fraudulent" representation generally. Instead, a plaintiff "must prove that the prohibited practice related to a material fact" conveyed "in connection with the advertisement, sale, or lease of consumer merchandise." *Id.* The representation Plaintiff relies on is the polling results. Those results are not, and do not relate to, "a material fact or facts" in an ad, sale, or lease. Material facts in consumer transactions are representations of price, use restrictions, a car's gas mileage, or bedding thread count. The outcome of an election poll in this context is not a "material fact."

### III.    Plaintiff Fails to State a Fraudulent Misrepresentation Claim.

Plaintiff's allegations likewise cannot support a claim for fraudulent misrepresentation. For such a claim, "a plaintiff must prove (1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001). Even crediting Plaintiff's allegations and conspiracies as true, he doesn't even satisfy half the elements.

First, as explained in Section I.C, Plaintiff butchers the concept of fraud. Representations, falsity, reliance, scienter, and damages are components of a claim arising in a situation where a defendant lies to induce a plaintiff into a transaction to the plaintiff's detriment. Here, Selzer made

no representation of any kind to Plaintiff. And Plaintiff does not allege the Iowa Poll was "material" to an inducement directed to Plaintiff by Selzer. Plaintiff similarly does not allege Selzer intended to induce him into a transaction. Nor has he plead any damage to him caused by Selzer's poll. Plaintiff therefore fails to even plead elements (1), (3), (5), (7), or (8).

Plaintiff also fails to plead element (6), justifiable reliance. In Iowa, the "justifiable-reliance standard does not mean a plaintiff can blindly rely on a representation." *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 737 (Iowa 2009). Rather, "[a] person may not justifiably rely on a professional representation if 'red flags' signal such reliance is unwarranted." *Young ex rel. Young v. Rally Appraisal, L.L.C.*, 928 N.W.2d 660 (Iowa Ct. App. 2019) (unpublished table decision), 2019 WL 1486608, at *4. Here, according to Plaintiff, Selzer's poll had "obvious problems." Compl. ¶ 166, ECF No. 1-1. Plaintiff also alleges Selzer had a "track record of undersampling Republicans in her polling." *Id.* ¶ 20. He also alleges Selzer's results were an "obvious outlier." *Id.* ¶ 38. In short, Plaintiff concedes any possibility he justifiably relied on the poll to his detriment. He alleges "frustration" by the poll results, *id.* ¶ 8, but that is not reliance.

Moreover, in contrast to his repetitive allegations that everyone with experience in Iowa politics recognized the poll as an unreliable outlier, Plaintiff asserts (remarkably) that he "justifiably relied on" the polls. *Id.* ¶ 127. That allegation is both conclusory and contradicted by Plaintiff's *actual* allegations. *See, e.g.*, *id.* ¶¶ 18–20. "Parties alleging fraud must plead reliance with 'sufficient particularity to state a plausible claim of justifiable reliance,'" and "[c]onclusory allegations that a plaintiff detrimentally relied on" representations do not provide "sufficient factual matter to state a claim of relief plausible on its face." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) (citation omitted). Donnelly fails to adequately allege *six* of the eight elements of fraudulent misrepresentation. The claim is deficient.

**IV.    Plaintiff's Negligence Claims Fail Because Selzer Owed Him No Legal Duty.**

Plaintiff's claims grounded in negligence ("Alternate Count I" for "Reckless Negligent Misrepresentation" and Count III for "Malpractice") likewise fail. First, "reckless negligent misrepresentation" (whatever that may be) is not a claim under Iowa law. A Westlaw search of Iowa federal and state court cases yields zero results for the phrase. That is because recklessness and negligence are different standards of culpability. *Sechler v. State*, 340 N.W.2d 759, 762–64 (Iowa 1983). Plaintiff's claim is akin to charging a criminal defendant with "intentional involuntary manslaughter." Plaintiff cannot conjure a claim simply by stringing words together.

Iowa does, however, recognize a claim for negligent misrepresentation. Assuming that is what Plaintiff intended to plead, it, and his malpractice claim, fail because Selzer owed no legal duty to Plaintiff. *See Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001) ("As with all negligence actions, an essential element of negligent misrepresentation is that the defendant must owe a duty of care to the plaintiff."); *McGraw v. Wachovia Sec., L.L.C.*, 756 F. Supp. 2d 1053, 1070 (N.D. Iowa 2010) ("In professional negligence actions, as in other negligence actions, the plaintiff must prove a duty of care was owed to him or her …..").

