## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

DENNIS DONNELLY, on behalf of himself
and all others similarly situated,

        Plaintiff,

    v.

DES MOINES REGISTER AND TRIBUNE
CO., INC.; J. ANN SELZER; SELZER &
COMPANY; and GANNETT CO., INC.,

        Defendants.

Case No. 4:25-cv-00150-RGE-WPK

**BRIEF IN SUPPORT
OF MOTION TO REMAND
OR IN THE ALTERNATIVE
FOR JURISDICTIONAL DISCOVERY**

Robert R. Anderson
P.O. Box 4
Atlantic, Iowa 50022
(515) 382-1278
bobandersoniowan@gmail.com

Daniel R. Suhr (pro hac vice)
Center for American Rights
727 N. LaSalle Street, Suite 210
Chicago, Illinois 60654
dsuhr@americanrights.org

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... 3

I. THIS CASE SHOULD BE REMANDED BECAUSE GANNETT DID NOT TIMELY REMOVE IT. ................................................................................................................. 4

II. IN THE ALTERNATIVE, THIS COURT SHOULD GRANT LIMITED JURISDICTIONAL DISCOVERY FOR THE ADDRESSES OF THE PUTATIVE CLASS. .................................... 7

    The Local Controversy Exception ................................................................................ 7
    The Home State Controversy Exception ........................................................................ 9
    The Interests of Justice Exception ................................................................................ 10

CONCLUSION .................................................................................................................... 12

**TABLE OF AUTHORITIES**

<span style="text-align:center">CASES</span>

*Curts v. Waggin' Train, LLC*, 2013 U.S. Dist. LEXIS 74298, *9 (W.D.Mo. May 28, 2013)...... 11
*Flath v. Barnes Jewish Hosp.*, 2012 U.S. Dist. LEXIS 145998, *7 (E.D.Mo. Oct. 10, 2012) ....... 4
*Garcia v. Wal-Mart Store*s, 207 F. Supp. 3d 1114, 1131 (C.D. Cal. 2016) ................................... 6
*Green v. Skyline Highland Holdings LLC,* 2017 U.S. Dist. LEXIS 198553, *10 (E.D. Ark. Dec. 4, 2017) ........................................................................................................................................ 9
*Infinity Staffing Sols., LLC v. Paramount Conversions, LLC*, 2018 U.S. Dist. LEXIS 115939, *5 (D.N.J. June 26, 2018) .............................................................................................................. 6
*Johnson v. Courtyard Rehab. & Health Ctr.*, 2018 U.S. Dist. LEXIS 239084, *14 (W.D.Ark. Jan. 8, 2018) ..................................................................................................................................... 9
*Luebbers v. BJC Health Sys.*, 2025 U.S. Dist. LEXIS 31286, *7-8 (E.D. Mo. Feb. 21, 2025).... 11
*Mackey v. Chemtool Inc.*, 2022 U.S. Dist. LEXIS 143498, *5-6 (N.D.Ill. Aug. 11, 2022) ......... 10
*McClendon v. Challenge Financial Investors Corp.*, 2009 U.S. Dist. LEXIS 17908, 2009 WL 589245, *13 (N.D. Ohio Mar. 9, 2009) ................................................................................... 10
*Minuto v. Kaiden*, 2023 U.S. Dist. LEXIS 128277, *11 (D.N.J. July 25, 2023) ........................... 6
*Monsanto Co. v. Magnetek, Inc.*, 126 F.4th 1324 (8th Cir. 2025) ................................................. 5
*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) .................................... 5
*Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964-5 (8th Cir. 2016)............................. 11
*Randall v. Evamor, Inc.*, 2009 U.S. Dist. LEXIS 111379, *3 (E.D.Mo. Dec. 1, 2009) ............... 11
*Roth v. CHA Hollywood Med. Ctr., L.P*., 720 F.3d 1121, 1126 (9th Cir. 2013) ........................... 6
*Summerhill v. Terminix, Inc.*, 2008 U.S. Dist. LEXIS 91939, *5-6 (E.D. Ark. Oct. 30, 2008) ..... 7
*Trump v. Selzer, 4:24-cv-00449, (S.D. Iowa)* ....................................................................... 4, 5, 6, 9
*Waddell v. Nat'l Asset Recovery, Inc*., 2009 U.S. Dist. LEXIS 142448, *8-9 (W.D.Mo. 2009) ... 5
*Westerfeld v. Indep. Processing*, LLC, 621 F.3d 819, 825 (8th Cir. 2010) ................................... 9

