IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated, | |
| *Plaintiff*, | Case No. 4:25-cv-00150-RGE-WPK |
| v. | **PRESS DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| DES MOINES REGISTER AND TRIBUNE CO., INC., J. ANN SELZER, an individual, SELZER & COMPANY, and GANNETT CO., INC., | **ORAL ARGUMENT REQUESTED** |
| *Defendants*. | |

i

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................11

II.    BACKGROUND .................................................................................................. 12

   A.  The Iowa Poll.................................................................................................. 12

   B.  Plaintiff's Claims and Allegations ................................................................. 14

   C.  Procedural History ......................................................................................... 16

III.    LEGAL STANDARD .......................................................................................... 16

IV.    ARGUMENT ...................................................................................................... 17

   A.  The First Amendment to the U.S. Constitution Bars Plaintiff's Amended Complaint.. 18

      1.  Press Defendants' Political Campaign Reporting Is Entitled to Absolute Protection Under the First Amendment ................................... 19

      2.  Plaintiff Seeks to Create an Impermissible First Amendment Exception for "False" Political Speech .................................................... 22

      3.  The Constitutional "Actual Malice" Standard Forecloses Plaintiff's Claims....... 24

   B.  The Amended Complaint Asserts No Plausible Claim for Fraudulent Misrepresentation (Count I)................................................................................ 27

      1.  Plaintiff Did Not Plead an Actionable False Representation ................ 28

      2.  Plaintiff Pleads No Reliance—Much Less Justifiable Reliance—on the Iowa Poll .......... 30

      3.  Plaintiff Alleges No Compensable Injury ........................................... 32

   C.  The Amended Complaint Asserts No Plausible Claim for Negligent Misrepresentation (Alternate Count I).................................................................... 33

      1.  Press Defendants Are Not in the Business or Profession of Supplying Information Under Iowa Law .............................................. 34

      2.  Plaintiff Does Not Plead the Polls Proximately Caused Damages ...... 36

   D.  The Amended Complaint Asserts No Plausible Claim for Relief Under the Iowa Consumer Fraud Act (Count II) ............................................................ 37

      1.  Plaintiff Fails to Adequately Allege Any Predicate Act That Violates ICFA........ 37

      2.  Plaintiff Does Not Allege the Publication of the Poll Was in Connection with the Sale or Advertisement of Consumer Merchandise................ 40

      3.  Plaintiff Does Not Allege Any Injury That Was Proximately Caused by the Poll 42

   E.  Plaintiff's Has Failed to Adequately Plead a Professional Malpractice Claim (Count III) ........................................................................................... 43

   F.  Iowa Law Does Not Recognize a Common Law Claim Against Defendants for "Interference with the Right to Vote" (Count IV)........................................ 45

G.  Because Plaintiff Has Failed to Adequately Allege a Predicate Tort, His Conspiracy Claim Fails (Count V) .................................................................................................. 46

H.  Plaintiff Cannot Be Awarded Punitive Damages ........................................................... 46

V.  CONCLUSION ...................................................................................................................... 46

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*238 Care Comm. v. Arneson*,
    638 F.3d 621 (8th Cir. 2011) ........................................................................21, 24

*281 Care Comm. v. Arneson*,
    683 F.3d 621 (8th Cir. 2011) ....................................................................................22

*281 Care Comm. v. Arneson*,
    766 F.3d 774 (8th Cir. 2014) .................................................................18, 22, 23

*Andrew v. Hamilton Cnty. Pub. Hosp.*,
    960 N.W.2d 481 (Iowa 2021) ..................................................................................39

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................16

*Bank of Oregon v. Ind. News, Inc.*,
    670 P.2d 616 (Or. App. 1983)..................................................................................44

*Bass v. J.C. Penney Co., Inc.*,
    880 N.W.2d 751 (Iowa 2016) ..................................................................................29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................16, 31

*Birmingham v. Fodor's Travel Pubs.*,
    73 Haw. 359 (1992) .................................................................................................44

*BJC Health Sys. v. Columbia Cas. Co.*,
    478 F.3d 908 (8th Cir. 2007) ...................................................................................29

*Blessum v. Howard Cnty. Bd. of Supervisors*,
    295 N.W.2d 836 (Iowa 1980) ..................................................................................25

*Boone Cnty. Comm. Credit Union v. Masel*,
    2003 WL 1050344 (Iowa Ct. App. Mar. 12, 2003) .................................................36

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984).................................................................................................25

*Carr v. Bankers Trust Co.*,
    546 N.W.2d 901 (Iowa 1996) ..................................................................................24

*Citizens United v. FEC*,
    558 U.S. 310 (2010).................................................................................................19

*City of Plantation Police Officers Pension Fund v. Meredith Corp.*,
  16 F.4th 553 (8th Cir. 2021) ................................................................................28

*Cornell v. Wunschel*,
  408 N.W.2d 369 (Iowa 1987) ..............................................................................33

*Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*,
  888 N.W.2d 644 (Iowa 2016) ..............................................................................35

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
  489 U.S. 214 (1989).............................................................................................19

*First Equity Corp. of Fla. v. Standard & Poor's Corp.*,
  670 F. Supp. 115 (S.D.N.Y. 1987), *aff'd*, 869 F.2d 175 (2d Cir. 1989) ...........17, 18

*Franklin Prescriptions, Inc. v. New York Times Co.*,
  424 F.3d 336 (3d Cir. 2005)................................................................................26

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)........................................................................................19, 25

*Gibson v. ITT Harford Ins. Co.*,
  621 N.W.2d 388 (Iowa 2001) ........................................................................27, 31

*Ginsburg v. Agora, Inc.*,
  915 F. Supp. 733 (D. Md. 1995) ....................................................................17, 18

*Goodman v. Performance Contractors, Inc.*,
  308 F. Supp. 3d 1002 (N.D. Iowa 2018)..............................................................12

*Griffith v. Purdue Pharma Co.*,
  No. 4:04–CV–10072, 2005 WL 8157818 (S.D. Iowa Dec. 8, 2005)....................46

*Grimmett v. Freeman*,
  59 F.4th 689 (4th Cir. 2023) ...............................................................................23

*Gutter v. Dow Jones, Inc.*,
  490 N.W.2d 898 (Ohio 1986) ..............................................................................17

*Hammes v. JCLB Props. LLC*,
  764 N.W.2d 552 (Iowa Ct. App. 2008)................................................................31

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)........................................................................................24, 26

*Howard v. Antilla*,
  294 F.3d 244 (1st Cir. 2002)................................................................................25

*Hunter v. Page Cnty.*,
  102 F.4th 853 (8th Cir. 2024) ...............................................................16

*Illinois ex. rel. Madigan v. Telemarketing Assocs.*,
  538 U.S. 600 (2003)...............................................................................23

*Kimberley v. Crop Risk Servs., Inc.*,
  575 F. Supp. 3d 677 (S.D. Iowa 2021) .................................................46

*Lane v. Mitchell*,
  133 N.W. 381 (Iowa 1911) ....................................................................45

*Lockard v. Carson*,
  287 N.W.2d 871 (Iowa 1980) ...............................................................31

*Luigi's, Inc. v. United Fire & Cas. Co.*,
  959 N.W.2d 401 (Iowa 2021) ...............................................................46

*Marcone v. Penthouse Int'l Mag. for Men*,
  754 F.2d 1072 (3d Cir. 1985).................................................................26

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)...............................................................................26

*Mayfield v. NASCAR, Inc.*,
  674 F.3d 369 (4th Cir. 2012) .................................................................25

*McCarney v. Des Moines Register & Tribune Co.*,
  239 N.W.2d 152 (Iowa 1976) ..................................................... *passim*

*McDonnell v. Hesco Bastion, Inc.*,
  No. 3:24-cv-00072, 2025 WL 1324275 (S.D. Iowa May 7, 2025)........46

*McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*,
  469 F. Supp. 2d 677 (N.D. Iowa 2007)...........................................34, 36

*Midwest Home Distributor, Inc. v. Domco Indus. Ltd.*,
  585 N.W.2d 735 (Iowa 1998) ...............................................................33

*Minn. Citizens Concerned for Life, Inc. v. Swanson*,
  692 F.3d 864 (8th Cir. 2012) .................................................................19

*Moad v. Libby*,
  No. 14-0290, 2015 WL 1055080 (Iowa Ct. App. Mar. 11, 2015) .........45

*Moeller v. Samsung Electrs. Am., Inc.*,
  623 F. Supp.3d 978 (S.D. Iowa 2022) ...................................................17

vi

*Mohsen v. Veridian Credit Union*,
 733 F. Supp.3d 754 (N.D. Iowa 2024) ................................................................... 17

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*,
 578 N.W.2d 222 (Iowa 1998) .................................................................................. 35

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
 951 F.3d 952 (8th Cir. 2020) ................................................................................... 27

*New Hope Methodist Church v. Lawler & Swanson, P.L.C.*,
 No. 10-0211, 2010 WL 4484355 (Iowa Ct. App. Nov. 10, 2010) ........................... 43

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964) .......................................................................................19, 24, 25

*Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*,
 829 F.3d 576 (8th Cir. 2016) ................................................................................... 39

*Parisi v. Sinclair*,
 845 F.Supp.2d 215 (D.D.C. 2012) ........................................................................... 25

*Piatz v. State Farm Mut. Auto. Ins. Co.*,
 No. 3:21-cv-7, 2021 WL 8322268 (S.D. Iowa Nov. 22, 2021) ............................... 46

*Poehl v. Countrywide Home Loans, Inc.*,
 528 F.3d 1093 (8th Cir. 2008) ................................................................................. 12

*Putman v. Walther*,
 973 N.W.2d 857 (Iowa 2022) .............................................................................32, 33

*Rossley v. Drake Univ.*,
 336 F. Supp.3d 959 (S.D. Iowa 2018) ..................................................................... 12

*Sain v. Cedar Rapids Cmty. Sch. Dist.*,
 626 N.W.2d 115 (Iowa 2001) .................................................................................. 35

*Schatz v. Repub. State Leadership Comm.*,
 669 F.3d 50 (1st Cir. 2012). (*See also* Am. Compl. .) ......................................19, 25

