IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>DES MOINES REGISTER AND TRIBUNE CO., INC., J. ANN SELZER, an individual, SELZER & COMPANY, and GANNETT CO., INC.,<br><br>    *Defendants*. | Case No. 4:25-cv-150-RGE-WPK<br><br>**PRESS DEFENDANTS DES MOINES REGISTER & TRIBUNE CO. AND GANNETT CO., INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** |

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT ................................................................................................................... 2

   A.   There Is No Exception to the First Amendment for "Fake News" ..................................... 2

   B.   Even If Plaintiff's Claims Were Constitutionally Permissible, They Must Be Dismissed for Failure to Satisfy Controlling First Amendment Principles ......................................... 6

     1. The Amended Complaint Challenges *The Register*'s Reporting on Estimates of Voting Behavior, Which Are Not Provably False Factual Statements ....................................... 7

     2. The Constitutional "Actual Malice" Standard Compels Dismissal of Plaintiff's Claims ....................................................................................................................... 8

   C.   The Opposition Confirms Plaintiff Omits Allegations Necessary to Plead a Plausible Claim for Fraudulent Misrepresentation (Count I) ........................................................... 10

   D.   The Amended Complaint Asserts No Plausible Claim for Negligent Misrepresentation (Alternate Count I) ........................................................................................................... 13

   E.   The Amended Complaint Asserts No Plausible Claim for Relief Under the Iowa Consumer Fraud Act (Count II) ...................................................................................... 16

     1. The Determination of Whether Plaintiff Has Adequately Pleaded the Elements of an ICFA Claim Is a Question of Law for the Court ......................................................... 16

     2. Plaintiff Identifies No Predicate Act, Pleaded or Otherwise, That Violates ICFA........ 17

     3. Plaintiff's Claim That Reliance Is Not a Required Element of an ICFA Claim is Directly at Odds with Iowa Law ................................................................................ 19

   F.   Plaintiff Failed to Adequately Plead a Duty Giving Rise to a Professional Malpractice Claim (Count III) ........................................................................................................... 20

   G.   Iowa Law Does Not Recognize a Common Law Claim for "Interference with the Right to Vote" .............................................................................................................................. 21

   H.   Plaintiffs' Conspiracy Claim and Request for Punitive Damages Fail Because Plaintiff Did Not Adequately Plead Any Required Predicate Tort................................................. 22

III.  CONCLUSION ............................................................................................................... 22

I.    <u>**INTRODUCTION**</u>

Plaintiff's Consolidated Response Brief in Opposition to the Motions to Dismiss (ECF No. 36 ("Opposition" or "Opp.")) demonstrates how and why Plaintiff has failed to adequately plead any claims sufficient to survive a Rule 12(b)(6) motion and the controlling *Iqbal/Twombly* standard.

Plaintiff begins by asking this Court to ignore the constitutional protections of the First Amendment. (Opp. at 7–22.) *First*, Plaintiff asks this Court to create a new category of constitutionally unprotected speech: "fake news." (*Id.* at 23.) No court has ever recognized such a category, and Plaintiff does not and cannot provide a basis to recognize it now. *Second*, even if Plaintiff's claims were constitutionally permissible—and they are not—they must still be dismissed because they fail to satisfy the First Amendment requirements of provable falsity and actual malice. Indeed, Plaintiff's assertions that Defendants failed to predict the results of a future election and that a widely respected pollster threw her career and reputation away to commit fraud do not meet those requirements. As such, the First Amendment bars Plaintiff's claims from the outset.

Plaintiff's Opposition also confirms that Plaintiff has not adequately pleaded the necessary elements of his claims. Plaintiff's principal claims for tortious misrepresentation and violation of ICFA have key elements in common, and both fail to meet the applicable pleading requirements. *First*, the purportedly false representations forming the basis of Plaintiff's claims have become moving targets in the Opposition. Plaintiff has pleaded two alleged misrepresentations: (1) the Iowa Poll results; and (2) *The Register*'s "promise" to provide "trustworthy news." (ECF No. 22, First Amended Complaint ("Am. Compl.") ¶ 124.) Now, to escape dismissal, Plaintiff attempts to change his claims by alleging—for the first time in his Opposition—that numerous *other* representations can serve as the basis for his claims. (Opp. at 24–25.) But Plaintiff may not amend

his pleading with his Opposition. *Second*, Plaintiff has never pleaded—and still does not claim—that he ever read, saw, or heard any of the allegedly false representations prior to subscribing to *The Register*. The Opposition in fact *admits* Plaintiff could not have relied on the Iowa Poll results when considering a subscription. (*Id.* at 29.) *Third*, Plaintiff has failed to identify any conduct by Defendants that could have been the proximate cause of any recoverable damages, *i.e.*, any ascertainable loss of money or property.

Plaintiff's Opposition does not remedy the Amended Complaint's fatal deficiencies. This Court should dismiss this action in whole and with prejudice.

## II.    ARGUMENT

### A.    There Is No Exception to the First Amendment for "Fake News"

In the face of case law flatly rejecting attempts by plaintiffs to expand the historically limited categories of unprotected speech, Plaintiff's Opposition nevertheless claims that an additional category should be recognized: "fake news" based on political campaign reporting. Plaintiff claims such an expansion of the law is necessary to avoid "distorting democracy." (Opp. at 23.) To the contrary, Plaintiff's request itself undermines the core democratic institution of a free and independent press. *See* U.S. Const. amend. I. Plaintiff's legal theories have no support (and, in fact, are at odds with) settled First Amendment jurisprudence.

