**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DES MOINES REGISTER AND TRIBUNE CO, INC.; J. ANN SELZER; SELZER & COMPANY; and GANNETT CO., INC.,<br><br>Defendants. | Civil Case No. 4:25-cv-00150-RGE-WPK<br><br>**DEFENDANTS J. ANN SELZER AND SELZER & COMPANY'S BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

BACKGROUND ...............................................................................................................2

ARGUMENT .....................................................................................................................8

I.    This Court Should Award Sanctions Under Rule 11 to Deter Frivolous Litigation That Abuses the Legal System..........................................................................9

    A.    Rule 11 requires counsel to act as gatekeepers against meritless filings and arguments. ................................................................................................. 9

    B.    Donnelly's claims are not warranted under existing law and his counsel makes no nonfrivolous argument for extending the law...................................... 10

        1.    Plaintiff's counsel have persisted in advocating frivolous claims despite ample notice the First Amendment bars Donnelly's claims. .........11

        2.    Plaintiff's counsel violated Rule 11(b)(2) because they made no attempt to establish essential elements of the claims............................... 13

        3.    Plaintiff's counsel have made no argument for extending the law. .......... 18

    C.    Plaintiff's counsel violated Rule 11(b)(1) by bringing this case for an improper purpose. ................................................................................... 19

II.    This Court May Award Sanctions on Multiple Grounds. ................................................21

    A.    The Court should sanction Plaintiff's counsel under 28 U.S.C. § 1927 for engaging in vexatious and duplicative litigation. ................................................ 21

    B.    The Court should sanction Plaintiff's counsel under its inherent authority to forestall abusive litigation tactics......................................................................... 22

III.    Sanctions Should be Calibrated to Deter Abuse of the Judicial System...........................22

    A.    The Court should consider all available options for deterring misconduct. ......... 23

    B.    At a minimum, this Court should require Plaintiff's counsel to assume the full fees and costs of this litigation. ...................................................................... 24

IV.    This Court should award sanctions even if the case is remanded.....................................24

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*281 Care Comm. v. Arneson*,
766 F.3d 774 (8th Cir. 2014) ............................................................................ 7, 12

*Balthazar v. Atl. City Med. Ctr.*,
279 F. Supp. 2d 574 (D.N.J. 2003) .......................................................................... 23

*Barlow v. Colgate Palmolive Co.*,
772 F.3d 1001 (4th Cir. 2014) ................................................................................. 25

*Brubaker v. City of Richmond*,
943 F.2d 1363 (4th Cir. 1991) ................................................................................. 12

*Bryant v. Brooklyn Barbeque Corp.*,
130 F.R.D. 665 (W.D. Mo. 1990) ............................................................................ 20

*Bryant v. Brooklyn Barbeque Corp.*,
932 F.2d 697 (8th Cir. 1991) ............................................................................ 21, 24

*Burekovitch v. Hertz*,
No. 01-CV-1277 (ILG), 2001 WL 984942 (E.D.N.Y. 2001) .................................... 11

*Carman v. Treat*,
7 F.3d 1379 (8th Cir. 1993) ..................................................................................... 23

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ............................................................................................. 21, 22

*Clark v. United Parcel Serv., Inc.*,
460 F.3d 1004 (8th Cir. 2006) ..................................................................... 19, 21, 23, 24

*Coonts v. Potts*,
316 F.3d 745 (8th Cir. 2003) ................................................................................... 10

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ...................................................................................... 10, 19, 23, 25

*Corroon v. Reeve*,
258 F.3d 86 (2d Cir. 2001) ....................................................................................... 11

*Crookham v. Crookham*,
914 F.2d 1027 (8th Cir. 1990) ................................................................................. 11

*Donald J. Trump for President, Inc. v. Sec'y of Pa.*,
830 F. App'x 377 (3d Cir. 2020) .............................................................................. 24

*Donnelly v. Des Moines Register*,
   No. 4:25-cv-00150 (S.D. Iowa Nov. 6, 2025) ................................................................ 1, 7, 8

*Gibson v. City of Alexandria*,
   855 F. Supp. 133 (E.D. Va. 1994) ....................................................................... 12, 20

*Gordon v. Marrone*,
   573 N.Y.S.2d 105 (N.Y. Sup. Ct. 1991) ........................................................................ 20

*Harlan v. Lewis*,
   982 F.2d 1255 (8th Cir. 1993) ........................................................................................ 24

*Hernandez v. Joliet Police Dep't*,
   197 F.3d 256 (7th Cir. 1999) .......................................................................................... 12

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
   243 F.R.D. 322 (N.D. Iowa 2007) ............................................................................. 6, 19

*Igbanugo v. Minn. Off. of Laws. Pro. Resp.*,
   56 F.4th 561 (8th Cir. 2022) ........................................................................................... 19

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
   538 U.S. 600 (2003) ..................................................................................................... 4, 7

*In re Eastman*,
   No. SBC-23-O-30029 (State Bar Ct. of Cal. Rev. Dep't June 13, 2025) .............................. 24

*In re Engle Cases*,
   283 F. Supp. 3d 1174 (M.D. Fla. 2017) .......................................................................... 23

*In re Giuliani*,
   214 N.Y.S.3d 366 (App. Div. 2024) ............................................................................... 24

*In re Giuliani*,
   146 N.Y.S.3d 266 (App. Div. 2021) ............................................................................... 24

*Karl's Inc. v. Sunrise Computs., Inc.*,
   901 F.2d 657 (8th Cir. 1990) .......................................................................................... 14

*Koly v. Enney*,
   269 F. App'x 861 (11th Cir. 2008) ................................................................................. 12

*Lee v. First Lenders Ins. Services, Inc.*,
   236 F.3d 443 (8th Cir. 2001) .......................................................................................... 21

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962) ........................................................................................................ 22

*Manhart v. WESPAC Found., Inc.*,
   No. 24-cv-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) ......................................... passim

*Martin v. Automobili Lamborghini Exclusive, Inc.*,
   307 F.3d 1332 (11th Cir. 2002) ........................................................................................ 23

*Mendez v. Draham*,
   182 F. Supp. 2d 430 (D.N.J. 2002) ................................................................................... 23

*MHC Inv. Co. v. Racom Corp.*,
   323 F.3d 620 (8th Cir. 2003) ....................................................................................... passim

*Miller v. Bittner*,
   985 F.2d 935 (8th Cir. 1993) ............................................................................................ 10

*O'Connell v. Champion Int'l Corp.*,
   812 F.2d 393 (8th Cir. 1987) .............................................................................................. 9

*Ruszala v. Walt Disney World Co.*,
   132 F. Supp. 2d 1347 (M.D. Fla. 2000) ............................................................................ 12

*Schlafly v. Eagle F.*,
   970 F.3d 924 (8th Cir. 2020) ............................................................................................ 22

*Szabo Food Serv., Inc. v. Canteen Corp.*,
   823 F.2d 1073 (7th Cir. 1987) .......................................................................................... 25

*Tenkku v. Normandy Bank*,
   348 F.3d 737 (8th Cir. 2003) ............................................................................................ 21

*Truesdell v. S. Cal. Permanente Med. Grp.*,
   209 F.R.D. 169 (C.D. Cal. 2002) ...................................................................................... 11

*Trump v. Clinton*,
   653 F. Supp. 3d 1198 (S.D. Fla. 2023) ....................................................................... 19, 25

