**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

DENNIS DONNELLY, on behalf of himself
and all others similarly situated,

       Plaintiff,

  v.

DES MOINES REGISTER AND TRIBUNE
CO., INC.; J. ANN SELZER; SELZER &
COMPANY; and GANNETT CO., INC.,

       Defendants.

Case No. 4:25-cv-00150-RGE-WPK

**BRIEF IN OPPOSITION TO DR. SELZER'S MOTION FOR SANCTIONS**

Robert R. Anderson
P.O. Box 4
Atlantic, Iowa 50022
(515) 382-1278
bobandersoniowan@gmail.com

Daniel R. Suhr (pro hac vice)
Center for American Rights
1341 W. Fullerton Ave., Suite 170
Chicago, Illinois 60654
dsuhr@americanrights.org

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ 3

**INTRODUCTION** ............................................................................................................. 6

**JURISDICTION** .............................................................................................................. 8

    I. This Court Lacks Jurisdiction Over The Relevant Filing For The "Improper Purpose" Claimed Violation Under R. 11(b)(1) And The "Duplicative" Claimed Violation Under 28 U.S.C. 1927. ...................................................................................................... 8

**ARGUMENT ON RULE 11 SANCTIONS** ........................................................................... 9

    I. Rule 11 sanctions are inappropriate. .......................................................................... 9
        *A. The standard of review for Rule 11 sanctions sets a low bar for plaintiff's claims.* .......... 9
        *B. The Plaintiff makes at least a colorable legal argument.* ................................................. 11
            1. Mr. Donnelly's arguments, though ultimately unsuccessful, had some legal foundation. ................................................................................................................. 11
            2. In the further alternative, the Plaintiff's arguments were made with a reasonable basis to modify or extend the law. ......................................................................................... 14
        *C. The lawsuit was not filed for an improper purpose.* ........................................................ 15
            1. This case was not brought for an improper purpose but to address a legal harm. ........ 15
            2. Rule 11's "improper purpose" provision should not be converted into an anti-SLAPP rule. .................................................................................................................................. 16
        *D. The other Rule 11 factors counsel that the Court should exercise its discretion by declining to award sanctions.* ................................................................................................ 17
            1. The filings made in this Court were not made in bad faith or with an intent to injure. 17
            2. This was not "part of a pattern of activity." F.R.C.P. 11 Advisory Comm. Notes. ....... 18
            3. Plaintiff's counsel is not engaged in similar conduct in other litigation ...................... 18
            4. The plaintiff has retained experienced counsel. ........................................................... 20
        *E. The proposed sanctions are inappropriate.* ...................................................................... 22
            1. Disciplinary referral against the Plaintiff's counsel's bar licenses is inappropriate. .... 22
            2. Full attorneys fees are not an appropriate sanction under Rule 11. .............................. 23

**ARGUMENT AS TO SECTION 1927** ................................................................................ 24

**ARGUMENT AS TO THE COURT'S INHERENT POWER** ................................................. 26

**PLAINTIFF'S FEES ARE WARRANTED IN THIS INSTANCE** ........................................... 26

**CONCLUSION** .............................................................................................................. 29

# TABLE OF AUTHORITIES

### C<small>ASES</small>

*281 Care Comm. v. Arneson*, 766 F.3d 774 (8th Cir. 2014) ......................................... 11

*Adams v. USAA Cas. Ins. Co*., 863 F.3d 1069, 1077 (8th Cir. 2017) ........................... 10

*Adhikari v. Daoud & Partners*, 2017 U.S. Dist. LEXIS 196702, \*23 (S.D.Tex. Nov. 30, 2017) 26

*Am. State Bank v. Pace*, 124 F.R.D. 641, 649 (D.Neb. 1987) ........................................ 6

*Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1018 (N.D.Ill. 2002) ........ 6

*Baldwin v. Wade*, 2025 U.S. Dist. LEXIS 163030, \*9-10 (W.D.Mo. Aug. 8, 2025) .................. 10

*Bank of Oregon v. Ind. News, Inc*., 65 Ore. App. 29, 670 P.2d 616, 628 (Or. App. 1983) .......... 13

*Barnes v. Zaccari*, U.S. Court of Appeals for the Eleventh Cir., No. 13-13800 (Dec. 9, 2013) . 10

*Beatrice Foods v. New England Printing*, 899 F.2d 1171, 1177 (Fed. Cir. 1990) ....................... 24

*Berisha v. Lawson*, 141 S.Ct. 2424, 2429 (2021) ............................................................ 14

*Birmingham v. Fodor's Travel Publications*, 73 Haw. 359, 366 (1992) ..................................... 13

*Black Hills Inst. of Geological Research v. South Dakota Sch. of Mines & Technology*, 12 F.3d 737, 745 (8th Cir. 1995) .......................................................................................................... 6

*Brandt v. Weather Channel, Inc*., 42 F. Supp. 2d 1344 (S.D. Fla.) ................................................ 6

*Brnovich v. Democratic Nat'l Comm*., 594 U.S. 647, 660 n.6 (2021) ........................................ 21

*BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ................................................ 21, 22

*C.H. Robinson Worldwide, Inc. v. Lobrano*, 2011 U.S. Dist. LEXIS 78597, \*19 (D.Minn. July 19, 2011) ................................................................................................................................. 11

*Counterman v. Colorado*, 600 U.S. 66, 106 ......................................................................... 14

*Dalton v. Manor Care of West Des Moines IA, LLC*, 2013 U.S. Dist. LEXIS 197587, \*10 (S.D.Ia. July 8, 2013) ..................................................................................................................... 11

*Daniele v. ABC*, 2011 U.S. Dist. LEXIS 81273, \*4 (D.N.J. July 26, 2011) .............................. 12

*Demuth Dev. Corp. v. Merck & Co.*, 432 F. Supp. 990 (E.D.N.Y. 1977) ...................................... 6

*Elder v. Reliance Worldwide Corp*., 563 F. Supp. 3d 1221, 1246 (N.D.Ga. 2021) ......................... 7

*Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 498 (2020) ................................................ 21

*Exec. Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 571 (8th Cir. 2008) .................... 11

*First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 258 (S.D.N.Y. 1988) .......... 11

*Golden v. Stein*, 2021 U.S. Dist. LEXIS 248627, \*6 (S.D.Ia. Aug. 23, 2021) ............................ 17

*Grid Sys. Corp. v. John Fluke Mfg. Co., Inc*., 41 F.3d 1318, 1319 (9th Cir. 1994) ...................... 8

*Gutter v. Dow Jones, Inc*., 22 Ohio St. 3d 286, 287 (1986) (quoting *Tumminello*) .................... 12

*Henderson v. School District of Springfield*, CA8 Nos. 23-1374 & 23-1880, Entry ID 5279148 (May 19, 2023), at 4 ........................................................................................................... 10, 16

*Hollander v. CBS News, Inc*., 2017 WL 1957485 (S.D.N.Y. 2017) ............................................. 6

*Hollander v. Garrett*, 710 Fed. Appx. 35, 36 (2d Cir. 2018) ........................................................ 6

*Hughes v. Rowe*, 449 U.S. 5, 14 (1980) ...................................................................................... 10

*Ideal Instruments, Inc. v. Rivard Instruments, Inc*., 245 F.R.D. 381, 387 (N.D. Ia. 2007) .... 23, 24

*Igbanugo v. Minn. Office of Laws. Pro. Responsibility*, 56 F.4th 561, 566 n.3 (8th Cir. 2022). 8, 9

*In re Case*, 937 F.2d 1014, 1023 (5th Cir. 1991) ......................................................................... 8

*In re FCA US LLC Monostable Elec. Gearshift Litig*., 355 F. Supp. 3d 582, 599 (E.D.Mich. 2018) ............................................................................................................................................ 7

