# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DES MOINES REGISTER AND TRIBUNE CO., INC.; J. ANN SELZER; SELZER & COMPANY; and GANNETT CO., INC.,<br><br>Defendants. | Civil Case No. 4:25-cv-00150-RGE-WPK<br><br>**DEFENDANTS J. ANN SELZER AND SELZER & COMPANY'S REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

I.     Donnelly Failed to Allege Even the Basic Elements of the Respective Counts ................. 3

II.    Donnelly's First Amendment Arguments are Frivolous and Do Not Advance Any Basis for Modifying or Extending the Law ....................................................................... 5

III.   Donnelly's Counsel Misstates Possible Rationales for Avoiding Sanctions ...................... 7

IV.   This Court Has Discretion to Determine Appropriate Sanctions ..................................... 10

CONCLUSION......................................................................................................................11

**TABLE OF AUTHORITIES**

**Cases**

*281 Care Comm. v. Arneson*,
 766 F.3d 774 (8th Cir. 2014) .................................................................................................. 5

*Caranchini v. Nationstar Mortg., LLC*,
 97 F.4th 1099 (8th Cir. 2024) ................................................................................................ 11

*E. Gluck Corp. v. Rothenhaus*,
 252 F.R.D. 175 (S.D.N.Y. 2008) ........................................................................................... 10

*GRiD Sys. Corp. v. John Fluke Mfg. Co.*,
 41 F.3d 1318 (9th Cir. 1994) ................................................................................................... 2

*Igbanugo v. Minn. Off. of Laws. Pro. Resp.*,
 56 F.4th 561 (8th Cir. 2022) .................................................................................................... 2

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*,
 538 U.S. 600 (2003) ................................................................................................................ 5

*King v. Whitmer*,
 71 F. 4th 511 (6th Cir. 2023) ................................................................................................... 7

*Manhart v. WESPAC Found., Inc.*,
 No. 24-cv-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) ........................................ 4, 8, 9

*Meyer v. U.S. Bank Nat'l Ass'n*,
 792 F.3d 923 (8th Cir. 2015) ................................................................................................... 2

*MHC Inv. Co. v. Racom Corp.*,
 323 F.3d 620 (8th Cir. 2003) ............................................................................................... 2, 4

*Robinson v. Midland Funding, LLC*,
 No. 10CV2261, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011) ............................................... 8

*Stuber v. Lucky's Auto Credit, LLC*,
 No. 20-cv-00007, 2021 WL 136093 (D. Utah Jan. 14, 2021) ............................................... 10

*Trump v. Clinton*,
 Nos. 22-13410, 23-10387, 23-13177, 22-14099, 2025 WL 3290254 (11th Cir.
 Nov. 26, 2025) ................................................................................................................ 2, 3, 6

*Trump v. Clinton*,
 653 F. Supp. 3d 1198 (S.D. Fla. 2023), *aff'd*, 2025 WL 3290254 (11th Cir. Nov. 26,
 2025) ........................................................................................................................................ 7

*TVKO v. Howland*,
  73 P.3d 905 (Or. 2003) .................................................................................................... 2

**Statutes**

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ........................................... 2, 6

Iowa Code § 714H.7 ..................................................................................................................... 2

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller,
  *Federal Practice and Procedure* § 1337.1 (4th ed. 2024) .......................................................... 2

**INTRODUCTION**

Plaintiff's counsel's repeated statements that "no governing precedent is directly on point," that "no on-point Iowa precedent" supports the claims against J. Ann Selzer and Selzer & Company, and that it "is true" Plaintiff's counsel "could not cite a single case where such a claim succeeded" are not defenses to the imposition of sanctions—they are admissions. Br. in Opp. to Dr. Selzer's Mot. for Sanctions (Opp.) at 6, 12, 13, ECF No. 56. Professional standards, federal law, and Rule 11 require counsel to affirmatively represent that their arguments are warranted by existing law or a nonfrivolous argument to change it, and that their arguments are not presented for any improper purpose. But Plaintiff's counsel assume it is Defendants' obligation to prove no claims were possible. In getting that backwards, any argument that Plaintiff's counsel fulfilled their ethical obligations falls short, particularly in light of their decision to sue *personally* an individual who has no relationship of any kind with the Plaintiff.