To the extent Selzer owed anyone a duty, it was to the *Des Moines Register*, who contracted for Selzer's work. But newspapers and their sources of information owe no legal duty to the public. As the Fifth Circuit explained, "[i]f a newspaper prints incorrect information, if a scientist publishes careless statements in a treatise, or if an oil company prints an inaccurate road map, they cannot be 'liable' to those of the general public who read their works absent some special relationship between [the] writer and reader." *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140, 148 (5th Cir. 1971); *see also Stancik v. CNBC*, 420 F. Supp. 2d 800, 808 (N.D. Ohio 2006) ("[N]ews broadcasters do not owe the general public a heightened duty of care."); *Brandt*, 42 F. Supp. 2d at 1345–46 (refusing to "impose on a television broadcaster of weather forecasts a

16

general duty to viewers"). As another court explained, "[a]ccuracy in news reporting is certainly a desideratum, but the chilling effect of imposing a high duty of care on those in the business of news dissemination and making that duty run to a wide range of readers or TV viewers would have a chilling effect which is unacceptable under our Constitution." *Tumminello v. Bergen Evening Rec., Inc.*, 454 F. Supp. 1156, 1159–60 (D.N.J. 1978). Without duty, there is no negligence. And the First Amendment bars states from imposing a common law duty on news suppliers to "get it right." *See Sullivan*, 376 U.S. at 288; *Bertrand v. Mullin*, 846 N.W.2d 884, 894 (Iowa 2014).

Professional malpractice and negligence claims ordinarily require privity. *See, e.g.*, *Shivvers v. Hertz Farm Mgmt.*, 595 N.W.2d 476, 479 (Iowa 1999). Plaintiff notes "Iowa recognizes that a professional may be liable to a third-party or non-customer" and leaps to the conclusion that because he is a "third-party or non-customer" of Selzer (as are approximately 8 billion others, give or take) Selzer must therefore be liable to him. Tort law is not quite so generous. Iowa recognizes narrow exceptions where professional negligence claims may be maintained without privity, for example, in narrow circumstances in the medical profession, when brokerage firms ignore evidence others are being defrauded, and information providers are aware others are relying on their work in determining a course of action and the information is provided for the purpose of making that type of determination. *See J.A.H. ex rel. R.M.H. v. Wadle & Associates, P.C.*, 589 N.W.2d 256, 260 (Iowa 1999) (noting that the Court had "relaxed the privity requirement" in some narrow circumstances for "the medical profession"); *McGraw*, 756 F. Supp. 2d at 1072–75 (brokerage firm could be liable to non-customer when aware of signs that an employee may be defrauding non-customer in personal dealings); *Burbach v. Radon Analytical Lab'ys, Inc.*, 652 N.W.2d 135, 138 (Iowa 2002) (absent a showing that an inspector had awareness that "a limited

but foreseeable class of users" would rely on their report for specific purchasing decisions, no liability for third parties' decisions). Nothing of the sort is present here.

Plaintiff's negligence claims fail on the other elements, too. Plaintiffs asserting negligent misrepresentation must establish: "(1) [t]he defendant was in the business or profession of supplying information to others; (2) the defendant intended to supply information to the plaintiff or knew that the recipient intended to supply it to the plaintiff; (3) the information was false; (4) the defendant knew or reasonably should have known that the information was false; (5) the plaintiff reasonably relied on the information in the transaction that the defendant intended the information to influence; (6) and the false information was the proximate cause of damage to the plaintiff." *Doe v. Grinnell Coll.*, 473 F. Supp. 3d 909, 937 (S.D. Iowa. 2019) (citation omitted).

Plaintiff's negligent misrepresentation claim is a shoe that doesn't fit. Negligent misrepresentation allows recovery against those who supply information *knowing* recipients intend to rely on the information to determine a course of action and harm results from that reliance because the supplier's provision of its services fell below the legal standard of care. *Sain*, 626 N.W.2d at 124–25. In those situations, the information supplier, because of its contractual (or similar) relationship with the recipient, can be held liable because it "is manifestly aware of the use the information will be put, and intends to supply it for that purpose." *Id.* at 125. For example, if a home inspection company prepares a report knowing prospective buyers will rely on it when deciding whether to purchase the building, the inspection company is liable for negligent misrepresentation if the report is inaccurate, the inspector's preparation of the report fell below the legal standard of care, and a buyer relied on the report to its detriment. *Burbach*, 652 N.W.2d 135.

Plaintiff's Complaint is deficient on its face. Elements 1, 2, and 4 fail because Plaintiff does not allege Selzer supplied her poll for the purpose of informing a decision regarding a

transaction. Element 5 fails because Plaintiff does not allege he relied on Selzer's poll to determine a course of action. And Element 6 fails because Plaintiff does not allege damages he suffered by *relying on* Selzer's poll. In short, Plaintiff's negligent misrepresentation claim fails because it is not a negligent misrepresentation claim.