<span style="text-align:center">CODES</span>

28 U.S.C. § 1332(d) ........................................................................................................................ 7
28 U.S.C. § 1332(d)(3) ................................................................................................................. 10
28 U.S.C. § 1332(d)(4)(A)(i) ..................................................................................................... 7, 8
28 U.S.C. § 1332(d)(4)(B) ............................................................................................................. 9
28 U.S.C. § 1446(b)(1) .................................................................................................................. 4
28 U.S.C. §§ 1332, 1441, 1446, and 1453 ..................................................................................... 4

**I. THIS CASE SHOULD BE REMANDED BECAUSE GANNETT DID NOT TIMELY REMOVE IT.**

This is a putative consumer class action against the *Des Moines Register*, its parent Gannett Co., its pollster Dr. Ann Selzer, and her company Selzer & Co., originally filed in Polk County, Iowa, district court.

Gannett filed its notice of removal in this Court, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (basically, the Class Action Fairness Act, or CAFA), on April 24, 2025.

28 U.S.C. § 1446(b)(1) requires that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." "The time limits of removal statutes are mandatory and must be strictly construed in favor of state court jurisdiction." *Flath v. Barnes Jewish Hosp.*, 2012 U.S. Dist. LEXIS 145998, *7 (E.D.Mo. Oct. 10, 2012).

Mr. Donnelly filed his petition on January 6, 2025. On January 8, 2025, his counsel sent a copy of the petition to Defendants' counsel in the *Trump v. Selzer* matter, which had been filed shortly before his action, asking if they would accept service on behalf of their clients in the new case, or otherwise to arrange a convenient time and place for service. Mr. Klinefeldt, counsel for the *Register* and Gannett, agreed the next day, January 9, to accept service on behalf of his clients. Counsel for the Selzer Defendants also agreed to accept service shortly thereafter. Counsel then had several rounds of productive meet-and-confer conversations, both over videoconference call and email, to track the progress of the *Trump* case in relation to the *Donnelly* case with the goal of efficiently scheduling the two matters because they have such significantly overlapping substance. To that end, counsel for Donnelly agreed to let the full ninety days for service run in order to give the *Trump* matter time to unfold, on the idea that if this Court granted the President's motion to

4

remand to the Polk County Court, then the two cases could be consolidated and run together. As time went on, it became clear that the *Trump* remand motion would not be decided before the 90-day mark, and counsel conferred again to finalize plans.

On April 4, 2025, just before the 90 days ran, counsel for Gannett filed an "Appearance of Counsel and Acceptance of Service" in the Polk County Court. It stated, "Press Defendants hereby accept service of process of the Original Notice and Petition on their behalf. Such acceptance of service with respect to and in lieu of personal service of the Original Notice and Petition is made on this date, April 4, 2025." Gannett then filed the notice of removal in this Court on April 24.

Ordinarily, under Eighth Circuit precedent, service is dated from the date in the parties' stipulation for waiver of service, *Monsanto Co. v. Magnetek, Inc.*, 126 F.4th 1324 (8th Cir. 2025), not from the date a courtesy copy is provided, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999).

However, the rule that courtesy copies do not suffice to start the clock "ordinarily" applies, but not in every instance. *See Waddell v. Nat'l Asset Recovery, Inc.*, 2009 U.S. Dist. LEXIS 142448, *8-9 (W.D.Mo. 2009) ("The *Murphy Brothers* rule is simply one that 'ordinarily' applies (526 U.S. at 350) and should not be used when it is the party denying service that is responsible for the defect and had actual knowledge of the allegations it has ignored.").

Here, Gannett had actual knowledge of the petition no later than January 9. Yet it waited more than 100 days—until April 24—to file its notice of removal. During this period, counsel for all parties consistently held meet-and-confer conversations on the baseline assumption that we would continue in state court. If Gannett wanted this case in federal court, acting timely meant filing in January or early February so that the *Donnelly* case could have kept track with the *Trump* case.