*Scott v. Roberts*,
 612 F.3d 1279 (11th Cir. 2010) ............................................................................... 29

*Snyder v. Phelps*,
 562 U.S. 443 (2011) .............................................................................................19, 20

*Spreitzer v. Hawkeye State Bank*,
 779 N.W.2d 726 (Iowa 2009) ..........................................................................31, 32, 33

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)..................................................................................24, 25

*Stancik v. CNBC*,
  420 F.Supp.2d 800 (N.D. Ohio 2006)..................................................................17

*State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*,
  694 N.W.2d 518 (Iowa 2005) .....................................................................38, 40

*State ex rel. Miller v. Hydro Mag, Ltd.*,
  436 N.W.2d 617 (Iowa 1989) .................................................................................43

*State ex rel. Miller v. Vertrue, Inc.*,
  834 N.W.2d 12 (Iowa 2013) ....................................................................................40

*State v. Cutsick*,
  84 N.W.2d 554 (Iowa 1957) ...................................................................................41

*In re Stratasys Ltd. Shareholder Sec. Litig.*,
  864 F.3d 879 (8th Cir. 2017) ..................................................................................28

*Susan B. Anthony List v. Driehaus*,
  814 F.3d 466 (6th Cir. 2016) ..................................................................................23

*Tavoulareas v. Piro*,
  817 F.2d 762 (D.C. Cir. 1987) ................................................................................26

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)..................................................................................................17

*Thompson v. Kaczinski*,
  774 N.W.2d 829 (Iowa 2009) ................................................................................42

*Time Inc. v. Hill*,
  385 U.S. 374 (1967)..................................................................................................18

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*,
  241 N.E.3d 454 (Ill. 2024) ......................................................................................43

*Triestman v. Turkheimer*,
  2020 WL 9594315 (N.D. Ill. Aug. 4, 2020) ........................................................26

*United States v. Alvarez*,
  567 U.S. 709 (2012)................................................................................20, 21, 22, 23

*United States v. Stevens*,
  559 U.S. 460 (2010)..........................................................................................22, 24

*Washington League for Increased Transparency & Ethics v. Fox Corp.*,
No. 81512-1-I, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) ..............................20, 21

**Statutes, Rules & Regulations**

Fed. R. Civ. P. 9(b)'s ...............................................................................................................17

Fed. R. Civ. P. 81(c)(1) ...........................................................................................................16

Federal Rule of Civil Procedure 9(b)...........................................................................17, 29, 30

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................16, 47

Iowa Code § 714.16(1)(a) ........................................................................................................40

Iowa Code § 714.16(1)(i) .........................................................................................................38

Iowa Code § 714H.2(2).......................................................................................................40, 41

Iowa Code § 714H.2(5).............................................................................................................39

Iowa Code § 714H.2(8).............................................................................................................40

Iowa Code § 714H.2(9).............................................................................................................38

Iowa Code § 714H.3 ...........................................................................................................37, 40

Iowa Code § 714H.3(1).......................................................................................................26, 37

Iowa Code § 714H.5 ...................................................................................................37, 38, 43

Iowa Code § 714H.5(1).............................................................................................................42

Iowa Code § 1115 (1897), *available at*
www.legis.iowa.gov/docs/shelves/code/ocr/1897 ................................................................45

**Other Authorities**

Dan B. Dobbs, *Handbook on the Law of Remedies* § 9.2 (1973) ...................................................33

Note, *Consumer Protection Under the Iowa Consumer Fraud Act*, 54 Iowa L.
Rev. 319 (1968) ...................................................................................................................41

*Lease*, Merriam-Webster Dictionary, *available at* https://www.merriam-
webster.com/dictionary/lease ...............................................................................................40

Restatement (Second) of Torts § 552 ........................................................................................35

Restatement (Second) of Torts § 580B, Comment ....................................................................45

Restatement (Third) of Torts § 29, Comment.................................................................42

U.S. Const. Amendment I ................................................................................. *passim*

## I.    INTRODUCTION

This lawsuit asks the Court to recognize a new cause of action for "fake news." (ECF No. 22, First Amended Complaint ("Am. Compl.") ¶ 2.) Specifically, Plaintiff Dennis Donnelly's theory of liability is that subscribers to an Iowa newspaper failed to receive "trustworthy" news in exchange for the price of their subscriptions when the newspaper published reporting on an election poll that he alleges was "false." (*Id.* ¶¶ 2, 134.) While Plaintiff asserts several claims, each relies on this uniform theory of liability and on the same set of insufficient allegations in support. An examination of the elements of the claims demonstrates none is viable as a matter of law.

Plaintiff's request is both unprecedented and unconstitutional. He asks this Court to find Defendants Des Moines Register & Tribune Co. ("*The Register*") and Gannett Co., Inc. (together "Press Defendants") liable in a putative class action for "fraud" based on a local newspaper's political campaign reporting, which Plaintiff subjectively claims is "*untrustworthy*." (*Id.* ¶ 126 (emphasis in original).) No court has ever recognized a cause of action for "fake news" (*contra id.* ¶ 2); this Court should not be the first. Such a ruling would be a violent blow to the First Amendment. Constitutional protection of free speech and a free press cannot and does not simply evaporate when a plaintiff labels speech he does not like as "fraud." The common law and statute upon which Plaintiff bases his claims are not made to police election campaign reporting by a community newspaper. Our constitutional order requires that his claims be rejected.

As set forth herein, each claim asserted in the Amended Complaint is barred by the First Amendment. Moreover, Plaintiff's tortious misrepresentation claims (Count I) are insufficiently pleaded. His allegations are far outside the scope of the consumer fraud statute upon which he relies (Count II). His claim for professional malpractice (Count III) is prohibited by black letter

case law. The balance of his claims (Counts IV and V) are not recognized causes of action under Iowa law. The Court should dismiss this case with prejudice.

## II.    BACKGROUND[1]

### A.    The Iowa Poll

This lawsuit concerns the Iowa Poll, conducted by Defendant Selzer & Co. and published by *The Register* in its online and paper print newspapers. The Iowa Poll polls likely voters in the State of Iowa about political races. In June, September, and October 2024, Selzer & Co. polled likely voters in Iowa regarding the presidential and federal congressional races. (*Id.* ¶¶ 21–24.) Plaintiff's present lawsuit relates to the October 2024 poll results.

On November 2, 2024, *The Register* published an article in its digital edition that reported on the October 2024 Iowa Poll results for the presidential race. (Ex. A.)[2] The poll results estimated that then-Vice President Kamala Harris was leading President Trump by three points (47% to 44%), with a 3.4% margin of error. (*Id.* at A-2, A-3.) The article stated, however, that a Harris victory would be a "shocking development." (*Id.* at A-1.) Ann Selzer herself stated that it would have been "hard for anybody to say they saw this coming," especially because neither candidate had campaigned in Iowa after the primaries. (*Id.* at A-1, A-2, A-3; *see also* Am. Compl. ¶ 40.) The article further noted that a "greater share of [President Trump's] supporters than [Harris's] say they

---

[1] For purposes of this motion, Plaintiff's pleaded allegations are presumed true. *See Rossley v. Drake Univ.*, 336 F. Supp.3d 959, 964 (S.D. Iowa 2018); *see also Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008).

[2] The Amended Complaint incorporates by reference *The Register*'s articles reporting on the Iowa Poll. (*See, e.g.*, Am. Compl. ¶¶ 5, 7, 40, 43.) Attached hereto are Exhibits A–F, which reflect the two principal articles from *The Register* reporting on the results of the Iowa Poll, as well as their attachments. (*See* Am. Compl. ¶ 40 (linking to the article with the presidential poll results in footnote 13), ¶ 43 (linking to the article with the congressional poll results in footnote 14).) This Court should take judicial notice of these documents because they are "necessarily embraced by the pleadings," are "incorporated by reference," and are "integral to Plaintiffs' claims." *Goodman v. Performance Contractors, Inc.*, 308 F. Supp. 3d 1002, 1007 (N.D. Iowa 2018) (citation modified).

are extremely or very enthusiastic about their pick." (Ex. A at A-5.) And the article noted that only "a small universe of people" who previously supported President Trump switched their vote in response to the poll questions. (*Id.* at A-12.)

The article provided the following description of the Iowa Poll:

**About the Iowa Poll**

The Iowa Poll, conducted October 28–31, 2024, for *The Des Moines Register* and Mediacom by Selzer & Co. of Des Moines, is based on telephone interviews with 808 Iowans ages 18 or older who say they will definitely vote or have already voted in the 2024 general election for president and other offices.

Interviewers with Quantel Research contacted 1,038 Iowa adults with randomly selected landline and cell phone numbers supplied by Dynata. Interviews were administered in English. Responses were adjusted by age, sex, and congressional district to reflect the general population based on recent census data.

Questions based on the sample of 808 Iowa likely voters have a maximum margin of error of plus or minus 3.4 percentage points. This means that if this survey were repeated using the same questions and the same methodology, 19 times out of 20, the findings would not vary from the true population value by more than plus or minus 3.4 percentage points. Results based on smaller samples of respondents— such as by gender or age—have a larger margin of error.

(*Id.* at A-13, A-14.)

Attached to the article was the poll questionnaire. (Ex. B.) The questionnaire identified each of the eight presidential polling questions and listed the responses for each in the polling rounds in October 2024, September 2024, June 2024, February 2024, March 2023, and November 2021. (*See generally id.*). It showed that President Trump led former President Biden by 18 points in June 2024 polling, but that President Trump's lead had decreased to 4 points when polling was repeated in September 2024 following Harris's nomination. (*Id.* at B-2.) The questionnaire also contained additional methodological details, including the sample size and margin of error for each specific question each time it was asked. (*See generally id.*)

On November 3, *The Register* published an article focusing on congressional races in its digital edition and published two articles about the Iowa Poll in its print edition. (Exs. C–F.) With respect to the congressional races, the poll results estimated that voters were "virtually tie[d] in

[their] preference for a Democrat or a Republican for the U.S. House of Representatives," with Democrats having a slight edge. (Ex. D at D-2.) It was "the first time since September 2020 that Democrats have held a statewide lead in the generic congressional ballot." (*Id.*) The results showed respondents in the first congressional district preferred the Democratic candidate over the Republican candidate by 16 points, "the largest in the district in any Iowa Poll this year." (*Id.* at D-5.) Despite the poll results suggesting a 16-point differential, the article noted that "[e]lection forecasters rate the race as a toss-up." (*Id.* at D-5.) The article also detailed the state of the three other congressional races in Iowa. (*Id.* at D-6 through D-9.) The article contained the same "About the Iowa Poll" paragraphs recited above. (*Id.* at D-10.) It also provided the poll questionnaire, which disclosed methodological details, including the sample size and margin of error for each specific question each time it was asked. (*Id.* at D-10, D-11; Ex. E.) This questionnaire showed the Republican candidate in Iowa's first congressional district ("CD1") for the U.S. House of Representatives losing ground amongst poll respondents between February 2024 and October 2024. (Ex. E at E-4.)