Plaintiff asserts that "*any* applicable civil claim can be asserted against a newspaper for 'fake news,'" provided such a claim is subject "to the *New York Times* standard." (*Id*. at 9–10.) But no court has ever accepted this theory, and Plaintiff has identified no authority that could support one. Instead, he relies on a patchwork of inapposite defamation and other intentional tort cases. Plaintiff cites no cases in which a court has imposed publication-based tort liability on a newspaper in a generic civil action or outside the context of defamation or similar claims pertaining to an individual plaintiff's personal interest in reputation, privacy, or well-being (*i.e.*, false light,

disparagement, or intentional infliction of emotional distress). Plaintiff's cited cases themselves do not support his theory of the law and are highly contextual. *Cf. Time v. Hill*, 385 U.S. 374, 390–91 (1967) ("We find applicable here the standard of knowing or reckless falsehood . . . only upon consideration of the factors which arise in the *particular context* of the application of the New York statute in cases involving private individuals. . . . [A]lthough the First Amendment principles pronounced in *New York Times* [*v. Sullivan*] guide our conclusion, we reach that conclusion only by applying these principles *in this discrete context*." (emphases added)); *Bose v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984) (stating that "[t]he Court of Appeals entertained some doubt concerning the ruling that the New York Times rules should be applied to a claim of product disparagement" and that the court "express[es] no view on that ruling" but "accept[s] it for purposes of deciding this case"); *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (finding that the "actual malice" standard in *New York Times* is an *additional* demonstration that must be made when public figures and public officials are seeking recovery "for the tort of intentional infliction of emotional distress by reason of publications" which was "necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment"); *see also United States v. Alvarez*, 567 U.S. 709, 718 (2012) ("These isolated statements in some earlier decisions do not support the Government's submission that false statements, as a general rule, are beyond constitutional protection."). In fact, the Eighth Circuit has explicitly recognized that "the First Amendment precludes punishment for generalized 'public' frauds." *281 Care Comm. v. Arneson*, 638 F.3d 621, 634 (8th Cir. 2011) ("*281 Care Comm. I*") (quoting *Hustler Mag.*, 485 U.S. at 52)..

As in *Alvarez*, the conclusion Plaintiff arrives at "would take the quoted language" from the cases he cites "far from its proper context." *Alvarez*, 567 U.S. at 718. Thus, Plaintiff's supposition—that any variety of civil claim may target what he deems "fake news" provided it is

accompanied by a conclusory allegation of actual malice—is invalid under the First Amendment and has already been rejected by both federal and state courts.

> To the extent that defendants also argue in favor of application of fraud principles to all knowingly false speech, we reject the argument, noting the Supreme Court has carefully limited the boundaries of what is considered fraudulent speech. ***It has not included all false speech, or even all knowingly false speech.***

*281 Care Comm. I*, 638 F.3d at 634 n.2 (emphasis added) (holding unconstitutional Minnesota law prohibiting knowingly false statements in connection with voter ballot measures).

> *WASHLITE* cites no authority for the proposition that false statements about threats to public health, even if recklessly made, fall within any exception to the First Amendment. To the contrary, the Supreme Court in *Alvarez* disavowed the principle that false expressions in general receive a lesser degree of constitutional protections simply by virtue of being false.

*Wash. League for Increased Transparency & Ethics v. Fox News*, No. 81512-1-I, 2021 WL 3910574, *5 (Wash. Ct. App. Aug. 30, 2021) (dismissing claims under Washington's Consumer Protection Act against Fox News for allegedly false reports about the COVID-19 pandemic).

> The First Amendment does not, of course, make reporting or commentary on matters of public concern categorically off-limits as the subject of a private civil lawsuit. A plaintiff who claims libel or defamation and who can establish actual malice may pursue such claims. And, in other limited contexts, such as speech furthering unlawful boycotts, or embedding copyright-protected material, or fraudulently soliciting money, or integral to a criminal scheme, speech touching on matters of public concern potentially may be actionable. But these are narrow exceptions reserved for the truly rare case.

*Hollander v. CBS News, Inc.*, No. 16 Civ. 6624, 2017 WL 1957485, at *3 (S.D.N.Y. 2017) (citations omitted) (granting motion to dismiss complaint alleging that "false and misleading news reports" about Presidential candidate Donald Trump constituted "wire fraud"), *aff'd on other grounds sub nom.*, *Hollander v. Garrett*, 710 Fed. App'x. 35 (2d Cir. 2018).[1]

---

[1] Plaintiff's Opposition describes the district court's order in *Hollander* as a "vacated opinion." (Opp. at 11.) Plaintiff's insinuation that the court's analysis is thereby undermined is misleading; on appeal, the Second Circuit *affirmed* the district court's ruling dismissing the case

This is no such "truly rare case." *Id.* The First Amendment prohibits Plaintiff's attempt "to compile a list of subjects about which false statements are punishable." *Alvarez*, 567 U.S. at 723. Such an approach "has no clear limiting principle" and would allow an unprecedented array of exceptions to First Amendment guarantees. *Id.* Plaintiff's argument ignores that the small number of historical exceptions to free speech are demarcated by strict boundaries, which may not be elasticized to accommodate Plaintiff's desire for a new categorical exception for "fake news." (Am. Compl. ¶ 2.)