*Trump v. Clinton*,
   640 F. Supp. 3d 1321 (S.D. Fla. 2022) ............................................................................... 8

*Trump v. Selzer*,
   No. 4:24-cv-00449-RGE-WPK (S.D. Iowa Dec. 17, 2024) ............................................ passim

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
   441 F.3d 552 (8th Cir. 2006) ............................................................................................ 14

*United States v. Alvarez*,
   567 U.S. 709 (2012)................................................................................................... 4, 18

iv

*United States v. Dugan*,
  No. 2:25-cr-89 (E.D. Wisc. June 9, 2025) ...................................................................... 4

*Westfield Partners, Ltd. v. Hogan*,
  744 F. Supp. 189 (N.D. Ill. 1990) ................................................................................ 20

*Willy v. Coastal Corp.*,
  503 U.S. 131 (1992) ...................................................................................................... 25

*Zerger & Mauer LLP v. City of Greenwood*,
  751 F.3d 928 (8th Cir. 2014). ...................................................................................... 25

**Statutes**

28 U.S.C. § 1927................................................................................................................ 21, 24

Iowa Code
  § 714H.7............................................................................................................................. 3

**Rules**

Fed. R. Civ. P.
  9(b)...................................................................................................................................... 14
  11(a) ................................................................................................................................. 6, 9
  11(b)......................................................................................................................... 9, 10, 23
  11(b)(1) ............................................................................................................................ 9, 19
  11(b)(2) .................................................................................................................. 1, 6, 9, 18
  11(b)(3) .................................................................................................................................. 9
  11(c)..................................................................................................................................... 23
  11(c)(1) ............................................................................................................................... 10
  11(c)(2) ................................................................................................................ 1, 6, 10, 24
  11(c)(3) ............................................................................................................................... 10
  11(c)(4) ............................................................................................................................... 24

Model Rules of Pro. Conduct r. 3.1 (A.B.A. 2002) ........................................................... 9

S.D. Iowa Local Rule 5A(h) .............................................................................................. 9

**Other Authorities**

Press Release, Ctr. for Am. Rts.,
  Subscriber Sues Des Moines Register Over Fake News Poll (Jan. 7, 2025).................... 1, 2, 21

v

**INTRODUCTION**

Counsel for the putative plaintiff, Dennis Donnelly, filed this copycat action, mirroring one filed by President Trump, seeking to impose liability for the publication of what they call "fake news," a label that echoes campaign slogans but is not recognized in the law.[1] No court in any jurisdiction has ever upheld such a claim—a fact Donnelly's counsel has been on notice of since at least February 21, 2025.[2] Nevertheless, Plaintiff's counsel brought this action despite their obligation to ensure, before filing any claims, that their arguments are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Lawyers have an ongoing obligation to cease advocating baseless positions after learning they lack merit. *Id.* Yet Donnelly's counsel have persisted in the face of ample notice in multiple filings that this case lacks any legal basis and violates counsels' professional obligations.[3] After filing both the duplicative complaint and an amended complaint (ECF Nos. 1, 22), a failed effort

---

[1] Press Release, Ctr. for Am. Rts., Subscriber Sues Des Moines Register Over Fake News Poll (Jan. 7, 2025), https://americanrights.org/cases/subscribers-sue-des-moines-register-over-fake-news-poll [perma.cc/U6WV-TEGF].

[2] Defendants first pointed out the absence of any supporting case law or even theoretical support for the claims in their motion to dismiss in *Trump v. Selzer*, No. 4:24-cv-00449-RGE-WPK (S.D. Iowa Feb. 24, 2025) (ECF No. 33) ("*Trump I*"). Donnelly's counsel sought leave to file an amicus brief in that case in response to this motion, ECF No. 38, but this Court rejected it as not "useful or necessary" to the Court's determinations. ECF No. 62 at 3, *aff'd*, ECF No. 64.

[3] *See*, *e.g.*, Def. Selzer Mot. to Dismiss, *Donnelly v. Des Moines Register*, No. 4:25-cv-00150 (S.D. Iowa May 19, 2025), ECF No. 20-1 at 3 ("In the United States, there is no such thing as a claim for 'fraudulent news.'"); Renewed Mot. To Dismiss, ECF No. 33 at 4 (same); Reply Br., ECF No. 41 at 1–2 ("Donnelly remains unable to cite a *single case* that supports any of his theories of liability" and "is not even attempting to make 'a nonfrivolous argument for extending, modifying, or reversing existing law.'") (citing Fed. R. Civ. P. 11(b)(2)); 2-3 ("where are the cases?"). Pursuant to Rule 11(c)(2), Donnelly's counsel was served with an initial version of this motion on September 9, 2025, and is now being filed in this Court. It has been updated only to reflect record developments since September 9, and the motion's substance has not changed.

at an amicus brief in *Trump v. Selzer*, and most recently an opposition to motions to dismiss (ECF No. 36), Donnelly remains unable to cite *a single case* that supports any of his theories of liability, while ignoring the cases that have rejected them. Plaintiff's claims are not merely frivolous, but were filed for an improper purpose, and vexatiously multiply the filings before this Court. As earlier warnings have gone unheeded, Defendants now ask this Court to award appropriate sanctions, as set forth below.

## BACKGROUND

1.      On December 16, 2024, President Trump sued pollster J. Ann Selzer, her company (Selzer & Company) (collectively "Selzer"), the *Des Moines Register*, and its parent company (Gannett Co., Inc.) (collectively "Press Defendants") in the Iowa District Court for Polk County. The Press Defendants removed that petition to this Court the following day. *Trump I*, ECF Nos. 1 & 1-1. The complaint alleged that publication of the Iowa Poll on November 2, 2024, inaccurately finding that Democratic candidate Kamala Harris was then leading in the presidential race, violated the Iowa Consumer Fraud Act ("ICFA"), Iowa Code ch. 714H. *Trump I*, ECF 1-1.

2.      Three weeks later, this class action was filed in the Polk County court, purportedly on behalf of a *Des Moines Register* subscriber, alleging the same claim under the ICFA as in *Trump I*, and adding claims for fraudulent misrepresentation, "reckless negligent misrepresentation," negligent misrepresentation, and professional malpractice. ECF No. 1-1 at ¶ 130, ¶ 188.[4] In a press release announcing the case, CAR described it as "[b]uilding on President Trump's lawsuit" to impose liability on a "fake news poll." CAR Press Release, *supra* note 1.

---

[4] Counsel of record are Daniel Suhr, President of an organization called the Center for American Rights ("CAR"), and Iowa attorney Robert R. Anderson.

2

3.      The ICFA prohibits plaintiffs from filing a class action before receiving permission from the Iowa Attorney General, Iowa Code § 714H.7, but Donnelly's counsel filed the suit prior to receiving such approval, promising they would later provide a copy of the complaint to the Attorney General. ECF No. 1-1 at ¶ 113.

4.      The Press Defendants removed the action to this Court on April 25, 2025 (ECF No. 1).

5.      Donnelly's counsel have attempted to brief the issues in tandem with the issues in *Trump I*, and vice versa. On January 31, Trump filed an Amended Complaint. *Trump I*, ECF No. 23, which was later vacated by this Court's order. ECF No. 65. That Amended Complaint, and a later-filed "Revised Amended Complaint" (ECF No. 88) added two claims that were copied nearly word-for-word from Donnelly's claims for fraudulent misrepresentation and negligent misrepresentation. *Compare* Amend. Compl., *Trump I*, ECF No. 22 at ¶¶ 135–163 and ECF No. 88 at ¶¶ 116–144 *with* Pet., ECF No. 1-1 at ¶¶ 121–153.