*In re Primus*, 436 U.S. 412, 431 (1978) ..................................................................................... 15

*Janus v. AFSCME*, 141 S. Ct. 1282 (2021) .............................................................................. 22

*King v. Whitmer*, 71 F.4th 511, 520 (6th Cir. 2023) ........................................................ 15
*Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1491 (8th Cir. 1994) ................................ 23
*Lafayette v. Abrami*, No. 25-CV-00624 (Vt. Superior Ct. May 20, 2025) .................... 6
*Lee v. L.B. Sales, Inc*., 177 F.3d 714, 718 (8th Cir. 1999)............................................ 24
*Libertelli v. Hoffman-La Roche Inc.*, 1981 U.S. Dist. LEXIS 11049, *6 (S.D.N.Y. Feb. 23, 1981) ................................................................................................................... 12
*Menders v. Loudoun County School Board,* 65 F.4th 157 (4th Cir. 2023). ................. 21
*National Horsemen's Benevolent & Protective Association v. Black*, 53 F.4th 869 (5th Cir. 2022) and 107 F.4th 415 (5th Cir. 2024).................................................................. 21
*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) ....... 14, 15
*Pope v. Fed. Express Corp*., 49 F.3d 1327, 1328 (8th Cir. 1995) ............................ 17, 20
*Reagan v. Hi-Speed Checkweigher Co*., 1995 U.S. App. LEXIS 31411, *5 (8th Cir. Nov. 8, 1995) .................................................................................................................... 24
*Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020)......................................... 26
*SPV-LS, LLC v. Transamerica Life Ins. Co*., 912 F.3d 1106, 1113 (8th Cir. 2019)..................... 24
*Steadfast Ins. Co. v. Arc Steel*, 2017 U.S. Dist. LEXIS 229301, *10 (W.D.Mo. Nov. 30, 2017) 10
*Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2010).......................................... 10
*Tah v. Global Witness Publ., Inc*., 991 F.3d 231, 254 (D.C. Cir. 2021)........................ 14
*Trump v. Clinton*, 653 F. Supp. 3d 1198, 1211 (S.D. Fla. 2023)................................... 15
*Tumminello v. Bergen Evening Rec., Inc*., 454 F. Supp. 1156, 1159–60 (D.N.J. 1978) ............. 12
*TVKO v. Howland*, 335 Ore. 527, 538 (2003) .................................................................. 8
*U.S. News v. Chiu*, U.S. Court of Appeals for the Ninth Circuit No. 24-2928, Dkt. 16.1 (July 9, 2024), at 20 ................................................................................................... 10
*Vallejo v. Amgen, Inc.,* 903 F.3d 733, 747 (8th Cir. 2018)..................................... 23, 25
*Wash. League for Increased Transparency & Ethics v. Fox News*, 2021 WL 3910574 (Wash. Ct. App. 2021) ................................................................................................... 6
*Watson v. Child.'s Healthcare of Atlanta*, 2024 U.S. Dist. LEXIS 38713, *5-6 (N.D.Ga. March 5, 2025) ..................................................................................................... 12
*White v. General Motors Corp*., 908 F.2d 675, 685 (10th Cir. 1990) ..................... 17, 21
*Wolfchild v. Redwood Cty.,* 824 F.3d 761, 771 (8th Cir. 2016)..................................... 10
*Zuk v. Eastern Pa. Psychiatric Inst*., 103 F.3d 294, 297 (3d Cir. 1996)....................... 24

STATUTES

28 U.S.C. § 1983 ................................................................................................................ 10
28 U.S.C. § 1927 .......................................................................................... 8, 24, 26, 29
Iowa Code 714H.7 ....................................................................................................... 7, 13
Iowa House File 472 .......................................................................................................... 17

OTHER AUTHORITIES

Restatement (Second) of Torts § 580B cmt. g (1977) ................................................... 13

RULES

F.R.C.P. 11 Adv. Comm. Notes................................................... 14, 18, 21, 26, 28
Fed. R. Civ. P. 11 ...................................................................................................... passim
Fed. R. Civ. P. 12(b)(6)................................................................................................ 12, 29
Fed. R. Civ. P. 15(a) .......................................................................................................... 9

Fed. R. Civ. P.  23 ................................................................................................................... 7

TREATISES

5A Wright & Miller, *Federal Practice and Procedure* § 1336.3 (3d ed. 2004)........................... 23

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. 1 ................................................................................... 11, 14, 16, 19, 21, 22

## INTRODUCTION

There are two simple, straightforward ways for this Court to exercise its discretion and deny the motion. First is to read the District Court's order on the motions to dismiss. Nowhere does the Court use the language of Rule 11, never suggesting that this case is frivolous, baseless, abusive, or vexatious. Quite the opposite. Instead, the Court says: "[I]t is far from clear whether the protections afforded to controversial political opinions expressed by individuals extend to newspapers reporting on matters of public concern as well. Neither the Supreme Court nor the Eighth Circuit has yet clearly announced such a category of absolute immunity from tort or consumer protection actions for newspapers engaged in political reporting." Order at 7.[1]

In other words, this is a case of first impression, and no governing precedent is directly on point. "Rule 11 is not intended to deter . . . cases of first impression." *Am. State Bank v. Pace*, 124 F.R.D. 641, 649 (D.Neb. 1987) (citation omitted). Where "case law" is "sparse" and "unclear," counsel should not have to "bear the burden of Rule 11 sanctions." *Black Hills Inst. of Geological Research v. South Dakota Sch. of Mines & Technology*, 12 F.3d 737, 745 (8th Cir. 1995). *See Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1018 (N.D.Ill. 2002) (plaintiff "raised two issues of first impression in this circuit. Therefore, the court cannot conclude that his claims were frivolous, unreasonable or without foundation."). As the Court said in its order, this case

---

[1] Indeed, Dr. Selzer's own brief does not point to any Supreme Court or Eighth Circuit precedent directly on point to whether a consumer can sue a news outlet. Selzer MTD, 27-11, at 4 n.3 and 11-12 (citing *Brandt v. Weather Channel, Inc.*, 42 F. Supp. 2d 1344 (S.D. Fla.), *aff'd*, 204 F.3d 1123 (11th Cir. 1999); *Demuth Dev. Corp. v. Merck & Co.*, 432 F. Supp. 990 (E.D.N.Y. 1977); *Hollander v. CBS News, Inc.*, 2017 WL 1957485 (S.D.N.Y. 2017), *vacated on other grounds sub nom. Hollander v. Garrett*, 710 Fed. Appx. 35, 36 (2d Cir. 2018); *Wash. League for Increased Transparency & Ethics v. Fox News*, 2021 WL 3910574 (Wash. Ct. App. 2021)). All four are at least partially distinguishable because none involved a consumer with a paid contract for a product. *Brandt*, 42 F. Supp. 2d at 1346; *Demuth Dev. Corp.*, 432 F. Supp. at 993; *Hollander*, 2017 U.S. Dist. LEXIS 71445 at *3; *WASHLITE*, 2021 Wash. App. LEXIS 2213 at *2 n.4. Her fifth case was a *pro se* plaintiff bringing a consumer protection claim in Vermont; the trial court's unpublished disposition does not specify whether the plaintiff was a subscriber. *Lafayette v. Abrami*, No. 25-CV-00624 (Vt. Superior Ct. May 20, 2025). Dr. Selzer's authorities are only persuasive precedent, and of limited value at that: a summary affirmance, a vacated opinion, unpublished opinions. And none clearly involve these facts: a paid subscriber bringing a consumer protection action against a newspaper. Moreover, they conflict with the several cases Mr. Donnelly cited where claims like his were deemed possible, discussed *infra*.

presented an issue on which there is no binding precedent; that alone should be enough to deny the motion for sanctions out of hand.