Counsel assume too much in asserting "two simple, straightforward" paths to exoneration. *Id*. at 6. First, this Court's Rule 12(b)(6) holding that Plaintiff failed to advance a single plausible claim does not help them. Their assertions that the Court did not "use the language of Rule 11" in dismissing the case or that it "did not adopt Dr. Selzer's legal analysis to resolve" it, *id.* at 6, 13, are both overstated and irrelevant. This Court was neither asked, nor was it necessary to resolve, the question of sanctions when it dismissed this case with prejudice. Nonetheless, what the Court did hold supports issuing sanctions now.

Second, Plaintiff's counsel exaggerate in asserting "the Attorney General has said the case is not frivolous." *Id.* at 8. The Attorney General said no such thing and has taken no position on the merits. Iowa law provides only that the AG "**shall** approve the filing of a class action lawsuit alleging a violation of this chapter *unless the attorney general determines that the lawsuit is*

*frivolous*." Iowa Code § 714H.7 (emphasis added). Plaintiff's counsel neither disclose what material they sent the Attorney General's office, or when, nor establish whether the AG conducted any analysis of the claims. Notably, counsel filed the initial action *before* seeking any approval. ECF No. 1-1 at ¶ 113.[1] And when they eventually obtained certification, the two-sentence email merely stated the AG's office "expresses no views about the merits of the consumer protection claim or lawsuit." *See* Ex. 1. Nor is this like a case where a state official is enforcing a law based on the Attorney General's official interpretation, as Donnelly asserts. Opp. at 8 (citing *TVKO v. Howland*, 73 P.3d 905, 910 (Or. 2003)). Even if the certification had some bearing on the merits when received, it has no effect on counsel's ongoing obligation to assess the legal viability of their Plaintiff's claims. *See MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 625 (8th Cir. 2003).

## ARGUMENT

Just last week, the Eleventh Circuit upheld significant sanctions in a series of cases that sought to misuse the courts for political purposes to punish various parties who allegedly wove a "false narrative" about President Trump. *See Trump v. Clinton*, Nos. 22-13410, 23-10387, 23-13177, 22-14099, 2025 WL 3290254, at *1 (11th Cir. Nov. 26, 2025). Among other findings, the court held counsel had advanced frivolous legal theories that could not be excused by asserting "the case law is unsettled or there was a reasonable request for an extension of the law" where

---

[1] Plaintiff's counsel erroneously contend this Court's jurisdiction does not extend to papers filed in state court in an action that was later removed. Opp. at 8-9. However, Rule 11 applies to counsel presenting "in federal court [after removal] the allegations of a pleading filed in state court." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1337.1 (4th ed. 2024). *See also Meyer v. U.S. Bank Nat'l Ass'n*, 792 F.3d 923, 928 (8th Cir. 2015). Plaintiff's counsel's citation of *Igbanugo v. Minnesota Office of Lawyers Professional Responsibility*, 56 F.4th 561 (8th Cir. 2022) is inapposite, as the court there disclaimed jurisdiction only for "proceedings that wholly took place in state court." *Id.* at 566 n.3. The same is true of *GRiD Systems Corp. v. John Fluke Manufacturing Co.*, 41 F.3d 1318, 1319 (9th Cir. 1994) ("Here, Fenwick & West took no action before the district court.").

plaintiff asserted a "malicious prosecution claim without a prosecution" and a "trade secret claim without a trade secret." *Id.* at *11. So too, here. Donnelly's counsel concocted fraud and misrepresentation claims against Selzer even though there was never any kind of economic arrangement or "transaction" between Donnelly and Selzer.

Donnelly's counsel try to distinguish cases finding no cause of action exists for "fake news" by arguing "none involved a consumer with a paid contract for a product," Opp. at 6 n.1, that "none clearly involve … a paid subscriber bringing a consumer protection action against a newspaper," *id.*, that Donnelly's "individual subscription to the *Des Moines Register* is a private right that gives him a cause of action under Iowa's common-law and statutory consumer protection laws," *id.* at 11, and that Donnelly "was owed a duty … as a paying subscriber," *id.* at 13. But none of this has anything to do with *Selzer*.

Neither Selzer & Co. nor J. Ann Selzer personally sells newspapers, and Donnelly never alleged as much. Donnelly never alleged he ever entered into a "paid contract" with Selzer or her company. Donnelly never alleged he was a "paid subscriber" of anything that Selzer & Co. or Ann Selzer ever sold. By arguing against Selzer's sanctions motion that Donnelly's subscription to the *Des Moines Register* provided a basis to sue Ann Selzer personally, Donnelly's counsel confirm that the claims against Selzer never had any merit. Whatever relationship may exist between Donnelly and the *Des Moines Register* that might have persuaded counsel they could mount a cause of action against the newspaper (however misguided), there was never a nonfrivolous reason for dragging Selzer into this case.