Plaintiff's "Professional Malpractice" claim fails for the same reasons.[4] "In professional negligence actions, as in other negligence actions, the plaintiff must prove a duty of care was owed to him or her, breach of that duty, and damages caused by the breach of duty." *McGraw*, 756 F. Supp. 2d at 1070. As explained above, Selzer owed no legal duty to Plaintiff, and he does not plead damages resulting from his reliance on Selzer's poll.

Plaintiff's citation to the 1992 Hawaii Supreme Court decision *Birmingham v. Fodor's Travel Publications*, 833 P.2d 70 (Haw. 1992), is baffling. Plaintiff holds the case out as supporting the proposition that "a newspaper has a duty of care for information that it authors or approves (but not for advertisements it merely prints on behalf of others)." Compl. ¶ 165, ECF No. 1-1. But this is *the opposite* of what the court held. *Birmingham* cited cases holding that newspapers are not liable in negligence for advertising defective products unless the publication warrantees the product. 833 P.2d at 75, n.3. Plaintiff bizarrely extrapolates that to mean newspapers must have a duty of care to readers with respect to *everything else* (including reporting). *Birmingham* says nothing of the sort. And even if it did, it would be squarely foreclosed by *Sullivan*, 376 U.S. at 287–88 (evidence against newspaper supporting "at most a finding of negligence" was "constitutionally insufficient to show the recklessness … required for a finding of actual malice").

---

[4] Negligent misrepresentation ("Alternate Claim 1") and Malpractice (Claim III) differ only in the type of duty (reasonable care for negligent misrepresentation versus the standard of care of a similarly situated professional for malpractice). *Compare Sain*, 626 N.W.2d at 122–25, *with Stender v. Blessum*, 897 N.W.2d 491, 502–06 (Iowa 2017). The analysis remains the same.

Plaintiff's Complaint assumes it can save these claims by asserting Selzer acted "recklessly" rather than negligently, evidently hoping to borrow a concept from defamation law. Compl. ¶¶ 94–104, ECF No. 1-1. But this gambit fails. Selzer's culpability rising to recklessness (or even intentional falsity) is irrelevant due to the underlying lack of legal duty to Plaintiff. Selzer had no legal duty to Plaintiff, a stranger, to produce an "accurate" opinion poll or anything else. Nor does alleging recklessness change the fact Plaintiff fails to assert cognizable legal harm *caused by* Selzer's polls. The Court should dismiss the claims.

## V.    <u>Plaintiff's Voting Interference Claim is Meritless.</u>

Plaintiff's Complaint fundamentally misunderstands the common law tort of voting interference. This rare Iowa claim allows recovery when an individual actively and intentionally prevents (or tries to prevent) a voter from casting their ballot. *See* Restatement (Second) of Torts § 865 ("One who by a consciously wrongful act intentionally deprives another of a right to vote in a public election … or seriously interferes with … th[at] right[] is subject to liability to the other.") In *Lane v. Mitchell*, 133 N.W. 381 (Iowa 1911), the Iowa Supreme Court held an Iowan had a claim against election officials who maliciously refused to allow the voter to vote.

Plaintiff's Complaint leaps to the peculiar conclusion that anyone whose vote was affected by a "fraudulent" news story can assert the claim. Even if such a theory were not barred multiple times over by the First Amendment, *see* Section I, news articles and polls that might influence voting decisions do not prevent any voter from casting a ballot. We can locate no court, anywhere, that has accepted Plaintiff's strange theory. The Court should dismiss the claim.

## CONCLUSION

Defendants J. Ann Selzer and Selzer & Company respectfully request this Court grant their motion to dismiss Plaintiff's claims with prejudice and request oral argument on the motion.

Dated: May 19, 2025

Respectfully Submitted,

/s/ *Robert Corn-Revere*                    .
Robert Corn-Revere\*†
   (DC Bar No. 375415)
Conor T. Fitzpatrick\*
   (Mich. Bar No. P78981)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION (FIRE)
700 Pennsylvania Ave., SE; Suite 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@thefire.org
conor.fitzpatrick@thefire.org

Greg Greubel
   (Iowa Bar No. AT0015474)
Adam Steinbaugh\*
   (Cal. Bar No. 304829)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION (FIRE)
510 Walnut St.; Suite 900
Philadelphia, PA 19106
(215) 717-3473
greg.greubel@thefire.org
adam@thefire.org

Matthew A. McGuire
   (Iowa Bar No. AT0011932)
NYEMASTER GOODE, P.C.
700 Walnut St., Suite 1300
Des Moines, IA 50309
(515) 283-8014
mmcguire@nyemaster.com

*Attorneys for Defendants J. Ann Selzer and
Selzer & Company*

\* *Admitted pro hac vice.*
† *Lead counsel*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing document was served upon all parties of record through the Court's CM/ECF electronic filing system on May 19, 2025.

/s/ *Robert Corn-Revere*