Courts are appropriately "wary" when the timing of a removal looks like it was delayed based on "gamesmanship." *Garcia v. Wal-Mart Stores*, 207 F. Supp. 3d 1114, 1131 (C.D. Cal. 2016). As the U.S. Court of Appeals for the Ninth Circuit has warned in a CAFA case, "[i]t may be that in some diversity cases, defendants will be able to take advantage of the fact that neither the 'initial pleading' nor any later document received from plaintiff triggers one of the two thirty-day periods. In such cases, defendants may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013). Thus, courts reject removal when they suspect "gamesmanship." *Minuto v. Kaiden*, 2023 U.S. Dist. LEXIS 128277, *11 (D.N.J. July 25, 2023). Defendants should not be permitted to play the clock to "pull the rug out from under a plaintiff" (*id.*, quoting *Infinity Staffing Sols., LLC v. Paramount Conversions, LLC*, 2018 U.S. Dist. LEXIS 115939, *5 (D.N.J. June 26, 2018)).

Though Plaintiff is not accusing anyone of bad faith, the reality is that Gannett received the complaint and agreed to accept service more than 100 days before it filed its notice of removal. Gannett's delay served two purposes: it gave it an addition two months to see how the arguments would unfold in the *Trump* case, giving it more insight into which forum it wanted to select for the *Donnelly* case. And it put the *Trump* case meaningfully ahead in line from this case. As a result, this Court will have fully briefed motions to dismiss in *Trump* before it even has all the motions to dismiss filed in this case. This Court could rule on *Trump* and set a precedent that will then bind *Donnelly* before Mr. Donnelly even gets his day in court and a chance to make his arguments. Or this Court could wait to rule on the *Trump* motions for several months so that the *Donnelly* motions can be briefed and heard and then all merits motions ruled on at once, thus substantively delaying resolution for all parties. Either way, Gannett's unnecessary delay is "contrary to the interests of

justice and expeditious process." *Id*.

The reality is this: Gannett engaged in a snap removal of the *Trump* case, and then a slow-walk removal of the *Donnelly* case, in both instances to serve its tactical litigation purposes. Gannett clearly knows how to remove a case to federal court. If Gannett knew of CAFA back in January but waited to file a CAFA removal until late April, then it delayed contrary to the 30-day removal rule. If Gannett did not know of CAFA in January, and only learned of it in April after filing its appearance in *Donnelly*, then it benefitted from two extra months of time to engage in legal research on the question beyond what the statute allows. Either way, Gannett should not be rewarded for its dilatory approach to removal.

## II. IN THE ALTERNATIVE, THIS COURT SHOULD GRANT LIMITED JURISDICTIONAL DISCOVERY FOR THE ADDRESSES OF THE PUTATIVE CLASS.

The Class Action Fairness Act (CAFA) has two similar exceptions where a federal district court *shall* decline to exercise jurisdiction if more than two-thirds of the putative plaintiff class are from the originating state: the home-state exception and the local-controversy exception. 28 U.S.C. § 1332(d). A third exception grants discretion to decline jurisdiction if between one third and two-thirds of the class are from the same state.

*The Local Controversy Exception*

The first is the local controversy exception. 28 U.S.C. § 1332(d)(4)(A)(i). This "local controversy exception" is intended to apply to "a truly local controversy -- a controversy that uniquely affects a particular locality to the exclusion of all others." *Summerhill v. Terminix, Inc.*, 2008 U.S. Dist. LEXIS 91939, *5-6 (E.D. Ark. Oct. 30, 2008) (quoting Senate Report on CAFA).

The exception applies when (1) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed; (2) at least one defendant is a defendant (a) from whom significant relief is sought by members of

7

the plaintiff class; (b) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (c) who is a citizen of the State in which the action was originally filed; (3) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and (4) during the three-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons. *Id*. (discussing § 1332(d)(4)(A)(4)).

This is almost certainly a classic local controversy. It involves an Iowa newspaper, the Des Moines Register, an Iowa company, Selzer & Co., an Iowa resident, Ann Selzer, and a class of the Register's subscribers, the vast majority of whom presumably live in Iowa (showing that is so is the object of discovery). And it involves an alleged consumer fraud perpetrated on those subscribers by that newspaper and its polling company regarding a news report about Iowa politics.