On November 5, 2024, President Trump won the presidential election in Iowa and the Republican candidate for U.S. House in the first congressional district won re-election. (Am. Compl. ¶¶ 42, 47.)

### B.    Plaintiff's Claims and Allegations

Plaintiff alleges he is a "longtime subscriber" to *The Register*. (Am. Compl. ¶ 8.) His Amended Complaint is premised entirely upon his speculation that the differential between the Iowa Poll results and the final election results was so substantial that the Iowa Poll must have been either "intentionally fraudulent or recklessly irresponsible." (*Id.* ¶ 61.) Plaintiff claims that when Defendants "designed the poll, they did so in a way that the methodology resulted in a radically flawed result." (*Id.* ¶ 121.) The Amended Complaint does not, however, identify or allege any

specific issue with the methodology; it merely claims that the results were inaccurate. (*See id.*) Plaintiff also claims that "Defendants acted with either intentional deceit or reckless disregard by choosing to publish the Poll results rather than conducting any due diligence on such wildly unbelievable results." (*Id.* ¶ 122.) Because of this, Plaintiff claims he was provided a "fundamentally flawed product" and was deprived of the "value" of his subscription to *The Register*. (*Id.* ¶¶ 7, 157, 181.)

The Amended Complaint also includes numerous contradictory allegations. It alleges, for example, that Selzer has a "track record" of "misses" in previous election cycles, some of which it claims were "breath-taking." (Am. Compl. ¶¶ 18–20.) But it simultaneously alleges that the Iowa Poll has a "histor[y of] accuracy," and it acknowledges that Selzer used the same methodology in 2024 as used for previous election cycles. (*Id.* ¶¶ 83, 138.) Further, Plaintiff alleges both that the poll was on its face "an obvious outlier compared to other publicly available polling" but that he was nevertheless deceived by it. (*Id.* ¶ 38.)

The Amended Complaint pleads claims for (1) fraudulent misrepresentation; (2) "negligent misrepresentation in a reckless degree"[3]; (3) violation of the Iowa Consumer Fraud Act ("ICFA"); (4) professional malpractice; (5) interference with the right to vote; and (6) conspiracy. (*See generally id.*) Plaintiff asserts all claims on behalf of himself and a putative nationwide class of "[a]ll digital and print subscribers to the Sunday edition of the Des Moines Register as of November 3, 2024," indicating that his purported theories of liability apply exclusively to subscribers. (*Id.* ¶ 117.) Plaintiff seeks, for himself and the putative class, "actual damages equivalent to one year's subscription [to *The Register*], whether digital or print"; nominal damages;

---

[3] Plaintiff pleads this claim "in the alternative" to his fraudulent misrepresentation claim in the event "the Court finds that the [alleged] misrepresentation was not intentional." (Am Compl. ¶ 142.)

punitive damages; several declarations related to the alleged conduct of Defendants; and attorneys' fees. (*Id.* ¶¶ 207–17.)

### C.    Procedural History

Plaintiff filed his original Petition in the Iowa District Court for Polk County on January 6, 2025. (ECF No. 1-1.) Press Defendants accepted service of the Petition on April 4, 2025. (ECF No. 1-2 at 56–57.) Gannett removed this lawsuit to this Court on April 24, 2025, and Press Defendants thereafter filed an Answer on April 24, 2025. (ECF Nos. 1, 3.) Selzer filed a motion to dismiss the Petition on May 19, 2025. (ECF No. 20.) Plaintiff filed a motion to remand on May 23, 2025, and then filed the First Amended Complaint on June 2, 2025. (ECF Nos. 21, 22.)

## III.    LEGAL STANDARD

Because this case was properly and timely removed from Iowa state court, the federal pleading standards apply. *Hunter v. Page Cnty.*, 102 F.4th 853, 874 (8th Cir. 2024) ("[M]atters removed to federal court are governed by the current federal pleading standard."); *see* Fed. R. Civ. P. 81(c)(1).

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a compliant when it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). This Court must dismiss the Amended Complaint "unless the complaint alleges facts sufficient 'to raise a right to relief above the speculative level.'" *Hunter*, 102 F.4th at 874 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must state a claim that is 'plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Additionally, Plaintiff's ICFA and fraudulent misrepresentation claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Moeller v. Samsung Electrs. Am., Inc.*, 623 F. Supp.3d 978, 986 (S.D. Iowa 2022). This is because "Rule 9(b) applies to *all* averments of fraud or mistake," which necessarily includes ICFA and fraudulent misrepresentation claims. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (emphasis added); *see also Mohsen v. Veridian Credit Union*, 733 F. Supp.3d 754, 773 (N.D. Iowa 2024) ("ICFA claims are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard . . . ."). Under Rule 9(b), Plaintiff "must state *with particularity* the circumstances constituting fraud or mistake." *Mohsen*, 733 F. Supp.3d at 773 (emphasis added); *see also Moeller*, 623 F. Supp. 3d at 986–87 (stating that Rule 9(b) requires the party to state the "who, what, when, where and how of [its] Iowa Consumer Fraud Act claim").

## IV.   ARGUMENT

Courts throughout the United States have repeatedly and uniformly dismissed non-defamation claims brought against general circulation newspapers for publishing allegedly false information. *See First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 670 F. Supp. 115 (S.D.N.Y. 1987) (finding trade publication for securities brokers not liable as a matter of law for negligent misrepresentation because "such risk would have a staggering deterrent effect on the dissemination of printed material"), *aff'd*, 869 F.2d 175 (2d Cir. 1989); *Gutter v. Dow Jones, Inc.*, 490 N.W.2d 898, 900 (Ohio 1986) (holding that "a newspaper reader . . . does not fall within a special limited class" of permissible plaintiffs); *see also Ginsburg v. Agora, Inc.*, 915 F. Supp. 733, 739 (D. Md. 1995) ("The publication is offered to the general public and the information provided in the publication is of a general nature, that is, it is not specifically tailored to [the] financial situation of any individual subscriber."); *Stancik v. CNBC*, 420 F.Supp.2d 800, 807–08 (N.D. Ohio 2006).

A contrary result would in effect extend liability to all the world, risking unbounded exposure and imposing on the press "the intolerable burden of demonstrating that its efforts to determine the accuracy of any given report were reasonable." *Ginsburg*, 915 F. Supp at 19 (citation modified); *see also Time Inc. v. Hill*, 385 U.S. 374, 389 (1967).

Plaintiff's claims fall within this class of impermissible causes of action. Each claim "necessarily run[s] counter to the societal right to free and unhampered dissemination of information embodied by the First Amendment." *Ginsberg*, 915 F. Supp. at 739 (citation modified). In addition to this threshold defect, an examination of the individual elements of each claim demonstrates that Plaintiff fails to state a claim upon which relief can be granted. This Court should reject Plaintiff's invitation to become the first court to countenance these claims.

**A.    The First Amendment to the U.S. Constitution Bars Plaintiff's Amended Complaint**

This lawsuit is prohibited by the First Amendment. *See* U.S. Const. amend. I. The Amended Complaint's causes of action are constitutionally invalid as a matter of law for multiple reasons. *First*, Plaintiff's proposed interpretation of the law—*i.e.*, that it penalizes Press Defendants' federal election reporting—would render the laws on which his claims are based unconstitutional. *The Register*'s news coverage challenged by Plaintiff does not fall into any traditional category of unprotected speech. The opposite is true; political campaign reporting is at the zenith of First Amendment protection. Plaintiff's attempts to misuse ICFA and Iowa's common law to generate a new exception to the First Amendment must fail; because "there is no free pass around the First Amendment." *281 Care Comm. v. Arneson*, 766 F.3d 774, 783 (8th Cir. 2014) ("*281 Care Comm. II*").

*Second*, even putting aside the absolute immunity the First Amendment affords Press Defendants' speech, the Amended Complaint fails to plausibly allege any facts to support that *The*

*Register* published the Iowa Poll results with the requisite degree of constitutional fault—*i.e.*, "actual malice," a foundational requirement that governs all of Plaintiff's claims. Instead, the Amended Complaint recites constitutional "buzzwords" related to this rigorous standard. *See Schatz v. Repub. State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012). (*See also* Am. Compl. ¶¶ 97–98.) But it lacks any factual allegations demonstrating that *The Register* published a campaign poll knowing it was actually or in all probability false. Likewise, the Amended Complaint's remaining claims—premised on a variety of negligence-based theories—are constitutional non-starters as set forth below.

### 1.    Press Defendants' Political Campaign Reporting Is Entitled to Absolute Protection Under the First Amendment

The Amended Complaint's claims amount to a frontal assault on the First Amendment, which embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). As the U.S. Supreme Court has emphasized, "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964). For that reason, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quotation omitted). It follows that "[t]he First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (quoting *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989)). Indeed, "[p]rotection of political speech is the very stuff of the First Amendment." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 871 (8th Cir. 2012) (internal quotations and citation omitted).

Plaintiff cannot overcome the First Amendment's protection for *The Register*'s news reporting on a paramount matter of public interest—*i.e.*, the 2024 federal elections in Iowa—under the guise of Iowa's consumer fraud statute or common law tort claims. In *Snyder v. Phelps*, the Supreme Court ruled that speech on a "matter . . . of public import" could not be restricted even though it directly harmed the plaintiff by intentionally inflicting emotional distress in violation of state law. *Snyder*, 562 U.S. at 454–55. Although the abhorrent speech at issue in *Snyder* "inflict[ed] great pain," it was immunized from liability under the First Amendment "to ensure that we do not stifle public debate." *Id*. at 460–61. Thus, to safeguard uninhibited public discourse, speech must be fully protected when—as here—it addresses "a subject of general interest and of value and concern to the public." *Id*. at 453.