"From 1791 to the present, . . . the First Amendment has permitted restrictions upon the content of speech in a few limited areas, and has never include[d] a freedom to disregard these traditional limitations." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (internal quotations and citation omitted). These "historic and traditional categories" have never been extended to generalized claims of false political speech. *Id.*; *see 281 Care Comm. I*, 638 F.3d at 633–34 ("We find that the Supreme Court has never placed knowingly false campaign speech categorically outside the protection of the First Amendment and we will not do so today."). The opposite is true: "[p]rotection of political speech is the very stuff of the First Amendment." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 871 (8th Cir. 2021) (internal quotations and citation omitted); *see also 281 Care Comm. v. Arneson*, 766 F.3d 774, 784 (8th Cir. 2014) ("*281 Care Comm. II*") ("The regulation of political speech or expression is, and always has been, at the core of the protection afforded by the First Amendment.").

Therefore, Plaintiff's theory that a civil cause of action may be predicated on a claim of "fake news" would create from whole cloth a "novel exception" to the First Amendment and must

---

but vacated and remanded with instructions for dismissal without prejudice based on the accepted ground for dismissal on appeal. *See Garrett*, 710 Fed. App'x at 36.

be rejected. *Stevens*, 559 U.S. at 472. Plaintiff's reliance on *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), is a red herring. Press Defendants take no issue with the proposition that they are subject to neutral laws of general applicability. (Opp. at 13.) In *Cohen*, the court decided the plaintiff could bring a promissory estoppel claim against a newspaper for breaching a promise of confidentiality to the plaintiff-source. *Id*. at 669. But unlike in *Cohen*, Plaintiff's claims here "target [and] single out the press" based only on reporting by *The Register* of which Plaintiff personally disapproves. *Id*. at 670. Because the Amended Complaint's causes of action are premised on personal disagreement with the information communicated to *The Register*'s readers by publication of the Iowa Poll results, they violate the First Amendment requirement of viewpoint neutrality and are presumptively unconstitutional. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("When the government targets . . . particular views taken by a speaker on a subject, the violation of the First Amendment is all the more blatant.").

In our constitutional democratic system, it is left to the voters to decide "what is responsible, what is valuable, and what is truth" in the political arena. *281 Care Comm. II*, 766 F.3d at 796.

### B.    Even If Plaintiff's Claims Were Constitutionally Permissible, They Must Be Dismissed for Failure to Satisfy Controlling First Amendment Principles

Even assuming *arguendo*—but contrary to Supreme Court jurisprudence—that *The Register*'s political campaign reporting is *not* endowed with complete immunity in this context, the Amended Complaint nevertheless cannot overcome Press Defendants' constitutional privileges and defenses. The Supreme Court has established that the same First Amendment restrictions applicable to defamation suits govern any permissible tort claims arising from speech on matters of public concern; only a false statement of fact "made with 'actual malice,' *i.e.*, with knowledge that the statement was false or with reckless disregard as to whether or not it was true," is actionable.

*See Hustler Mag.*, 485 U.S. a t 56; *see also Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (holding

that speech on public issues "is entitled to 'special protection' under the First Amendment" and

overturning jury verdict on emotional distress claim). These constitutional privileges and defenses

defeat Plaintiff's claims in their entirety.

      1.    **The Amended Complaint Challenges *The Register*'s Reporting on Estimates of Voting Behavior, Which Are Not Provably False Factual Statements**

Plaintiff cannot establish that Press Defendants' reporting of the poll results of which he

disapproves are "provably false." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777–78

(1986). The Amended Complaint challenges statements that are not provably false because they

necessarily relate to *estimates* of voting behavior and the Iowa Poll's projections of *future* events—

*i.e.*, the outcome of the 2024 presidential election in Iowa.

The Eighth Circuit applied this principle when it invalidated a Minnesota campaign law

penalizing allegedly knowingly false communications about ballot initiatives. *281 Care Comm. II*,

766 F.3d at 795. The court held that such speech was a "statement of conjecture about the future

state of affairs should the ballot question pass or fail" and, thus, could not be deemed provably

false. *Id.* The same is true of the reporting on the Iowa Poll results published by *The Register*,

which represented an inherently evaluative assessment of public sentiment about the respective

candidates at a particular point in time—at most, a subjective estimate of future voting behavior.

Polling results do not and cannot qualify as false statements of fact for First Amendment purposes

merely because they later do not align with the ultimate election outcome.

If, as Plaintiff insists, news coverage of political polling must exhibit inerrant prescience

to avoid liability under state consumer fraud laws, such reporting would be wrongly chilled to the

detriment of an informed public. *Cf. Alvarez*, 567 U.S. at 723 ("The mere potential for the exercise

of that power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom.").

    **2.**    **The Constitutional "Actual Malice" Standard Compels Dismissal of Plaintiff's Claims**

"In the wake of *Iqbal* and *Twombly*, adequately pleading actual malice is an onerous task." *Earley v. GateHouse Media. Pa. Holdings, Inc.*, Case No. 3:12-1886, 2013 WL 5466149, *6 (M.D. Pa. Sept. 30, 2013). The actual malice standard "is a subjective one, based on the defendants' actual state of mind." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089 (3d Cir. 1988). Plaintiff is therefore required to plead and prove that, at the time of publication, Press Defendants (i) knew *The Register*'s reporting was false; or (ii) "*in fact* entertained serious doubts as to [its] truth," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added); or (iii) had a "high degree of awareness of [its] probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). The Amended Complaint alleges no such thing.