6.      Selzer and the Press Defendants filed motions to dismiss in *Trump I* on February 21. *Trump I*, ECF Nos. 33, 35. Selzer's motion pointed out that claims for "fake news" lacked any supporting case law or even theoretical support, and that, even if such a claim existed, Plaintiff failed to plead the essential elements of the torts alleged. *Trump I*, ECF No. 33 at 1–2, 5–21. The Press Defendants' motion likewise pointed out that there was no legal basis for Trump's claims, that Plaintiff had failed to establish the necessary elements of both statutory and common law claims, and that the First Amendment barred any relief. *Trump I*, ECF No. 35 at 1–2, 13–39, 40–48.

7.      On March 21, Donnelly's counsel moved to file an amicus brief in opposition to the motions to dismiss. *Trump I*, ECF No. 38. They identified themselves as counsel in *Donnelly*

3

*v. Des Moines Register*, indicated they had consulted with Trump's counsel, and represented they would address the First Amendment question and "cite some of the same authorities." *Id*. at 2. *See* Proposed Amicus Brief, *Trump I*, ECF No. 38-1 at 5 n.1 (citing Press Defendants' Motion to Dismiss).

8.      The Court denied counsels' request for leave to file in *Trump I*, finding the proffered amicus brief would not be "useful or necessary" to the Court's determinations. *Trump I*, ECF No. 62 at 3. Donnelly's counsel appealed that decision on May 1, asserting its "expertise in" the "novel" and "crucial First Amendment issues" involved, and asserting this was not a "copycat brief." *Trump I*, ECF No. 63 at 2–3. This Court denied the appeal nineteen minutes later. *Trump I*, ECF No. 64.[5]

9.      On May 19, Selzer moved to dismiss the initial petition in *Donnelly*. Br. in Supp. of Mot. to Dismiss, ECF No. 20-1 ("First MTD Br."). The motion pointed out the First Amendment bars Plaintiff's legal theory (*id.* at 3–12), explained why the "fraud" framing was foreclosed by binding Supreme Court precedent (*id.* at 9–10 [citing *United States v. Alvarez*, 567 U.S. 709, 722–23 (2012) and *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 617, 620–21 (2003)]), and identified Donnelly's inability to plead multiple essential elements of each of his tort claims (*id.* at 12–20).

10.      Donnelly's counsel filed the First Amended Complaint on June 2, two weeks after Selzer's May 19 motion to dismiss Donnelly's first pleading, and a month and a half after receiving the April 15 reply briefs in support of motions to dismiss in *Trump I*, which pointed out the same

---

[5] Notwithstanding this adverse decision, in a subsequent case Donnelly's counsel listed the rejected brief in *Trump I* to support its claim that CAR "frequently submits amicus briefs in federal courts." Proposed Amicus Br. of Ctr. for Am. Rts. 4, *United States v. Dugan*, No. 2:25-cr-89 (E.D. Wisc. June 9, 2025), ECF No. 32-1.

defects in the Trump and Donnelly theories.[6] Amend. Compl., ECF No. 22. Donnelly's First Amended Complaint still failed to cite any precedent supporting a claim for "fake news."

11.     The First Amended Complaint offered few substantive revisions in response to the first motion to dismiss and the briefing in *Trump I*. The revisions focused primarily on the *Register*. *E.g.*, *id.* at ¶¶ 124–32. The only substantive changes referencing Selzer alleged Donnelly relied on her expertise and that she "conspired" with the *Register* by providing the poll—allegations already made in the initial pleading. *Compare* Amend. Compl., ECF No. 22 at ¶¶ 139, 162–163, 196–97 *with* Pet., ECF No. 1-1 at ¶¶ 10, 76–82, 129, 158.

12.     On June 16, Selzer moved to dismiss the First Amended Complaint, again pointing out the First Amendment bar and Donnelly's inability to plead essential elements of his causes of action. ECF No. 33. The motion explained why under First Amendment jurisprudence "there is no such thing as a claim for 'fraudulent news,'" *id.* at 4 and noted Donnelly's failure to produce a single case to the contrary. *Id.* at 5–12. It further explained how the Complaint failed to plead the required elements of the various claims. *Id.* at 10, 14–20.

13.     On June 16, the Press Defendants also moved to dismiss the First Amended Complaint, Press Defs.' Br. in Supp. of Mot. to Dismiss, ECF No. 32, arguing that Plaintiff's claims are barred by the First Amendment, *id.* at 18–26, and that Plaintiff failed to plead the required elements of his claims. *Id.* at 27–46.

14.     On June 30, Donnelly's counsel filed a consolidated response to both Selzer's second Motion to Dismiss and the Press Defendants' Motion to Dismiss. ECF No. 36. Donnelly's response equated causes of action for "fake news" with product liability actions like claims against

---

[6] Defs.' Reply Brs. in Supp. of Mots. to Dismiss, *Trump I*, ECF Nos. 57, 61. Donnelly's counsel had notice of these arguments because they received ECF notices of filings in *Trump I* after moving to file an amicus brief.

tainted food without regard to First Amendment considerations. *Id.* at 6, 30, 32, 38. However, counsel remained unable to cite any case supporting this products liability theory of liability for news.

15.    On July 7, both Selzer and the Press Defendants filed replies in support of their respective motions to dismiss. ECF Nos. 41, 42. Selzer's reply brief pointed out that, notwithstanding multiple opportunities to cite supporting law, Donnelly's counsel remained unable to cite any precedent upholding claims against "fake news," and that the arguments made fell short of the requirements of Rule 11(b)(2). ECF No. 41 at 1–3 (citing Fed. R. Civ. P. 11(b)(2)). It also described the ways Donnelly's counsel ignored binding First Amendment authority and failed to plead essential elements of the asserted claims. *Id*. at 2–18. The Press Defendants similarly highlighted the absence of any precedent supporting Donnelly's constitutional analysis as well as the facial deficiency of his claims. *See generally* ECF No. 42.

16.    On September 9, 2025, pursuant to Rule 11(c)(2), Selzer served Donnelly's counsel with this motion for sanctions.

17.    On September 29, 2025, counsel for Plaintiff and counsel for Defendants met and conferred regarding the sanctions motion that was served on September 9, 2025. [7]

18.    Following the call between counsel on September 29, Plaintiff's counsel filed an errata, adding their signatures to their previously filed motion to dismiss response brief, as required by Fed. R. Civ. P. 11(a). ECF No. 46.

19.    On October 22, 2025, this Court denied Plaintiff's motion for remand. ECF No. 47.

---

[7] Paragraphs 17–28 of this motion were added to account for events that transpired after service of the initial draft on September 9. The motion's substance is unchanged. *See Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 337-340 (N.D. Iowa 2007) (Rule 11 "safe harbor" requirement is satisfied even if motion as filed is not identical to the earlier served motion where the grounds for seeking sanctions are the same).

20. On November 6, 2025, this Court granted Defendants' motions to dismiss all of Plaintiff's claims with prejudice. ECF No. 48.