There is a second, independent and sufficient reason this Court should deny the motion in a straightforward way: the Attorney General of Iowa has certified her view that this case is not frivolous. Iowa law requires that "[a] class action lawsuit alleging a violation of this chapter shall not be filed with a court unless it has been approved by the attorney general. The attorney general shall approve the filing of a class action lawsuit alleging a violation of this chapter unless the attorney general determines that the lawsuit is frivolous." Iowa Code 714H.7. This provision "imposes a gate-keeping requirement on the certification of consumer class actions and requires a certification by the state's attorney general that the case is not frivolous." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 599 (E.D.Mich. 2018) (sitting on multidistrict litigation). *Accord Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1246 (N.D.Ga. 2021) (sitting on multistate litigation) ("for class actions under that Act to proceed the Iowa Attorney General must first certify that the lawsuit is nonfrivolous.").

Pursuant to that statute, the plaintiff in this case sought and secured approval from the Attorney General to proceed on a class-action basis (transmitted via an email from the chief of the consumer protection division). *See* First Am. Compl. ¶ 160. The email does not share any legal analysis, but it nevertheless represents a certification from the Attorney General that this lawsuit is not frivolous. In many ways it resembles a finding this Court would make to certify a class action under Rule 23: not a guarantee that the class will win, but that class is competently represented and has at least a meritorious enough case that its resolution should be binding on everyone in the class.

Dr. Selzer obviously thinks the Attorney General is wrong about the nonfrivolous nature of this case. Be that as it may, it was not sanctionable misconduct for Plaintiff's counsel to proceed

with this case in light of the Attorney General's certification. Put differently, if opposing counsel says the case is frivolous, and the Attorney General has said the case is not frivolous, it is not sanctionable for the Plaintiff's counsel to proceed in line with the AG's finding. *See TVKO v. Howland*, 335 Ore. 527, 538 (2003) (declining to award attorney fees for allegedly acting without a reasonable basis in law when party relied on the written advice of the state's attorney general).

On either of those two bases alone, this Court should exercise its discretion to issue a short order denying the motion. Moreover, the Court should find that attorneys fees specific to this motion are warranted for Plaintiff's counsel (see R. 11(c)(2))—Plaintiff's counsel pointed out both the relevant holding from the Court's opinion and the Attorney General's certification prior to the filing of this motion to Dr. Selzer's counsel, and Dr. Selzer's counsel decided to proceed anyway.

Though these are the simplest, most straightforward paths to denying the motion, this brief proceeds to explain all of the other reasons the motion should be denied and fees awarded.

## JURISDICTION

This Court should partially deny the motion on jurisdictional grounds—two of the claimed violations are based on papers filed in state court, such that this Court lacks jurisdiction.

### I. This Court lacks jurisdiction over the relevant filing for the "Improper Purpose" Claimed Violation under R. 11(b)(1) and the "Duplicative" Claimed Violation under 28 U.S.C. 1927.

Both Rule 11 and 28 U.S.C. § 1927 are limited to filings made in federal court and do not extend the jurisdiction of the federal court over papers filed in a state court action that was later removed. *Igbanugo v. Minn. Office of Laws. Pro. Responsibility*, 56 F.4th 561, 566 n.3 (8th Cir. 2022); *Grid Sys. Corp. v. John Fluke Mfg. Co., Inc.*, 41 F.3d 1318, 1319 (9th Cir. 1994); *In re Case*, 937 F.2d 1014, 1023 (5th Cir. 1991). Dr. Selzer's claim that this lawsuit was filed for an "improper purpose" (Mot. 17-19) is beyond the jurisdiction of this Court because it targets the

original petition filed in state court. Dr. Selzer's arguments all relate to that original filing: that Mr. Donnelly filed the original petition to harass, retaliate against, or suppress her speech. *Id.*

The two relevant filings in this Court are the First Amended Complaint and the Response Brief on the Motions to Dismiss. Mr. Donnelly filed the First Amended Complaint as an exercise of his right to amend under Rule 15(a) following Dr. Selzer's first motion to dismiss, and he filed the Response Brief in response to Dr. Selzer's second motion to dismiss. Neither of those filings were filed for the improper purpose of "harassing" or "retaliating" against Dr. Selzer; indeed, both were prompted by filings by Dr. Selzer. The filing that was allegedly harassing and retaliatory was the petition that initiated this case, and that petition was filed in state court. Sanctions for that filing are beyond the reach of this Court; this Court lacks jurisdiction over claimed violation I.C.

In a similar vein, Dr. Selzer's also argues that Plaintiff's original petition in state court was a "duplicative" "copycat" of the President's lawsuit. Mot. 1. Dr. Selzer's charge is that Mr. Donnelly filed a second action about the same basic facts and law as the President's preexisting complaint. The paper initiating that supposedly duplicative action was the petition filed in state court. Though the First Amended Complaint made the same claims, the source of the supposedly duplicative litigation is the original state court petition (*see* Selzer Mot. 21). The First Amended Complaint was not a "duplicative copycat" of the President's case—it was a response to the initial motions to dismiss and an exercise of plaintiff's right to amend under Rule 15. This Court does not have disciplinary jurisdiction over the original petition. *See Igbanugo*, 56 F.4th at 566 n.3. Thus, this Court should find that it lacks jurisdiction as to Dr. Selzer's claimed violation II.A as well.

## ARGUMENT ON RULE 11 SANCTIONS

**I. Rule 11 sanctions are inappropriate.**

**A. The standard of review for Rule 11 sanctions sets a low bar for plaintiff's claims.**

"Rule 11 sanctions are an extreme punishment." *Steadfast Ins. Co. v. Arc Steel*, 2017 U.S. Dist. LEXIS 229301, *10 (W.D.Mo. Nov. 30, 2017) (internal citation omitted). They are reserved for those "rare and exceptional case[s]" where "the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Baldwin v. Wade*, 2025 U.S. Dist. LEXIS 163030, *9-10 (W.D.Mo. Aug. 8, 2025) (rare and exceptional); *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1077 (8th Cir. 2017) (intentional or reckless disregard).

In the particular context of Rule 11(b)(2), the Court asks whether the subject party has "made good-faith, nonfrivolous arguments distinguishing, calling for modifications, or seeking extensions of existing law." *Wolfchild v. Redwood Cty.,* 824 F.3d 761, 771 (8th Cir. 2016).

"Rule 11 sets a low bar" for showing a claim is not "frivolous." *Strom v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2010). But the Court need not take our word for it. In a previous case, Dr. Selzer's law firm the Foundation for Individual Rights and Expression (FIRE) told the Eighth Circuit about "the very low bar for non-frivolous claims." Amicus Brief of FIRE, et al., in *Henderson v. School District of Springfield*, CA8 Nos. 23-1374 & 23-1880, Entry ID 5279148 (May 19, 2023), at 4.[2] Though that case concerned attorneys fees under 28 U.S.C. § 1983, the standard for assessing such fees against a plaintiff is basically the same as Rule 11(b)(2): the case must be "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). Frivolous is "a low [ ] barrier," (FIRE Br. at 7), a "very low bar" (*id*. at 4), or put in the converse, to show a case is frivolous is a "stringent standard" for the movant (*id*. at 15).

---

[2] FIRE has made many of the same arguments in other cases as well. *See, e.g.*, Opening Brief of Appellant in *Barnes v. Zaccari*, U.S. Court of Appeals for the Eleventh Cir., No. 13-13800 (Dec. 9, 2013) at 45 ("Even where allegations are properly dismissed for failure to state a claim, they are not meritless or groundless where they receive such careful consideration" as a 30-page district court decision on the motion to dismiss); Amicus Brief of FIRE in *U.S. News v. Chiu*, U.S. Court of Appeals for the Ninth Circuit No. 24-2928, Dkt. 16.1 (July 9, 2024), at 20 (proving a case is "frivolous, unreasonable, or without foundation" is a "high bar").