I.  **Donnelly Failed to Allege Even the Basic Elements of the Respective Counts**

Contrary to Donnelly's counsel, this motion is not the result of "a disagreement over the individual elements of fraudulent misrepresentation or Iowa's consumer protection statute." Opp. at 12. As set forth in the sanctions motion, Donnelly's counsel failed to even attempt to plead the

3

necessary elements of the various state claims and did not respond after Selzer pointed out these obvious deficiencies. Br. in Supp. of Mot. for Sanctions (Sanctions Mot.) 13-18, ECF No. 53. Donnelly neither addresses nor disputes clear law that asserting such claims without pleading the required elements merits sanctions. *See Racom Corp.*, 323 F.3d at 624-27; *see also Manhart v. WESPAC Found., Inc.*, No. 24-cv-08209, 2025 WL 2257408 at *8 (N.D. Ill. Aug. 7, 2025) ("Plaintiff cannot use the wrong tort as a backdoor into allowing the public to harass Defendants with a class action where the law would prohibit a claim under the correct tort from proceeding.").

Donnelly's entire opposition boils down to three arguments: (1) the Court's Rule 12(b)(6) rationale "did not adopt the method of analysis used by Dr. Selzer in her motion to dismiss," Opp. at 12, 13 (Counts I and IV); (2) the Court can infer Selzer owes a legal duty to Donnelly "as a paying subscriber [of the *Register*—not of anything Selzer & Co. or Ann Selzer allegedly sold]," and its opinion "presumes the *Register* is consumer merchandise," *id.* at 13 (Alternate Counts I and II); and (3) even though "there is no on-point Iowa precedent" for applying malpractice standards to newspapers, "there is persuasive precedent from other jurisdictions," *id.* (Count III). None of these arguments has merit.

First, it is irrelevant whether the Court adopted all the reasoning of Selzer's Rule 12(b)(6) motion when it dismissed Donnelly's claims because the issues it addressed were fully dispositive. Pertinent to *this* motion is whether the Court agrees with the reasoning in Selzer's motion for sanctions, which was not before the Court when it ruled on the Rule 12(b)(6) motion and which Donnelly does not address. Second, Donnelly's claims about what duties newspapers may owe to subscribers or the status of newspapers as "consumer merchandise" has no bearing on this case. Neither Selzer & Co. nor Ann Selzer personally sells newspapers. Donnelly never alleged, nor could he, that Selzer *ever* had a business relationship of any kind with Donnelly. Third, Donnelly

4

admits there is no on-point precedent supporting any of his claims, and the few out-of-state cases he cites are hardly persuasive where all denied the asserted claims. In any event, each of those cases assumed a direct business relationship which is not present here, and which Plaintiff's counsel know has never been present. *See* Opp. at 13 ("the difference between the general public and a private paying consumer is crucial.").

## II. Donnelly's First Amendment Arguments are Frivolous and Do Not Advance Any Basis for Modifying or Extending the Law

Selzer showed how no court has ever recognized a cause of action for "fake news," but Donnelly tries to reframe the issue as "whether a consumer can sue a news outlet." *Id.* at 6 n.1. That is not the issue here; it is whether Donnelly can sue *Selzer* because he disliked the findings of her poll *published* in a newspaper. None of Donnelly's already inapposite cases against news outlets come remotely close to rendering suits against nonparties to a subscriber agreement nonfrivolous. Donnelly seizes on this Court's dictum that "[n]either the Supreme Court nor the Eighth Circuit has yet clearly announced such a category of absolute immunity from tort or consumer protection actions for newspapers engaged in political reporting," *id.* at 6 (citing ECF No. 48 at 7), but overlooks the *holding* that the First Amendment barred all five counts of Donnelly's complaint, ECF No. 48 at 11-12.