In a future motion for remand (post-discovery), the Plaintiff can show the other elements of the local controversy test besides the two-thirds citizenship: the Plaintiff and proposed class seek significant relief (joint and several liability for all damages) from the Des Moines Register & Tribune Co.[1], Dr. Ann Selzer[2], and Selzer & Co.,[3] all of whom are citizens of Iowa. Indeed, the one non-Iowa citizen is Gannett, which is included as the Register's parent company and for its role setting standards and managing reporting, not for any direct role in the specific facts of reporting and running this story. The immediate players in the controversy are the three Iowa Defendants: they are the ones whose alleged conduct is the primary basis for the claims asserted.

---

[1] The Des Moines Register & Tribune Co. was created as a domestic for-profit corporation with the Iowa Secretary of State, Business No. 8971.
[2] *See* ECF 1 at 2 ("the Petition alleges that J. Ann Selzer is a natural person who lives in Iowa. Id. ¶ 10. Upon information and belief, Selzer is therefore a citizen of Iowa for the purposes of diversity jurisdiction.").
[3] Selzer & Company, registered agent J. Ann Selzer, was created as a domestic for-profit corporation with the Iowa Secretary of State, Business No. 200824.

*Westerfeld v. Indep. Processing*, LLC, 621 F.3d 819, 825 (8th Cir. 2010) ("The local defendant's alleged conduct must be an *important* ground for the asserted claims in view of the alleged conduct of all the Defendants"). The local defendants are the ones who ran the poll, decided whether to publish the poll, published the poll, and stated publicly the poll was credible and accurate—not Gannett. The three Iowa Defendants are the ones who are "more culpable or responsible for the claims alleged in the complaint." *Johnson v. Courtyard Rehab. & Health Ctr.*, 2018 U.S. Dist. LEXIS 239084, *14 (W.D.Ark. Jan. 8, 2018) (quoting *Green v. Skyline Highland Holdings LLC*, 2017 U.S. Dist. LEXIS 198553, *10 (E.D. Ark. Dec. 4, 2017)).

The third element is also met—the alleged conduct (doing the poll, deciding whether to publish the poll, publishing the poll, and validating the poll's credibility) all took place in Iowa, which is what prompted the injury to the class. And no other class action on this subject has been filed in the past three years—the *Trump* matter is not a class action.

The one element that Plaintiff cannot currently make a good-faith argument on, then, is whether or not at least two-thirds of the proposed class, *i.e.*, *Register* Sunday edition subscribers as of November 1, 2024, are citizens of Iowa. Plaintiff has a very strong common-sense reason to believe that is the case, but he doesn't have access to the hard data himself.

*The Home State Controversy Exception*

The second CAFA removal exception, the home-state controversy exception, applies when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Again, all of the primary defendants here are Iowa citizens (*see Johnson*, 2018 U.S. Dist. LEXIS 239084, at *19)—Gannett is present as a secondary defendant for its role managing and setting policy for the *Register*. See *Mackey v. Chemtool Inc.*, 2022 U.S. Dist. LEXIS 143498,

*5-6 (N.D.Ill. Aug. 11, 2022) ("Though the Seventh Circuit has yet to define what the statute means by a 'primary defendant,' other circuits' definition would exclude defendants that are only alleged to be indirectly liable. So, under this authority, Lubrizol would merely be a deep pocket, not a 'primary defendant.' Indeed, the *Henderson* complaint plainly alleges that Lubrizol is Chemtool's parent company."). *See also McClendon v. Challenge Financial Investors Corp.*, 2009 U.S. Dist. LEXIS 17908, 2009 WL 589245, *13 (N.D. Ohio Mar. 9, 2009) ("there seems to be a settled judicial understanding of 'primary defendants' as those parties having a dominant relation to the subject matter of the controversy, in contrast to other defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who are only vicariously liable."). Thus, again, the determinative question is whether two-thirds or more of the members of the proposed plaintiff class (here there is only one) are citizens of Iowa.