A recent case—involving a consumer protection law claim challenging political speech, like the present case—reinforces the core teaching of *Snyder*. *See Washington League for Increased Transparency & Ethics v. Fox Corp.*, No. 81512-1-I, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) ("*WASHLITE*"). In *WASHLITE*, the plaintiff claimed that Fox News violated the state of Washington's Consumer Protection Act ("CPA") "by making statements, on-air, downplaying the danger posed by the coronavirus, describing the pandemic as a 'hoax,' and accusing government officials and media organizations of exaggerating the danger posed by COVID-19 in an attempt to undermine [then] former President Donald J. Trump." *Id.* at *1. Recognizing that the allegedly actionable statements "clearly implicate matters of public concern and receive special First Amendment protections," *see id*. at *4, the *WASHLITE* court rejected the plaintiff's CPA claim based on established First Amendment principles:

> WASHLITE cites no authority for the proposition that false statements about threats to public health, *even if recklessly made*, fall within any exception to the First Amendment. To the contrary, the Supreme Court in *Alvarez* disavowed the

principle that false expressions in general receive a lesser degree of constitutional
protections simply by virtue of being false.

*Id*. at *5 (emphasis added); *see also United States v. Alvarez,* 567 U.S. 709, 717–18 (2012) (holding

the Stolen Valor Act, which criminalized a false claim of receiving the congressional Medal of

Honor, invalid under the First Amendment because it was not confined to the "few historic and

traditional categories of expression . . . where the law allows content-based regulation of speech"

(citation modified)); *238 Care Comm. v. Arneson,* 638 F.3d 621, 633–34 (8th Cir. 2011) ("*281

Care Comm. I*") ("We find that the Supreme Court has never placed knowingly false campaign

speech categorically outside the protection of the First Amendment and we will not do so today.").

So too here, where Plaintiff's claims—against a community newspaper for reporting

information on a matter of "political concern to all Americans"—violate the First Amendment.

*WASHLITE*, 2021 WL 3910574, at *4. Plaintiff's view that ICFA and Iowa tort law operate to

proscribe allegedly false political speech, *"absent any evidence that the speech was used to gain

a material advantage,*[] would give government a broad censorial power unprecedented in this

Court's cases or in our constitutional tradition." *Alvarez*, 567 U.S. at 723 (emphasis added); *see

also id.* at 731–32 (Breyer, J. concurring) (stating that "[l]aws restricting false statements about

philosophy, religion, history, the social sciences, the arts, and the like" raise grave First

Amendment concerns). Contrary to Plaintiff's allegations, there is no general government power

to punish political falsehoods, whether by the common law or by statutes like the Stolen Valor Act

or ICFA. *Id.* at 723. To hold otherwise would put the "government in the unseemly position of

being the arbiter of truth about political speech." *281 Care Comm. I*, 638 F.3d at 635–36. None of

the narrow historical exceptions to the First Amendment's protections apply to *The Register*'s

campaign coverage. Under our constitutional system, therefore, the role of the "arbiter of truth" is

committed to voters in the State of Iowa, not the courts. *Id.*

### 2.    Plaintiff Seeks to Create an Impermissible First Amendment Exception for "False" Political Speech

Under the First Amendment, claims for "fake news" do not and cannot exist. (Am Compl ¶ 2.) The remedy for disagreement with political speech that one does not like is counter-speech—not court-enforced class action damages under the guise of laws concerning commercial conduct. *281 Care Comm. II*, 766 F.3d at 793 ("Especially as to political speech, counterspeech is the tried and true buffer and elixir.").

In *United States v. Alvarez*, the Supreme Court reaffirmed there is no "general exception to the First Amendment for false statements." 567 U.S. at 718. "This comports with the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." *Id.* Accordingly, to safeguard our constitutional commitment to open debate on public issues, speech is presumptively shielded by the First Amendment unless it falls within one of a small number of narrowly defined categories. *United States v. Stevens*, 559 U.S. 460, 468–70 (2010). Those categories, informed by history and tradition, do not include a general proscription of "false speech." *Alvarez*, 576 U.S. at 719 ("The Court has never endorsed the categorical rule . . . that false statements receive no First Amendment protection."). Without question, these narrow categories may not be elasticized to include alleged "fake news" about election campaigns (Am. Compl. ¶ 2), as the First Amendment stands resolutely against demands to regulate "truth" in political reporting. Such attempts are subject to strict scrutiny and are presumptively unconstitutional—even when the alleged fraud in political speech consists of "knowingly false speech."[4] *281 Care Comm. v. Arneson*, 683 F.3d 621, 634. n.2 (8th Cir. 2011).

---

[4] In addition to the Eighth Circuit's decision in *281 Care Comm. II*, other post-*Alvarez* circuit court decisions have invalidated state laws punishing election campaign misinformation, even

In *Alvarez*, the Court reiterated that false statements are only unprotected when there is some "legally cognizable harm associated with [the] false statement." *Id*. at 719. Accordingly, Plaintiff's claims based on "false misinformation" cannot be maintained unless he demonstrates a legally cognizable harm. (*See* Am. Compl. ¶ 104.) But Plaintiff only alleges that he was "intensely frustrated" with and felt "disserv[ed]" by *The Register*'s publication of polling results that did not match the elections' "final outcome." (*Id.* ¶ 8.) As Plaintiff's theory runs, this suit therefore fits into one of the *Alvarez* exceptions because it rises to the level of fraud. (*Id*.) Although "fraud" is a category of speech outside the First Amendment's protection, simply "labeling an action one for 'fraud,' of course, will not carry the day." *Illinois ex. rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 617 (2003). Even accepting as true the allegation that Plaintiff received a "false impression" (Am. Compl. ¶ 154) about the state of Iowa's electorate from *The Register*'s reporting of the Iowa Poll results, that of course is not a legally cognizable injury. To the contrary, Plaintiff acknowledges that *The Register*'s reporting did not impede him from discussing "voting and politics with friends and neighbors." (*Id*. ¶ 154.) That is precisely how democracy works. These community discussions are "the way of the world in election discourse[,]" *281 Care Comm. II*, 766 F.3d at 795, and underscore that "[t]he remedy for speech that is false is speech that is true." *Alvarez*, 567 U.S. at 727.

A claim of "fraud" based on news reporting directly contravenes the First Amendment. The Eighth Circuit has unequivocally rejected the use of general fraud principles to manufacture an interest in proscribing political speech, even where—unlike *The Register*'s good faith reporting here—the speech is knowingly false:

where the laws were restricted to deliberately or recklessly falsified speech. *Grimmett v. Freeman*, 59 F.4th 689 (4th Cir. 2023); *Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir. 2016).

> To the extent that defendants also argue in favor of application of fraud principles to all knowingly false speech, we reject the argument, noting the Supreme Court has carefully limited the boundaries of what is considered fraudulent speech. It has not included all false speech, or even all knowingly false speech.

*218 Care Comm. I*, 638 F.3d at 634 n.2. This reasoning compels dismissal of the Amended Complaint. Permitting Plaintiff's claims to proceed on the pleaded basis would violate a fundamental premise of free speech and would, in effect, grant Plaintiff "freewheeling authority to declare new categories of speech outside the scope of the First Amendment" by rote pleading that they are fraud. *Stevens*, 559 U.S. at 472. That would be a "startling and dangerous" proposition, subject to no principled limitation. *Id*. at 470. The First Amendment will not tolerate such a result.

### 3.    The Constitutional "Actual Malice" Standard Forecloses Plaintiff's Claims

The United States Supreme Court recognized five decades ago that "erroneous statement is inevitable in free debate and . . . it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'" *Sullivan*, 376 U.S. at 271–72. To carve out the "breathing space" needed such that "protected speech is not discouraged," *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989), the *Sullivan* Court established the "actual malice" standard, which Plaintiff acknowledges governs his claims. *Sullivan*, 376 U.S. at 279–80. (*See* Am. Compl. ¶¶ 95–96.) This standard, which protects "uninhibited, robust, and wide-open" debate on public issues, requires proof that the defendant published a false statement with knowledge that it was false, or with reckless disregard as to its truth or falsity.[5] *Sullivan*, 376 U.S. at 270; *Carr v. Bankers Trust Co.*, 546 N.W.2d 901, 904 (Iowa 1996).

---

[5] "Reckless disregard" has been defined as publishing while actually entertaining "serious doubts as to the truth of publication," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or

"The standard of actual malice is a daunting one." *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002). It is provable only by evidence that the defendant "realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984). Constitutional malice therefore requires clear and convincing proof of Press Defendants' state of mind at the time the poll results were published. *Blessum v. Howard Cnty. Bd. of Supervisors,* 295 N.W.2d 836, 843 (Iowa 1980); *St. Amant v. Thompson*, 390 U.S. at 731. The test is subjective, and negligence alone is insufficient. *Sullivan*, 376 U.S. at 279–80; *McCarney v. Des Moines Register & Tribune Co.,* 239 N.W.2d 152, 156 (Iowa 1976).

Under controlling *Iqbal-Twombly* pleading requirements, the Amended Complaint's conclusory averment of "actual-malice buzzwords" is insufficient as a matter of law. *Schatz*, 669 F.3d at 56; *see also Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012); *Parisi v. Sinclair*, 845 F.Supp.2d 215, 218-19 (D.D.C. 2012). But that is all Plaintiff offers. The Amended Complaint contains no specific factual allegations plausibly suggesting that Press Defendants made a knowingly "false description of the state of the electorate" or published the Iowa Poll with a "reckless disregard for the truth." (*See* Am. Compl. ¶¶ 97–98.) The Amended Complaint therefore fails to plead actual malice as required by the First Amendment. There is nothing to support that *The Register* published the results of any election poll that intentionally erred in favor of the Democratic candidate. There are no facts alleged that Press Defendants purposefully relied on an unrepresentative sample or skewed demographics; used recklessly falsified or distorted polling data; deliberately prepared biased or misleading questionnaires; or knowingly adopted a

---

publishing while subjectively possessing a "high degree of awareness of the probable falsity of the publication," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

flawed polling methodology. Nor are there any allegations that *The Register* had information from voters that contradicted the published poll results, or that the newspaper's personnel made any statements or conducted themselves in a manner indicating that they knew the polling results were incorrect.