*Peoples Bank & Tr. Co. v. Globe Int'l Pub., Inc.*, 978 F.2d 1065 (8th Cir. 1992), cited ostensibly to bolster Plaintiff's actual-malice argument, (Opp. at 20–21), instead illustrates just how far the Amended Complaint's allegations fall short. In that case, a tabloid used a photograph of an elderly woman to accompany a fabricated story about a 101-year-old woman who quit her job because she was pregnant; that tabloid story was obtained by a local newspaper in the Arkansas community where the woman lived. *Peoples Bank & Tr.*, 978 F.2d at 1070. The tabloid editor testified that he assumed the woman was dead, which the court found was "purposeful avoidance of the truth" because the editor had worked on a previous story about the woman. *Id*. The facts alleged in this case bear no resemblance to *Peoples Bank & Trust.* Plaintiff has not identified a single intentional omission of key source information by Press Defendants that would indicate "a

deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the challenged reporting. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989).

The Opposition repeatedly claims that Press Defendants characterized the results of the Selzer poll as "stunning, shocking, and surprising," (Opp. at 15–16), which Plaintiff claims is evidence of actual malice. This argument is self-refuting; these facts demonstrate Press Defendants' subjective, good-faith belief in the accuracy of the poll results at the time they were published, notwithstanding their departure from prior Iowa election outcomes. That is consistent with Selzer's reputation as the head of a "nationally recognized, industry leading polling and audience research firm." (Am. Compl. ¶ 77.) *See also Basulto v. Netflix, Inc.*, No. 1:22-cv-21796, 2023 WL 7129970, at *45 (S.D. Fla. Sept. 20, 2023) ("Relying on a warranty of accuracy and/or no defamation from [a film producer] is not unreasonable, especially when Netflix has a history of licensing other films from [the producer] and considers it to be reliable."). Moreover, Plaintiff concludes that "there should have been alarm bells ringing all over" in light of the Iowa Poll results. (Opp. at 16.) In other words, Plaintiff claims Press Defendants should have been more diligent in considering publication of the Iowa Poll results—a claim that cannot reach the level of actual malice as a matter of law. *See McDougal v. Fox News Network*, 489 F. Supp. 3d 174, 185–86 (S.D.N.Y. 2020) ("Actual malice is a high bar. A plaintiff cannot, for example, allege merely that the speaker was negligent in failing to uncover falsity or that he should have investigated his claims before speaking.").

Plaintiff's insistence that Press Defendants "acted contrary to their employer's principles and training" similarly contradicts the law. (Opp. at 17.) Rather, even "lapses in ethics and judgment," including a failure to perform additional research, "amount at most to negligence or bad journalism, *not actual malice*." *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20,

56 (D.D.C. 2005) (emphasis added); *see also Levesque v. Doocy*, 557 F.Supp.2d 147, 169 (D. Me. 2008) (holding that a "publisher's failure to confirm the accuracy of the quotations demonstrates an extreme departure from professional standards" but that "unprofessional conduct does not amount to reckless disregard of the truth"); *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, Case No. 17-cv-03695, 2021 WL 1110252, *20 (N.D. Cal. March 23, 2021) (finding unprofessional conduct or an extreme departure from professional standards insufficient to show actual malice).

Finally, Plaintiff's assertion that "depositions and discovery" are necessary to adduce actual malice is both premature and an admission that he has failed to plead sufficient facts that would plausibly support a reasonable inference—much less a finding—of actual malice. *Schatz v. Repub. State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (denying discovery absent specific allegations of actual malice and holding that "to access discovery mechanisms, a plaintiff must first produce a complaint that passes the plausibility test—a test that helps keep defendants from wasting time and money in discovery"). (*See* Opp. at 14.)

Publishing the results of an election poll that did not match final election results is unquestionably protected by the First Amendment. But even it were not, Plaintiff has not adequately pleaded that it is a tort or a violation of Iowa statutory law. As Plaintiff concedes, "to survive the motion to dismiss his claims, he must plead actual, legitimate claims." (Opp. at 13–14.) For the reasons stated below, he has failed to do so on every count.

## C.    The Opposition Confirms Plaintiff Omits Allegations Necessary to Plead a Plausible Claim for Fraudulent Misrepresentation (Count I)

In his Opposition, Plaintiff fails to adequately address key deficiencies in numerous elements of his claim, including (1) a false representation, (2) justifiable reliance, and (3) damages. The Court should dismiss Plaintiffs' fraudulent misrepresentation claim.

*First*, Plaintiff did not plead an actionable false representation. In Plaintiff's Amended Complaint he only alleged two misrepresentations: *The Register*'s mission statement and the poll results. (Am. Compl. ¶¶ 1, 124.) These two representations cannot form the basis of a fraudulent misrepresentation claim. Press Defendants disclosed exactly how the poll was conducted, Plaintiff does not claim that it was conducted in any other way, political polls are not (and cannot be) guarantees of future election outcomes, and an alleged mission statement to provide "trustworthy, smart and engaging news and information" (*id.*) is "not actionable" because it is not susceptible to "verification by proof." *In re Stratasys Ltd. Shareholder Sec. Litig.*, 864 F.3d 879, 882 (8th Cir. 2017).

Now ignoring the allegations in the pleading, Plaintiff argues in his Opposition that new, varied, and unpleaded statements allegedly made by Press Defendants—*e.g.*, *The Register*'s LinkedIn page, Gannett's ethical guidelines, the Iowa Poll's methodology statement—now constitute the representations at issue. (Opp. at 24–25 & n.5.[2]) One of these new alleged misrepresentations actually *occurred after Plaintiff filed this lawsuit*. (*See id.* (citing to a *Register* article published on March 13, 2025); ECF No. 1-1 (Petition filed on January 6, 2025).)