21. The Court held that the First Amendment barred all five counts of Donnelly's complaint. *Id.* at 11–12. It found that "[e]ach of Donnelly's claims must satisfy First Amendment scrutiny because 'there is no free pass around the First Amendment,'" *id.* at 6 (quoting *281 Care Comm. v. Arneson*, 766 F.3d 774, 783 (8th Cir. 2014)), and "[a] party cannot evade First Amendment scrutiny by '[s]imply labeling an action one for 'fraud.'" *Id.* (quoting *Madigan*, 538 U.S. 600 at 617). The Court concluded that "Donnelly invokes mere buzzwords and speculation and falls short of nudging his actual malice claim across the line from conceivable to plausible." *Id.*

22. Additionally, the Court found Donnelly's allegations were insufficient to state a claim for relief as a matter of law for each of his claims.

23. First, the Court rejected the fraudulent representation claim, explaining that "no false representation was made" because "the results of an opinion poll are not an actionable false representation merely because the anticipated results differ from what eventually occurred." *Id.* at 12. It observed that Donnelly "fails to cite any authority finding an opinion poll of a future event constitutes a false factual assertion." *Id.* at 13.

24. Second, the Court rejected Donnelly's negligent misrepresentation claim "because a pollster and a general circulation newspaper reporting on the results of an election poll are not in the business or profession to a limited class of others who knowingly rely on the information." *Id.* at 14.

25. Third, the Court found Donnelly's claim under the Iowa Consumer Fraud Act fails "because publishing the results of a political opinion poll that matches the co-published

methodology is not an unfair or deceptive practice" and that any such claim "would face significant resistance from the First Amendment." *Id.* at 15. In this regard, the Court noted that "Donnelly cites to no law which establishes the mere inaccuracy of an opinion poll constitutes an unfair practice." *Id.* at 16.

26.    Fourth, the Court dismissed Donnelly's claim for professional malpractice because "Donnelly fails to cite to any Iowa law imposing such a duty on newspapers, and courts generally find that no such duty exists." *Id.* at 18. It found "Donnelly's novel attempt to impose liability for news prediction" is like imposing liability on weather forecasters, and that doing so would be an "absurdity." *Id.* at 18–19.

27.    Fifth, the Court dismissed Plaintiff's claim of "voting interference," which relied upon a single inapposite case from 114 years ago, holding it is not a "cognizable cause of action under Iowa law." *Id.* at 19.

28.    Finally, this Court dismissed Plaintiff's civil conspiracy claim because civil conspiracy "is not in itself actionable" and "Donnelly fails to adequately allege any underlying tort." *Id.* at 20.

## ARGUMENT

This case is a prime example of "frivolous … political grievances masquerading as legal claims" and a "deliberate use of the judicial system to pursue a political agenda." *Trump v. Clinton* (*Clinton I*), 640 F. Supp. 3d 1321, 1332–35 (S.D. Fla. 2022), *appeal docketed*, No. 22-13410 (11th Cir. Oct. 11, 2022). This Court should issue sanctions—whether under Rule 11, 28 U.S.C. § 1927, or its inherent authority—to deter such abuse of the judicial process.

**I.      This Court Should Award Sanctions Under Rule 11 to Deter Frivolous Litigation That Abuses the Legal System.**

      **A.      Rule 11 requires counsel to act as gatekeepers against meritless filings and arguments.**

Attorneys are officers of the court and are required to sign the pleadings they file as certification they adhere to professional standards.[8] An attorney who presents a "pleading, written motion, or other paper" certifies to the Court "that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document satisfies several requirements. Fed. R. Civ. P. 11(b). First, the "claims" or "other legal contentions are warranted by existing law or by a nonfrivolous argument for extending" or "modifying" the law. *Id.* 11(b)(2). Second, it "is not being presented for any improper purpose, such as to harass" or increase the cost of litigation. *Id.* 11(b)(1).[9]

Rule 11 requires an adequate investigation of both the facts and the applicable law before filing suit.[10] Members of the Bar must bring only those claims in which "a reasonable and

---

[8] As originally drafted and served, this motion observed that Plaintiff's Resistance Brief violates Rule 11(a) because it is not "signed by at least one attorney of record in the attorney's name." Fed. R. Civ. P. 11(a); *see also* LR 5A(h) ("All documents filed electronically must have the filer's name stated in a signature block, with an imaged signature or an '/s/' in the place of the filer's signature."). Selzer's reply brief first called this omission to Donnelly's attention on July 8, 2025. ECF No. 41 at 1, n.1. This aspect of Plaintiff's Rule 11 violation was addressed by the errata filed on September 29. ECF No. 46.

[9] Additionally, the Model Rules of Professional Conduct provide, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Model Rules of Pro. Conduct r. 3.1 (A.B.A. 2002).

[10] Fed. R. Civ. P. 11(b). This obligation turns on "whether the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading." *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987); *see also* Fed. R. Civ. P. 11(b)(3) (requiring certification that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").

competent attorney would believe in the merit of an argument." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) (quoting *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993)) (affirming sanctions for filing and pursuing state-law claims when plaintiff would not be able to prove a required element). This professional obligation is ongoing: After the initial filing, attorneys have a duty to avoid "later advocating" a position after learning it is not meritorious. Fed. R. Civ. P. 11(b); *see MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620 (8th Cir. 2003) (affirming sanctions for persisting in asserting legally unjustifiable claims).

Sanctions may be imposed by motion or on the Court's own initiative. Fed. R. Civ. P. 11(c)(2)–(3). District courts have broad discretion to evaluate whether "a sanction is warranted to serve Rule 11's goal of specific and general deterrence," as district courts are "on the front lines of litigation" and "familiar with the issues and litigants." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402, 404 (1990). Penalties may include monetary sanctions on the attorneys and their firms and a range of non-monetary sanctions. Fed. R. Civ. P. 11(c)(1). An award of sanctions under Rule 11 "necessarily requires an examination of the underlying factual and legal claims." *Racom Corp.*, 323 F.3d at 624.

**B.  Donnelly's claims are not warranted under existing law and his counsel makes no nonfrivolous argument for extending the law.**

Plaintiff's complaint and supporting briefs filed in this case violate Rule 11. None of the claims asserted against conducting and publishing the results of an election poll are supported by existing case law, a fact made known to Plaintiff's counsel even before the First Amended Complaint was filed. In addition to the facial First Amendment defects in Plaintiff's case, his Complaint fails even to allege the essential elements of the asserted claims. "Rule 11 is violated when it is clear under existing precedents that a pleading has no chance of success and there is no

reasonable argument to extend, modify, or reverse the law as it stands." *Corroon v. Reeve*, 258 F.3d 86, 92 (2d Cir. 2001).

> **1. Plaintiff's counsel have persisted in advocating frivolous claims despite ample notice the First Amendment bars Donnelly's claims.**

Plaintiff's counsel have been on notice for more than nine months that no court has ever upheld a claim for "fake news" and that the First Amendment bars such actions. *Trump I*, ECF No. 33 at 1–2, 5–13. Over three months after being so informed, Donnelly's counsel nevertheless filed an Amended Complaint in this action that still failed to identify any legal authority suggesting the First Amendment would permit such claims. *See* ECF No. 33 at 4–12. And, after Selzer's motion to dismiss challenged Plaintiff's counsel to name even one case that supports their position, they still have failed to do so. *See* ECF No. 41 at 1–3. In such circumstances, "plaintiff's decision to bring this action and persist in its litigation even after being informed of its total lack of merit must result i[n] the imposition of sanctions." *Burekovitch v. Hertz*, No. 01-CV-1277 (ILG), 2001 WL 984942, at *13 (E.D.N.Y. 2001) ("plaintiff failed to identify or discuss any authority" supporting fraud action); *see Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 177 (C.D. Cal. 2002) (sanctions imposed where attorney presented "absolutely no authority" undermining a clear line of precedent).