The Plaintiff respectfully disagrees with the Court's order on the motions to dismiss, but at minimum he has crossed the "very low bar" for not filing a frivolous case in this instance.

## B. The Plaintiff makes at least a colorable legal argument.

An argument may be "ultimately unsuccessful and against persuasive legal authority" but still not be "frivolous, harassing, or improper." *Dalton v. Manor Care of West Des Moines IA, LLC*, 2013 U.S. Dist. LEXIS 197587, *10 (S.D.Ia. July 8, 2013). Rule 11 sanctions are only appropriate if the plaintiff's arguments "completely lack legal foundation." *Id. Accord C.H. Robinson Worldwide, Inc. v. Lobrano*, 2011 U.S. Dist. LEXIS 78597, *19 (D.Minn. July 19, 2011) (quoting *Exec. Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 571 (8th Cir. 2008)) (arguments are not "'so baseless as to warrant Rule 11 sanctions.'").

## 1. Mr. Donnelly's arguments, though ultimately unsuccessful, had some legal foundation.

This Court did not adopt many of the points and precedents made in Dr. Selzer's motion to dismiss and motion for sanctions, which sought a broader immunity under the First Amendment. *See* Order at 7. Instead, this Court reached a narrower conclusion. Relying primarily on *281 Care Comm. v. Arneson*, 766 F.3d 774 (8th Cir. 2014), this Court differentiated between defamation, which is false speech that is actionable because it affects a private right, and other false speech that is not actionable because it is generalized to the public at large. Order at 6. Mr. Donnelly argued that his individual subscription to the *Des Moines Register* is a private right that gives him a cause of action under Iowa's common-law and statutory consumer protection laws. It was not frivolous for him to assert that his status as a subscriber differentiates him from a member of the general public, as several courts have previously suggested a news consumer could state a claim consistent with the First Amendment if they could show actual malice. *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 258 (S.D.N.Y. 1988) ("plaintiffs must show either that Standard & Poor's published the description with actual knowledge of its falsity or with reckless disregard

of its truth or falsity."); *Tumminello v. Bergen Evening Rec., Inc.*, 454 F. Supp. 1156, 1159–60 (D.N.J. 1978) (reader's claim for false information in a newspaper was possible "at best only for knowing or reckless falsehood."); *Gutter v. Dow Jones, Inc.*, 22 Ohio St. 3d 286, 287 (1986) (quoting *Tumminello*); *Daniele v. ABC*, 2011 U.S. Dist. LEXIS 81273, *4 (D.N.J. July 26, 2011) (quoting *Tumminello*); *Libertelli v. Hoffman-La Roche Inc.*, 1981 U.S. Dist. LEXIS 11049, *6 (S.D.N.Y. Feb. 23, 1981). (Dr. Selzer says over and over in her motion for sanctions that Plaintiff could not cite a single case where such a claim succeeded. That is true. But Plaintiff did cite multiple cases recognizing that a case presenting the right facts could succeed on such a claim).

Next, the Court held that the Plaintiff could not prove actual malice. However, Dr. Selzer's motion for sanctions does not charge Mr. Donnelly with frivolously pleading malice. Instead, her motion moves straight to the elements of Iowa law. Punishing attorneys fees and referral for disbarment are not an appropriate response to a disagreement over the individual elements of fraudulent misrepresentation or Iowa's consumer protection statute. Otherwise virtually every case that fails a Rule 12(b)(6) motion would also fail Rule 11, which is obviously not the law. *Watson v. Child.'s Healthcare of Atlanta*, 2024 U.S. Dist. LEXIS 38713, *5-6 (N.D.Ga. March 5, 2025) ("Non-frivolous but weak cases should be dealt with on motions to dismiss and motions for summary judgment. Thus, a complaint may fail to state a claim under Rule 12(b)(6), yet not automatically be frivolous. . .").

The Court's decision on Count I limited itself to the first element of fraudulent misrepresentation. The Court treated "the Defendants" collectively in its analysis (Order at 12-13), including Dr. Selzer with Gannett in the collective representation presented by the poll, not using the individualized analysis presented by Dr. Selzer in her motion (Mot. 15-16). In other words, the Court did not adopt the method of analysis used by Dr. Selzer in her motion to dismiss Count I.

For negligent misrepresentation, Dr. Selzer states this count was frivolous because plaintiff "continued to ignore the rule that newspapers do not owe a duty of care to the public." Mot. 16. Mr. Donnelly never argued he was owed a duty as a member of the general public, but as a paying subscriber. As noted above, the difference between the general public and a private paying consumer is crucial, and the law on this point is not well developed. *See* Order 7.

For the Iowa Consumer Protection Act, the Motion focuses on Mr. Donnelly's alleged failure to show that the Register was "consumer merchandise." Mot. 17. The Court's opinion presumes the *Register* is consumer merchandise and rejects the claim for failing to allege an unfair or deceptive practice, which is not the argument made in Dr. Selzer's motion for sanctions.

For the professional malpractice claim, Dr. Selzer asserts that professionals do not owe a duty of care to general readers of a newspaper. Mot. 17. Though the Court ultimately rejected this claim, there was precedent supporting such a duty. *See Bank of Oregon v. Ind. News, Inc.*, 65 Ore. App. 29, 670 P.2d 616, 628 (Or. App. 1983) (holding that "when negligence is alleged against a media defendant, there should be a professional standard of care"); Restatement (Second) of Torts § 580B cmt. g (1977); *Birmingham v. Fodor's Travel Publications*, 73 Haw. 359, 366 (1992). A claim is not frivolous when there is no on-point Iowa precedent and there is persuasive precedent from other jurisdictions.

For the voter interference claim, Dr. Selzer's motion argues that Mr. Donnelly did not prove the elements of the claim. Mot. 17. The Court did not adopt that argument but instead adopted a different argument (that the case cited did not recognize a cause of action at common law). Again, Dr. Selzer's motion does not show that Mr. Donnelly's argument was frivolous, as the Court did not adopt Dr. Selzer's legal analysis to resolve the claim.

13

**2. In the further alternative, the Plaintiff's arguments were made with a reasonable basis to modify or extend the law.**

In the alternative, this case presents a reasonable vehicle to extend the law. Though Dr. Selzer argues that Plaintiff has not made a claim for the extension of the law (Mot. 18-19), "arguments for a change of law are not required to be specifically so identified." F.R.C.P. 11 Adv. Comm. Notes. Plaintiff's counsel can reasonably view this case as a vehicle to advance a legal theory that has some support (even if not majority support) among judges and professors and could provide a compelling fact pattern to push back on existing precedent.

There is a longstanding debate within the judiciary and academy over whether the "actual malice" standard from *New York Times v. Sullivan* should be revisited. "Many Members of [the Supreme] Court have questioned the soundness of *New York Times* and its numerous extensions." *Counterman v. Colorado*, 600 U.S. 66, 106 (2023) (Thomas, J., dissenting) (collecting statements from nine other current and past justices). Justice Neil Gorsuch has highlighted the ill effects of an overly broad view of the First Amendment's protections for publishing false information, writing that *New York Times* has "evolved into a subsidy for published falsehoods on a scale no one could have foreseen [and] it has come to leave far more people without redress than anyone could have predicted." *Berisha v. Lawson*, 141 S.Ct. 2424, 2429 (2021) (Gorsuch, J., dissenting). The decision on the motions to dismiss could be characterized as another instance of where First Amendment precedent permits a published falsehood that leaves many consumers without redress in derogation of Iowa's statutory and common law otherwise permitting such redress.