As this Court explained, "Each of Donnelly's claims must satisfy First Amendment scrutiny because 'there is no free pass around the First Amendment,'" *id.* at 6 (quoting *281 Care Comm. v. Arneson*, 766 F.3d 774, 783 (8th Cir. 2014)), and "[a] party cannot evade First Amendment scrutiny by '[s]imply labeling an action one for 'fraud,'" *id.* (quoting *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 617 (2003)). And with respect to Selzer's polling specifically, this Court held "[n]o false representation was made" because "it is impossible to know what the state of the presidential race was during the days the poll was conducted" and

5

"polls are a mere snapshot of a dynamic and changing electorate." *Id.* at 12-13. It also held that "publishing the results of a political opinion poll that matches the co-published methodology is not an unfair or deceptive practice." *Id*. at 15. Whether or not First Amendment immunity might be characterized as "absolute" is not the salient point. Rule 11 requires attorneys to avoid bringing frivolous claims, as these plainly are. *E.g.*, *Trump*, 2025 WL 3290254, at *11.[2]

Donnelly's assertion that this is a good faith effort to extend the law is an after-the-fact rationalization that contradicts his arguments. *Compare* Sanctions Mot. at 18-19 *with* Opp. at 14-15.[3] Counsel maintained all along that their interpretation *is* the law. For example, Plaintiff repeatedly maintained he could bring this case under a products liability theory, the same as if he were bringing an action for a dead mouse in a can of Mountain Dew. *See, e.g.*, ECF No. 36 at 6, 30, 32, 38. But even if a plausible case could be made that this was an effort to modify existing law, that argument is limited to their constitutional theories. Counsel made no argument to alter the required elements of various state law claims, which were largely overlooked.

Donnelly now contends this case is an effort to "revisit" the "actual malice standard from *New York Times v. Sullivan*," Opp. at 14-15, but that was never counsel's argument. Quite to the contrary, Plaintiff's counsel attempted to embrace the actual malice standard in every pleading

---

[2] No conceivable First Amendment exception applies where there is no false statement even under Donnelly's reasoning. Bringing a cause of action under these circumstances is like alleging obscenity where there is no depiction of sex or (as here) fraud where there is no transaction; the absence of essential elements precludes any argument for evading the First Amendment—or for a finding of nonfrivolousness.

[3] Donnelly's counsel quote Rule 11's Advisory Committee Notes stating that arguments for a change in law "are not required to be specifically so identified," Opp. at 14, but leaves off the rest of the sentence that "a contention that is so identified should be viewed with greater tolerance under the rule," Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Here, Plaintiff's counsel insisted they were advancing existing law under a products liability theory. *See* No. 36 at 6, 30, 32, 38; cf. ECF No. 41 at 3-4.

they filed both here and in *Trump v. Selzer*. As counsel summed it up, "Mr. Donnelly recognizes that he must show actual malice." ECF No. 34-1 at 31; s*ee also id*. at 6-7, 9-14, 20-23; *see also* Amicus Br. of the Ctr. for Am. Rts. at 8-9, *Trump v. Selzer*, No. 24-cv-00449 (S.D. Iowa Mar. 21, 2025), ECF No. 38-1 (noting "the *New York Times* case sets the exception for false publications"). Pointing now to "longstanding debate within the judiciary and the academy" over the *Sullivan* standard in defamation cases, Opp. at 14, says nothing about what counsel argued in *this* case. The fact that a debate may be going on somewhere in the world does not mean those arguments were made here.

### III.    Donnelly's Counsel Misstates Possible Rationales for Avoiding Sanctions

Donnelly's counsel advances several arguments for avoiding sanctions, none of which has merit.

**This case was brought for an improper purpose.** This case is nothing more than an excuse "to advance a political narrative; not to address legal harm caused by any Defendant." *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1211 (S.D. Fla. 2023), *aff'd*, 2025 WL 3290254 (11th Cir. Nov. 26, 2025). Counsel respond that it is perfectly acceptable to use litigation to advance political causes, citing *King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023), for the proposition that "parties and their attorneys are free to use litigation 'as a vehicle for effective political expression and association.'" Opp. at 15 (quoting *Whitmer*, 71 F.4th at 520 (citation omitted)). However, this quoted language related only to out-of-court statements lawyers make to frame political narratives. Filing claims *in court*, however, must meet a higher standard, including the certifications required by Rule 11. Accordingly, the Sixth Circuit in *Whitmer* upheld sanctions for filing frivolous election interference claims, including the imposition of fines and bar disciplinary referrals. *Whitmer*, 71 F.4th at 527-28, 530-33. Here, Selzer is seeking sanctions not for Donnelly's press statements, but

7

for his counsel's frivolous pleadings, including, like in *Whitmer*, a frivolous election interference claim.