*The Interests of Justice Exception*

Finally, there is an "interest of justice" discretionary exception to CAFA jurisdiction when between one third and two-thirds of the class are from the same state. 28 U.S.C. § 1332(d)(3). In that case, the Court must weigh six factors "in the interests of justice and looking at the totality of the circumstances." These factors track those above—do the claims relate to matters of interstate interest (no), are the claims governed by Iowa state law (yes), has the matter been pled to avoid federal jurisdiction (no), does the action have a distinct nexus to the original forum (yes), do citizens of one state predominate among the class members (almost assuredly yes), and has any similar class action been filed in the previous three years (no).

Thus, the key question for all three exceptions is what percentage of class members are citizens of Iowa, and that can only be determined with limited jurisdictional discovery because that information is in the hands of Gannett and/or the Des Moines Register and Tribune Co.

"Discovery is not limited to the merits of a case; where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964-5 (8th Cir. 2016).

Thus, trial courts in this district regularly permit limited jurisdictional discovery in precisely this circumstance. *See, e.g., Randall v. Evamor, Inc*., 2009 U.S. Dist. LEXIS 111379, *3 (E.D.Mo. Dec. 1, 2009) ("Plaintiffs' only means of determining citizenship, for purposes of supporting a motion to remand, is by obtaining discovery of Defendant's Missouri customer lists for the relevant time period."); *Luebbers v. BJC Health Sys*., 2025 U.S. Dist. LEXIS 31286, *7-8 (E.D. Mo. Feb. 21, 2025) ("The Plaintiff class includes employees of Defendant, which operates health facilities 'in the St. Louis area' (Doc. 101, p. 3). It is reasonable to infer that employees who work in these facilities also live in the St. Louis area and could potentially be Missouri citizens. Discovery is necessary to determine the citizenship of these potential class members.").

Plaintiff's discovery request is simple: the subscriber list for the *Des Moines Register* Sunday edition as of November 1, 2024. This list of addresses will easily establish what percentage of class members are residents of Iowa (*see Curts v. Waggin' Train, LLC*, 2013 U.S. Dist. LEXIS 74298, *9 (W.D.Mo. May 28, 2013) (quoting *Randall*, 2010 U.S. Dist. LEXIS 41948, at *2) (residence in the state "creates a rebuttable presumption that those individuals are Missouri citizens for purposes of the home state exception."). This discovery should not be burdensome or costly— it is a single, straightforward request that would be necessary later anyway for class certification.

Once provided with that information, Plaintiff can make a motion for remand under the home-state exception (if two-thirds or more are Iowans), the local controversy exception (again, if two-thirds or more are Iowans), or the discretionary "interests of justice" exception (if between one third and two-thirds are Iowans and other factors weigh in favor of remand). This motion is

not the place for the Plaintiff to fully brief and argue all the other elements of the motion to remand besides the necessary percentages of the class. Rather, it is to show that the Plaintiff has at least a legally viable argument on those other elements such that the discovery is not an unnecessary inconvenience because the Plaintiff is guaranteed to lose on another element anyway. With the jurisdictional discovery complete, the Plaintiff can fully brief a motion to remand with the information necessary to convince the Court on all the elements.

## CONCLUSION

Gannett was well aware of this case for more than 100 days before it filed its notice of removal under CAFA. This Court should not reward Gannett's dilatory attitude toward removal, which placed its potential tactical advantages ahead of the overall economies of the case. For that reason alone, remand should be granted.

Alternatively, this is a classic case for the local/home state exception. The three primary defendants are all from Iowa. Common sense dictates that the vast majority of the proposed class will be Iowans. The subject matter of the controversy concerns Iowa, and the acts were undertaken and damages incurred in Iowa. However, before making a full motion for remand on those points, the Plaintiff requires very limited jurisdictional discovery of the *Register's* Sunday subscriber list as of November 1, 2024.

| | |
|---|---|
| Robert R. Anderson | Daniel R. Suhr (pro hac vice) |
| P.O. Box 4 | Center for American Rights |
| Atlantic, Iowa 50022 | 727 N. LaSalle Street, Suite 210 |
| (515) 382-1278 | Chicago, Illinois 60654 |
| bobandersoniowan@gmail.com | dsuhr@americanrights.org |