In the absence of any such allegations, Plaintiff makes much of alleged departures from "principles of ethical conduct for . . . newsrooms" and "industry customs and practices." (Am. Compl. ¶¶ 89, 99.) But these allegations miss the constitutional mark. As a matter of black-letter First Amendment law, they are insufficient to demonstrate actual malice, which prohibits any claim sounding in "professional malpractice" by journalists.[6] *Harte-Hanks Commc'ns*, 491 U.S. at 663–64 n.5 (actual malice is *not* established by proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers"); *Tavoulareas v. Piro*, 817 F.2d 762, 796 (D.C. Cir. 1987) ("[Courts] do not sit as some kind of journalism review seminar offering our observations on contemporary journalism and journalists." (citation modified)); *Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1090 (3d Cir. 1985) (holding neither "unprofessional conduct" nor negligence rises to the level of actual malice); *Triestman v. Turkheimer*, 2020 WL 9594315, *2 (N.D. Ill. Aug. 4, 2020) ("[I]t is not enough that Defendant might have acted unprofessionally, carelessly, or irresponsibly under journalistic standards."); *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 342 (3d Cir. 2005) ("[M]ere negligence does not rise to the level of actual malice.").

---

[6] The Amended Complaint also appears to seek recovery for "professional negligence"; "recklessly negligent reporting"; and political campaign speech that a speaker "reasonably should know" is fraudulent. (Am. Compl. ¶¶ 152, 158 (citing Iowa Code §§ 714H.3(1), 168).) Such claims are constitutionally defective on their face. The First Amendment prohibits attempts to impose liability on speech concerning public issues through reliance on negligence-based theories of recovery. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) ("Mere negligence does not suffice."); *see McCarney*, 239 N.W.2d at 156.

All that remains is the Amended Complaint's speculation—unaccompanied by any supporting allegations of fact beyond the mere publication of the Iowa Poll results—that *The Register* was part of a conspiracy "to harm Donnelly and the Plaintiff Class." (Am. Compl. ¶¶ 196–97.) These allegations are precisely the sort of conclusory claim that courts routinely reject as insufficient to plead actual malice. *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("[E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." (citation modified)).

On each of these many bases, the First Amendment prohibits Plaintiff's Amended Complaint in its entirety.

## B.     The Amended Complaint Asserts No Plausible Claim for Fraudulent Misrepresentation (Count I)

Plaintiff's first claim, for fraudulent misrepresentation, is based on his allegation that the Iowa Poll was an "egregiously incorrect . . . misrepresentation of the state of the race." (Am. Compl. ¶ 133.) Plaintiff alleges that "[i]n a certain sense," *The Register* made two specific fraudulent misrepresentations: first, the alleged "promise" that it would provide "trustworthy news;" and second, *The Register*'s "cho[ice] to publish the poll." (*Id.* ¶ 124.)

A fraudulent misrepresentation claim requires that a plaintiff establish the following elements:  "(1) representation;  (2) falsity;  (3) materiality;  (4) scienter;  (5) intent  to  deceive; (6) justifiable reliance; and (7) resulting injury." (*Id.* ¶ 123 (citing *Gibson v. ITT Harford Ins. Co.*, 621 N.W.2d 388, 391 (Iowa 2001).) Plaintiff fails to adequately plead, *inter alia*, any actionable false representation, justifiable reliance, or a compensable injury. Therefore, this Court should dismiss Plaintiffs' fraudulent misrepresentation claim.

### 1.  Plaintiff Did Not Plead an Actionable False Representation

While Plaintiff now pleads that Press Defendants made two false representations, as described above, the Amended Complaint and purported claims focus on the alleged misrepresentation related to the 2024 Iowa Poll.[7] Plaintiff alleges the Iowa Poll is actionable because it was a "false . . . misrepresentation of the state of the race at the time [the poll] was taken," which in turn was purportedly inconsistent with *The Register*'s alleged "promise" to provide "trustworthy news." (Am. Compl. ¶¶ 126, 133–34.) Plaintiff further alleges the Iowa Poll was mis-weighted and that alternative weighting could have ameliorated the Poll's inaccuracies. (*Id*. ¶ 39.) Plaintiff's contention that these facts, if true, could establish actionable false representations demonstrates a misunderstanding of both the nature of opinion polling and of the law.

Plaintiff did not adequately plead any false representation with respect to the Iowa Poll's methods or with respect to its results. First, Plaintiff knew (or should have known, presuming he read the article at issue and appended materials) exactly how Selzer conducted the poll. In fact, Plaintiff admits as much: he pleads that Selzer "designed" the Iowa Poll's methodology, that every story about the poll contained a methodology statement, and that Selzer used the same methodology in 2024 that she had in past election cycles, leading to what Plaintiff characterized

---

[7] Plaintiff's allegations related to *The Register*'s "mission statement" are not standalone claims of a misrepresentation; rather, they are derivative of the principal alleged misrepresentation related to the Iowa Poll results, which are the only articles in *The Register* Plaintiff alleges were false. (Am. Compl. ¶¶ 123–41.) Even if the alleged mission statement could be deemed a discrete representation, it still could not provide the basis for a fraud claim. A corporate mission statement expressing an aspirational purpose is a quintessential example of "optimistic rhetoric" that is *non-actionable* as a matter of law. *See, e.g.*, *City of Plantation Police Officers Pension Fund v. Meredith Corp.*, 16 F.4th 553, 556–57 (8th Cir. 2021) (holding that "vague and optimistic rhetoric . . . constitutes corporate puffery" that cannot support a fraud claim) (citation modified); *In re Stratasys Ltd. Shareholder Sec. Litig.*, 864 F.3d 879, 882 (8th Cir. 2017) ("Optimistic statements are not actionable if they cannot be supported by objective data or otherwise subject to verification by proof." (citation modified)).

28

as the poll's reputation for "historic accuracy." (*Id.* ¶¶ 83, 121.) By these allegations, Plaintiff affirms that all the information needed to accurately evaluate the poll's methodology was fully disclosed. This alone is fatal to Plaintiff's fraudulent misrepresentation claim. *See Bass v. J.C. Penney Co., Inc.*, 880 N.W.2d 751, 764 (Iowa 2016) (rejecting an ICFA claim alleging misrepresentations as to shipping and handling charges when underlying documentation "plainly demonstrated" exactly what those charges would be).

Second, Plaintiff does not claim any of the underlying polling data was incorrect or falsified, that the published methodology was not implemented as described, or that Defendants misstated or lied about the results produced by the methodology. Instead, he merely claims "that the methodology resulted in a radically flawed result." (*Id.* ¶ 121.) But Monday-morning quarterbacking of the poll result is insufficient to plead or maintain a fraud claim as a matter of law. *See, e.g.*, *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 918 (8th Cir. 2007) (finding that when a complaint merely "expresses disagreement with [a] conclusion . . . , but it does not specify where and how the analysis falls short," the complaint fails to satisfy the pleading requirements of Rule 9(b) and must be dismissed).

Third, the Iowa Poll, and indeed all opinion polls in general, are not intended to be—and self-evidently cannot be—a factual representation that guarantees a future election outcome. *See Scott v. Roberts*, 612 F.3d 1279, 1283 (11th Cir. 2010) ("[O]pinion polls of random selections of voters are snapshots with margins of error, and campaigns are, to say the least, dynamic projects."). Plaintiff acknowledges this fact in his Amended Complaint when he describes "inaccurate" polling results from elections in the past and "outlier" polls that present contradictory views of single elections from multiple pollsters. (*See* Am. Compl. ¶¶ 15, 38.) Plaintiff's bare speculation that the Iowa Poll was "either intentionally fraudulent or recklessly irresponsible" is not an adequately

pleaded fraud claim. (*Id.* ¶¶ 17, 61.) It is merely a legal conclusion based solely on post-election hindsight. Plaintiff cites to no precedent, nor is there any precedent, to support the notion that a political opinion poll could possibly be a factually "false" representation as the law requires.

Finally, Plaintiff nominally alleges that Press Defendants made a separate misrepresentation in its alleged "promise" to provide "trustworthy news." (Am. Compl. ¶ 124.) However, Plaintiff's allegations regarding the purported "promise" to provide "trustworthy news" fail to satisfy the Rule 9(b) pleading requirements and should be rejected. Plaintiff attributes the "promise" generically to "the *Register*'s mission statement." (*Id.* ¶ 1.) But the Amended Complaint contains no allegations or citations whatsoever regarding (1) when or where the "mission statement" was published or uttered; (2) the context in which the statement was issued; (3) when, where, or even *if* Plaintiff read or heard the statement; or (4) how the statement affected Plaintiff's consumer conduct. Absent such allegations, Plaintiff's generic claim regarding *The Register*'s alleged mission statement provide no plausible support for any element of any of Plaintiff's claims. Furthermore, the allegations about *The Register*'s mission statement are merely derivative of Plaintiff's true fraudulent misrepresentation claim. The only articles in *The Register* that Plaintiff alleges were false and not "trustworthy" are those related to the Iowa Poll. (Am. Compl. ¶¶ 123–41.) Just as those articles cannot alone form the basis for a fraudulent misrepresentation claim, they also cannot support the allegation that *The Register* did not publish "trustworthy" news. In short, Plaintiff has failed to plead or allege any actionable false representation.

### 2. Plaintiff Pleads No Reliance—Much Less Justifiable Reliance—on the Iowa Poll

Regardless of how the Iowa Poll's results compared to election results, the Iowa Poll is not actionable because Plaintiff has not alleged and cannot allege that he purchased a subscription to *The Register* in justifiable reliance on the Iowa Poll as a source of truth. To state a claim for

fraudulent misrepresentation, plaintiffs must allege that they "acted in reliance on the truth of the representation and [were] justified in relying on the representation[.]" *Gibson*, 621 N.W.2d at 400. "Justifiable reliance is an essential element of a claim for fraud." *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 737 (Iowa 2009).