Plaintiff "cannot attempt to salvage [his] claims by raising allegations in a brief opposing a motion to dismiss that are nowhere to be found in a complaint." *Starks v. TULA Life, Inc.*, 684 F. Supp. 3d 941, 949 (D. Neb. 2023) (citing *Al-Saadoon v. Barr*, 973 F.3d 794, 804–05 (8th Cir.

---

[2] Plaintiff alternatively seeks leave to amend his pleading (again) to add allegations regarding the purported misrepresentations. (Opp. at 24.) Such an amendment would be futile. Even if Plaintiff alleged additional information regarding the source of the purported misrepresentations, as discussed *infra*, he has not claimed and cannot claim he saw, heard, received, or relied on these specific representations prior to his alleged decision to subscribe to *The Register*. *See Mt. Hawley Ins. Co. v. City of Richmond Heights*, 92 F.4th 763, 769 (8th Cir. 2024) ("An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6).").

2020)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). The purpose of the Rule 12 plausibility standard "is to give the opposing party fair notice of the nature and basis or grounds for a claim." *Topchian v. JPMorgan Chase Bank*, 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation omitted). To allow Plaintiff to now alter "the nature and basis or grounds" for his claim would turn this principle on its head.

Even if this Court were to consider Plaintiff's new bases for his fraudulent misrepresentation claim, Plaintiff's claim still fails. Corporate LinkedIn statements, mission statements, and ethical principles are precisely the type of vague, optimistic, and non-verifiable rhetoric the Eighth Circuit has held does not constitute fraud. *City of Plantation Police Officers Pension Fund v. Meredith Corp.*, 16 F.4th 553, 556–57 (8th Cir. 2021) (holding that "vague and optimistic [corporate] rhetoric" cannot support a fraud claim) (citation modified); *see Stratasys*, 864 F.3d at 882. In other words, Plaintiff did not plead an actionable false representation. His Opposition fails to sufficiently address—much less cure—that failing.

*Second*, to state a claim for fraudulent misrepresentation, a plaintiff must allege that he "acted in reliance on the truth of the representation and was justified in relying on the representation." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001). But Plaintiff does not allege he saw, heard, or otherwise received any of the alleged representations from Press Defendants (whether those pleaded or those newly raised in the Opposition) prior to purchasing a subscription, let alone that he relied on them. The *only* representation that Plaintiff specifically pleaded he received was the Iowa Poll results. (*See* Am. Compl. ¶ 8.) But as Plaintiff himself now concedes, he could not possibly have "rel[ied] on a poll that had yet to be run and reported" at the

time he allegedly subscribed. (Opp. at 29.) Absent allegations of fact regarding both when he saw the alleged misrepresentations ***and*** when he initially subscribed, Plaintiff cannot plausibly plead that he relied on any representation to his detriment.

*Third*, Plaintiff's alleged damages bear no relation to the "harm" he suffered. Plaintiff simply did not plead, and does not otherwise explain in his Opposition, how his claim of one year's worth of subscription costs constitutes his "pecuniary loss suffered as a result of [his] reliance upon the misrepresentation." *Putman v. Walther*, 973 N.W.2d 857, 864 (Iowa 2022). Plaintiff cites no supporting cases and instead relies exclusively on his own invented analogy regarding unrelated meal-kit company HelloFresh. (*See* Opp. at 30.) To the extent that analogy is illustrative of anything, it at most suggests that purchasers of a subscription service for physical, perishable products could seek damages. (*See id.*) However, the analogy does *not* explain how or why one year's worth of subscription costs could be the *appropriate measure of damages in this case*. In Iowa, fraud is remedied by returning the defrauded party to "the same financial position as if the fraudulent misrepresentation had been in fact true." *Cornell v. Wunschel*, 408 N.W.2d 369, 380 (Iowa 1987). Plaintiff had no change in financial position in reliance on any representation alleged, and his claim thus fails.

This court should dismiss Plaintiff's fraudulent misrepresentation claim with prejudice.

### D. The Amended Complaint Asserts No Plausible Claim for Negligent Misrepresentation (Alternate Count I)

Plaintiff argues that he adequately stated a claim for negligent misrepresentation because Press Defendants are "in the business of supplying information" and because Press Defendants' alleged representations proximately caused the loss of the "overall value" of his subscription.

(Opp. at 31–32.) But Plaintiff's arguments lack merit and cannot salvage his deficient negligent misrepresentation claim.[3]

*First*, Plaintiff asserts that Press Defendants are necessarily "in the business of supplying information" based on Plaintiff's circular and conclusory insistence that a newspaper is "the quintessential business supplying information to others." (*Id.* at 31.) That ignores the careful limitations Iowa courts have placed on the doctrine of negligent misrepresentation. Recognizing its potentially "expansive nature," the Iowa Supreme Court has repeatedly stressed the importance of "properly limit[ing] the tort within certain boundaries." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 123 (Iowa 2001); *see also Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*, 888 N.W.2d 644, 655 (Iowa 2016) (cautioning that the doctrine has "limits"). Accordingly, "[a] restricted rule of liability is followed," which focuses less on the foreseeability of possible harm and more on limiting "the group of persons to whom a defendant may be liable." *Sain*, 626 N.W.2d at 125. Consistent with that approach, defendants are only "in the business of supplying information" if they act in an "advisory capacity"—*i.e.*, they are "manifestly aware of the use [to which] the information will be put" and "intend[] to supply it for that purpose." *Id.* This individualized advisory relationship, tailored to the specific needs and unique circumstances of the receiving party, arises in professional settings involving "accountants, appraisers, school guidance counselors and investment brokers." *Dinsdale Constr.*, 888 N.W.2d at 655 (citation modified).