To begin with, Plaintiff's counsel were obligated to identify a cognizable cause of action, and "fake news" does not qualify. ECF No. 33 at 4 ("In the United States there is no such thing as a claim for 'fraudulent news.' No court in any jurisdiction has ever held such a cause of action might be valid, and few plaintiffs have ever attempted to bring such outlandish claims."); *see Crookham v. Crookham*, 914 F.2d 1027, 1029–30 (8th Cir. 1990) (affirming sanctions for filing claim where no private right of action existed). The First Amendment bars such claims (ECF No. 33 at 4–12), and an attorney violates Rule 11 by pursuing claims for which there is a complete

defense. *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 264–65 (7th Cir. 1999) (affirming sanctions where plaintiff's attorney overlooked "obvious" Eleventh Amendment defense and failed to dismiss defendant after it was brought to his attention); *Brubaker v. City of Richmond*, 943 F.2d 1363, 1383–85 (4th Cir. 1991) (affirming sanctions where statute of limitations defense rendered defamation claim groundless in law); *see also, e.g.*, *Ruszala v. Walt Disney World Co.*, 132 F. Supp. 2d 1347, 1355 (M.D. Fla. 2000) (holding counsel violated Rule 11 by persisting in claims even after learning the defendant police officer had probable cause, which provided "an absolute defense to the claims asserted").

The First Amendment provides a complete defense against claims premised on protected expression, and courts will impose sanctions under Rule 11 for suits targeting speech. In *Gibson v. City of Alexandria*, for example, the court granted the defendant's motion to dismiss and imposed sanctions for a suit brought to chill criticism of a local business, explaining that "[t]o permit lawsuits of this kind to go forward would strike a devastating blow to citizens' willingness to express their views publicly or to lobby their government." 855 F. Supp. 133, 136 (E.D. Va. 1994). The court observed that the plaintiffs' counsel had repeatedly ignored attempts to "alert[] plaintiffs to the First Amendment defense." *Id.* at 136–37; *see also Koly v. Enney*, 269 F. App'x 861, 864–65 (11th Cir. 2008) (*per curiam*) (reversing district court's denial of motion for Rule 11 sanctions in libel suit over protected speech). In this case, Defendants have repeatedly alerted Plaintiff's counsel to the fact that the Eighth Circuit has held the fraud exception to the First Amendment does not encompass allegations of "fraud on the electorate." *281 Care Comm. v. Arneson*, 766 F.3d 774, 782–96 (8th Cir. 2014); *see* ECF No. 33 at 9; ECF No. 41 at 8. Yet their failure to cite supporting authority persists.

12

Donnelly's refusal to address the absence of support even predates the filing of the Amended Complaint and has continued in each of his filings on this docket.[11] In addition to the arguments set forth in *Trump I* (in which Donnelly's counsel unsuccessfully attempted to participate), Selzer set forth the absence of any legal basis for Plaintiff's claims in this case in a motion to dismiss filed on May 19. First MTD, ECF No. 20-1 at 3–20. Nevertheless, counsel for Donnelly filed a First Amended Complaint on June 2 without altering the asserted claims. *See* Amend. Compl., ECF No. 22 at ¶¶ 95–105. And, after Selzer moved to dismiss the First Amended Complaint and again pointed out the frivolousness of Donnelly's claims, ECF No. 33 at 1–10, Plaintiff's counsel remained unable to cite any authority supporting their theories of liability. ECF No. 41 at 1–3 ("Donnelly remains unable to cite a *single case* that supports any of his theories of liability."). But as the Eighth Circuit has held, it violates Rule 11 not only when counsel "fail[s] to adequately research the claim" in the first place, but when they "persist[] in asserting claims and defenses" in resisting dispositive motions. *Racom Corp.*, 323 F.3d at 626–27.

### 2. Plaintiff's counsel violated Rule 11(b)(2) because they made no attempt to establish essential elements of the claims.

Even if the First Amendment did not provide an absolute bar, Plaintiff's counsel violated Rule 11(b)(2) by failing to advance non-frivolous arguments supporting the essential elements of the asserted statutory and common-law claims. *See Racom Corp.*, 323 F.3d at 624–27 (affirming sanctions where attorneys failed to allege key elements of fraud claims); *see also Karl's Inc. v.*

---

[11] For example, in the later-rejected amicus brief in *Trump I*, Plaintiff's counsel acknowledged a Washington appellate court decision dismissing an almost identical consumer fraud theory where the court said it could find "no authority for the proposition" that the First Amendment would permit such a claim. Counsel waved away this holding by observing that the Washington court's inability to locate supporting cases "does not mean that such authority does not exist." Amicus Br. in *Trump I*, ECF No. 38-1 at 5–6 n.1. But Plaintiff's counsel must do better than to assert "there must be a case out there somewhere." To date, they have cited none.

*Sunrise Computs., Inc.*, 901 F.2d 657, 660 (8th Cir. 1990) (where plaintiff could not establish necessary elements for its claims, refraining from imposing sanctions only because the defendant could recover attorney's fees under a contract). Bottom line, "Plaintiff cannot use the wrong tort as a backdoor into allowing the public to harass Defendants with a class action where the law would prohibit a claim under the correct tort from proceeding." *Manhart v. WESPAC Found., Inc.*, No. 24-cv-08209, 2025 WL 2257408 at *8, *15–18 (N.D. Ill. Aug. 7, 2025) (dismissing complaint with prejudice and awarding sanctions against frivolous tort claim seeking to punish public protest).

The Eighth Circuit's decision in *Racom Corp.* is particularly instructive. A law firm defending its corporate client against a contract claim filed counterclaims alleging the plaintiff had committed fraud to take over the client's business. 323 F.3d at 621–23. The district court imposed sanctions *sua sponte* after observing counsel failed to plead "a specific allegation of any representation that was false or a particular concealed fact," the foundational "elements of fraud and fraudulent inducement." *Id.* at 624–25. Although the firm argued that it should have been permitted to seek discovery into its fraud claims, the district court "properly" determined the allegation had no "legal grounds." *Id.* at 625.[12]

The same is true here. As in *Racom*, Plaintiff's counsel have failed to allege the basic elements of his fraud-based claims. Selzer MTD Br., ECF No. 33 at 12–22 & Selzer Reply Br., ECF No. 41 at 11–18. Notably, Donnelly's counsel cannot identify the same threshold element

---

[12] The requirement that a plaintiff identify the misrepresentation is not only an element of the claim, but is also required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b) (requiring fraud claims to be stated with "particularity"); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (must identify the "time, place, and content" of the misrepresentation). But Donnelly's counsel cannot identify a false statement by Selzer inducing him to purchase a subscription to the *Register*. Nor could he, as he conceded he subscribed long before Selzer conducted the poll. Amend. Compl., ECF No. 22 at ¶ 8.

that warranted sanctions in *Racom*: a "specific allegation" of false representation by the defendant. 323 F.3d at 624–25; ECF No. 33 at 10, 14–15; ECF No. 41 at 12, 16–17. Additionally, for Donnelly's Iowa Consumer Fraud Act claim, his counsel cannot identify any relevant representation by Selzer, or any "advertisement, sale, or lease"—by Selzer—of "consumer merchandise." ECF No. 41 at 11–13.