Judge Lawrence Silberman of the D.C. Circuit has written that the high standard set in *New York Times* gave great power to "the institutional press" and "that power is now abused." *Tah v. Global Witness Publ., Inc.*, 991 F.3d 231, 254 (D.C. Cir. 2021) (Silberman, J., dissenting). He underlined the danger to democracy when that power is used in a one-sided way politically: "The

increased power of the press is so dangerous today because we are very close to one-party control of these institutions." *Id*. This "ideological homogeneity in the media" undermines the marketplace of ideas, restricting the flow of information to the citizenry and influencing elections. *Id*. at 255.

That is Plaintiff's theory: that political bias among the Defendants either blinded them to recklessly report inaccurate information or that they intentionally weighted the poll and its results to fit their bias. Judge Silberman concludes, "The First Amendment guarantees a free press to foster a vibrant trade in ideas. But a biased press can distort the marketplace. And when the media has proven its willingness—if not eagerness—to so distort, it is a profound mistake to stand by unjustified legal rules that serve only to enhance the press' power." *Id*. at 256. Just so.

Again, Plaintiff believes that his case was justified under current law. But at minimum the Plaintiff has presented a case that can reasonably convince judges to modify or extend the law to a different fact pattern in light of a consistent interest to cut back on *Sullivan* and its progeny.

## C. The lawsuit was not filed for an improper purpose.

Dr. Selzer further alleges a Rule 11(b)(1) violation that this case was brought for an improper purpose: "to advance a political narrative; not to address legal harm caused by any Defendant." Mot. 17 (quoting *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1211 (S.D. Fla. 2023), *appeal docketed*, No. 23-10387 (11th Cir. Feb. 6, 2023)).

## 1. This case was not brought for an improper purpose but to address a legal harm.

Of course, "another word for '[advancing] a [political] narrative' is speech; and Rule 11 cannot proscribe conduct protected by the First Amendment. . . . [P]arties and their attorneys are free to use litigation 'as a vehicle for effective political expression and association.'" *King v. Whitmer*, 71 F.4th 511, 520 (6th Cir. 2023) (quoting *In re Primus*, 436 U.S. 412, 431 (1978)). Ironically, a public interest law firm dedicated to defending free speech and expression (the Foundation for Individual Rights and Expression) is seeking to punish another public interest law firm for its

expression of its viewpoint (that the First Amendment does not protect consumer fraud by newspapers and their pollsters). Advancing a public interest objective through litigation is not an improper purpose but a "vehicle for effective political expression and association."

To be clear, this lawsuit addresses a legal harm—the plaintiff paid good money for his subscription to the *Des Moines Register*. This is a typical consumer protection class action lawsuit in every way but one—it concerns a newspaper report about a political poll rather than a car salesman or home repair contractor. That counsel on the case is a public interest law firm seeking to advance a public interest objective (media accountability) does not mean it has changed in substance from what it has always been: a legal dispute between a consumer and a service provider (and its subcontractor) about the quality of the service promised versus the service provided.

Indeed, in its amicus brief to the Eighth Circuit in *Henderson* Dr. Selzer's law firm warned about the dangers of misreading a public-interest case as being simply a political stunt. The FIRE amicus criticized the district court for "award[ing] fees based on its interpretation of Plaintiffs' claims as a 'frivolous political disagreement' that 'attempted to drag Defendants into a political dispute rather than seek remedy for a genuine harm' and 'trivialized the important work of the federal judiciary,'" Am. Br. at 23, saying that the Court wrongly conflated political speech with the political question doctrine. The Court should exercise the same caution FIRE once urged: just because a case relates to a political campaign or hot-button issue does not mean it is a wrongful attempt to drag the judiciary or defendants into a political dispute for an improper purpose.

**2. Rule 11's "improper purpose" provision should not be converted into an anti-SLAPP rule.**

Dr. Selzer essentially tries to convert Rule 11's improper purpose language into an anti-SLAPP statute[3], arguing the case was filed "to suppress protected speech by forcing the defendant to incur

---

[3] SLAPP stands for Strategic Lawsuit Against Public Participation.

the trouble and expense of defending against the suit." Mot. 18. *See id*. at 18 ("Donnelly's case is a prime example of misusing the legal process to punish a perceived political opponent"). FIRE has also called the President's lawsuit against Dr. Selzer a SLAPP in several public statements.[4]

At the time that the petition was filed, Iowa did not have an anti-SLAPP statute. When Iowa did adopt an anti-SLAPP statute, specified it was not retroactive to already filed cases. *See* Iowa House File 472. It is inappropriate for Dr. Selzer to twist Rule 11 into something that the Iowa General Assembly had not seen fit to adopt at the time the lawsuit was filed.

**D. The other Rule 11 factors counsel that the Court should exercise its discretion by declining to award monetary or disciplinary sanctions.**

The Eighth Circuit and the Advisory Committee Notes on Rule 11 provide several factors to guide the Court's exercise of its discretion on Rule 11. Dr. Selzer does not bother to address any of these in her brief, but they are still relevant for this Court's consideration of the motion.

**1. The filings made in this Court were not made in bad faith or with an intent to injure.**

Although a finding of subjective bad faith is not required by Rule 11, in the exercise of its discretion the Court can bear in mind that "Rule 11(c) is designed for circumstances in which a party files a motion in bad faith." *Golden v. Stein*, 2021 U.S. Dist. LEXIS 248627, *6 (S.D.Ia. Aug. 23, 2021). *See Pope v. Fed. Express Corp*., 49 F.3d 1327, 1328 (8th Cir. 1995) (summarizing *White v. General Motors Corp*., 908 F.2d 675, 685 (10th Cir. 1990)) (the court may consider "the degree to which malice or bad faith contributed to the violation."). The Advisory Committee Notes ask a similar question, whether the filing was "intended to injure" the opposing party or counsel.

---

[4] Greg Lukianoff (president of FIRE), *Baseless SLAPP suits threaten the speech rights of all Americans*, The Dispatch (Jan. 29, 2025) (characterizing President Trump's lawsuit against Dr. Selzer as a SLAPP); Adam Steinbaugh and Conor Fitzpatrick (counsel for Dr. Selzer & attorneys at FIRE), *FIRE's defense of pollster J. Ann Selzer against Donald Trump's lawsuit is First Amendment 101*, TheFire.org (Jan. 7, 2025) ("The [Trump] lawsuit is the very definition of a 'SLAPP' suit").

FIRE's legal director described the purpose of Rule 11 more colorfully on a recent podcast: "Rule 11 sanctions exist for filing frivolous motions, right? being basically an a**hole in court."[5]

Dr. Selzer has adduced no actual evidence of bad faith or intent to injure here, only conjecture and accusation. There is nothing in the record indicating Plaintiff's counsel has been vituperative or obstructionist (indeed, the record is the opposite: Plaintiff's counsel has extended all the standard courtesies among counsel, even to the point of consenting to an overlength brief on a Rule 11 motion against him). There is nothing to show Plaintiff or his counsel has a personal hatred for Dr. Selzer that would motivate them to harass her through litigation like a jilted ex-lover or vindictive former business partner. Indeed, Dr. Selzer cannot even suggest that the First Amended Complaint and Response Brief were filed with an intent to injure Dr. Selzer financially: at that point Plaintiff's counsel was aware that she was being represented pro bono by FIRE.[6]

**2. This was not "part of a pattern of activity." F.R.C.P. 11 Advisory Comm. Notes.**

The Plaintiff has not persisted in asserting the same arguments through multiple motions for reconsideration or clarification or for leave to amend the complaint like a vexatious litigant.