Secondarily, Donnelly asserts this case was brought for a proper purpose to address a legal harm because "plaintiff paid good money for his subscription to the *Des Moines Register*" making this is "a legal dispute between a consumer and a service provider." Opp. at 16. But there is no such dispute between Donnelly and Selzer. She is not his "service provider" and he has not paid her "good money" for anything. Nevertheless, Plaintiff sued Selzer personally, which suggests the only objective was political intimidation. Counsel never had any legitimate purpose for bringing Selzer into this case.[4]

**Plaintiff's counsel has engaged in similar conduct in other litigation.** Donnelly's counsel state that "Dr. Selzer's counsel at FIRE may well say" that "a consumer complaint filed by the Center for American Rights at the Federal Communications Commission (FCC) was nothing more than [] 'a nakedly political abuse of process.'" Opp. at 18. Defendants had not intended to bring up the FCC proceeding, but Plaintiff's decision to inject it into this case illustrates well why this is an exercise in political abuse. A bipartisan group that included seven former FCC commissioners (five Republicans and two Democrats), four of whom had served as Chairman, as well as senior staff members, filed a petition with the FCC that specifically named this Center for American Rights complaint as having "weaponized" the FCC's processes "for partisan purposes."

---

[4] Donnelly also argues—without citation—that Rule 11's improper purpose provision should not be used as an anti-SLAPP rule. Opp. at 16-17. But there is nothing incompatible with enforcing Rule 11's mandate against frivolous litigation even where a state anti-SLAPP law does not apply. *E.g.*, *Manhart*, 2025 WL 2257408, at *13-14, *15-16 (awarding sanctions even where Illinois anti-SLAPP statute was inapplicable because "[t]he purpose of Rule 11 is to deter baseless filings").

8

*See Petition for Special Relief in the Matter of Repeal of the News Distortion Policy*, attached as Ex. 2 at 10-12.[5]

Donnelly's counsel try to characterize this sanctions motion as arising from a disagreement between two public interest organizations, but that is far from the truth. Opp. at 18-19. FIRE is a nonpartisan free speech advocacy organization that has a long track record of representing parties from across the political spectrum whose free speech rights are threatened. In this case, FIRE attorneys are serving as counsel for Selzer to protect her speech from attack through a frivolous lawsuit. Rather than emerging from some imagined disagreement between public interest groups, this sanctions motion is a response to a political organization's decision to sue a respected pollster for "fraud" and "misrepresentation" without any tether to the actual elements of a cause of action.

**Having experienced counsel is not an excuse.** Plaintiff's counsel assert sanctions are unwarranted because of their qualifications and background of success in bringing novel matters and that "this case was undertaken by serious, thoughtful lawyers with deep familiarity with First Amendment issues*.*" *Id.* at 21-22. However, to whatever extent that may be true, it cannot excuse knowingly filing frivolous claims. The court rejected just such an argument in *Manhart*, where that plaintiff's counsel claimed to have contemplated the legal theories underlying the case for years, insisted he "would not bring a frivolous lawsuit," and "described his longstanding and successful practice of bringing novel theories and questions of first impression before courts." 2025 WL 2257408, at *17. While the court credited counsel's apparent "genuine and personal concern with Defendants' alleged conduct," it held that such concern "does not give Plaintiff *carte*

---

[5] This Court may take judicial notice of official agency filings. *Robinson v. Midland Funding, LLC*, No. 10CV2261, 2011 WL 1434919, at *2 (S.D. Cal. Apr. 13, 2011) (taking judicial notice of comments filed with FCC). To be clear, Defendant is citing the FCC proceeding only in response to Plaintiff's counsel's assertion there is no pattern of political abuse and is not asking this Court to make any determination regarding broadcast law.

9

*blanche* to make frivolous legal arguments, ignore controlling precedent, and misrepresent existing law in support of his case." *Id.* The same conclusion applies here. If anything, counsel's experience suggests the rule violations were not the result of inexperience or inadvertence and that sanctions other than remedial legal education will be necessary to deter further misconduct.