Reliance alone is not sufficient; the question of whether the alleged reliance was *justified* is its own inquiry. *See id.* at 737; *Hammes v. JCLB Props. LLC*, 764 N.W.2d 552, 556 (Iowa Ct. App. 2008); *Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980). "The justifiable-reliance standard does not mean a plaintiff can blindly rely on a representation." *Spreitzer*, 779 N.W.2d at 737. "Instead, the standard requires plaintiffs to utilize their abilities to observe the obvious, and the entire context of the transaction is considered to determine if the justifiable-reliance element has been met." *Id.*; *see also Lockard*, 287 N.W.2d at 878 (the justifiable reliance element is viewed in light of the plaintiff's "own information and intelligence").

Plaintiff asserts that he justifiably relied on *The Register*'s "promise" of "trustworthy news" because of the national scope of Gannett's operations. (Am. Compl. ¶¶ 131–38.) He also asserts that "[g]iven the Iowa Poll's historic accuracy and the *Register*'s general reputation for accuracy, the Plaintiff and Plaintiff Class justifiably relied on the poll." (*Id.*) But this mere recitation of the element is not sufficient to state a claim. *Twombly*, 550 U.S. at 546 ("[A] formulaic recitation of a cause of action's elements will not do."). Plaintiff fails to sufficiently plead this element for multiple reasons.

First, Iowa law requires that Plaintiff allege that he affirmatively "*acted* in reliance on the truth of the representation." *See Gibson*, 621 N.W.2d at 400 (emphasis added). Plaintiff does not plead any facts showing *any* action taken by him in reliance on either *The Register*'s "promises" or articles related to the Iowa Poll. It is not enough that Plaintiff was allegedly a subscriber to *The*

*Register* at the time of the publication of the poll; he must have initiated a subscription *in reliance on* articles related to the substance of the Poll results. Plaintiff's only support for the allegation that *The Register*'s news is not "trustworthy" are the articles related to the Iowa Poll, and Plaintiff alleges that he had subscribed long before the Iowa Poll was conducted or its results were released. (*See* Am. Compl. ¶ 8.) Upon "observ[ation] [of] the obvious" and in consideration of "the entire context of the transaction" in this case, it is factually impossible—by simple operation of linear time—for Plaintiff (or any purported class member) to have relied on the articles about the Iowa Poll when purchasing a subscription prior to their publication. *See Spreitzer*, 779 N.W.2d at 737. Because Plaintiff's subscription fee was not paid in reliance on the truth of the Iowa Poll, the claim fails.

Second, even if prior subscription fees could form the basis of a claim for fraudulent misrepresentation (although they cannot), Plaintiff does not plead his reliance on the Iowa Poll was *justified*. *Cf. Spreitzer*, 779 N.W.2d at 736. Indeed, Plaintiff affirmatively claims the opposite. He alleges, for example, that Selzer "has a track record of undersampling Republicans in her polling" and that the Iowa Poll "was an obvious outlier compared to other publicly available polling in swing states." (Am. Compl. ¶¶ 18, 38.) In other words, Plaintiff alleges *both* that (1) Selzer's polling was not credible on its face because it departed from contemporaneous polls and was conducted by a pollster with a "track record" of historical "misses"; *and* (2) that Plaintiff and the putative class nevertheless justifiably relied on its accuracy. Both cannot be true. Plaintiff's own allegations defeat his fraudulent misrepresentation claim.

### 3. Plaintiff Alleges No Compensable Injury

Fraudulent misrepresentation redresses "pecuniary loss suffered as a result of the recipient's reliance upon the misrepresentation." *Putman v. Walther*, 973 N.W.2d 857, 864 (Iowa 2022). Damages for fraudulent misrepresentation either (1) restore "the defrauded party the

difference between the value of what the party has parted with and the value of what the party has received," *Midwest Home Distributor, Inc. v. Domco Indus. Ltd.*, 585 N.W.2d 735, 739 (Iowa 1998); or (2) place "the defrauded party 'in the same financial position as if the fraudulent misrepresentation had been in fact true.'" *Cornell v. Wunschel*, 408 N.W.2d 369, 380 (Iowa 1987) (quoting Dan B. Dobbs, *Handbook on the Law of Remedies* § 9.2, at 595 (1973)). For either measure of damages, there must be a defrauded party whose injury was caused by a misrepresentation, *i.e.*, a party deceived into taking some injurious action.

Plaintiff alleges that he and his fellow subscribers were harmed by the Iowa Poll because "they pay good money to subscribe to the *Register* to read accurate and important news, not to be misled by fraudulent misrepresentations." (Am. Compl. ¶ 140.) Plaintiff does not allege the Iowa Poll deceived him or any other subscriber into purchasing a subscription. To the extent Plaintiff seeks a refund for subscription costs paid *before* the articles related to the Iowa Poll ran, those costs could not have been "suffered as a result of his reliance upon" the poll, because they were paid before Plaintiff saw or could have relied on the Poll. *Putman*, 973 N.W.2d at 864. Likewise, the articles related to the Iowa Poll did not "increase the risk" that Plaintiff would owe a subscription fee. *Spreitzer*, 779 N.W.2d at 736. Simply put, Plaintiff and the putative class suffered no injury from any alleged reliance on the Iowa Poll articles.

Plaintiff has failed to adequately plead the elements of a claim for fraudulent misrepresentation. In addition to the elements analyzed above, the Amended Complaint does nothing more than make conclusory statements of law with no supporting allegations of fact with respect to the scienter and intent elements. (*See* Am. Compl. ¶¶ 129–30, 136–37.) This Court should dismiss Count I.

**C.    The Amended Complaint Asserts No Plausible Claim for Negligent Misrepresentation (Alternate Count I)**

As an alternative to his claim for fraudulent misrepresentation, Plaintiff purports to advance a claim for negligent misrepresentation. To state a claim for negligent misrepresentation, a plaintiff must sufficiently allege:

> (1) the defendant was in the business or profession of supplying information to others; (2) the defendant intended to supply information to the plaintiff or knew that the recipient intended to supply it to the plaintiff; (3) the information was false; (4) the defendant knew or reasonably should have known that the information was false; (5) the plaintiff reasonably relied on the information in the transaction that the defendant intended the information to influence; (6) and the false information was the proximate cause of damage to the plaintiff.

*McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677, 692 (N.D. Iowa 2007) ("*McLeod*").

Plaintiff has not adequately pleaded the elements of a negligent misrepresentation claim under Iowa law. Therefore, this Court should dismiss the claim.[8]

### 1.    Press Defendants Are Not in the Business or Profession of Supplying Information Under Iowa Law

Plaintiff first alleges that "the *Register* and the Seltzer Company have a pecuniary interest in their business of supplying information" and are thus liable for negligent misrepresentation based on the Iowa Poll. (Am Compl. ¶ 150.) Plaintiff presumes this element is satisfied simply because Press Defendants publish a newspaper, and newspapers contain information. Plaintiff misunderstands Iowa law. Because Press Defendants have an arm's-length relationship with subscribers—as opposed to an *advisory* relationship—this element cannot be satisfied, and the claim fails.

---

[8] Beyond its failure to state a claim on its face, Plaintiff's negligent misrepresentation claim contradicts his acknowledgment that Press Defendants' publication of the Iowa Poll is subject to the constitutional "actual malice" requirement. (*See* Am. Compl. 96.) As discussed above, the First Amendment prohibits liability based on mere negligence.

Iowa courts consider a variety of factors when determining whether "the defendant was in the business or profession of supplying information to others" such that it owes a duty that could support potential liability for negligent misrepresentation. Each such factor is "derived from" Section 552 of the Restatement (Second) of Torts and is calculated to determine whether the defendant has a direct "pecuniary interest in supplying the information." *Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*, 888 N.W.2d 644, 650 (Iowa 2016). To be liable for this tort, the defendant must be "manifestly aware of the use [to which] the information will be put" and must "intend to supply it for that purpose." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 123 (Iowa 2001). Advisory relationships create a duty, while arm's-length relationships do not. *Dinsdale Constr.*, 888 N.W.2d at 650. The Iowa Supreme Court has emphasized that "if the transaction at issue took place at arm's length, the plaintiff's cause of action *must* fail." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 227 (Iowa 1998) (emphasis added).

Here, Press Defendants cannot be "manifestly aware" of how individual readers or subscribers will "use" the Iowa Poll. *Cf. Sain*, 626 N.W.2d at 123. Nor do Press Defendants have an advisory relationship with Plaintiff or subscribers to *The Register* that would give rise to any duty. The types of professions subject to the prerequisite advisory relationship according to the law include accountants, appraisers, school guidance counselors, and investment brokers. *Dinsdale Constr.*, 888 N.W.2d at 655. Each is "in the business or profession of supplying information" in an individualized, advisory capacity based on the receiving party's unique and specific circumstances. By contrast, Plaintiff lacks any such individualized, advisory relationship with Press Defendants; rather, he has an arm's-length relationship as a member of the general reading public that cannot form the basis of liability. *See Molo Oil Co.*, 578 N.W.2d at 227. No Iowa court has ever found that a newspaper of general circulation owes an advisory duty to its subscribers. Moreover, Plaintiff

alleges that he subscribed to *The Register* to obtain "news," not personalized voting advice. (*See* Am. Compl. ¶ 2.)

Plaintiff does not (and cannot) plead that Defendants conducted the poll and published its results *for the purpose and intent of advising him*. Accordingly, though Press Defendants are publishers of a newspaper, they are not "in the business or profession of supplying information" for Plaintiff's use as required by Iowa law. On this basis alone, Plaintiff's claim for negligent misrepresentation should be dismissed.

### 2.    Plaintiff Does Not Plead the Polls Proximately Caused Damages

Plaintiff must also demonstrate that the "false information was the proximate cause of damage to the plaintiff." *McLeod*, 469 F. Supp. 2d at 692. Put differently, Plaintiffs must establish "that, but for [Defendants'] negligence . . . plaintiffs' injury would not have occurred." *Boone Cnty. Comm. Credit Union v. Masel*, 2003 WL 1050344, at *4 (Iowa Ct. App. Mar. 12, 2003).