Plaintiff's assertion that Iowans "depend on [*The Register*] for their news" is not enough to establish an advisory relationship. (Opp. at 31.) If it were, "liability for misinformation could be virtually unlimited and [potentially] include unknown claimants." *Sain*, 626 N.W.2d at 123; *see*

---

[3] At the outset, Plaintiff concedes that "he must show actual malice" to assert a viable claim. (Opp. at 31.) Because the First Amendment prohibits liability here based on mere negligence, Plaintiff's negligent misrepresentation claim categorically fails.

*also Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986) (holding that negligent misrepresentation claim against a newspaper fails because a newspaper reader "does not fall within a special limited class (or group) of foreseeable persons" and noting that to hold otherwise "would in effect extend liability to all the world"). Plaintiff's attempt to impose an advisory duty on Press Defendants is unprecedented and impracticable. Indeed, Plaintiff's contention that newspapers, by definition, are always and necessarily "in the business of supplying information" such that the "tort of negligent misrepresentation is available," (Opp. at 31), flies in the face of the Second Restatement. *Compare* Restatement (Second) of Torts § 552 cmt. c illustration 2 (describing situation in which a newspaper published an advertisement that resulted in pecuniary loss to a reader and concluding that the newspaper owed no duty to the reader). This Court should reject it.

*Second*, Plaintiff's arguments regarding proximate cause do not cure his pleading deficiency. Plaintiff claims that "Gannett misconstrues his theory to avoid liability." (Opp. at 32.) But his theory has impermissibly shifted throughout the case; sometimes it pertains to alleged generalized statements on the provision of "trustworthy, accurate news," and other times it pertains to the Iowa Poll results. (*See id.*) Regardless, neither theory states a claim. The Iowa Poll results could not have caused Plaintiff to lose the value of his subscription because the Iowa Poll did not cause him to pay a subscription fee. And as for the various alleged pre-subscription "promises" about providing "trustworthy" news, Plaintiff has not pleaded (or even suggested that he *could* plead) that he heard, read, or otherwise received them before deciding to purchase a subscription to *The Register*.

Plaintiff does not address these deficiencies. Instead, he declines to provide legal support and resorts yet again to inapt and unreliable analogies, likening his "lost trust in [*The Register*'s] product" to "buying a can of Mountain Dew after you read a news report that someone found a

dead mouse in a can—you cringe every time you pop the can open, worried your can will be next[.]" (*Id.*) But in the same way courts would not let a Mountain Dew consumer assert an amorphous claim based on a purported loss of trust or confidence, this Court should reject Plaintiff's "lost trust" theory here. *Cf. Kaufman v. M.T. Davidson Co.*, 76 N.Y.S.2d 893, 897 (N.Y. Sup. Ct. 1947) (rejecting theory of damages based on lost confidence). Fundamentally, nothing in Plaintiff's Opposition changes the fact that he cannot show how the cost of a one-year subscription constitutes a "pecuniary loss suffered as a result of [his] reliance upon [an alleged] misrepresentation." *Putman*, 973 N.W.2d at 864. The value of the subscription bears no relationship to the alleged fraud here, which is fatal to Plaintiff's negligent misrepresentation claim. This Court should dismiss this claim with prejudice.

> **E.    The Amended Complaint Asserts No Plausible Claim for Relief Under the Iowa Consumer Fraud Act (Count II)**

Plaintiff's Amended Complaint does not adequately plead an ICFA claim. To remedy this failure, Plaintiff now attempts to "plead" new facts in his Opposition as discussed above. This is improper. But even if the Court were to entertain his new allegations, his ICFA claim still fails as a matter of law.

> **1.    The Determination of Whether Plaintiff Has Adequately Pleaded the Elements of an ICFA Claim Is a Question of Law for the Court**

Plaintiff seeks to avoid the failures of his ICFA claim by arguing that his pleading deficiencies are not really deficiencies but are instead questions better left to a jury. (Opp. at 35–36.) But the purpose of a motion to dismiss is to determine whether the plaintiff pleaded sufficient facts in his complaint to "state a claim to relief that is plausible on its face." *Jacobson v. Pettit*, No. 4:23-cv-00137, 2024 WL 948010, at *3 (S.D. Iowa Feb. 22, 2024) (citing *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

*Iqbal*, 556 U.S. at 678). Whether Plaintiff sufficiently pleaded an unfair practice as required for an ICFA claim and whether the Iowa Poll constitutes a "material fact" for purposes of ICFA are at the very heart of a proper motion to dismiss.

Plaintiff argues that these questions are better left for a jury, but this would be a novel approach that contradicts the very purpose of a motion to dismiss under Rule 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And the determination of whether a statement is an opinion or potentially actionable statement of fact is a question of law for this Court to decide. *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis*, 829 F.3d 576, 580–81 (8th Cir. 2016); *Andrew v. Hamilton Cnty. Pub. Hosp.*, 960 N.W.2d 481, 489 (Iowa 2021). Litigants cannot avoid dismissal of legally deficient claims merely by demanding future fact-finding. Plaintiff's ICFA claim is presently ripe for dismissal as a matter of law and on its face.