Sanctions are warranted here, just as in *Manhart*, where a plaintiff brought a class action alleging false imprisonment when protest activity blocked his way to O'Hare Airport and made him miss a flight. The court observed that plaintiff's counsel "d[id] not cite any legal source or historical authority suggesting that the tort of false imprisonment was ever used at common law in any factual circumstances bearing any resemblance to his claim here." 2025 WL 2257408, at \*13. "Rule 11 imposes a duty on parties to conduct 'a reasonable inquiry into the law,'" and this standard is not met when a plaintiff "premise[s] his claim for false imprisonment on a section of the Illinois Vehicle Code that pertains to abandoning vehicles without being aware of how the Illinois Vehicle Code defines an abandoned vehicle." *Id.* at \*16 (internal citations omitted). The same conclusion follows here, where Plaintiff's counsel assert violations of common law and the Iowa Consumer Fraud Act without regard to how the law defines "consumer merchandise" and without citation to any authority that could apply to election polling. *See* ECF No. 33 at 13–14; ECF No. 41 at 11–13.

Selzer identified fatal deficiencies with each of Donnelly's claims, yet Plaintiff's counsel have persisted in advocating them, in most cases without bothering to address the problems.

**Count I (fraudulent misrepresentation):** Selzer's first motion to dismiss pointed out that Donnelly could not plead six of the eight elements of fraudulent misrepresentation. ECF No. 20-1 at 14–15. But Donnelly's Amended Complaint made these elements even *less* tenable, relying on

15

statements by the *Register*—not Selzer—and baldly asserting Plaintiff read about the poll and "credited its findings," without explaining how the poll harmed him. Amend. Compl., ECF No. 22 at ¶¶ 124–32, 135. As Selzer has repeatedly pointed out, a "representation" must induce the transaction to be actionable, yet Plaintiff's counsel are unable to identify any statement *by Selzer* that induced Plaintiff to subscribe to the *Register*. *See* ECF No. 41 at 16–18. In total, Plaintiff's counsel failed to even *address* seven of the eight elements of fraudulent misrepresentation as they pertain to Selzer. *See* ECF No. 33 at 14–15; ECF No. 41 at 16–18.

**Alternate Count I (negligent misrepresentation in a reckless degree):** Selzer pointed out how Donnelly's "alternate" count was based on two nonexistent torts—first, something called "reckless negligent misrepresentation," and then, in the Amended Complaint, "negligent misrepresentation in a reckless degree." ECF No. 20-1 at 16; ECF No. 33 at 16. With respect to Plaintiff's allegations of negligence, Selzer's first motion to dismiss identified the failure to identify any legal duty she owed to Plaintiff. First MTD Br., ECF No. 20-1 at 16–17, 19. The Amended Complaint added no allegations regarding any duty Selzer owed to him. Selzer's second motion to dismiss again pointed out this basic defect, adding that Donnelly could not plead *any* element of a negligent misrepresentation claim. ECF No. 33 at 16–20. Nevertheless, Donnelly's resistance brief failed to address this problem and continued to ignore the rule that newspapers do not owe a duty of care to the public. *See* ECF No. 41 at 13–16.

**Count II (ICFA):** Selzer's first motion to dismiss observed that the ICFA does not apply to services such as election polling and that Donnelly's counsel did not identify any false statement *Selzer* made about a "material fact" to induce Plaintiff to buy "consumer merchandise" and that *Selzer* was not selling "consumer merchandise" at all. ECF No. 20-1 at 12–14. The Amended Complaint alleged only that the *Des Moines Register* (but not Selzer) induced Donnelly into

buying a subscription through statements it would provide "reliable information." Amend. Compl., ECF No. 22 at ¶ 162. Selzer's second motion again pointed out the absence of any relevant statement about a "material fact" (ECF No. 33 at 9–10, 14), and Donnelly's counsel offered no response on that element, failing to mention Selzer *at all*. ECF No. 36 at 36. Plaintiff's counsel could not explain how Donnelly could be a "consumer" of the Iowa Poll within the ICFA's meaning, and even conceded the poll was not "consumer merchandise." *Id.* at 37; *see* ECF No. 41 at 11–12.

**Count III (professional malpractice):** Selzer's first motion to dismiss made clear that professional malpractice standards do not apply here because newspapers are not in the business of rendering professional advice to particular clients and do not have a legal duty toward general readers. ECF No. 20-1 at 16–17, 19. The Amended Complaint did not correct this deficiency or add any allegations to substantiate a malpractice claim (even if one applied here), as Selzer's second motion to dismiss noted. ECF No. 33 at 16–20. Donnelly's resistance brief failed to show how the elements of a negligence claim could be met in these circumstances or address the duty of care issue. ECF No. 41 at 13–16.

**Count IV (voter interference)**: Donnelly's counsel has been unable to cite a single case suggesting this tort might apply to news stories. *See* ECF No. 33 at 20–21; ECF No. 41 at 18. Although Selzer's first motion to dismiss pointed out that Donnelly's claim for "voting interference" fell short of Iowa law and Restatement (Second) of Torts § 865 because it did not prevent Donnelly (or anyone) from voting, ECF No. 20-1 at 20, Plaintiff's counsel made no changes to this count in the Amended Complaint. Selzer again pointed out this obvious defect, ECF No. 33 at 20–21, but Donnelly's resistance brief did not respond at all. *See* ECF No. 41 at 18.

**Count V (civil conspiracy)**: Plaintiff's counsel failed to identify any predicate tort supporting an actionable conspiracy claim. ECF No. 33 at 21–22. Donnelly's counsel has offered nothing to support this count and has only undermined any possible conspiracy claim by stating in his resistance brief that Donnelly "has not pled anything yet about the motives of Dr. Selzer or the *Register*." ECF No. 41 at 18 (quoting Pl. Opp. at 43).

### 3. Plaintiff's counsel have made no argument for extending the law.

Plaintiff's failure to locate a single case supporting his theories of liability (for any of the five claims) is not necessarily fatal; Rule 11 permits counsel to advocate changing or extending the law. Fed. R. Civ. P. 11(b)(2). "A creative lawyer may be able to make a non-frivolous argument that there is a tort available that should be expanded to encompass Defendants' conduct, and such an argument would be permissible under Rule 11 (if ultimately unsuccessful)." *Manhart*, 2025 WL 2257408, at *16. But that is not what is happening here. Donnelly's counsel have never suggested the law should be changed, much less advanced any non-frivolous arguments for doing so. Instead, they have claimed—insisted, really—that their view *is* the law.

They have argued that Donnelly can bring claims for "fake news" under a product liability theory, the same as if he were bringing an action for a dead mouse in a can of Mountain Dew, ECF No. 36 at 6, 30, 32, 38, and that "the First Amendment's exception for 'defamation' is not a strict category but encompasses any action for 'legally cognizable harm associated with a false statement.'" *Id.* at 12. But such claims are frivolous and do not evince a reasonable or good faith inquiry into the law. As Selzer pointed out, ECF No. 41 at 3–4, Plaintiff's product liability theory is not the law, and his assertion that he may bring a claim for any "legally cognizable harm associated with a false statement" distorts what the Supreme Court held in *United States v. Alvarez*, 567 U.S. 709 (2012). In fact, *Alvarez* found *the opposite* of what Donnelly asserts. ECF No. 41 at 9–10 (quoting *Alvarez*, 567 U.S. at 719–20).