**3. Plaintiff's counsel is not engaged in similar conduct in other litigation.**

Dr. Selzer's counsel at FIRE may well say that Plaintiff's counsel is "engaged in similar conduct in other litigation." F.R.C.P. 11 Adv. Comm. Notes. According to FIRE, a consumer complaint filed by the Center for American Rights at the Federal Communications Commission (FCC) was nothing more than a "a nakedly political abuse of process." FIRE Comment, FCC Proceeding MB Docket No. 25-73, at 11.[7] Dr. Selzer's chief counsel was more blunt in a recent newspaper story, asking derisively, "who would be dumb enough to file these things?"[8]

---

[5] So to Speak Podcast Transcript, https://www.thefire.org/research-learn/so-speak-podcast-transcript-columbia-university-mahmoud-khalil-dei-law-firms-and

[6] https://www.thefire.org/news/fire-defend-veteran-pollster-j-ann-selzer-trump-lawsuit-over-outlier-election-poll

[7] https://www.thefire.org/news/fire-calls-out-60-minutes-investigation-political-stunt-comment-fcc

[8] https://www.theguardian.com/media/2025/nov/22/daniel-suhr-trump-fcc-media

FIRE and the Center find themselves frequently on the opposite sides of issues around the First Amendment these days. The Center supported the FCC Chairman's right to remind broadcasters of their public interest obligations as applied to ABC's Jimmy Kimmel.[9] FIRE disagreed.[10] The Center supported the President's right to regulate journalists' access to limited spaces in the White House.[11] FIRE took the opposite side on that too.[12] In his private capacity, Mr. Donnelly's counsel represents Jewish students at Columbia in a lawsuit against activists, including Mahmoud Khalil, who were instrumental in unlawfully shutting down that campus in Spring 2024.[13] FIRE has issued statements criticizing the Trump administration's proceedings against Khalil.[14]

This disagreement across multiple issues highlights the underlying reality that FIRE and the Center for American Rights have different visions for the First Amendment's appropriate interpretation and application in certain circumstances. Such disagreement is not a cause for sanctions. Indeed, the request that this Court refer Suhr for professional discipline with a suggestion of disbarment (Mot. 24 n.13) feels like an abuse of the judicial process—the weaponization of Rule 11 to drive a persistent opponent out of the profession entirely.

The irony is that FIRE and the Center for American Rights likely agree more than we disagree about the First Amendment. Mr. Suhr has filed an amicus brief in support of a FIRE cert. petition[15], relied on FIRE research in his own briefing,[16] and appeared alongside FIRE lawyers in public

---

[9] https://thedesk.net/2025/09/center-american-rights-kabc-complaint-jimmy-kimmel/
[10] https://www.thefire.org/news/jimmy-kimmel-back-dont-get-complacent
[11] https://storage.courtlistener.com/recap/gov.uscourts.dcd.277682/gov.uscourts.dcd.277682.24.1.pdf
[12] https://www.thefire.org/news/white-house-barring-ap-press-events-violates-first-amendment
[13] *Doe v. Alwan*, Index #: 157032/2024 (N.Y. Cty., N.Y., trial court).
[14] https://www.thefire.org/cases/columbia-university-dhs-arrests-pro-palestinian-activist-mahmoud-khalil
[15] Amicus Brief of the Liberty Justice Center in *Foundation for Individual Rights in Education v. Crime Victims Rights Center*, U.S. Supreme Court No. 21-84, https://www.thefire.org/research-learn/fire-v-victim-rights-law-center-brief-liberty-justice-center-amicus-curiae-support.
[16] *See* Amicus Brief of the Liberty Justice Center and the Firearms Policy Coalition in *Mahanoy Area School District v. B.L.*, U.S. Supreme Court No. 20-255, at 9 &12, https://jlc.org/sites/default/files/attachments/2021-08/2021.3.30%20LJC%20Amicus%20Brief.pdf.

events.[17] Plaintiff's counsel agrees with and supports FIRE on probably 90% of First Amendment law, but because in the other 10% FIRE thinks Mr. Suhr's view of the First Amendment is not just wrong but frivolous, they think he should lose his bar license.

Plaintiff's counsel are public interest lawyers. They take on high-profile, controversial cases for a living, just like FIRE's lawyers. In fifty-plus cases litigated by Plaintiff's lead counsel, all on controversial issues and generally against ideologically motivated opponents (numerous unions, Planned Parenthood, elected officials of the opposing party, etc.), only twice has he faced a Rule 11-type motion: here and in the Columbia case referenced above.

That's because in all those other cases, though the topics may be ideological, the lawyers don't make it personal. They extend professional courtesies, they are polite to one another, and they don't bring Rule 11 motions asking the Court to destroy the other lawyer's firm and career. In fact, Plaintiff suggests it speaks volumes that Gannett has not brought a Rule 11 motion alongside Dr. Selzer, though Gannett's counsel was CCed on the 21-day safe-harbor notice and could have either joined it or filed its own. Gannett's counsel, unlike Dr. Selzer's counsel, apparently recognizes this case as a good-faith dispute about the law and are unwilling to use it as a vehicle to punish the opposing counsel's firm and to suggest revoking the opposing counsel's law license.

### 4. The plaintiff has retained experienced counsel.

The Court may consider the "experience and ability" of the subject of the sanctions motion in exercising its discretion. *Pope*, 49 F.3d at 1328 (summarizing the holding of *White v. General*

---

[17] Federalist Society Forum, March 11, 2025 (https://fedsoc.org/events/disinformation-in-broadcasting-and-the-public-interest-standard); Northern Illinois University College of Law, March 31, 2022 (https://www.facebook.com/HuskieFedSoc/posts/pfbid0Lgn1i1PZ4bVZif1hAeLrBLVazQs2sbbmyYjPvFB5uckCS7bWzCsaRVQ9d128cp5Yl). Indeed, Mr. Suhr appeared alongside Dr. Selzer's lead counsel, Bob Corn-Revere, for the March 11 event, which occurred after this lawsuit was filed. If Mr. Corn-Revere truly believed that Mr. Suhr was an unethical attorney deserving of disbarment, why appear publicly with him in a professional setting?

*Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990)). The Notes similarly provide as a factor whether "[t]he responsible person is trained in the law." F.R.C.P. 11 Adv. Comm. Notes.

This factor cuts different ways. It can be appropriately used to give a break to pro se litigants. But it can also appropriately be used to recognize that Plaintiff has retained serious counsel with experience in this area of the law, experience brought to bear on counsel's determination to sign the relevant papers certifying their good-faith purpose and legal basis.

Plaintiff's lead counsel has litigated First Amendment-related issues in multiple state and federal courts nationwide. *See, e.g.*, *Menders v. Loudoun County School Board,* 65 F.4th 157 (4th Cir. 2023). He also maintains a high-level national practice on federal constitutional issues writ large. *See, e.g., BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021); *National Horsemen's Benevolent & Protective Association v. Black*, 53 F.4th 869 (5th Cir. 2022) and 107 F.4th 415 (5th Cir. 2024). His amicus briefs have twice been cited in U.S. Supreme Court opinions.[18] He has also been interviewed on the First Amendment or other legal issues by ABC News, Fox News, C-SPAN, NewsNation, the *Wall Street Journal*, the *New York Times*, the *Los Angeles Times*, the *New York Post*, the *Washington Post*, *USA Today*, *Boston Globe*, and *Philadelphia Inquirer*.