### IV.   This Court Has Discretion to Determine Appropriate Sanctions

The bases for awarding sanctions are fully set forth in Defendant's motion. Which sanctions may be appropriate in this case is a matter for this Court's sound discretion and should be calibrated to deter abuse of the judicial system. Sanctions Mot. 22-24. At the same time, this Court should deny Plaintiff's request for expenses under Rule 11(c)(2). *See* Opp. at 26-29. As explained above, Plaintiff's counsel cannot show that the sanctions motion was unreasonable under the circumstances or not grounded in fact or law. *Stuber v. Lucky's Auto Credit, LLC*, No. 20-cv-00007, 2021 WL 136093, at *2 (D. Utah Jan. 14, 2021); *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 180 (S.D.N.Y. 2008) ("[F]ees are infrequently granted where the motion was not clearly frivolous, filed for an improper purpose, or not well-grounded in fact or law.").

Plaintiff's counsel repeat the arguments addressed above (*e.g.*, the AG's certification and the breadth of the Rule 12(b)(6) order) but provide no reason to either deny sanctions in this case or to order payment of reverse fees. Counsel then assert that "the Rule 11 [motion] was first served on Plaintiff's counsel to coerce him into dropping the case." Opp. at 27-28. First of all, the purpose of Rule 11's safe-harbor provision is to give a plaintiff the opportunity to dismiss unsupported or abusive claims without facing sanctions. So, of course the motion's preservice was to encourage dismissal. That aside, Plaintiff's position overlooks the fact that, at every step in this case, Defendants' counsel tried to alert the Plaintiff that the underlying claims lacked any legal foundation or legitimate purpose. Sanctions Mot. at 2-6. Despite these repeated warnings, both on

10

the constitutional theory underlying the case as well as on the failure to plead essential elements of the state law claims, Plaintiff's counsel made no changes to the claims against Selzer.

When that approach failed, Defendant's counsel followed the process prescribed by Rule 11(c)(2)—to serve Plaintiff's counsel with a sanctions motion, thus triggering the 21-day safe-harbor period "where a party is given the opportunity to withdraw or correct the challenged paper before a sanctions motion is filed." *See Caranchini v. Nationstar Mortg., LLC*, 97 F.4th 1099, 1102-03 (8th Cir. 2024) ("Done any other way, the recipient would be left guessing the opponent's seriousness.") (cleaned up) (citation omitted). Rather than seeking to withdraw or amend the frivolous claims, Plaintiff's counsel responded by filing an erratum, adding his signature to *reaffirm* his false representations to the Court under Rule 11. ECF No. 46. If following this process is coercive, as Plaintiff's counsel now asserts, then every Rule 11 motion is coercive.

## CONCLUSION

Plaintiff's counsel filed and maintained fanciful claims in federal court against Dr. Selzer and her company despite the fact—as they now frankly admit—"no governing precedent is directly on point" and they "could not cite a single case where such a claim succeeded." Opp. at 6, 12. They compounded this error by bringing fraud claims personally against an individual the Plaintiff had never met, and with whom he has no business relationship. This sanctions motion followed because Plaintiff's claims against Selzer lacked any legal support or legitimate purpose, not for any other reason. Accordingly, this Court should award appropriate sanctions to deter abuse of the judicial system.

Dated: December 3, 2025                    Respectfully Submitted,

/s/ *Robert Corn-Revere*                .
Robert Corn-Revere*†
  (DC Bar No. 375415)
Conor T. Fitzpatrick*

11

    (Mich. Bar No. P78981)
FOUNDATION FOR INDIVIDUAL
 RIGHTS AND EXPRESSION (FIRE)
700 Pennsylvania Ave., SE; Suite 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@thefire.org
conor.fitzpatrick@thefire.org

Greg Greubel
 (Iowa Bar No. AT0015474)
Adam Steinbaugh*
 (Cal. Bar No. 304829)
FOUNDATION FOR INDIVIDUAL
 RIGHTS AND EXPRESSION (FIRE)
510 Walnut St.; Suite 900
Philadelphia, PA 19106
(215) 717-3473
greg.greubel@thefire.org
adam@thefire.org

Matthew A. McGuire
 (Iowa Bar No. AT0011932)
NYEMASTER GOODE, P.C.
700 Walnut St., Suite 1300
Des Moines, IA 50309
(515) 283-8014
mmcguire@nyemaster.com

*Attorneys for Defendants J. Ann Selzer and Selzer & Company*

\* *Admitted pro hac vice.*
† *Lead counsel*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing document was served upon all parties of record through the Court's CM/ECF electronic filing system on December 3, 2025.

/s/ *Robert Corn-Revere*