Here, Plaintiff's alleged injury is the value of his subscription. (Am. Compl. ¶ 157.) The fatal deficiency with this theory of injury is that the Iowa Poll did not cause Plaintiff to pay a subscription fee. As discussed above, the fee for a preexisting subscription, by its nature, is paid in advance of the publication of future reporting. No representation can be considered the "cause" of a subscription paid before the representation was made. The allegations show that the Iowa Poll was not the but-for cause of Plaintiff's injury, because Plaintiff alleges he subscribed before the Iowa Poll was published. (*Id.* ¶ 8.) With this claim, Plaintiff seeks reimbursement of subscription costs entered prior to—*not* in reliance on—the Iowa Poll. (*Id.* ¶ 157.)

Plaintiff does not claim that he took any action to his detriment based on negligently provided guidance, which is required to establish the tort of negligent misrepresentation. As such, Plaintiff's alternative claim for negligent misrepresentation should be dismissed.

### D.    The Amended Complaint Asserts No Plausible Claim for Relief Under the Iowa Consumer Fraud Act (Count II)

In addition to his misrepresentation claims, Plaintiff asserts that Defendants violated ICFA

when conducting and publishing the Iowa Poll. ICFA provides:

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise . . . .

Iowa Code § 714H.3. "A consumer who suffers an ascertainable loss of money or property as the

result of" one of the prohibited practices outlined in Section 714H.3 "may bring an action at law

to recover actual damages." *Id.* § 714H.5.

Plaintiff's ICFA claim fails at law for numerous reasons, including that Plaintiff (1) has not

alleged any conduct that could constitute a violation of ICFA; (2) does not adequately plead Press

Defendants' alleged conduct was "in connection with the sale, lease, or advertisement" of

"consumer merchandise"; and (3) does not allege any ascertainable loss of money or property that

was proximately caused by the Iowa Poll. The Court should dismiss Plaintiff's ICFA claim.

### 1.    Plaintiff Fails to Adequately Allege Any Predicate Act That Violates ICFA

First, Plaintiff does not adequately plead that the publication of the Iowa Poll is an act

prohibited by ICFA. Plaintiff's Amended Complaint merely quotes ICFA's statutorily prohibited

acts and states the conclusory allegation that "[t]he decision by Dr. Selzer and the Register to report

the poll as an accurate news item when in fact it was obviously inaccurate constituted an unfair

practice, deception, fraud, misrepresentation of material fact" [sic]. (Am. Compl. ¶ 164.) *Cf.* Iowa

Code § 714H.3(1). But Press Defendants' conduct is not prohibited by ICFA; to the contrary, their

conduct (*i.e.*, publishing articles discussing, analyzing, and reflecting others' opinions about the

Iowa Poll results) is emphatically permissible and indeed *protected* activity under the First Amendment.

### a.      Publishing a Political Poll is Not an "Unfair Practice"

Under ICFA, "[u]nfair practice means an act or practice which causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces." Iowa Code § 714H.2(9) (incorporating the definition of the term from Iowa Code § 714.16(1)(i)). An unfair practice under ICFA definitionally requires *both* (1) underlying "unfair" or "unscrupulous" business conduct *and* (2) a consumer injury that is not only "substantial," but also "unavoidable." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 526 (Iowa 2005) (quoting Iowa Code § 714.16(1)(i)). There is no support in the law or identified in the Amended Complaint for the proposition that the publication of the Iowa Poll is itself "unfair" or "unscrupulous" in any way. But even more clearly, Plaintiff has not alleged that Press Defendants' conduct caused any substantial, unavoidable injury.

Plaintiff alleges that he suffered the loss of the value of his subscription to *The Register* because "he can no longer rely on [*The Register*] to provide trustworthy and accurate information." (Am. Compl. ¶ 167.) To whatever extent Plaintiff's own subjective lack of trust in *The Register*'s reporting could possibly be deemed an "ascertainable loss of money or property," it was categorically avoidable. *See* Iowa Code § 714H.5. Plaintiff alleges that "[t]he poll results were contrary to historic Iowa election results, other publicly available polling in Iowa of this election, and polling in similar swing states." (Am. Compl. ¶ 4.) Plaintiff was free to read the poll and its underlying data and reach his own conclusion, which he evidently did. Therefore, Plaintiff has not pleaded that he suffered any harm that was "unavoidable."

### b. Publishing a Political Poll with a Fully Disclosed Methodology Is Not a Deception, Fraud, or Misrepresentation

Under ICFA, "'[d]eception' means an act or practice that is likely to mislead a substantial number of consumers as to a material fact or facts," and fraud and misrepresentation are types of deception. *See* Iowa Code § 714H.2(5). Therefore, a "deception" requires a statement of purported *fact*. The determination of whether a statement is an opinion or actionable statement of fact is a question of law for this Court to decide. *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 580–81 (8th Cir. 2016); *see Andrew v. Hamilton Cnty. Pub. Hosp.*, 960 N.W.2d 481, 489 (Iowa 2021). As a matter of law, a statement of the results of a political opinion poll cannot be deemed an actionable statement of fact vis-à-vis the unknown and unknowable results of a *future* election.

Therefore, as set forth above, the Iowa Poll could not have been misleading as to the results of the election. *See supra* § IV(B)(1). Nor does the Amended Complaint allege any misrepresentation with respect to the methodology of the Iowa Poll, its conformance to that methodology, or its reported results. *Id*. Accordingly, the Iowa Poll cannot be a "deception" as defined by ICFA and alleged by Plaintiff.

### c. The Iowa Poll Is Not a "Material Fact" for Purposes of ICFA

Third, even if the Iowa Poll results could be considered statements of "fact" (which they are not), such statements would not satisfy ICFA's requirement that they concern a *material* fact. In his Amended Complaint, Plaintiff alleges the Iowa Poll was "material" because "it was long regarded as the standard in Iowa politics, and it was the banner headline story for the day that it ran." (Am. Compl. ¶ 135.) But that is not what "material" means under ICFA.

A statement of fact is only "material" under ICFA if it creates a "misleading impression involving information that is important to consumers and, hence, likely to affect their choice of,

or conduct regarding, *a product.*" *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 34 (Iowa 2013) (citation modified) (emphasis added). Plaintiff makes no allegations whatsoever that the Iowa Poll affected his "choice of, or conduct regarding" *The Register* or any other consumer product or merchandise. As a self-proclaimed "longtime subscriber," he does not plead that he chose to subscribe to *The Register* because it contained the Iowa Poll results, nor does he plead that he cancelled his subscription because of the articles regarding the poll results. (*Cf.* Am. Compl. ¶ 8.) Plaintiff has alleged no statement of *material* fact as required for a colorable claim of deception under ICFA.

> **2.    Plaintiff Does Not Allege the Publication of the Poll Was in Connection with the Sale or Advertisement of Consumer Merchandise**

Even if Plaintiff had adequately pleaded conduct on the part of Defendants that violated ICFA, he has not pleaded that such conduct was done "in connection with the advertisement, sale, or lease of consumer merchandise" as required under the statute. *See* Iowa Code § 714H.3. The phrase "in connection with" "is commonly defined as 'related to, linked to, or associated with,'" and in the context of a consumer fraud claim, it requires a showing of "some relation or nexus" between the prohibited act and the merchandise in question. *Cutty's*, 694 N.W.2d at 526 (citations omitted). The term "'[s]ale' means any sale or offer for sale of consumer merchandise for cash or credit." Iowa Code § 714H.2(8). And the term "'[a]dvertisement' includes the attempt by publication, dissemination, solicitation, or circulation to induce directly or indirectly any person to enter into any obligation to acquire any title or interest in any merchandise." Iowa Code § 714H.2(2) (incorporating the definition of the term as set forth in Iowa Code § 714.16(1)(a)).[9] Plaintiff alleges the "merchandise" at issue is *The Register*. (Am Compl. ¶¶ 161–62.)

---

[9] Unlike "sale" and "advertisement," ICFA does not define the term "lease"; however, the widely understood and plain-language meaning of the term is "a contract by which one conveys real estate, equipment, or facilities for a specified term and for a specified rent." *See Lease*,

Synthesizing these definitions, the law is clear: Plaintiff must plead that he suffered an ascertainable loss of money or property by Press Defendants' prohibited conduct *related to the sale or advertisement of The Register* to state a claim under ICFA. Plaintiff has not done so.

First, Plaintiff does not allege that any decision to subscribe to *The Register* (*i.e.*, the "sale" of the "consumer merchandise") was done in connection with the publication of the 2024 Iowa Poll. In fact, the opposite is true: as a "longtime subscriber," his decision to subscribe to *The Register* could not feasibly have had any connection with the 2024 Iowa Poll. (Am. Compl. ¶ 8.)

Next, Plaintiff does not plead that the publication of the Iowa Poll had any nexus whatsoever to an advertisement soliciting sales of *The Register*. While Plaintiff asserts that "[t]he misinformation was published and pushed as a banner headline with the intention to sell newspapers, sell digital passes and subscriptions, and generate 'clicks' that result in ad revenue for the *Register*," he notably stops short of alleging that the Iowa Poll was an advertisement. (Am. Compl. ¶ 166.) That is because the Iowa Poll is plainly not an advertisement. The Iowa Poll and articles about it contain no call to purchase or subscribe to anything. *Cf.* Iowa Code § 714H.2(2); *State v. Cutsick*, 84 N.W.2d 554, 556 (Iowa 1957) ("[A]dvertising is a method, in a broad sense, of soliciting the public to purchase the wares advertised."); *see also* Note, *Consumer Protection Under the Iowa Consumer Fraud Act*, 54 Iowa L. Rev. 319, 325 (1968) ("Virtually every type of *sales appeal* made to *customers* . . . can be brought within the 'advertisement' definition [under the ICFA]." (emphases added)). If the Iowa Poll and articles about it could be construed as

---

Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/lease. No construction of the Amended Complaint can implicate any "lease" under the statute, nor does the Amended Complaint make any such allegation.

"advertisements," that would stretch the definition of that term past all logical boundaries and convert *every* news report into an advertisement—an absurd and impermissible result.[10]

Simply put, Plaintiff has not pleaded any actionable conduct by Press Defendants that was done "in connection with" the sale or advertisement of *The Register*.