### 2.    Plaintiff Identifies No Predicate Act, Pleaded or Otherwise, That Violates ICFA

In his Amended Complaint, Plaintiff claims that "[t]he decision by Dr. Selzer and the Register to report the poll as an accurate news item when in fact it was obviously inaccurate constituted an unfair practice, deception, fraud, misrepresentation of a material fact." (Am. Compl. ¶ 164.) In other words, Plaintiff pleaded the act that allegedly violated ICFA was the publication of the Iowa Poll results. But Plaintiff makes an emphatic about-face in his Opposition, stating, "To be clear: the publication of the poll was not the deception. The deception was the promise to be accurate, and, in particular, accurate with polling in general and this poll especially." (Opp. at 37.) Plaintiff's attempt to cure his lack of sufficient allegations through his Opposition is tantamount to an acknowledgement that his Amended Complaint fails to state an ICFA claim. The allegations in the Amended Complaint control on a motion to dismiss, rendering Plaintiff's recitation of case

law regarding post-sale conduct irrelevant. *See Starks*, 684 F. Supp. 3d at 949; *Barr*, 973 F.3d at 804–05; *Topchian*, 760 F.3d at 848.

Moreover, even accepting Plaintiff's new characterization of the allegations in his Amended Complaint—*i.e.*, that *The Register* "promised" accurate news—Plaintiff makes no attempt to explain *how* the Iowa Poll was inaccurate based on Selzer's methodology aside from the difference between the poll results and the ultimate election results. *Cf. Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (noting that the amended complaint failed to allege "how" or "whether" the elements of the cause of action were met and holding that additional facts in an opposition to motion to dismiss could not be considered to cure this). But this superficial hindsight-driven analysis fails because it does not overcome Plaintiff's failure to plead any facts supporting that the reported poll results did not accurately reflect the collected data samples.

Further, Plaintiff's cursory and generic statements that he adequately pleaded the remaining elements of an ICFA claim are insufficient. (*See* Opp. at 36–40.) The standard for materiality under ICFA is whether the representation would affect a consumer's "choice of, or conduct regarding, a product." *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 34 (Iowa 2013) (internal quotation omitted). In his Amended Complaint, Plaintiff alleges only that the Iowa Poll was "material" because "it was long regarded as the standard in Iowa politics, and it was the banner headline story for the day that it ran." (Am. Compl. ¶ 135.) Plaintiff now claims for the first time in his Opposition that "it is reasonable to think that Mr. Donnelly and the putative class would act differently if they knew the *Register* would knowingly or recklessly publish a front-page story on its most important exclusive political news story of the year." (Opp. at 36.) Again, Plaintiff may not amend his Amended Complaint through his Opposition; and even if this Court were to consider this new

allegation, Plaintiff notably stops short of alleging that the stories about the poll affected *his* "choice of, or conduct regarding" *The Register*. *See Vertrue, Inc.*, 834 N.W.2d at 34.

Plaintiff's Opposition therefore fails to remedy his failure to plead any conduct by Defendants that violated ICFA, and his claim must be dismissed.

> **3.    Plaintiff's Claim That Reliance Is Not a Required Element of an ICFA Claim is Directly at Odds with Iowa Law**

Finally, Plaintiff maintains that reliance is not a necessary element of an ICFA claim brought by a private plaintiff. (Opp. at 39.) Plaintiff is wrong. Prior to the existence of the private right of action, ICFA claims brought by the Iowa Attorney General had no requirement to prove the Attorney General's own reliance on the fraudulent act; however, the private right of action statute *removed* that exception. *Compare* Iowa Code § 714.16(7) ("[I]t is not necessary in an action for reimbursement or an injunction, to allege or to prove reliance[.]"), *with id.* § 714H.3(1) (requiring that a defendant have the "intent that others rely" on the fraudulent conduct to be liable). The requirement that private plaintiffs establish proximate cause can only be understood to require such reliance. *See id.* §§ 714H.3(1), 714.16(2)(a).

Moreover, "[t]he Iowa Consumer Fraud Act was patterned after the Illinois Consumer Fraud Act[,]" so we may look to Illinois courts' application of their own consumer fraud act for guidance. *See State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 621–22 (Iowa 1989). And the Illinois Supreme Court—in interpreting the Illinois Consumer Fraud Act upon which ICFA was patterned—recently confirmed that reliance is indeed required to prevail on a private right of action under the analogous statute: "In order to establish the element of proximate causation, a plaintiff must prove that it was actually deceived by the misrepresentation. If the plaintiff has neither seen nor heard a deceptive statement, it cannot have relied on the statement and, consequently, cannot

prove that the statement was the proximate cause of its injury." *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 462 (Ill. 2024) (internal citation omitted).

Plaintiff fails to plead that he relied on the Iowa Poll in any manner when engaging in consumer conduct, and he does not even superficially plead that he relied on the articles or poll data. Because Plaintiff does not and cannot plead reliance on the Iowa Poll in rendering a consumer decision, he cannot show proximate cause, and his claim should be dismissed.

### F.   Plaintiff Failed to Adequately Plead a Duty Giving Rise to a Professional Malpractice Claim (Count III)

Despite Plaintiff's urging, he has not stated a claim for professional malpractice. Plaintiff concedes that there is no animating duty on publishers who have neither "authored or guaranteed the information." (Opp. at 40.) Yet he glosses over his pleaded allegations and claims that the Press Defendants both authored and guaranteed the Iowa Poll results. (*See id.* at 40–42.) They have not.