18

Even if Donnelly's counsel were trying to make a good faith argument to extend the law, Rule 11 does not permit parties "to make false representations of law in support of [their] novel legal arguments." *Manhart*, 2025 WL 2257408, at *16. Counsel are not permitted to take "a 'throw spaghetti at the wall and see what sticks' approach." *Id.* at *17. This is not a case of creative but overzealous legal advocacy. As the Eighth Circuit has cautioned, "Rule 11 embraces the idea that on occasion attorneys engage in litigation tactics that are unjustifiable within the broad bounds of our adversarial system, and that our system does not tolerate such tactics." *Racom Corp.*, 323 F.3d at 626–27 (citing *Cooter & Gell*, 496 U.S. at 393).

### C.      Plaintiff's counsel violated Rule 11(b)(1) by bringing this case for an improper purpose.

It is a plain abuse of the judicial process to file a "Complaint and Amended Complaint … to advance a political narrative; not to address legal harm caused by any Defendant." *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1211 (S.D. Fla. 2023), *appeal docketed*, No. 23-10387 (11th Cir. Feb. 6, 2023) (*Trump v. Clinton II*). Rule 11 broadly prohibits attorneys from advancing "*any* improper purpose, such as to harass" an opposing party. Fed R. Civ. P. 11(b)(1) (emphasis added). Improper purposes may include claims that, like this one, are "motivated by retaliatory animus," where the "deterrence rationale for Rule 11 sanctions [is] particularly salient." *Igbanugo v. Minn. Off. of Laws. Pro. Resp.*, 56 F.4th 561, 567 (8th Cir. 2022).

The Eighth Circuit has found a party violates Rule 11(b)(1) when it uses litigation "to force the opposition either to yield to its position or be crushed under a great weight of misstated factual assertions and drowned in a sea of bombast." *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1010–11 (8th Cir. 2006). A court can infer improper purpose where a case is filed for a nakedly partisan purpose (as here), particularly where counsel cannot demonstrate "any basis for a belief in the validity of the claims." *Ideal Instruments, Inc.*, 243 F.R.D. at 345 (citing *Racom Corp.*, 323

19

F.3d at 627); *see Manhart*, 2025 WL 2257408, at *15 ("Plaintiff's filings were presented for the improper purpose of harassment and … Plaintiff made legal contentions that were neither supported by existing law nor nonfrivolous arguments in favor of the extension or modification of existing law.").

And it is clearly an improper purpose to use litigation to suppress protected speech by forcing the defendant to incur the trouble and expense of defending against the suit. *See, e.g.*, *Westfield Partners, Ltd. v. Hogan*, 744 F. Supp. 189, 192–93 (N.D. Ill. 1990) (imposing sanctions where complaint was "based upon nothing more than defendants' exercise of" First Amendment rights); *Gibson*, 855 F. Supp. at 136–37 (imposing sanctions where "plaintiffs' counsel continued to ignore the First Amendment issue and argued law that was irrelevant"); *Gordon v. Marrone*, 573 N.Y.S.2d 105, 109 (N.Y. Sup. Ct. 1991), *aff'd*, 616 N.Y.S.2d 98 (N.Y. App. Div. 2d Dept. 1994) (sanctions merited where the complaint, while colorable, was filed in retribution for a speech opposing petitioner's redevelopment project).

Donnelly's case is a prime example of misusing the legal process to punish a perceived political opponent, as evidenced by his request for punitive damages for the "crime" of conducting an inaccurate election poll and publishing the results. Amend. Compl., ECF No. 22 at ¶¶ 199–206. *Compare Manhart*, 2025 WL 2257408, at *15 ("Plaintiff's improper purpose is evident from the SAC," which was "rife with allegations that are irrelevant to Plaintiff's stated causes of action" over a disruptive protest and where Plaintiff had "urged the Court to 'punish[] [Defendants] without remorse or hesitation.'" (alterations in original)). Even if Donnelly's counsel had been able to point to a colorable claim, it is nevertheless sanctionable when brought for an improper purpose. *See e.g.*, *Bryant v. Brooklyn Barbeque Corp.*, 130 F.R.D. 665, 670 (W.D. Mo. 1990) (even if "a reasonable basis existed" for the complaint, sanctions were warranted for filing a

20

pleading "for an improper purpose" where the complaint was "filed solely to attract publicity to plaintiff's claims and to harass defendants"), *aff'd* 932 F.2d 697 (8th Cir. 1991).

## II.    This Court May Award Sanctions on Multiple Grounds.

Rule 11 is not the only tool at the Court's disposal to sanction abusive litigation tactics. It may also employ 28 U.S.C. § 1927 to assess excess costs, expenses, and attorney's fees against any attorney who engages in duplicative litigation, and it also has inherent authority to discipline counsel or others if other sources of sanctions authority are not "up to the task." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

### A.    The Court should sanction Plaintiff's counsel under 28 U.S.C. § 1927 for engaging in vexatious and duplicative litigation.

Plaintiff's copycat action warrants sanctions under Section 1927, which provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. This law exists to deter attorneys from multiplying proceedings without a valid purpose. Thus, in *Lee v. First Lenders Insurance Services, Inc.*, the Eighth Circuit affirmed sanctions for the filing of baseless class action claims, which forced defendants to "incur additional costs to defend the case as a class action." 236 F.3d 443, 445 (8th Cir. 2001) . Sanctions under the statute are appropriate when an attorney's conduct, "viewed objectively, manifests either intentional or reckless disregard" for the judicial process. *Clark*, 460 F.3d at 1011 (quoting *Tenkku v. Normandy Bank*, 348 F.3d 737, 743 (8th Cir. 2003)).

Here, the entire point of Donnelly's litigation is to piggyback on the case President Trump already filed against the same defendants. Both by definition and frank admission, the case is duplicative. *See supra* note 1 (CAR Press Release describing purpose as "[b]uilding on President Trump's lawsuit"). The claims are frivolous (and therefore vexatious) for the reasons already set

21

forth, *see supra* 8–21, and they advance no plausible theory under which the Plaintiff could obtain any relief from Selzer, *see supra* 13–21. Under these circumstances, this Court should require Plaintiff's counsel to pay for the excess costs resulting from their abuse of the judicial process.

> **B.     The Court should sanction Plaintiff's counsel under its inherent authority to forestall abusive litigation tactics.**

Rule 11 and Section 1927 do not exhaust the potential avenues for awarding sanctions. Courts also have inherent authority to address abuses of the judicial process. *Chambers*, 501 U.S. at 44–45. This power arises not from rule or statute, but from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 49 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). It also exists to ensure that attorneys who practice before courts adhere to their ethical and professional obligations. *Id.* at 43. This inherent power "extends to a full range of litigation abuses" and encompasses a variety of potential remedies. *Id.* at 46. Accordingly, a court may draw on its inherent authority to address any misconduct not otherwise adequately addressed by Rule 11 or Section 1927. *See Schlafly v. Eagle F.*, 970 F.3d 924, 937–38 (8th Cir. 2020) (affirming fee award under court's inherent authority). Accordingly, to whatever extent Plaintiff's counsels' abusive tactics are not specifically covered by federal rule or statute, the Court should use its inherent authority to ensure compliance.