Plaintiff's case was also reviewed and approved by the Center's board chairman, attorney Patrick Hughes. *See* F.R.C.P. 11 Adv. Comm. Notes ("[t]he extent to which a litigant has researched the issues and found some support for its theories . . . through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated."). Mr. Hughes is the founder of the Center for American Rights and previously was president and cofounder of another national public interest firm, the Liberty Justice Center. In that role, he was the architect of the plaintiff's case in one of the most consequential First Amendment

---

[18] *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 498 (2020) (Alito, J., concurring); *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 660 n.6 (2021).

decisions of the past decade, *Janus v. AFSCME*, 141 S. Ct. 1282 (2021), and supervised the litigation in the *BST Holdings* case and dozens of other matters. He entered public-interest law following several decades as a commercial litigator and corporate general counsel in Chicago.

Plaintiff's filings were also cosigned by local counsel Bob Anderson.[19] Mr. Anderson has taught a CLE class on ethics topics including "meritorious claims and contentions" for the Christian Legal Society.[20] Mr. Anderson has a four-decade career practicing law in Iowa.

Well-credentialed and experienced attorneys can sometimes make mistakes, be sloppy, or cave to client pressure and violate Rule 11. But the above shows this case was undertaken by serious, thoughtful lawyers with deep familiarity with First Amendment issues. That should help the Court feel comfortable the claims were not frivolous or filed in bad faith or for an improper purpose.

## E. The proposed sanctions are inappropriate.

## 1. Disciplinary referral against the Plaintiff's counsel's bar licenses is inappropriate.

Dr. Selzer requests that this Court punish counsel personally by issuing a reprimand, requiring them to report this finding to the states where the attorneys are licensed, and requiring the order to accompany any future requests for admission to practice. Mot. 24. Dr. Selzer goes so far in footnote 13 as to suggest disbarment is the appropriate punishment in such circumstances. *Id*. This is lawfare, pure and simple—an attempt to use the mechanisms of the bar to drive one's ideological opponents from the practice of law.[21] The organization dedicated to free speech and an absolute right to one's opinions suggests that Plaintiff's counsel should lose his law license for having an opinion opposite that of FIRE about the scope of the First Amendment and consumer fraud.

---

[19] To be clear, if the Court decides to impose any sanctions, Plaintiff's counsel requests that they fall solely on the lead counsel and his law firm, not on local counsel, as it was lead counsel who wrote the relevant papers while local counsel's role was to review and approve them.
[20] https://www.christianlegalsociety.org/wp-content/uploads/2024/08/Anderson-Moving-Mountains-Outline.pdf.
[21] Cambridge Dictionary, *Lawfare*: "the use of legal action to cause problems for an opponent."
https://dictionary.cambridge.org/us/dictionary/english/lawfare

The particular irony is that in a recent podcast, FIRE's legal director criticized the U.S. Department of Justice for "aggressively" using Rule 11 as "further weaponization of the existing process to make it exceedingly painful for attorneys to represent clients the government doesn't like."[22] He has every right to voice that critique, but FIRE itself should not weaponize Rule 11 to make it exceedingly painful for attorneys to bring cases that FIRE doesn't like.

**2. Full attorneys fees are not an appropriate sanction under Rule 11.**

Dr. Selzer requests that the Court impose full costs and attorneys' fees on the plaintiff's counsel.[23] This is not an appropriate sanction. "The primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending." *Vallejo v. Amgen, Inc.,* 903 F.3d 733, 747 (8th Cir. 2018) (citation omitted). *Accord* 5A Wright & Miller, *Federal Practice and Procedure* § 1336.3 (3d ed. 2004) ("[T]he main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender."). As a result, attorneys fees are awarded "only if warranted for effective deterrence." *Ideal Instruments, Inc. v. Rivard Instruments, Inc*., 245 F.R.D. 381, 387 (N.D. Ia. 2007). When such fees are awarded, they are usually fairly minimal to reflect the fact that it should not take a great deal of work to brief a motion to dismiss against a patently frivolous case. *See, e.g., Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1491 (8th Cir. 1994) (awarding $8,603.25). If a bill comes in at a significant amount, "the court may properly adjust the hours claimed, to avoid an excessive sanction, even if the court finds that the hours claimed were occasioned by the frivolous action and that the hourly rate claimed is reasonable." *Ideal Instruments, Inc*., 245 F.R.D. at 388.

---

[22] So to Speak Podcast Transcript, https://www.thefire.org/research-learn/so-speak-podcast-transcript-columbia-university-mahmoud-khalil-dei-law-firms-and

[23] The appropriate locus of any monetary sanction is on plaintiff's lead counsel.

Bringing a case that is later found to be frivolous is not the sort of "seriously egregious or malicious conduct which would require a stiff penalty" like intentionally lying to the Court or falsifying a document. *See Reagan v. Hi-Speed Checkweigher Co*., 1995 U.S. App. LEXIS 31411, *5 (8th Cir. Nov. 8, 1995) (reducing sanction for filing frivolous case under Rule 11 to $2,500).

The Court may also consider the "sanctioned party's ability to pay, if the sanctioned party raises ability to pay as a defense to the amount of the sanction claimed." *Ideal Instruments, Inc*., 245 F.R.D. at 387-388. The Center for American Rights is a non-profit law firm. Every dollar that it has is raised from patriotic Americans, foundations, and businesses that support its work. It is, moreover, a small firm, with only two employees and two consultants and a total budget well under $1 million per year. That is not to say that nonprofit organizations should be immune from sanctions, but the Court can consider this when determining the appropriate sanction to levy.

## ARGUMENT AS TO SECTION 1927

*Standard of Review*: "Courts should construe § 1927 strictly and impose sanctions only 'when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *SPV-LS, LLC v. Transamerica Life Ins. Co*., 912 F.3d 1106, 1113 (8th Cir. 2019) (quoting *Lee v. L.B. Sales, Inc*., 177 F.3d 714, 718 (8th Cir. 1999)).

*Argument*: First, "[t]he principal purpose of imposing sanctions under 28 U.S.C. § 1927 is 'the deterrence of intentional and unnecessary delay in the proceedings'" by the filing of unnecessary and repetitive papers. *Zuk v. Eastern Pa. Psychiatric Inst*., 103 F.3d 294, 297 (3d Cir. 1996) (quoting *Beatrice Foods v. New England Printing*, 899 F.2d 1171, 1177 (Fed. Cir. 1990)). Dr. Selzer does not—cannot—contend that Plaintiff has filed a blizzard of papers in this case such as "attempts to relitigate already decided issues" with a trio of motions that "wast[e] everyone's

time." *Vallejo*, 903 F.3d at 749 (cleaned up). Plaintiff has filed one motion to remand as provided by statute and one amended complaint as of right as provided by the rules of civil procedure.

Second, the Plaintiff's case is not duplicative any more than it was duplicitous. Plaintiff's counsel conceived the idea and invested time and energy in bringing a case prior to the President's decision to file his case. Plaintiff's public-interest counsel would have proceeded regardless of the President's case because they believe it serves their public-interest mission to ensure accountability for powerful social institutions, including the media.

When Plaintiff's counsel evaluated the President's first petition in Iowa state court, they saw both different claims they could advance and a separate source of standing for their plaintiff as a subscriber to the *Register*. The President's original petition did not plead that he was a subscriber to the *Register*. Plaintiff's counsel reasonably believed that having a subscriber would provide an alternative source of standing for the consumer protection claim and would provide a different argument on standing for the common-law claims.

Furthermore, the President's case had been "snap removed" to federal district court at the time that the Plaintiff filed in Iowa state court. Plaintiff's counsel reasonably believed at the time the case was filed that it would be on a state-court track while the President's case proceeded on a federal track. Plaintiff could also reasonably prefer a state court forum to resolve claims based solely on state law.