### 3.    Plaintiff Does Not Allege Any Injury That Was Proximately Caused by the Poll

Finally, Plaintiff's ICFA claim independently fails as a matter of law because ICFA requires an ascertainable loss of money or property proximately caused by the prohibited conduct. Iowa Code § 714H.5(1); § 714.16(2)(a). The statute does not independently define "proximate cause," but the Iowa Supreme Court has held that the question of "proximate cause" is rightly framed as a "scope-of-liability issue," *i.e.*, that liability must be limited to "'harms that result from risks created by the actor's wrongful conduct, but for no others.'" *Thompson v. Kaczinski*, 774 N.W.2d 829, 838 (Iowa 2009) (quoting Restatement (Third) of Torts § 29, cmt. e). In other words, when there is no wrongful conduct pleaded (as in the present case), there are no attendant risks of harm that would satisfy the proximate cause requirement under ICFA.

---

[10] If Plaintiff nevertheless claims the publication of the Iowa Poll results or *The Register*'s unattributed "mission statement" are "advertisements," ICFA then specifically forecloses his claims. It provides:

> This chapter *shall not apply* to . . . the newspaper, magazine, publication, or other print media in which the advertisement appears, including the publisher of the newspaper, magazine, publication, or other print media in which the advertisement appears, . . . including an employee, agent, or representative of the publisher, newspaper, magazine, publication or other print media . . . .

*Id.* § 714H.4(1)(c) (emphasis added). It is undisputed that *The Register* is a newspaper and that the Des Moines Register is its publisher. (Am. Compl. ¶ 9.) Gannett, as owner of *The Register*, is encompassed within the exception as a publisher and corporate affiliate of *The Register*. Should the Court determine that the Iowa Poll is an "advertisement" for *The Register*, the statutory exception bars the claim, and the ICFA count should be dismissed.

The Amended Complaint contains legally conclusory statements to the effect that Press Defendants published the Iowa Poll "with the intent that others, at a minimum subscribers like Plaintiff, would rely on the misinformation as accurate." (Am. Compl. ¶ 158.) But Plaintiff does not and cannot allege that he personally relied on the poll. Nor does he otherwise make any allegations from which any reliance by others could be inferred. Plaintiff's failure to plead reliance is fatal to his ICFA claim because reliance is required to establish proximate cause. *See Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 462 (Ill. 2024)[11]; *cf.* Iowa Code § 714H.5; § 714.16(2)(a).

## E.    Plaintiff's Has Failed to Adequately Plead a Professional Malpractice Claim (Count III)

Like his misrepresentation and ICFA claims, Plaintiff has failed to adequately plead a professional malpractice claim. To state a claim for professional malpractice, a plaintiff must plausibly allege (1) a relationship giving rise to a duty; (2) breach of that duty; (3) that the breach of duty proximately caused injury; and (4) damages. *See New Hope Methodist Church v. Lawler & Swanson, P.L.C.*, No. 10-0211, 2010 WL 4484355, at *6 (Iowa Ct. App. Nov. 10, 2010).

Plaintiff asserts that Defendants owed him a duty of care such that they should have "recognize[d] the obvious problems with the Iowa Poll and not publish[ed] it without additional investigation or verification" and that Defendants violated that duty by publishing the Iowa Poll results. (Am. Compl. ¶¶ 180–81.) Plaintiff claims, as such, that Defendants' publication of the Iowa Poll constitutes professional negligence. (*Id.* ¶¶ 168–83.)

However, Plaintiff has not sufficiently alleged that Press Defendants owed him a duty for purposes of a professional malpractice claim, so this claim fails as a matter of law. Plaintiff cites a

---

[11] Because "[t]he Iowa Consumer Fraud Act was patterned after the Illinois Consumer Fraud Act[,]" Iowa courts look to Illinois courts' application of the Illinois consumer fraud act for guidance. *See State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 621 (Iowa 1989).

lone case from Hawai'i state courts for the proposition that "[a] newspaper has a duty of care for information that it authors or approves." (Am. Compl. ¶ 179 (citing *Birmingham v. Fodor's Travel Pubs.*, 73 Haw. 359, 366 (1992)).) Contrary to Plaintiff's assertion, the *Birmingham* decision supports this Motion to Dismiss.

In *Birmingham* a plaintiff sustained an injury while "body surfing in ocean waters off Kekaha Beach," which he had discovered in a travel guide published by the defendant. *Birmingham*, 73 Haw. at 362–63. The Hawai'i Supreme Court considered the issue of whether "a publisher, that neither authors nor guarantees the accuracy of representations of fact contained in its publication, [can be] liable for physical injuries sustained in reliance on information contained in the publication[.]" *Id.* at 366. The court concluded that "the [g]uide was a work of general circulation" and that the defendant "neither authored nor expressly guaranteed the contents of the [g]uide." *See id.* at 371. Therefore, the defendant "*had no duty* to warn the [plaintiff] of the accuracy of the information contained in the [g]uide." *Id.* (emphasis added). The court affirmed judgment in the publisher's favor. *Id.* at 383. As in *Birmingham*, *The Register* is a work of general circulation; and like the guide at issue in *Birmingham*, and there is no allegation that Press Defendants "guaranteed" that the results of the poll would match the final election results. For these reasons, to whatever extent *Birmingham* is useful persuasive authority, it supports a ruling in Press Defendants' favor and dismissing this case.

The other cases cited by Plaintiff support only the notion that journalists have a duty to their audiences in *defamation* cases, not professional malpractice cases. (*See* Am. Compl. ¶ 171 (citing *Bank of Oregon v. Ind. News, Inc.*, 670 P.2d 616, 628 (Or. App. 1983) (applying standard of care to journalists in a defamation action)).) Plaintiff also cites the Restatement of Torts for support; however, this authority also pertains to *defamation* actions, not professional malpractice.

(Am. Compl. ¶ 171 (citing Restatement (Second) of Torts § 580B cmt. g (1977)) ("Defamation of a Private Person").)

Just as no court has recognized a duty owed by a general circulation newspaper to its readers in the fraudulent and negligent misrepresentation context, no party has identified any case recognizing a professional malpractice claim against a general circulation newspaper. Nor has Plaintiff alleged facts to support such a novel claim here. This Court should dismiss Plaintiffs' professional malpractice claim.

> **F.    Iowa Law Does Not Recognize a Common Law Claim Against Defendants for "Interference with the Right to Vote" (Count IV)**

Next, Iowa law recognizes no tort claim against Press Defendants for the alleged "interference with the right to vote." (Am. Compl. ¶ 184.) The sole case Plaintiff relies upon in support of his claim concerns procedural voting matters in the general election of 1908 and mentions no such tort. *See Lane v. Mitchell*, 133 N.W. 381, 382 (Iowa 1911). In that case, the Iowa Supreme Court considered an action based upon a *statutory violation* of the 1897 Iowa Code by election judges. *Id.*; *see also* Iowa Code § 1115 (1897), *available at* www.legis.iowa.gov/docs/shelves/code/ocr/1897 Iowa Code.pdf. It does not establish or recognize any independent tort and has no application to this case.

Further, Plaintiff's citation to the Restatement (Second) and Restatement (Third) are inapt. (Am. Compl. ¶ 185.) The Restatements are not independent sources of law, and no Iowa court has ever adopted either of Plaintiff's cited Restatement provisions. *Cf. Moad v. Libby*, No. 14-0290, 2015 WL 1055080, at *2 (Iowa Ct. App. Mar. 11, 2015) ("Our courts adopt the rules and rationale set forth in a particular Restatement only to the extent the rules and rationale are deemed consistent with our body of law and have persuasive force."). Accordingly, the purported tortious interference with the right to vote is not a viable cause of action, and this claim should be dismissed.

**G.      Because Plaintiff Has Failed to Adequately Allege a Predicate Tort, His Conspiracy Claim Fails (Count V)**

"Civil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy [that] give rise to the action." *McDonnell v. Hesco Bastion, Inc.*, No. 3:24-cv-00072, 2025 WL 1324275, at *8 (S.D. Iowa May 7, 2025) (quotation omitted). "There is no liability for civil conspiracy unless the underlying acts are actionable in the absence of the conspiracy." *Griffith v. Purdue Pharma Co.*, No. 4:04–CV–10072, 2005 WL 8157818, at *3 (S.D. Iowa Dec. 8, 2005). Plaintiff's claim for civil conspiracy must fail because, as explained above, none of his underlying claims for relief are actionable and each requires dismissal. Plaintiff's claim for civil conspiracy should likewise be dismissed.

**H.      Plaintiff Cannot Be Awarded Punitive Damages**

Lastly, Plaintiff's request for punitive damages fails. Plaintiff's request for punitive damages is not a standalone claim; rather, punitive damages can only be awarded in connection with certain causes of action and under certain circumstances. *See Piatz v. State Farm Mut. Auto. Ins. Co.*, No. 3:21-cv-7, 2021 WL 8322268, at *3 (S.D. Iowa Nov. 22, 2021) ("Punitive damages are incidental to a cause of action—they do not constitute a separate cause of action."). Because Plaintiff's substantive claims fail, so too does his request for punitive damages. *See, e.g.*, *Kimberley v. Crop Risk Servs., Inc.*, 575 F. Supp. 3d 677, 693–94 (S.D. Iowa 2021) (holding that once no "main cause of action" remained after granting defendants' motion to dismiss, plaintiff could not be entitled to punitive damages); *Luigi's, Inc. v. United Fire & Cas. Co.*, 959 N.W.2d 401, 410 (Iowa 2021) (dismissing punitive damages claim where court reversed denial of motion for directed verdict on breach-of-contract and bad-faith causes of action).

**V.      CONCLUSION**

For the reasons stated herein, this Court should grant this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), enter judgment against Plaintiff on all counts, and order Plaintiff's Amended Complaint dismissed in full and with prejudice.

Defendants Des Moines Register &Tribune Company and Gannett Co., Inc. respectfully request to be heard at oral argument on this Motion.

Dated June 16, 2025                    **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
David Yoshimura, AT0012422
801 Grand Avenue, 33rd Floor
Des Moines, IA, 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
       *david.yoshimura@faegredrinker.com*

**ATTORNEYS FOR DEFENDANTS**
**DES MOINES REGISTER &TRIBUNE**
**COMPANY AND GANNETT CO., INC.**