First, Plaintiff does not allege that Press Defendants conducted, designed, orchestrated, or performed the methodology or calculations of the Iowa Poll. He instead argues that the Press Defendants owed a duty because their "contractor did the poll" and *The Register*'s "reporters authored the story *about* the poll." (Opp. at 41) (emphasis added). Neither is sufficient or relevant under the law. No case—much less any cited by Plaintiff—holds a publisher liable simply because the publisher contracted with an author. This makes good sense: third-party publisher liability "would place upon publishers the duty of scrutinizing and even testing all procedures contained in any of their publications" and would have a "chilling effect" on publication. *See Birmingham v. Fodor's Travel Pub'ns, Inc.*, 833 P.2d 70, 75 (Haw. 1992) (quoting *Alm v. Van Nostrand Reinhold Co., Inc.*, 480 N.E.2d 1263, 1267 (Ill. App. Ct. 1985)). The same would be true if Plaintiff's theory were to be adopted, creating unlimited liability for any publisher who provides a contracted advance to an author for a story.

Second, Plaintiff suggests that the only way the poll could be "accurate" is if its results perfectly mirrored the final election results. However, Press Defendants simply never made that sort of guarantee, nor has Plaintiff pleaded that they did. (*See generally* Am. Compl.) Rather, Press Defendants merely reported upon the polling results, methodologies, and margins of error. (*Id.* ¶¶ 55–57.) This is in stark contrast to Plaintiff's cited authority, *Hanberry v. Hearst Corp.*, in which a magazine publisher made an express warranty through its "Good Housekeeping Consumers' Guaranty Seal" as to a particular product: "We satisfy ourselves that products advertised in Good Housekeeping are good ones and that the advertising claims made for them in our magazine are truthful." 81 Cal. Rptr. 519, 521 (Cal. Ct. App. 1969). The magazine publisher also made an "independent examination of the product endorsed, with some degree of expertise." *Id.* at 522. Press Defendants made no such express warranty that the poll results would match final election results.

Through his discussion of guarantees and warranties, however, Plaintiff appears to attempt to raise new, unpleaded claims for breach of warranty/products liability—though what claim(s), he attempts to raise, exactly, is unclear. (*See* Opp. at 40–42.) These unarticulated claims should be disregarded as unalleged. *See Morgan Distrib. Co.*, 868 F.2d at 995. Furthermore, such claims ignore that the Iowa Poll is not a "product," but an expression of ideas. *See Birmingham*, 7833 P.2d at 78–79; *see also Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036 (9th Cir. 1991).

Press Defendants, as a matter of law, do not owe any duty to Plaintiff that could give rise to a claim for professional malpractice. This Court should dismiss the claim with prejudice.

## G.   Iowa Law Does Not Recognize a Common Law Claim for "Interference with the Right to Vote"

Plaintiff's reliance on a single decision issued by the Iowa Supreme Court over a century ago to argue that Iowa recognizes a tort for interference with the right to vote is misplaced. Plaintiff

misstates the narrow issue before the court in *Lane*, which involved interpretation of a statutory

violation of the 1897 Iowa Code by election judges. *See Lane v. Mitchell*, 133 N.W. 381, 382 (Iowa

1911) ("As we have already said, the plaintiff insisted that he be sworn, *as provided by section

1115 of the Code*, and that he be thereafter allowed to vote." (emphasis added)). Plaintiff cites to

no subsequent case even suggesting that *Lane* established or recognized any such tort. Considering

the plain language of the Iowa Supreme Court's decision in *Lane*—and the stark absence of any

tort involving the right to vote anywhere else in Iowa's case law—Plaintiff's reliance on the

Restatement's characterization of the holding in *Lane* is similarly unavailing. (*See* Opp. at 43.)

Furthermore, Plaintiff has not alleged that his ability to vote was in any way inhibited by Press

Defendants, who had no authority to prevent Plaintiff from voting as the election judges did in

*Lane*. *See Lane*, 133 N.W. at 382–83.

    Tortious interference with the right to vote is not a viable claim under Iowa law. Even if it

were, Plaintiff alleges no facts—in his pleading or otherwise—suggesting his right to vote was in

any way impaired by the alleged conduct of Press Defendants. The Court should dismiss this claim

with prejudice.

### H. Plaintiffs' Conspiracy Claim and Request for Punitive Damages Fail Because Plaintiff Did Not Adequately Plead Any Required Predicate Tort

    Plaintiff does not dispute that both his civil conspiracy claim and his request for punitive

damages cannot stand unless he also adequately states a claim for the required predicate torts.

(Opp. at 43.) Because Plaintiff's tort claims all fail as a matter of law, this Court should also dismiss

his conspiracy claim and request for punitive damages.

## III.  CONCLUSION

    This Court should grant Press Defendants' Motion in full and dismiss all claims with

prejudice.

Dated July 7, 2025                    **FAEGRE DRINKER BIDDLE & REATH LLP**

                                     */s/ Nick Klinefeldt*
                                     Nicholas A. Klinefeldt, AT0008771
                                     David Yoshimura, AT0012422
                                     801 Grand Avenue, 33rd Floor
                                     Des Moines, IA, 50309
                                     Telephone: (515) 248-9000
                                     Fax: (515) 248-9010
                                     Email: *nick.klinefeldt@faegredrinker.com*
                                              *david.yoshimura@faegredrinker.com*

                                     **ATTORNEYS FOR PRESS DEFENDANTS
                                     DES MOINES REGISTER AND TRIBUNE
                                     COMPANY AND GANNETT CO., INC.**

## **CERTIFICATE OF SERVICE**

I certify that on July 7, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all parties participating in the Court's electronic filing system.

*/s/ Elizabeth Collins*