## III.    Sanctions Should be Calibrated to Deter Abuse of the Judicial System.

The purpose of sanctions is to deter frivolous pleadings, ensure adherence to judicial rules, and to reduce wasteful and unnecessary litigation. This Court has a range of potential tools by which to pursue that objective, whether sanctions are imposed under Rule 11, 28 U.S.C. § 1927, or the Court's inherent authority.

**A.       The Court should consider all available options for deterring misconduct.**

This Court has broad discretion to decide what type of sanctions might be necessary or appropriate to deter misuse of the judicial process. *Cooter & Gell*, 496 U.S. at 399 ("[T]he district court must exercise its discretion to tailor an 'appropriate sanction.'"). Sanctions may include striking the offending paper or dismissing a claim, *see, e.g.*, *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993); admonishing, reprimanding, or censuring counsel, *e.g.*, *Mendez v. Draham*, 182 F. Supp. 2d 430, 431, 434–35 (D.N.J. 2002); requiring remedial legal education, *e.g.*, *Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 595–96 (D.N.J. 2003); referring the matter to Bar disciplinary authorities, *e.g.*, *In re Engle Cases*, 283 F. Supp. 3d 1174, 1258 (M.D. Fla. 2017); imposing a fine payable to the court, *e.g.*, *Racom Corp.*, 323 F.3d at 627–28; or payment of opposing counsels' fees, *e.g.*, *Clark*, 460 F.3d at 1011. *See generally* Fed. R. Civ. P. 11(b)–(c) advisory committee's note to 1993 amendment.

In this case, the Court should assess what type of sanction is needed to deter opportunistic, politically motivated cases that abuse the system. "[S]anctions must never be hollow gestures; their bite must be real." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002). Dismissal of frivolous claims is one obvious remedy but is duplicative of the existing Rule 12(b)(6) motions (ECF Nos. 33, 41) and only would affect attorney behavior in this case. Admonishing counsel or requiring legal education is another possible approach but may not effectively deter lawyers who cynically prioritize a desire for short-term political gain over professional ethics. The Court should accordingly issue a finding and reprimand that will be sent to Bar disciplinary authorities and require counsel to report the findings in any future applications

for admission to practice. Upon such notification, state Bar officials will have the option to consider whether further action is required to deter unprofessional conduct.[13]

**B.      At a minimum, this Court should require Plaintiff's counsel to assume the full fees and costs of this litigation.**

This Court should also award fees and costs in order to ameliorate the burdens imposed on the Court and the parties by this unnecessary and duplicative case. This sanction can take the form of both attorney's fees to address the adverse impact on the parties as well as reimbursement to the Court for expenses incurred. *See* Fed. R. Civ. P. 11(c)(2), (4); *Clark*, 460 F.3d at 1011 (affirming fee award under 28 U.S.C. § 1927); *Harlan v. Lewis*, 982 F.2d 1255, 1259–60 (8th Cir. 1993) (upholding power to impose fees under inherent authority). The Court should award fees and costs on Donnelly's counsel for this burdensome litigation predicated on contentions unwarranted by existing law or by nonfrivolous argument for modifying the law. *See, e.g.*, *Bryant*, 932 F.2d at 700 (affirming imposition of monetary sanctions).[14]

**IV.      This Court should award sanctions even if the case is remanded.[15]**

Donnelly's motion for remand is currently pending, ECF No. 21, but this Court should award sanctions even if it ultimately remands the case. This is because the "violation of Rule 11 is

---

[13] *See*, *e.g.*, *In re Eastman*, No. SBC-23-O-30029, slip op. at 1, 17–20, 28–31 (State Bar Ct. of Cal. Rev. Dep't June 13, 2025) (affirming disbarment for filing frivolous election-denial claims); *see also In re Giuliani*, 146 N.Y.S.3d 266, 272 (App. Div. 2021) (*per curiam*); *In re Giuliani*, 214 N.Y.S.3d 366, 375 (App. Div. 2024) (*per curiam*) (affirming disbarment); *Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377, 381 (3d Cir. 2020) ("[C]alling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here.").

[14] If the Court decides to award attorney's fees as a sanction, counsel for Selzer will promptly submit a demand for fees and expenses with appropriate documentation for costs attributable to producing responses to Donnelly's frivolous claims.

[15] This argument has been overtaken by events in light of the Court's denial of Plaintiff's remand motion on October 20. ECF No. 47. However, it is retained in the motion as filed (1) to minimize any substantive differences between this motion and the version originally served, and (2) to support the fact that this Court also retains jurisdiction to consider sanctions following the grant of Rule 12(b)(6) motions and entry of judgment.

24

complete when the paper is filed," *Cooter & Gell*, 496 U.S. at 395 (quoting *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987)), since a "[b]aseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay," *id.* at 398. "It is well established that a federal court may consider collateral issues after an action is no longer pending," *id.* at 395, and this includes the award of sanctions. *See*, *e.g.*, *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992) ("The interest in having rules of procedure obeyed, by contrast, does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction."). Even after a case is off the docket, "the imposition of such sanctions on abusive litigants is useful to deter such misconduct." *Cooter & Gell*, 496 U.S. at 398. This includes when there has been a remand to state court. *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1009 (4th Cir. 2014) (applying *Cooter & Gell* to hold that "district courts have jurisdiction to decide Rule 11 sanctions motions on the merits, even when they are filed after the underlying action is remanded to state court"); *accord. Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 930–31 (8th Cir. 2014).

## CONCLUSION

"This case should never have been brought. Its inadequacy as a legal claim was evident from the start. No reasonable lawyer would have filed it. Intended for a political purpose, none of the counts of the amended complaint stated a cognizable legal claim." *Trump v. Clinton II*, 653 F. Supp. 3d at 1207. This Court should use its sanction authority to deter abuse of the legal system to "dishonestly advance a political narrative." *Id.*

DATED: November 17, 2025              Respectfully submitted,

By: */s/ Robert Corn-Revere*_____
    Robert Corn-Revere, D.C. Bar No. 375415*†
    Conor T. Fitzpatrick, Mich. Bar No. P78981*
    FOUNDATION FOR INDIVIDUAL
       RIGHTS AND EXPRESSION (FIRE)
    700 Pennsylvania Ave. SE, Suite 340

Washington, D.C. 20003
Telephone:      (215) 717-3473
Email:          bob.corn-revere@thefire.org
Email:          conor.fitzpatrick@thefire.org

Greg Greubel, Iowa Bar No. AT0015474
Adam Steinbaugh, Cal. Bar No. 304829*
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION (FIRE)
510 Walnut St., Suite 900
Philadelphia, PA 19106
Telephone:      (215) 717-3473
Email:          greg.greubel@thefire.org
Email:          adam@thefire.org

Matthew A. McGuire, AT0011932
NYEMASTER GOODE, P.C.
700 Walnut St., Suite 1300
Des Moines, IA 50309
(515) 283-8014
mmcguire@nyemaster.com


*Attorneys for Defendants J. Ann Selzer and Selzer &
Company*

*\*Admitted pro hac vice.*
*† Lead counsel*

26

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing document was served upon all parties of record through the Court's CM/ECF electronic filing system on November 17, 2025.

/s/ Robert Corn-Revere