Dr. Sezler's argument would essentially create an ethical obligation on an attorney to file a motion to intervene rather than a separate case any time a plaintiff desires to bring claims in a related matter. That is obviously not the law—attorneys file separate cases rather than intervene all the time and don't get sanctioned for it under Section 1927. Also, Dr. Selzer did not move to

consolidate the two cases, which could have mitigated any concerns about inefficiencies caused by two separate cases.

## ARGUMENT AS TO THE COURT'S INHERENT POWER

"[A] court ordinarily should rely on the Federal Rules rather than its inherent power when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules" and only resort to its inherent power if for some reason "the Rules are not up to the task." *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) (cleaned up). When a court does turn to its inherent powers as a source to sanction, they "must be exercised with restraint and discretion." *Id*. They are reserved for those cases where the Rules are not a fit and where "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at 937.

None of these factors are present here. There is no reason that Rule 11 is not up to the task, such as the timeliness concern created by multiple TRO filings in the *Schafly* case. There is no evidence here of bad faith or an intent to injure. There is no need for resort to inherent authority.

## PLAINTIFF'S FEES ARE WARRANTED IN THIS INSTANCE

Rule 11(c)(2) provides, "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."[24] In a comprehensive opinion, a judge on the Southern District of Texas has synthesized the case law on when attorneys' fees under Rule 11 are "warranted." *Adhikari v. Daoud & Partners*, 2017 U.S. Dist. LEXIS 196702, *23 (S.D.Tex. Nov. 30, 2017). The court explains that on the one hand, not all prevailing parties on a Rule 11 motion receive fees specific to that motion (which would render the "if warranted" qualifier meaningless). On the other hand, the motion for sanctions does not itself have

---

[24] In other words, one requests fees in response to the motion rather than by filing a cross motion. *See* F.R.C.P. R. 11 Adv. Comm. Notes ("service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.").

to be so bad as to be frivolous to warrant fees, because the relevant standard is "if warranted," not "if the motion is itself frivolous." The Southern District then summarized precedent to show that attorneys fees are "warranted" when the Rule 11 motion was used "for the improper purpose of intimidation," was "needlessly hostile or inconsiderate" toward opposing counsel, or was "without sound argument." *Id*. at *25 (cleaned up; citations omitted).

Plaintiff's counsel is hesitant to complain about lawfare and then turn around and request attorneys' fees himself. But in this instance, such an award is warranted.[25] Dr. Selzer's motion is partially jurisdictionally defective. It is contrary to the certification from the Attorney General of Iowa. It is hypocritical compared to FIRE's own previous litigation positions.

Most importantly, it is obviously unwarranted in light of this Court's ruling on the motions to dismiss, and Dr. Selzer's lawyers were advised of this before filing. Dr. Selzer originally served the 21-day notice in early September, prior to this Court's ruling on the motion to remand or motions to dismiss. Dr. Selzer did not file when the 21-day safe harbor expired but chose to wait until after this Court ruled on the motion to dismiss. Then Dr. Selzer chose to go ahead with filing after that ruling. In an email exchange at that time, Plaintiff's counsel advised that nothing in this Court's opinion used the language of Rule 11 (frivolous, abusive, meritless, etc.), and in fact this Court's order at page 7 acknowledge the law here is "far from clear" and that there was no binding precedent. Plaintiff's counsel advised Dr. Selzer's counsel that if he moved forward with filing the motion, he believes that fees would be warranted in that case. Dr. Selzer still chose to file.

On top of all that, Plaintiff fears that the Rule 11 was first served on Plaintiff's counsel to coerce him into dropping the case. The extreme nature of the sanctions sought—full attorneys fees and the suggestion of disbarment, levied against a two-lawyer nonprofit law firm and their retiree

---

[25] Plaintiff's counsel advised Dr. Selzer's counsel via email ahead of Dr. Selzer's filing of this motion that Plaintiff intended to seek his attorneys fees under the rule.

local counsel—make it look like an illegitimate effort "to intimidate an adversary into withdrawing . . . ." F.R.C.P. 11 Adv. Comm. Notes. Dr. Selzer sent the 21-day safe harbor notice prior to the decision on the motion to dismiss. That notice put the plaintiff and his counsel in a vice: drop a lawsuit that you think is meritorious and save yourself exposure to tens or hundreds of thousands of dollars in attorneys fees and a disciplinary referral for disbarment, or proceed and risk everything. That puts terrible pressure on a party or lawyer to just drop the case or defendant rather than risk such awful outcomes. Lawyers should not be asked to bet their entire careers on a single ruling, and the Advisory Committee notes specifically warn against this misuse of Rule 11.

Indeed, Dr. Selzer's law firm FIRE recognized this potential problem in its prior amicus brief. FIRE warned that exposure to attorneys fees in public-interest cases would make those clients "hesitate to file suit, chilling the protection of their own civil rights and the development of the law." Amicus Br. at 6. FIRE warns that such awards "chill both citizens and attorneys from bringing novel claims for fear of those arguments being deemed frivolous." *Id*. at 7. FIRE explains that public interest clients and lawyers need room to "challeng[e] longstanding laws seemingly backed by history and precedent" (*id*.) without a sword of Damocles hanging over their heads because of the threat of a massive award of attorneys fees against them.

FIRE tried wielding that same sword against Mr. Donnelly and his lawyers, threatening financial and professional ruin unless they dropped the case. Dr. Selzer's notice of her intended Rule 11 motion essentially said, "That's a nice law firm and legal career you got there—would be a shame if anything happened to it." That sort of vice-like pressure to cave and drop a case is not an appropriate use of Rule 11 and should only be used for truly egregious cases.

Fees are also warranted here to deter future weaponization of Rule 11 in public interest cases. This Court needs to send a strong message to FIRE and others that Rule 11 should not be misused

to punish ideological opponents or to press one's advantage in public interest cases. As a FIRE said on a recent FIRE podcast, "aggressively" using Rule 11 results in "further weaponization of the existing process" against political opponents.[26] Especially at this moment in time, this Court needs to tell lawyers to respect one another as professionals and exercise particular care not to misuse the process in cases where feelings run high because of political differences.

Plaintiff's counsel has spent approximately 25 hours dealing with this motion and preparing this brief. At $400 an hour, which is a more than reasonable rate for the nonprofit equivalent of a partner at a boutique Chicago litigation firm, that would equate to $10,000 in fees. That is a reasonable award given the procedural defects in the motion, the lack of legal basis for the motion, the hypocrisy of the motion compared to FIRE's prior litigation position, and to deter misuse of Rule 11 to pressure plaintiffs or as a weapon to punish ideological adversaries.

## CONCLUSION

The motion should be denied. This Court lacks jurisdiction over at least two of the claimed violations. The motion is wrong on the merits of Rule 11(b)(1), Rule 11(b)(2), 28 U.S.C. 1927, and this Court's inherent authority. The motion does not address the discretionary factors at all; doing so reveals they point in Plaintiff's direction. The motion is hypocritically inconsistent with FIRE's own statements and prior litigation positions. The motion created inappropriate pressure to drop the case and weaponized this Court's processes. The motion should be denied. Moreover, given these failures, attorneys fees specific to responding to the motion are warranted.

Respectfully submitted,

---

[26] So to Speak Podcast Transcript, https://www.thefire.org/research-learn/so-speak-podcast-transcript-columbia-university-mahmoud-khalil-dei-law-firms-and

/s/ Robert R. Anderson
Robert R. Anderson
Iowa State Bar No. AT9021
P.O. Box 4
Atlantic, IA 50022
Phone (515) 382-1278
Email: Bobandersoniowan@gmail.com

/s/ Daniel R. Suhr
Daniel R. Suhr
Center for American Rights
1341 W. Fullerton Ave., Suite 170
Chicago, IL 60614
Email: dsuhr@americanrights.org

November 25, 2025