E-FILED CVCV069420 - 2026 SEP 23 03:50 PM POLK
CLERK OF DISTRICT COURT Page 1 of 64

**IN THE IOWA DISTRICT COURT FOR POLK COUNTY**

| | |
|---|---|
| **PRESIDENT DONALD J. TRUMP, U.S. REPRESENTATIVE MARIANNETTE MILLER-MEEKS, and FORMER STATE SENATOR BRADLEY ZAUN**<br>**Plaintiffs,**<br><br>**vs.**<br><br>**J. ANN SELZER, SELZER & COMPANY, DES MOINES REGISTER AND TRIBUNE COMPANY, and GANNETT CO., INC.**<br>**Defendants.** | **Case No. CVCV069420**<br><br>**RULING ON DEFENDANTS' MOTIONS TO DISMISS** |

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 3
II. PROCEDURAL BACKGROUND ..... 4
III. THE PLAINTIFFS' ALLEGATIONS IN THEIR PETITION ..... 5
IV. MOTION TO DISMISS STANDARD ..... 7
V. THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS ..... 10
  A. The Questions Presented in This Part Are Questions of Law. ..... 10
  B. The First Amendment Applies to This Action. ..... 12
  C. The Iowa Poll and the Reporting on It Are Not Commercial Speech. ..... 13
  D. The Unprotected Categories Are Few and Closed, and a Label Does Not Open Them. ..... 16
  E. The Fraud Exception Is Defined by Its Elements, and Those Elements Are Constitutional Limits. ..... 17
  F. The Elements That Define the Fraud Exception Are Absent Here. ..... 19
    1. The Iowa Poll Was Not a Provably False Statement of Fact. ..... 19
    2. No Representation Was Made to Plaintiffs, and No Plaintiff Parted with Anything in Reliance. ..... 20
  G. Conclusion on Constitutional Grounds and the Alternative Grounds. ..... 22
    1. Actual Malice. ..... 22
    2. Prior Restraint. ..... 24
    3. Strict Scrutiny. ..... 24
VI. THE PETITION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER IOWA LAW ..... 26
  A. Count I: The Iowa Consumer Fraud Act ..... 28
    1. The Statute. ..... 28
    2. The Petition Alleges No Prohibited Act Under Section 714H.3(1) of the Consumer Fraud Act. ..... 29

3. The Petition Alleges No Ascertainable Loss and No Reliance Under the Private Right of Action Section 714H.5(1). .... 34
4. Conclusion on Count I. .... 37
B. Count II. Fraudulent Misrepresentation .... 38
1. The Elements and Claim. .... 38
2. A Fraud Claim May Be Dismissed on the Pleadings. .... 39
3. What the Court's Assumption Concedes. .... 39
4. The Petition Alleges No Representation Made to Induce Any Plaintiff to Act. .... 40
5. No Plaintiff Acted in Reliance on the Truth of the Polls. .... 42
6. The Injuries Alleged Are Not Losses the Law of Fraud Compensates. .... 45
7. Conclusion on Count II. .... 47
C. Count III. Negligent Misrepresentation .... 47
1. The Elements and the Claim. .... 47
2. Duty. .... 49
3. Neither Defendant Is in the Business or Profession of Supplying Information to These Plaintiffs. .... 50
4. The Polls Were Not Supplied for the Benefit and Guidance of Plaintiffs. .... 53
5. No Court the Parties Cite Imposes a Duty Running from a Publisher to Its Audience. .... 54
6. The Remaining Elements Fail. .... 56
7. The Plaintiffs' Alternative Theories. .... 57
8. Conclusion on Count III. .... 58
D. Conclusion on the State Law Grounds for Dismissal. .... 59
VII. THE REQUEST FOR SANCTIONS .... 60
VIII. CONCLUSION AND ORDER .... 62

# I. INTRODUCTION

J. Ann Selzer and Selzer & Company ("Selzer") conducted political polls in Iowa for nearly four decades.[1] Three days before the 2024 general election, the Des Moines Register and Tribune Company and Gannett Co., Inc. ("the Register") published a Selzer poll showing Kamala Harris leading Donald Trump in Iowa and Christina Bohannan leading Mariannette Miller-Meeks in Iowa's First Congressional District.[2] The poll proved wrong.[3] This case arises from that error.

Donald J. Trump, Mariannette Miller-Meeks, and Bradley Zaun ("the Plaintiffs") sue in their private capacities.[4] The Petition pleads a violation of the Iowa Consumer Fraud Act, fraudulent misrepresentation, and negligent misrepresentation,[5] and asks the Court to enjoin the publication of any further deceptive polls.[6] Both Defendants have moved to dismiss.

This case sets a President, a member of Congress, and a former state senator against a pollster and a newspaper, and it arises out of an election. A case of that kind invites the reader to look for a political result. The Court's role is narrower. It is to sit as an impartial arbiter, to apply the law without passion or prejudice, and to rule without regard to the politics of the day. As such, the only question before the Court is whether the Petition states a claim the law recognizes. At its core, the Plaintiffs' Petition seeks to stretch both Iowa statutory and common law beyond their current bounds, turning speech that enjoys the highest category of First Amendment protection into a liability. After considering the parties' arguments, the Court must conclude that the protection is too great and the reach is too far. The case must therefore be dismissed.

[1] Pet. ¶¶ 23, 29, 132.
[2] Pet. ¶¶ 1-3, 63.
[3] Pet. ¶¶ 2, 64.
[4] Pet. ¶¶ 20-22.
[5] Pet. ¶¶ 96-156.
[6] Pet. ¶ 127.

## II. PROCEDURAL BACKGROUND

Trump sued Selzer and the Register in this Court on December 16, 2024,[7] pleading one Iowa Consumer Fraud Act count.[8] Gannett removed the case to federal court the next day.[9] Trump amended to add Miller-Meeks, Zaun, and the misrepresentation counts,[10] but the federal district court vacated the amendment and denied remand on May 23, 2025.[11] The Plaintiffs dismissed the federal case and filed the Petition now before this Court on June 30, 2025.[12] After further procedural skirmishes,[13] the federal case ended on December 2, 2025.[14]

Selzer and the Register moved to stay this case,[15] and on February 10, 2026, the Court stayed discovery pending the anticipated Motions to Dismiss.[16] Selzer moved to dismiss on March 30, 2026, and the Register on March 31, 2026. The Plaintiffs resisted on June 4, 2026, the Defendants replied on June 27 and July 6, 2026, and the Court heard oral argument on July 10, 2026.[17]

---

[7] Ex. L (Petition, Polk Cnty. Case No. CVCV068364); Press Defs.' Br. at 8; Selzer Defs.' Mem. at 3.
[8] Press Defs.' Br. at 8-9.
[9] Press Defs.' Br. at 9; Ex. M.
[10] Ex. N; Press Defs.' Br. at 9.
[11] Ex. O at 10-11; Press Defs.' Br. at 9-10.
[12] Press Defs.' Br. at 10.
[13] Exs. M, P, R, S, T; Press Defs.' Br. at 11-12.
[14] Exs. M, U; Press Defs.' Br. at 13.
[15] D0027, D0041, D0043; Press Defs.' Br. at 12.
[16] D0045, D0046, D0047, D0058; Press Defs.' Br. at 13.
[17] Although it did not involve the Plaintiffs of this case, a case involving Selzer and the Register was litigated in 2025. Specifically, *Donnelly v. Des Moines Register & Tribune Co.* 829 F. Supp. 3d 682 (S.D. Iowa 2025) was filed in this Court on January 6, 2025; Pl.'s Pet., *Donnelly v. Des Moines Register*, No. CVCV068445 (Iowa Dist. Ct. Polk Cnty. Jan. 6, 2025); Ex. V at 1-2; Selzer Defs.' Mem. at 3. Gannett removed it to federal court on April 24, 2025, where the original petition was amended. Ex. V at 2-3; Press Defs.' Br. at 63. Based upon that amended Petition, the defendants moved to dismiss the case. Judge Rebecca Goodgame Ebinger granted the Motion to Dismiss on November 6, 2025, and dismissed every count with prejudice. Ex. V at 1, 20. The *Donnelly* order is instructive, and this ruling adopts portions of its reasoning, but it does not bind this Court. It is the decision of a federal district court, and it applied a pleading standard that does not govern here. Judge Ebinger measured the amended complaint before her against the federal plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Ex. V at 4. Iowa applies the notice pleading standard set out below instead. Where this ruling follows the *Donnelly* order, it follows the reasoning and not the standard, and it reaches its conclusions under Iowa's rule that a court accepts well-pleaded facts and rejects a pleader's conclusions. *See Kingsway Cathedral v. Iowa Dep't of Transp*, 711 N.W.2d 6, 8 (Iowa 2006). The Press Defendants' briefs argue in the first instance that the order precludes the issues it decided and, in the alternative, that it is persuasive authority. Their counsel reversed that order at argument, telling the Court that it need not reach

## III. THE PLAINTIFFS' ALLEGATIONS IN THEIR PETITION

What follows is the Petition's account of the facts. At the motion to dismiss phase, the Court does not ask whether these allegations are true.[18]

The Iowa Poll, published November 2 and 3, 2024,[19] showed Harris ahead of Trump by three points and Bohannan ahead of Miller-Meeks by sixteen points.[20] On Election Day, Trump carried Iowa by 13.3 points, and Miller-Meeks won her race.[21] Zaun was not the subject of any poll published on those days.[22] The Plaintiffs treat the results as two polls, and the Defendants say one poll was reported in several articles. Nothing that follows turns on the label.[23]

The Plaintiffs allege the poll was "so implausible that no objective pollster could have honestly advanced it"[24] and "just a piece of political theater."[25] They cite other Iowa polls showing Trump ahead.[26] They allege the Register published the poll to "grab national and international headlines."[27] Relying on an online article, they allege the odds of drawing such a sample by legitimate means were "roughly one time in 3.5 million trials,"[28] and that someone "deliberately manipulated the sample" or "simply made up the numbers."[29]

---

preclusion and describing the order as strong persuasive authority. Transcript of Motion to Dismiss Hearing 44:20-24, 45:10-21 (July 10, 2026) [hereinafter Tr.]. The Court therefore does not reach issue preclusion and treats the order as persuasive authority only. The Court also notes what the order did not decide. The plaintiff there did not allege that the defendants departed from the methodology they published, which is the allegation this Petition makes. Ex. V at 12.

[18] *See, e.g., Smith v. Smith*, 513 N.W.2d 728, 730 (Iowa 1994) (noting that at the motion to dismiss stage "[a]ll doubts are resolved in the plaintiff's favor, and the allegations of the petition are accepted as true").

[19] Pet. ¶¶ 1-3.

[20] Pet. ¶¶ 2-3; *see also id.* ¶¶ 109-11.

[21] Pet. ¶ 2; *id.* ¶ 64.

[22] Press Defs.' Br. at 5.

[23] Press Defs.' Br. at 2 n.1, 6.

[24] Pet. ¶ 47.

[25] Pet. ¶ 53.

[26] Pet. ¶¶ 49, 53.

[27] Pet. ¶ 63.

[28] Pet. ¶ 69.

[29] Pet. ¶ 70.

For purposes of this ruling, the Court accepts that the Petition affirmatively alleges that the Iowa Poll was not conducted according to the methodology the Defendants published. Paragraph 92 alleges intentional wrongdoing, paragraph 133 knowing falsity, and paragraph 134 knowledge and a decision to publish anyway.[30] The Plaintiffs' Resistance asserts the theory the same way, saying the size of the error "was not a bug, but a feature, procured either by purposely overrepresenting Democrats in the population polled or by outright making up the numbers which underlay the Iowa Poll."[31] [32]

The Petition alleges that Trump and Miller-Meeks expended time and resources to counteract the harm and that Zaun lost his Senate seat.[33] The merchandise the Petition identifies is the newspaper.[34] The negligence count adds a pecuniary loss consisting of "the value of the false content" the Plaintiffs acquired, purchased, and consumed, together with expenditures and losses relating to their races.[35]

---

[30] Pet. ¶¶ 92, 133, 134.

[31] Pls.' Resistance at 28.

[32] The Press Defendants attached Exhibits A through K, which are the November 2 and November 3, 2024 articles, the poll questionnaires and methodological statements, the Register's November 17, 2024 editorial reporting its post-election review, a memorandum by Selzer reporting an internal investigation of the poll, and the cross tabulations of the polling data. Press Defs.' Br. at 2 n.1, 6. They ask the Court to take judicial notice of that material, which the Petition incorporates by reference, and the Plaintiffs neither addressed the request in their Resistance nor objected at argument. The Court grants the request. The Petition attaches no exhibits, contains no incorporation clause, and needs none. It cites the articles by title and address, quotes from them, and refers to the Iowa Poll more than one hundred times. Every count rests on the poll and on the Register's reporting of it. Iowa law treats material referred to in a petition as part of the petition, approves judicial notice of such material, and permits notice of facts readily determinable from a source that cannot reasonably be questioned. *Hallett Constr. Co. v. Iowa State Highway Comm'n*, 154 N.W.2d 71, 74 (Iowa 1967); *Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 565 (Iowa 2018); *Meade v. Christie*, 974 N.W.2d 770, 776 (Iowa 2022); Press Defs.' Br. at 2 n.1, 8 n.3. The Court notices these materials for what they say, not for the truth of what they describe. The articles set out a methodology, and the Petition alleges the poll was not made in the manner described. Judicial notice establishes that the description was published. It does not establish that the description was followed.

[33] Pet. ¶¶ 124-26.

[34] Pet. ¶ 108.

[35] Pet. ¶ 156.

## IV. MOTION TO DISMISS STANDARD

The Defendants moved to dismiss this case under Iowa Rule of Civil Procedure 1.421(1)(f). A motion to dismiss challenges a petition's legal sufficiency. Dismissal is proper when the petition shows that the claims are legally deficient and that the plaintiff has no right to recovery as a matter of law.[36] Iowa courts grant the motion when the allegations, taken as true, fail to state a claim upon which relief may be granted.[37] Although the Court accepts the well-pleaded facts as true, it need not accept legal conclusions.[38]

The parties agree that Iowa is a notice pleading jurisdiction. The parties dispute, however, how to apply the pleading standard. Under that general standard, a petition gives fair notice if it informs the other party of the incident giving rise to the claim and the claim's general nature.[39] A litigant need not plead ultimate facts or identify a legal theory.[40] However, fair notice, while necessary, is not always sufficient to sustain a claim. A petition may give fair notice and still be dismissed if there is no conceivable set of facts that entitles the non-moving party to relief.[41] A conceivable fact is one that relates to and could prove the allegations actually made, not one a plaintiff might later imagine.[42]

The Iowa case law has further delineated the boundaries for applying the standard on a motion to dismiss. Specifically, notice pleading does not create a duty where one would otherwise not exist, and it does not supply a private remedy the legislature has not provided.[43]

---

[36] *White v. Harkrider*, 990 N.W.2d 647, 650 (Iowa 2023) (citing *Meade*, 974 N.W.2d at 775).

[37] *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012).

[38] *Betz v. Mathisen*, 30 N.W.3d 240, 246 (Iowa 2026); *Nahas v. Polk Cnty.*, 991 N.W.2d 770, 775 (Iowa 2023).

[39] *King v. State*, 818 N.W.2d 1, 37 (Iowa 2012) (Cady, C.J., concurring specially); *Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004).

[40] *Rees*, 682 N.W.2d at 79; *Terrace Hill Soc'y Found. v. Terrace Hill Comm'n*, 6 N.W.3d 290, 296 (Iowa 2024); Tr. 47:8-13 (argument of counsel for Plaintiffs).

[41] *1000 Friends of Iowa v. Polk Cnty. Bd. of Supervisors*, 19 N.W.3d 290, 296-97 (Iowa 2025).

[42] *King*, 818 N.W.2d at 37; *Barkema v. Williams Pipeline Co.*, 666 N.W.2d 612, 614 (Iowa 2003).

[43] *Bawek v. Kawasaki Motors Corp., U.S.A.*, 313 N.W.2d 501, 502 (Iowa 1981); *Shumate v. Drake Univ.*, 846 N.W.2d 503, 516 (Iowa 2014).

Furthermore, it does not recognize a tort that Iowa law does not recognize.[44] As such, the Court should dismiss a case when the petition's own allegations do not show a legal right to relief, or when the claims present a question of law alone.[45] Where a legal duty disposes of the case, the Supreme Court has approved the use of a motion to dismiss.[46]

In their argument concerning the standard, the Plaintiffs repeatedly contend that a petition need not plead detailed facts as long as it gives fair notice of a legally recognizable claim.[47] While the Court agrees with that assessment, as detailed below, it believes these claims do not fail for lack of detail. Rather, the Petition is particularly detailed and clear. The Plaintiffs set forth their allegations with great specificity. They fail because they do not state a cognizable claim for which relief can be granted.

While the Plaintiffs are correct that nearly every case will survive a motion to dismiss and that sustaining a motion to dismiss is typically not encouraged, the cases cited by the Plaintiffs are ordinary rather than extraordinary, like the one before the Court.[48] This case is different. This suit involves speech on a matter of public interest and concern, and allowing a legally faulty claim like this to proceed carries a cost that an ordinary case does not, because defending it can discourage others from reporting on and debating public affairs. Recently the General Assembly has enacted the Uniform Public Expression Protection Act, which directs Iowa courts to resolve claims arising from the exercise of free speech on a matter of public

---

[44] *See Smith v. State*, 324 N.W.2d 299, 301-02 (Iowa 1982) (reversing denial of motion to dismiss because Iowa law does not recognize an independent tort for negligent investigation of a crime).

[45] *Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 12 (Iowa 2006); *M.H. v. State*, 385 N.W.2d 533, 537-40 (Iowa 1986)(affirming dismissal of negligence claims because no common law or statutory duty supported liability); *Koester v. Eyerly-Ball Cmty. Mental Health Servs.*, 14 N.W.3d 723, 733-34 (Iowa 2024).

[46] *Schmidt v. Mahoney*, 659 N.W.2d 552, 556 (Iowa 2003); *Unertl v. Bezanson*, 414 N.W.2d 321, 324 (Iowa 1987).

[47] *Rees*, 682 N.W.2d at 79; *Terrace Hill*, 6 N.W.3d at 296; *Brunkhorst v. Iowa Pub. Employees' Ret. Sys.*, 759 N.W.2d 812, *3 (Iowa Ct. App. 2008); Pls.' Resistance at 8.

[48] *Rees*, 682 N.W.2d at 79; *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 181 (Iowa 1991); *see also Trobaugh v. Sondag*, 668 N.W.2d 577, 580 (Iowa 2003); *Barkema*, 666 N.W.2d at 614; Pls.' Resistance at 9.

concern at the earliest available stage. While that statute does not govern this Petition, which was filed the day before the statute's effective date, the statute confirms a concern the First Amendment has long reflected: that erroneous statements are inevitable in free debate and must be protected if the freedoms of expression are to have the breathing space they need to survive.[49]

As previously stated, the Plaintiffs' claims fail for two independent reasons, and the Court addresses them in turn.

[49] Iowa Code § 652.1, et seq.; *id.* § 652.2(2)(c); *id.* § 652.7(1)(c)(2)(a); *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964); *see Bertrand v. Mullin,* 846 N.W.2d 884, 898 (Iowa 2014) (the First Amendment's breathing space is necessary "to permit meaningful political speech to survive"); *see also Galloway v. State*, 790 N.W.2d 252, 255 (Iowa 2010) (Iowa courts "have considered and weighed public policy concerns when deciding important legal issues"); *United States v. Alvarez*, 567 U.S. 709, 723 (2012); Selzer Defs.' Mem. at 8, 12; Press Defs.' Br. at 16, 25.

## V. THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS

All the Defendants first argue that the case is entirely disposed of by the constitutional protection of free expression. The Court agrees. In what follows, the Court will address the questions that arise by answering them in five steps. The answers to these questions dispose of both motions. It should be noted that the Court rules on the narrowest possible basis, and defendants' other constitutional contentions will receive only brief consideration.

The Court begins by addressing the First Amendment.[50]

### A. The Questions Presented in This Part Are Questions of Law.

Plaintiffs' principal response to virtually every constitutional challenge in this case is that the court has mistaken the proper question. The proper question, Plaintiffs insist, is not whether the Iowa Poll was false, or whether Defendants knew it was false when they published it, but whether the Petition has given Defendants fair notice of the claims made so that they can respond. Plaintiffs make this response to challenges of falsity, actual malice, and injunctive relief alike. Plaintiffs' authority for this response is the well-known Iowa case law holding that a petition does not require detailed factual allegations, and that a petition may be dismissed only where the Petitioner fails to allege a right to recovery under any state of facts.[51]

The case law Plaintiffs cite is correct, as previously stated, and the Court has applied it here. Iowa law is lenient regarding factual detail in pleadings, and a plaintiff need not plead facts to support their claim, or even anticipate possible defenses, before discovery to state a claim for

---

[50] The Iowa Constitution generally imposes the same restrictions on the regulation of speech as does its federal counterpart. *State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997); *City of W. Des Moines v. Engler*, 641 N.W.2d 803, 805 (Iowa 2002). The Press Defendants expressly reserve the argument that Article I, Section 7 independently compels dismissal because the Iowa provision may afford greater protection than the First Amendment does. *See State v. White*, 9 N.W.3d 1, 7 (Iowa 2024); *Bierman v. Weier*, 826 N.W.2d 436, 451 (Iowa 2013). Because Plaintiffs' claims fail under the First Amendment, the Court has no occasion to decide whether the Iowa provision reaches further, and it does not decide that question here.

[51] Resistance 12, 13, 21, 22 (citing *Rees*, 682 N.W.2d at 79, and *Trobaugh*, 668 N.W.2d at 580); *see also Barkema*, 666 N.W.2d at 614.

which he may recover. But the motion to dismiss properly addresses the sufficiency of the petition, and a petition must be dismissed if it appears that the claims asserted are legally defective and the plaintiff has no right to recovery as a matter of law.[52]

As the Court has said previously, this is the very principle the Iowa Supreme Court has reiterated on numerous occasions. Notice pleading creates no cause of action where none exists. It does not provide a private remedy where the legislature has refused to provide it. It does not create an unrecognized tort. And where, in the allegations of the petition itself, the pleader fails to allege a legal right to relief, the claim must be dismissed.[53] The facts a court may consider in ruling on a motion to dismiss are those which would support the claim actually pled, not those which might support some claim the plaintiff seeks to plead.[54]

The authority Plaintiffs rely on most heavily on this point is *Mehmedovic v. Tyson Foods, Inc.*, which held that even though the evidentiary burden in proving gross negligence under Iowa Code section 85.20(2) is high, the sufficiency of a pleading alleging gross negligence is nonetheless governed by the ordinary notice pleading standard.[55] The Court has examined *Mehmedovic* and concludes it does not help Plaintiffs' case quite so much as they would have it. *Mehmedovic* posed the question whether Plaintiffs had alleged enough in the petition to satisfy an element of a cause of action under Iowa law.[56] The question here is whether Iowa law, consistent with the Constitution, recognizes a cause of action of this sort or not. *Mehmedovic* answers the first question, but raises no answer to the second.

[52] *White v. Harkrider*, 990 N.W.2d at 650.

[53] *Bawek*, 313 N.W.2d at 502 (duty); *Shumate*, 846 N.W.2d at 507, 516 (implied private right of action); *Smith v. State*, 324 N.W.2d at 301 (unrecognized tort); *Kingsway Cathedral*, 711 N.W.2d at 12 (allegations establishing the absence of a claim).

[54] S*ee King*, 818 N.W.2d at 37 (Cady, C.J., concurring specially); *Barkema*, 666 N.W.2d at 614.

[55] *Mehmedovic v. Tyson Foods, Inc.*, 21 N.W.3d 412, 424 (Iowa 2025); *see* Resistance 19.

[56] *Mehmedovic*, 21 N.W.3d at 426.

E-FILED CVCV069420 - 2026 SEP 23 03:50 PM POLK
CLERK OF DISTRICT COURT Page 12 of 64

The questions posed in this Part are therefore, for these reasons, questions of law. They may be answered by the Petition itself, without regard to any factual dispute, and nothing in the Court's answers to them would be affected by discovery.

**B. The First Amendment Applies to This Action.**

Plaintiffs' initial argument is that the First Amendment has no relevance to this case. They say this litigation has nothing to do with a government attempt to chill private speech; no claim involves government suppression; and that Defendants' argument over the absence of a general government power to punish political falsehoods is beside the point, because the parties on both sides are private.[57] If Plaintiffs were right about this, the rest of this Part would be unnecessary. They are not right.

Under First Amendment principles, the identity of the party seeking the court to sanction speech is irrelevant. What matters is whether state law, applied by a state court's judgment, will be used to do so. That principle was set in *New York Times Co. v. Sullivan,* which was itself a private tort action between private parties. In that case, the Supreme Court set the precedent that what a State may not constitutionally accomplish through a criminal statute is likewise prohibited in its civil law, and the prospect of damage awards may inhibit speech more effectively than the threat of prosecution.[58] It makes no difference that a State is acting solely through its judicial branch, because the Constitution asks a court to scrutinize the application of state power.[59]

This point has been applied to tort claims in the decades since, and it is clear that the Free Speech Clause may serve as a defense in state tort suits. The constitutional safeguards that

[57] Resistance 10, 11, 12, 14.

[58] *New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964); *see id.* at 278 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

[59] *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958).

govern defamation actions also govern other intentional tort claims arising from published statements about public figures. The First Amendment limits private tort liability arising from a boycott and governs the allocation of proof in a private damages suit no less than in a case of direct government restriction.[60]

In response to this case law, the Plaintiffs cite no authority for the contrary proposition, and the Court is aware of none. The rules are simple. Just because a private party rather than a prosecutor seeks the sanction does not remove the constitutional protection.

The First Amendment clearly applies in this case.

**C. The Iowa Poll and the Reporting on It Are Not Commercial Speech.**

Having determined the First Amendment's applicability, the Court must now determine the nature of the speech at issue, because the answer determines the standard by which the claims are measured. This is the only point in Plaintiffs' briefing where they advance their own doctrinal position, rather than merely responding to the Defendants. Plaintiffs' position is that the Iowa Poll and the reporting on it was commercial speech (only protected by the reduced standard applicable to commercial speech) because the polls themselves were for-profit products, paid for by the Register and Gannett, produced by a for-profit polling company, and then promoted across the national media just like any other product.[61] The theory fails, for two independent reasons.

First, the Plaintiffs do not state the test correctly. Commercial speech is simply speech proposing a commercial transaction.[62] The cases that Plaintiffs cite merely confirm that

[60] *Snyder v. Phelps*, 562 U.S. 443, 451 (2011); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982).

[61] Resistance 11, 12, 13, 14, 15.

[62] *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557, 561 (1980); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 421 (1993); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 n.24 (1976).

definition, since each involved either advertising or in-person solicitation.[63] The reporting Plaintiffs challenge here proposed no transaction whatsoever; it merely reported the results of a poll of Iowa voters conducted before a national election. A journalist's article is not commercial speech, and the presence of commercial matter in a publication does not turn the publication into commercial speech.[64]

Second, and more fundamentally, Plaintiffs' theory boils down to the proposition that speech produced for profit is commercial speech. Courts have rejected that proposition since the doctrine emerged. Some of the most valued types of speech are speech produced for profit. If the profit motive of a newspaper were determinative, every aspect of its operations, from the stories it chose to cover to the position it took in its editorials, would be open to regulation simply by showing that sales were a factor in the decision. The Supreme Court has found that consequence inconsistent with the First Amendment. If the profit motive of communicating something could deny it constitutional protection, the Court's precedents would mean nothing. Books, newspapers, and films are sold for profit, but that has never been enough to take away their protection.[65]

Furthermore, Plaintiffs' reliance on *Discovery Network* in its briefing is inconsistent with the full sentence they quote. The Supreme Court observed that much of the material in ordinary newspapers is commercial speech while explaining that the editorial content of the publications before it was not core commercial speech. It went on to hold that the city's distinction between

---

[63] *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 637 (1985) (advertising pure and simple); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 635 (1995) (pure commercial advertising); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 458 (1978) (in person solicitation, distinguished from political expression).

[64] *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004); *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 963 (9th Cir. 2012).

[65] *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 385 (1973); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989); *Smith v. California*, 361 U.S. 147, 150 (1959); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952); *Murdock v. Pennsylvania*, 319 U.S. 105, 111 (1943); *Sullivan*, 376 U.S. at 266.

the two bore no relation to the interests the city asserted. The same opinion states that speech does not lose its First Amendment protection because money is spent to publish it. The case is authority against the position for which Plaintiffs cite it.[66]

That leaves the Court with the characterization Defendants make, and it is correct. Election polling is speech protected by the First Amendment, both because it involves a conversation between a pollster and a voter and because the poll itself is speech.[67] Reporting such a poll during a presidential and congressional election year is speech about a matter of public concern, occupying the summit of the pyramid of First Amendment values. The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.[68]

Plaintiffs' remaining argument on this point is that the Iowa Poll is a product. Simply labeling the poll a product does not change the analysis. The case law supports this conclusion. For instance, as Selzer argues, in *Winter v. G.P. Putnam's Sons,* a publisher of an encyclopedia of mushrooms was not liable to readers who fell gravely ill after relying on it, because treating a book as a product fails to account for the distinct character of ideas and expression.[69] The fact that someone was paid to conduct the poll does not transform it from speech into a product.

The Poll and its reporting are not commercial speech.

---

[66] *Discovery Network*, 507 U.S. at 420, 423, 426; Plaintiffs quote the first clause of the sentence at Resistance 14.

[67] *Daily Herald Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988).

[68] *Snyder*, 562 U.S. at 452; *Citizens United v. FEC*, 558 U.S. 310, 339 (2010); *Republican Party of Minn. v. White*, 536 U.S. 765, 781 (2002); *see Mills v. Alabama*, 384 U.S. 214, 218 (1966); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995).

[69] *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991).

**D. The Unprotected Categories Are Few and Closed, and a Label Does Not Open Them.**

The Court has found that the speech at issue in this case is protected political speech. It must now determine whether the speech falls within one of the enumerated categories of speech that are *exceptions* to constitutional protection. Those categories are few and not easily opened. In *United States v. Stevens*, the Supreme Court explained that since 1791 and continuing to this day, the First Amendment has allowed content-based restrictions only in a few types of speech long familiar to the bar: obscenity, defamation, incitement, fighting words, and fraud.[70] The Court would not lightly expand the judicial power to declare additional types of speech outside the umbrella of constitutional protection, the Court said, calling the idea startling and dangerous.[71] The burden to exclude speech from constitutional protection is on the entity that would punish speech.[72]

In particular, this case turns on the principle that falsity *alone* does not create a category of unprotected speech. The Supreme Court has never recognized that false statements by themselves are not entitled to First Amendment protection, and it refused to do so when squarely presented with the opportunity.[73] The Eighth Circuit held that even knowingly false campaign speech is not excluded from the Amendment's protection.[74]

Plaintiffs attempt to rebut this authority on falsity with a listing of statements from decisions in other contexts as support for the proposition that there is no constitutional value in false statements of fact, and that false speech is not protected for its sake.[75]

---

[70] *United States v. Stevens*, 559 U.S. 460, 468 (2010).

[71] *Id.* at 470, 472; *see generally Counterman v. Colorado*, 600 U.S. 66, 73-78 (2023).

[72] *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 816-17 (2000).

[73] *United States v. Alvarez*, 567 U.S. 709, 718, 719 (2012)(plurality opinion).

[74] *281 Care Comm. v. Arneson*, 638 F.3d 621, 633 (8th Cir. 2011) (*Arneson I*); *see 281 Care Comm. v. Arneson*, 766 F.3d 774, 783 (8th Cir. 2014) (*Arneson II*).

[75] Resistance 16 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 776 (1984); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974); *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983); and *Herbert v. Lando*, 441 U.S. 153, 171 (1979)).

This line of argument is unpersuasive because the Supreme Court has considered those very statements and explained that they do not support the conclusion that false statements are, generally, outside the Constitution's protection.[76] The passages Plaintiffs cite were written in the context of an area of speech that is unprotected for its own sake, and they do not stand for the general proposition that falsity is unprotected.

Finally, the pleader cannot evade constitutional restrictions simply by changing the name of the state law. The rights protected by the First Amendment are not a word game. The protected right cannot be evaded by renaming it. This is obvious in the adjacent category. An allegation that speech is obscene accomplishes nothing unless the speech satisfies the constitutional test for obscenity.[77] What is true in the area of obscenity is true in the area of fraud. That is why the inquiry cannot stop at the name of the claim.

With a limited number of exceptions to the First Amendment protection, the Plaintiff must proceed under the fraud exception. The speech, however, must meet what the exception demands.

### E. The Fraud Exception Is Defined by Its Elements, and Those Elements Are Constitutional Limits.

The demands of the fraud exception to the First Amendment are the subject of this section. The Court looks past the label the Petition gives each claim and examines the elements, because the elements mark the boundary of the exception and determine the constitutional protection.

The fraud exception is narrow, and the proof requirements for a fraud claim exist precisely to safeguard protected speech. A false statement alone does not produce liability.

---

[76] *Alvarez*, 567 U.S. at 718.
[77] *Cohen v. California*, 403 U.S. 15, 20 (1971); *see Miller v. California*, 413 U.S. 15 (1973).

Rather, the constitutional exception involves a *false claim made to secure money or other valuable consideration*.[78] Furthermore, what constitutes fraud does not extend to all false speech, or even all knowingly false speech, because the Supreme Court has carefully limited what counts as fraudulent speech. Fraud, in short, is not mere lying, because lying by itself does not prove detrimental reliance or actual harm.[79]

In a key element of the argument, the Selzer Defendants contend that the elements of any fraud claim necessarily are inextricably bound up with constitutional limits on liability for speech.[80] This Court agrees and adopts that analysis. If a plaintiff labels protected political speech as fraudulent, it is not just the elements of fraud defined by Iowa law that are required. The Constitution as well imposes elements as "the price of entry" into an unprotected category. If a petition fails to allege the constitutional elements, it is not merely poorly pled. It has not identified unprotected speech, and the claim is without remedy.

Two implications arise from this conclusion, and this Court addresses them now because they govern the remainder of this opinion. First, the constitutional elements would remain the same even if Iowa were to modify the elements of its own fraud torts, just as a State may not expand liability for defamation or obscenity by redefining those terms.[81] Second, discovery cannot save a claim that lacks these elements. An example of this is found in *Blatty v. N.Y. Times Co.*, when the California Supreme Court dismissed the claims of an author because his novel had been omitted from a best-seller list; the court did not hold that the newspaper was immune, but found that the threshold element that a false statement be of and concerning the plaintiff could

[78] *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc., 538 U.S. 600, 620 (2003)*; *Alvarez*, 567 U.S. at 723; *see id.* at 734 (Breyer, J., concurring in the judgment) (fraud statutes typically require a material misrepresentation, reliance upon it, and actual injury).

[79] *Arneson I*, 638 F.3d at 634 n.2; *United States v. Kepler*, 879 F. Supp. 2d 1006, 1009 n.1 (S.D. Iowa 2011).

[80] Selzer Mot. 17, 18; Selzer Reply 8.

[81] *See State v. Wedelstedt*, 213 N.W.2d 652, 656 (Iowa 1973); *see Sullivan*, 376 U.S. at 271.

never be met as to a publication that did not mention him.[82] The claims were devoid of actionable speech as the law defines it, and no facts could make that claim any different.

The constitutional elements must apply to this action.

### F. The Elements That Define the Fraud Exception Are Absent Here.

Applying that test to this Petition, the Court finds two elements absent, and each is absent as a matter of law. The first is falsity of a kind that can be demonstrated. A statement must be capable of being proved true or false before it can be said to be false at all. The second is inducement. The representation must be made to the Plaintiff for the purpose of persuading the Plaintiff to part with money or property of value in reliance upon it. The first is the subject of subsection 1 below, and the second of subsection 2. Either would be enough, and their absence is fatal to the claims. The Court considers both because the allegations raised by each are different, and the Court's conclusions with respect to Counts I, II, and III depend on them.

#### 1. The Iowa Poll Was Not a Provably False Statement of Fact.

A poll is simply an estimate. A poll reports responses from a sample of voters and includes a reported margin of error. It is based on a known methodology, and concerns an event that has not yet happened. Things of that nature are not the sort of things that can be said to be true or false in the manner required by the fraud exception. Opinion polls of random samples of voters are snapshots with margins of error, and campaigns are dynamic. A statement of conjecture about a future state of affairs is not provably false, even when the speaker is alleged to have known better. Ratings, forecasts, and predictions that reflect a subjective weighing of

---

[82] *Blatty v. N.Y. Times Co.*, 728 P.2d 1177, 1182, 1184 (Cal. 1986).

objective data points are not sufficiently factual to be susceptible to proof, and predicting uncertain future events is not an exact science for which a publisher may be held to account.[83]

The United States District Court for the Southern District of Iowa reached the same conclusion on materially identical allegations, holding that the results of an opinion poll are not an actionable false representation merely because the anticipated results differ from what ultimately occurred, and noting that political opinion polls are predictive and inherently uncertain.[84] This Court is not bound by *Donnelly*, but it finds the reasoning persuasive and adopts it.

Plaintiffs' response is that the objective veracity of the Iowa Poll is inconsequential at this stage, because their only burden is to give fair notice of their claim that it was false. The response is circular. A plaintiff cannot allege the falsity of a statement that is not the sort of thing that can be false, and the pleading standard does not supply what the nature of the statement fails to supply. It is not that Plaintiffs have not adequately described the falsity of the Iowa Poll. The problem is that the Iowa Poll isn't the kind of thing that can be described in those terms.

**2. No Representation Was Made to Plaintiffs, and No Plaintiff Parted with Anything in Reliance.**

The claims fail not only because a poll is not a statement of fact, but also because the Petition does not allege any reliance. The constitutional fraud exception reaches lies told to obtain money or property. The traditional statement of the tort says so: the misrepresentation

[83] *Scott v. Roberts*, 612 F.3d 1279, 1283 (11th Cir. 2010); *Arneson II*, 766 F.3d at 795; *See Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 871 (8th Cir. 2005); *see Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 529 (6th Cir. 2007); *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998); *Brandt v. Weather Channel, Inc.*, 42 F. Supp. 2d 1344, 1346 (S.D. Fla. 1999), *aff'd*, 204 F.3d 1123 (11th Cir. 1999).

[84] *Donnelly*, 829 F. Supp. 3d 695-97.

must be made in the course of inducing the plaintiff to part with money, or property of value, in reliance upon it.[85]

None of that has been pleaded here. No Plaintiff pleads that J. Ann Selzer or Selzer & Company communicated with him or her, solicited anything from him or her, or had any relationship with any Plaintiff, arising out of contract or otherwise. No Plaintiff pleads that he or she purchased the Iowa Poll, subscribed to the Register because of the Poll, or gave anything of value to any Defendant because of the Poll. Plaintiffs merely plead that false statements were published to the public and that bad things ensued. Whatever that may be, that is not fraud.

That is not a novel point. Other courts have dealt with it. In one, a publisher of a chemical encyclopedia was not liable for an allegedly willful misrepresentation about a compound's toxicity, despite the allegation of intentional wrongdoing, because the plaintiff could point to no relationship between the parties that placed the publisher under any duty to the plaintiff, and because the publisher's right to publish free of fear of liability was protected by the First Amendment and by the societal interest in the dissemination of knowledge.[86] When a broadcaster's viewers sued over its programming, the claims failed for want of any duty owed to them.[87] In a similar case, a consumer protection claim against a broadcaster over its COVID-related statements was dismissed as none of the scant First Amendment exceptions applied.[88]

The plaintiffs' answer was that they had actually suffered damages, including campaign expenditures to offset the Iowa Poll, and that this made their case different from Alvarez, where the false statements gained the speaker nothing.[89] The answer confuses two different

[85] *Alvarez*, 567 U.S. at 723; William L. Prosser, *Handbook of the Law of Torts* § 105, at 684 (4th ed. 1971).
[86] *Demuth Dev. Corp. v. Merck & Co.*, 432 F. Supp. 990, 993 (E.D.N.Y. 1977) (citing *Gertz*, 418 U.S. at 340).
[87] *Stancik v. CNBC*, 420 F. Supp. 2d 800, 808 (N.D. Ohio 2006).
[88] *Wash. League for Increased Transparency & Ethics v. Fox News*, No. 81512-1-I, 2021 WL 3910574, at *4 (Wash. Ct. App. Aug. 30, 2021).
[89] Resistance 17 (citing Pet. ¶¶ 124, 125, 126).

requirements. That a plaintiff was harmed does not establish that the speech was used to obtain money or property from him. *Alvarez* itself makes the distinction, explaining that to permit liability for false speech absent any evidence that the speech was used to gain a material advantage would confer a censorial power unprecedented in the Court's cases and in our constitutional tradition.[90] Plaintiffs allege consequences. They do not allege a transaction.

**G. Conclusion on Constitutional Grounds and the Alternative Grounds.**

Because the Iowa Poll and the reporting on it are fully protected political speech, and because the Petition does not allege the elements that would place that speech within the fraud exception, the First Amendment bars Count I, Count II, and Count III.

The Court's ruling in the next Part rests on Iowa law and is independent of this Part, but the two analyses converge, and where they do, the Court's constitutional holdings on provable falsity and on the absence of any transaction or reliance carry forward and are not separately restated.

The foregoing disposes of both motions. However, because the remaining constitutional arguments were fully briefed, and because each would independently require the same result as to the claims it addresses, the Court addresses them briefly and in the alternative.

**1. Actual Malice.**

Plaintiffs are public figures, and the Iowa Poll dealt with a matter of public concern. The privilege which bars defamation actions thus applies to Plaintiffs' claims, and Plaintiffs must allege that Defendants published the poll knowing it to be false, or with reckless disregard as to the truth of the poll.[91] Reckless disregard is not whether a reasonably prudent publisher would

---

[90] *Alvarez*, 567 U.S. at 723.

[91] *Hustler Magazine*, 485 U.S. at 56; *Sullivan*, 376 U.S. at 279, 280; *see* Press Mot. 24, 25. Iowa applies the same standard. *Carr v. Bankers Trust Co.*, 546 N.W.2d 901, 903 (Iowa 1996); *Blessum v. Howard Cnty. Bd. of*

investigate further; it must be supported by facts that a publisher actually had serious doubts as to the truth of the publication.[92]

The Petition does not contain such facts of actual malice. Although Plaintiffs have asserted that manipulation and falsification occurred in their pleadings and at oral argument, the Petition alleges no facts that support the notion that samples were manipulated, responses falsified, or the questionnaire slanted.[93] What it alleges is that the result proved badly wrong and that Defendants harbored political animosity toward the Plaintiffs. Neither suggests the required state of mind. A published estimate that proves to be inaccurate is evidence only of error; ill will directed at the subject of a publication is not evidence of doubt as to its truth.[94]

The Southern District of Iowa declined to draw the same inference from the same poll, holding that the magnitude of a polling miss does not show that the pollster knew the result was wrong.[95] Plaintiffs respond that pleading is not evidence. Plaintiffs are correct that pleading is not proof. But for the reasons discussed above, their response fails to address the problem, which is not the amount of detail alleged, but the failure to allege anything as to what Defendants believed.[96]

---

*Supervisors*, 295 N.W.2d 836, 843 (Iowa 1980); *McCarney v. Des Moines Register & Tribune Co.*, 239 N.W.2d 152, 155-56 (Iowa 1976).

[92] *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *Harte-Hanks*, 491 U.S. at 666 n.7.

[93] Press Mot. 26.

[94] *Harte-Hanks*, 491 U.S. at 668, n.7; *see Donald J. Trump for President, Inc. v. WP Co. LLC*, No. 20-626, 2023 WL 1765193, at *5 (D.D.C. Feb. 3, 2023); *Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1275 (S.D. Fla. 2023).

[95] *Donnelly*, 829 F. Supp. 3d at 693. That court applied the federal plausibility standard rather than Iowa's notice pleading standard, and this Court relies on its reasoning about what the size of a polling error can and cannot show, not on the pleading threshold it applied.

[96] Resistance 18, 19, 20, 21; Press Reply 13, 14.

**2. Prior Restraint.**

Plaintiffs seek an injunction against Defendants' further publication of any false polls. [97] The threat of prior restraint on publication is the gravest and least attractive encroachment on the First Amendment and is subject to a strong presumption of unconstitutionality.[98] The scope of the relief sought would require this Court to determine the accuracy of unmeasured polls and to prevent the publication of speech yet to be made. Other courts asked to provide such relief have refused, and this Court would refuse.[99]

Plaintiffs' sole response is that the injunction sought is proper because the speech to be restrained is commercial speech. The Court rejected that argument above, and the request for injunctive relief would fail for the same reasons.

**3. Strict Scrutiny.**

The Press Defendants argue, as to Count I alone, that Plaintiffs' construction of the Iowa Consumer Fraud Act could not survive strict scrutiny.[100] The Court agrees. The Plaintiffs' construction of the Act would have subjected a pollster to liability for publishing an estimate that turned out to be inaccurate. Such a construction would constitute content-based regulation of core political speech, and the State would have the nearly impossible burden of justifying it.[101] Although protection of the integrity of elections is a compelling interest properly considered in the abstract, the State must demonstrate that the particular restriction it seeks to impose is

---

[97] Pet. ¶ 127.

[98] *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Near v. Minnesota*, 283 U.S. 697, 713 (1931); *Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975); *see Lemons v. Mycro Grp. Co.*, 667 F. Supp. 665, 667 (S.D. Iowa 1987); *United Youth Careers, Inc. v. City of Ames*, 412 F. Supp. 2d 994, 1002 (S.D. Iowa 2006).

[99] *Cognitest Corp. v. Riverside Publ'g Co.*, No. 94 C 4741, 1995 WL 382984, at *2 (N.D. Ill. June 22, 1995); *Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, No. 2:15-cv-2844, 2016 WL 3365422, at *8 (S.D. Ohio June 17, 2016); *see* Selzer Mot. 21.

[100] Press Mot. 30, 31, 32, 33. The Selzer Defendants do not separately brief actual malice or strict scrutiny, and the Press Defendants confine this argument to Count I.

[101] *Arneson II*, 766 F.3d at 784; *Burson v. Freeman*, 504 U.S. 191, 198-99 (1992); *Meyer v. Grant*, 486 U.S. 414, 425 (1988).

narrowly tailored to advance that interest. The Eighth Circuit has held that punishing false political speech is not permissible because the remedy for false speech is true speech.[102] Plaintiffs' construction would not meet that narrowly tailored test.

Each of the grounds set forth above would independently suffice to dismiss the claims to which it applies. The Court reaches its conclusions for the reasons set out above in Parts V.B through V.F. The conclusions reached in this subsection are alternative, and none is necessary to the Court's decision.

[102] *Arneson II*, 766 F.3d at 793-94; *Alvarez*, 567 U.S. at 725, 727.

## VI. THE PETITION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER IOWA LAW

The Court's holding above concerning constitutional protections disposes of both Motions. Nonetheless, the Court now turns to the second independent ground for the dismissal, which rests on Iowa law alone. The conclusions that follow would require the Court to dismiss all three Counts, even if the First Amendment did not.

The Court must initially address several issues that apply across all claims.

First, in addressing the Plaintiffs' claims under Iowa law, the Court assumes for purposes of this analysis that the Plaintiffs' allegations about the poll's production are true. Specifically, the Court assumes the published methodology was not followed, the sample was deliberately weighted toward Democrats, the numbers were ultimately fabricated, and the Defendants knew of this fabrication at the time of publication.[103] This was the argument the Plaintiffs made at oral argument.[104] Even with this assumption, each of the three counts still fails for the reasons set forth below, and no amount of discovery, as requested by the Plaintiffs, would cure the issue.

Second, as a basic premise and as previously noted, fraud is not the same as lying. Fraud is the knowing misrepresentation or concealment of a material fact made to induce another to act to his or her detriment.[105] As such, fraud is not just a false statement, but a statement made in the course of persuading the plaintiff to part with money or property in reliance on it.[106] A classic example of fraud is a used car salesman rolling back an odometer.[107] Because of this, a false statement alone lacks an essential element of a claim. Specifically, a cause of action requires

[103] Pet. ¶¶ 11, 69, 70, 92, 133, 134.

[104] Tr. 51:10-21, 53:4-18, 54:9-22, 63:23-64:13, 65:10-14 (argument of counsel for Plaintiffs). The Court put the same assumption to counsel for the Press Defendants, who answered that it does not change the analysis of the Iowa law claims. Tr. 77:20-78:7.

[105] Fraud, *Black's Law Dictionary* (12th ed. 2024).

[106] Prosser, *supra* note 85, § 105, at 684.

[107] Restatement (Second) of Torts § 525 cmt. b illus. 1.

proof of detrimental reliance or actual harm.[108] That is why courts have held that a fraud claim brought without this essential element can be dismissed.[109]

Third, damages are an essential element of these claims, not something to be sorted out later.[110] Under the Consumer Fraud Act, actual damages must be ascertainable in amount and do not include mental distress.[111] Under common law, the loss must be related to the misrepresentation in a way legally material.[112] A rule requiring only that third-party reliance be foreseeable would impose unlimited liability.[113]

Two characteristics of the losses this Petition alleges are present in each of the counts, and it is more convenient to state them here than to incorporate them by reference into each separate claim. The first concerns whose money the Petition describes. The Plaintiffs sued in their individual capacities,[114] but a campaign is "a legal entity distinct from the candidate himself."[115] The Petition does not say who paid the direct federal campaign expenditures it describes, and the Press Defendants point out the omission.[116] If a committee paid them, they are not Trump's losses. If he paid them himself, the Petition does not say so. The second concerns the loss of an election. Damages of that kind are speculative, because "[t]here may be not less

[108] *Kepler*, 879 F. Supp. 2d at 1009 n.1; Selzer Defs.' Mem. at 17.

[109] *Madigan*, 538 U.S. at 617; *Demuth*, 432 F. Supp. at 994. *Demuth* states the principle. In that case the court held a publisher who knowingly prints a false statement does not commit a misrepresentation against a person who never acted on the statement, and harm arising from the reliance of third parties does not supply the missing element. The court held that a claim of willful misrepresentation rests on a specific and deliberate act, and that a fundamental portion of such a claim is a statement which induced the plaintiff to act, or to refrain from acting, to his or her detriment, and which "played a material and substantial part in leading the plaintiff to adopt his particular course." *Id*. Because the plaintiff "was not misled into acting or refraining to act by anything Merck said," and could point to "no relationship of the parties, arising out of contract or otherwise," which "in morals or good conscience" placed Merck under a duty toward it, the claim failed as a matter of law. *Id.* at 993, 994; Selzer Defs.' Mem. at 20.

[110] *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 630 (8th Cir. 1999); Selzer Defs.' Mem. at 23.

[111] Iowa Code §§ 714H.2(1), 714H.5(1).

[112] *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 740 (Iowa 2009).

[113] *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 91-92 (2d Cir. 2018); Selzer Defs.' Mem. at 24.

[114] Pet. ¶¶ 20-22, 124, 125.

[115] *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 294 (2022); Selzer Defs.' Reply at 19-20.

[116] Pet. ¶ 124; Press Defs.' Br. at 51.

than a thousand factors which enter into the vagaries of an election. . ."[117] Courts "do not sit to award post-election damages to defeated candidates."[118]

With these issues in mind, the Court will address each of the claims. The Court addresses each cause of action individually, examining each element of the claim in turn. The Court analyzes the three causes of action arising out of the same publication with several common elements in a methodical fashion, resulting in some redundancy. The Court finds this acceptable rather than risking overlooking an element of a claim or supporting a conclusion only where the reader cannot easily follow the reasoning. When analyzed against the requirements of each cause of action, it is clear that the Plaintiffs have failed to state a claim upon which relief can be granted.

## A. Count I: The Iowa Consumer Fraud Act

### 1. The Statute.

Count I arises under Iowa Code chapter 714H, the Iowa Consumer Fraud Act.[119] Section 714H.3(1) which states:

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes. For the purposes of this chapter, a claimant alleging an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation must prove that the prohibited practice related to a material fact or facts.[120]

The chapter supplies a private remedy. Section 714H.5(1) provides:

> A consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover

[117] *Sw. Publ'g Co. v. Horsey*, 230 F.2d 319, 322 (9th Cir. 1956); Selzer Defs.' Mem. at 24.
[118] *Hutchinson v. Miller*, 797 F.2d 1279, 1287 (4th Cir. 1986).
[119] Pet. ¶¶ 96-127.
[120] Iowa Code § 714H.3(1).

> actual damages. The court may order such equitable relief as it deems necessary to protect the public from further violations, including temporary and permanent injunctive relief.[121]

Two definitions narrow that remedy. A consumer is "a natural person or the person's legal representative."[122] And section 714H.2(1) limits recovery:

> "Actual damages" means all compensatory damages proximately caused by the prohibited practice or act that are reasonably ascertainable in amount. "Actual damages" does not include damages for bodily injury, pain and suffering, mental distress, or loss of consortium, loss of life, or loss of enjoyment of life.[123]

Where the language is plain, the Court gives the words their ordinary meaning.[124]

In this case, when the Petition is measured against the statute's elements, it fails to articulate a viable claim because what is alleged does not meet several of the statute's definitions.

**2. The Petition Alleges No Prohibited Act Under Section 714H.3(1) of the Consumer Fraud Act.**

Section 714H.3(1) does not forbid deception at large. It requires (1) consumer merchandise, (2) an advertisement, sale, or lease of that merchandise, and (3) a connection between the challenged act and that transaction. The Petition identifies only a sale and nothing more.

**a. The newspaper is not consumer merchandise in this instance.** Consumer merchandise under the statute is not everything that can be bought. The term reaches merchandise offered or sold "primarily for personal, family, or household purposes."[125] Construing nearly identical language in the Door to Door Sales Act, the Iowa Supreme Court held that the test turns on "the intended use of the goods or services by the buyer, not the seller,"

[121] Iowa Code § 714H.5(1).
[122] Iowa Code § 714H.2(3).
[123] Iowa Code § 714H.2(1).
[124] *Mulhern v. Catholic Health Initiatives*, 799 N.W.2d 104, 113 (Iowa 2011); *Off. of Consumer Advoc. v. Iowa Utils. Bd.*, 744 N.W.2d 640, 643 (Iowa 2008).
[125] Iowa Code § 714H.2(4).

and excludes "transactions motivated by business purposes."[126] The Court read a parallel consumer definition the same way, holding that loans financing a commercial venture served no personal, family, or household purpose.[127]

While a newspaper can be consumer merchandise when a subscriber buys it for the household, the Petition describes a different purpose. Specifically, it alleges that Plaintiffs were injured as candidates, that President Trump diverted campaign and financial resources to Iowa, that Representative Miller-Meeks was forced to fight a recount, and that Zaun lost his Senate seat.[128] Those are the purposes and the injuries of a candidate, not of a household reader.

The statute also does not cover a defendant who offers no consumer merchandise to the public at all.[129] This is the circumstance regarding the Selzer Defendants. A political opinion poll commissioned by a newspaper is not an object offered for sale to a household, and the Petition alleges no purchase or lease from J. Ann Selzer or Selzer & Company to anyone other than the Register. Furthermore, the Petition identifies the merchandise as the Register's newspapers, not the poll,[130] and Selzer does not sell the Register.

The facts articulated in the Petition do not meet the definition of consumer merchandise.

**b. The Petition identifies no advertisement and no lease.** Furthermore, the statute requires the misrepresentation or fraud to be in connection with "the advertisement, sale, or lease of consumer merchandise."[131] That statute defines an advertisement as an attempt, by publication, dissemination, solicitation, or circulation, to induce a person directly or indirectly "to enter into

---

[126] *Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 499, 500 (Iowa 2019).
[127] *Union Story Tr. & Sav. Bank v. Sayer*, 332 N.W.2d 316, 319 (Iowa 1983).
[128] Pet. ¶¶ 110, 111, 124, 125, 126.
[129] *Butts v. Iowa Health Sys.*, 863 N.W.2d 36 (Iowa Ct. App. 2015) (unpublished table decision), 2015 WL 1046119, at *9.
[130] Pet. ¶ 108.
[131] Iowa Code § 714H.3(1).

any obligation or acquire any title or interest in any merchandise."[132] Broad as that definition is, every form of conduct it names is an effort to move a person toward a transaction, or soliciting the public to purchase the wares advertised.[133]

The Petition alleges no such inducement, and the polls themselves asked no one to take on an obligation or to buy anything. In fact, the Petition alleges that Defendants' publishing of the polls was to change the outcome of elections,[134] not to sell newspapers, and that the articles were available free to the public until Defendants placed them behind a paywall in response to Plaintiffs' lawsuit.[135] Likewise, no lease is alleged.

Plaintiffs respond by saying the Register published the doctored results on its front page to induce consumers to purchase the paper.[136] The court is not persuaded by this argument. What a newspaper prints is not a representation *about* the newspaper. An advertisement for the newspaper is a representation. Likewise, a poll reported in an article is what the reader receives, not a representation of the thing being sold.[137] In simple terms, a statute like this, which focuses on consumer merchandise, sales, leases, and advertisements, cannot sensibly be applied to the accuracy of everything printed, published, or broadcast.

The circumstances recited in the Petition do not constitute an advertisement or a lease.

**c. The Petition fails to connect the alleged deception to the sale.** A sale under the statute is a purchase of consumer merchandise for cash or credit.[138] The Petition does allege purchases. Specifically, representative Miller-Meeks alleges that she bought the issue that

[132] Iowa Code § 714.16(1)(a); *see* Iowa Code § 714H.2(2) (incorporating that definition).
[133] *State v. Cusick*, 84 N.W.2d 554, 556 (Iowa 1957).
[134] Pet. ¶¶ 1, 115, 116, 117.
[135] Pet. ¶ 112.
[136] Pls.' Resistance at 31, 32.
[137] Selzer Defs.' Reply at 19.
[138] Iowa Code § 714H.2(8).

covered the poll.[139] Consumers who bought the publication, "including Plaintiffs," are alleged to have been deceived,[140] and the loss is described as the value of content Plaintiffs "acquired, purchased, and consumed."[141]

What is lacking, however, is any link. The statute requires that the challenged conduct be "in connection with" the sale,[142] and that means any relation, nexus, or connection, between the conduct and the merchandise.[143] In the Petition, no Plaintiff alleges that he or she bought the newspaper *because* of the poll. President Trump merely alleges that he acquired and read it;[144] Zaun merely alleges that he read it;[145] Representative Miller-Meeks alleges that she bought it but makes no allegation that she bought it because of the poll.[146] Plaintiffs respond that the low notice-pleading standard requires no more.[147] While notice pleading certainly governs how specifically facts must be pleaded, it does not supply an element the statute requires, and the pleading omits.[148]

The authorities cited by the parties address this issue. Claims under the statute have turned on the existence of a contractual right,[149] and the federal district court in Iowa has noted that the statute calls for a direct relational nexus to a consumer transaction.[150] The reported Iowa

[139] Pet. ¶ 21.
[140] Pet. ¶¶ 110, 111.
[141] Pet. ¶ 156.
[142] Iowa Code § 714H.3(1).
[143] *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 526 (Iowa 2005).
[144] Pet. ¶ 105.
[145] Pet. ¶¶ 22, 107.
[146] Pet. ¶ 21.
[147] Pls.' Resistance at 26, 27.
[148] *Rees*, 682 N.W.2d at 79.
[149] *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 532 (Iowa 2015); Press Defs.' Br. at 35.
[150] *Mannino v. McKee Auto Ctr., Inc.*, 4:23-cv-00262-SMR-HCA, 2024 WL 4884440, at *3 (S.D. Iowa Sept. 5, 2024)(*citing Deng v. White*, No. 18-1672, 2019 WL 6358427, at *5 (Iowa Ct. App. Nov. 27, 2019)).

cases concern common consumer transactions,[151] and neither side can point to a decision applying the statute outside the context of actual or attempted privity.[152]

It also should be noted that the Petition cannot satisfy the statute's materiality prong. The misrepresentation, false representation, or fraud must be of a material fact in connection with an advertisement, sale, or lease,[153] and a material fact is one that matters enough to a transaction to induce a purchase,[154] that is, "information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product."[155] A statement about which candidate leads a race is not a fact of that kind. It reports the standing of a political contest, not anything about a product or service that a consumer decides whether to buy.

At oral argument, the Court asked counsel to point to the consumer transaction upon which Count I rests. Counsel for Plaintiffs could not point to a transaction.[156] Plaintiffs have not asserted that discovery will turn up one, only that none is needed. The textual scheme of the statute does not justify the reading of Plaintiffs. The facts recited in the Petition do not come within the definition of deception in the sale.

**d. The unfair practice theory fails for the same reason.** The Petition pleads two of the acts section 714H.3(1) prohibits: a deception and an unfair practice.[157] This subsection addresses the unfair practice claim. Subsection c above explains why the deception the Court assumes is not connected to the advertisement, sale, or lease of consumer merchandise.

---

[151] *Albaugh v. The Reserve*, 930 N.W.2d 676, 684, 685 (Iowa 2019); *Bass v. J.C. Penney Co., Inc.*, 880 N.W.2d 751, 753, 754 (Iowa 2016).
[152] Selzer Defs.' Mem. at 25.
[153] Iowa Code § 714H.3(1).
[154] Restatement (Second) of Torts § 538.
[155] *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 34 (Iowa 2013).
[156] Tr. 60:24-61:3 (question of the Court); Tr. 61:4-11 (argument of counsel for Plaintiffs).
[157] Pet. ¶¶ 109, 110, 111.

An unfair practice is one that "causes substantial, unavoidable injury to consumers that is not outweighed by any consumer or competitive benefits which the practice produces."[158] That statute measures injury to consumers. The Iowa Supreme Court has interpreted that statute in the same manner, holding it was intended to address "unscrupulous business practices", like sales or advertisements.[159]

The Petition alleges no such injury to a consumer. For the reasons stated earlier above, the injuries alleged are to candidates for public office, not to consumers.[160] That is not a determination by the Court of the seriousness of Defendants' actions; actions this Court has assumed without question are serious. It is simply a failure of allegation; the injury the statute measures is one type of injury, and the injury pleaded is of another type.

**3. The Petition Alleges No Ascertainable Loss and No Reliance Under the Private Right of Action Section 714H.5(1).**

The question that also must be resolved is whether the legislature gave these Plaintiffs a right to sue these Defendants for these injuries.[161] In order to prevail under Section 714H.5(1), you must prove that you are (1) a consumer, (2) with an ascertainable loss of money or property, and (3) that loss is brought about by the prohibited practice. Plaintiffs satisfy none of the three.

**a. The Plaintiffs are not consumers within the meaning of the statute.** Each Plaintiff alleges that he or she is a consumer, "having acquired, read, and been deceived by" the Register and the two articles.[162] By pleading acquisition and deception rather than status alone, the

---

[158] Iowa Code §§ 714.16(1)(i), 714H.2(9).
[159] *Cutty's*, 694 N.W.2d at 525; *Vertrue*, 834 N.W.2d at 34.
[160] Pet. ¶¶ 110, 111.
[161] *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1139-41 (D. Minn. 2017); *Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 965 (S.D. Iowa 2018).
[162] Pet. ¶¶ 105, 106, 107.

Petition recognizes that being a natural person is not enough. For the reasons given in subsection 2. c. above, the acquisition pleaded has no connection to any poll.

At oral argument, Plaintiffs argued that a candidate's official campaign committee is the candidate's legal representative under section 714H.2(3). Counsel conceded that no Iowa decision defines the term that way.[163] The Press Defendants answered that the phrase contemplates a representative acting for a minor or a decedent, not a separate legal entity.[164] The Court rejects Plaintiffs' argument, which is the only answer Plaintiffs have given to the damages problem. A campaign is "a legal entity distinct from the candidate,"[165] and a separate legal entity is not the legal representative of a natural person. Plaintiffs sued in their individual capacities,[166] and the committees that made the expenditures are not parties.

The Plaintiffs are not consumers as defined in the statute.

**b. The Petition alleges no ascertainable loss of money or property.** Under the statute, damages are an essential element of the claim,[167] and the statute limits recovery to actual damages, ascertainable in amount and excluding mental distress.[168] President Trump alleges that he expended time and resources, including direct federal campaign expenditures, to counteract the polls;[169] Representative Miller-Meeks alleges the same;[170] Zaun alleges the loss of his Senate seat.[171] None is an ascertainable loss of money or property belonging to the Plaintiff who pleads it. Time expended is not money or property. Resources described without definition are not

[163] Tr. 58:12-59:6, 59:19-23 (argument of counsel for Plaintiffs).
[164] Tr. 79:1-11.
[165] *Cruz*, 596 U.S. at 294.
[166] Pet. ¶¶ 120-22, 124, 125.
[167] *Briehl*, 172 F.3d at 630.
[168] Iowa Code §§ 714H.2(1), 714H.5(1).
[169] Pet. ¶ 124.
[170] Pet. ¶ 125.
[171] Pet. ¶ 126.

ascertainable in amount. The campaign expenditures and the lost election fail for the reasons stated previously.

Plaintiffs read the term actual damages broadly. In their view, the term covers every compensatory loss proximately caused by the prohibited practice whenever the amount is reasonably ascertainable. The Press Defendants read the term narrowly. They argue that the time and money Plaintiffs spent to counteract the poll are consequential losses, meaning losses that follow indirectly from the publication, and that the statute compensates only direct losses.[172] The dispute is one of law, and the text resolves it. Section 714H.5(1) ties recovery to a loss suffered "as the result of" the prohibited practice. Expenditures a candidate makes to answer a publication are not a loss brought about by a consumer transaction.

The Plaintiffs do not allege any damages the statute recognizes.

**c. The Petition alleges no reliance and no proximate cause.** Under the statute, a consumer may recover only for a loss suffered "as the result of" a prohibited practice.[173] Proximate cause is a question of the scope of liability, limiting liability to harms resulting from the risks the wrongful conduct created.[174]

Plaintiffs contend that their own reliance is not an element, and that the statute asks only whether Defendants intended others to rely.[175] The Court cannot adopt that reading. In an action for reimbursement or an injunction brought by the Attorney General, it is "not necessary . . . to allege or to prove reliance. . ."[176] The private right of action carries no such provision.[177] The Attorney General may act before any consumer has relied because the remedy sought is

[172] Tr. 57:11-24 (argument of counsel for Plaintiffs); Tr. 39:24-40:4, 78:8-25 (argument of counsel for the Press Defendants).
[173] Iowa Code § 714H.5(1); *see also* Iowa Code § 714.16(2)(a).
[174] *Thompson v. Kaczinski*, 774 N.W.2d 829, 838 (Iowa 2009).
[175] Pls.' Resistance at 32, 33.
[176] Iowa Code § 714.16(7).
[177] Iowa Code §§ 714H.3(1), 714H.5(1).

injunctive, while the private action retains the elements a private plaintiff has always had to prove.[178] The distinction is difficult to explain on any other reading.

Illinois decisions confirm the point. Iowa's consumer fraud statute was patterned after Illinois, and Iowa courts look to Illinois decisions for guidance.[179] The Illinois Supreme Court has held that proximate causation requires proof that the plaintiff "was actually deceived by the misrepresentation," and one who "has neither seen nor heard a deceptive statement" cannot have relied on it.[180]

The Petition identifies no act any Plaintiff took because of a poll. Roughly seventy-two hours separated the first publication from the close of the election.[181] Within that period, according to reporting the Petition relies upon, President Trump publicly rejected the poll as "a fake poll" conducted by "a Trump hater" who had "oversampled, by a lot, Democrats."[182] A party who publicly called the poll false did not rely on it, whether or not it was fabricated. At oral argument, counsel for Plaintiffs identified no act taken in reliance.[183]

The Plaintiffs do not allege any reliance or proximate cause.

**4. Conclusion on Count I.**

Count I fails as a matter of law. Section 714H.3(1) reaches a prohibited act only when the act is connected to the advertisement, sale, or lease of consumer merchandise, and section 714H.5(1) opens a private action only to a consumer who suffers an ascertainable loss of money or property as the result of such an act.

[178] Tr. 37:3-38:11.
[179] *State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 621 (Iowa 1989).
[180] *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 462 (Ill. 2024).
[181] Pet. ¶¶ 1, 2.
[182] Press Defs.' Br. at 6 n.2, 47 n.12; Pls.' Resistance at 28 n.4.
[183] Tr. 64:14-21 (question of the Court); Tr. 64:22-65:14 (argument of counsel for Plaintiffs).

The Petition satisfies neither provision. It pleads a newspaper acquired for the purposes of a candidate rather than for personal, family, or household purposes. It identifies no advertisement and no lease. It ties no purchase to either poll. As to the Selzer Defendants, it identifies no consumer merchandise at all. The Plaintiffs are not consumers within the meaning of the chapter, the losses they describe are those of a candidate rather than an ascertainable loss of money or property belonging to the Plaintiff who pleads it, and no Plaintiff alleges an act taken in reliance on a poll. Each of these is a defect of law. Count I is dismissed.

**B. Count II. Fraudulent Misrepresentation**

**1. The Elements and Claim.**

Count II alleges fraudulent misrepresentation against all Defendants.[184] Before reaching it, the Court must settle which statement of the elements governs, because the parties supply three.

The Selzer Defendants use the eight-element formulation of *Gibson v. ITT Hartford Ins. Co.*: (1) the defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of the plaintiff's damages, and (8) the amount of damages.[185] The Press Defendants use a seven-element formulation: representation, falsity, materiality, scienter, intent to deceive, reliance, and resulting injury and damage.[186] The Petition supplies the third. It lists

---

[184] Pet. ¶¶ 128-38.

[185] *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001); Selzer Defs.' Mem. at 28-29.

[186] *Van Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010) (quoting *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 233 (Iowa 2004)); Press Defs.' Br. at 48.

representation, falsity, materiality, scienter, intent to deceive, justifiable reliance, and resulting injury.[187]

The Court applies *Gibson*. The eight-element statement separates justifiable reliance from proximate cause and from damages, which keeps the analysis below in order, and the Press Defendants themselves return to *Gibson* when they reach reliance.[188] The choice does not affect the outcome. The two formulations divide the same requirements differently, and Count II fails under either one.

**2. A Fraud Claim May Be Dismissed on the Pleadings.**

The Plaintiffs' first argument on Count II is procedural, and the Court addresses it first. The Plaintiffs contend that the Selzer Defendants cite no Iowa case sustaining dismissal of a fraudulent misrepresentation claim on the pleadings, because *Gibson* and *Spreitzer* were decided after trial and *Young* on summary judgment.[189] That is incorrect. The Iowa Supreme Court affirmed the dismissal of a fraud claim on the pleadings in *Postal Finance Co. v. Langton*[190], and in *Dier v. Peters* it reviewed the dismissal of a fraudulent misrepresentation claim by working through each of the eight elements in turn.[191]

**3. What the Court's Assumption Concedes.**

The introduction to Part VI sets out the assumption on which this section proceeds (i.e., that the facts in the Petition are true). Applied to Count II, that assumption concedes a great deal.

The Petition alleges that the polls were false.[192] It alleges that they were material, because Selzer's polling was "long wrongfully regarded as the gold standard nationally and in Iowa" and

---

[187] Pet. ¶ 129 (citing *Midwest Home Distrib., Inc. v. Domco Indus. Ltd.*, 585 N.W.2d 735 (Iowa 1998)).
[188] Press Defs.' Br. at 49-50; Press Defs.' Reply at 33.
[189] Pls.' Resistance at 34.
[190] *Postal Fin. Co. v. Langton*, 166 N.W.2d 806, 808 (Iowa 1969).
[191] *Dier v. Peters*, 815 N.W.2d 1, 8-10 (Iowa 2012); Selzer Defs.' Reply at 21, 23.
[192] Pet. ¶¶ 130-31.

predictably generated enormous media attention.[193] It alleges that the Defendants knew the polls were false when they published them.[194] And it alleges that the Defendants published them intending to deceive the Plaintiffs, other candidates, their readers, and the electorate.[195] On the Court's assumption, the second, third, fourth, and fifth *Gibson* elements are met, and the Court treats them as met for the balance of this section.

Even so, four requirements remain: a representation made to a Plaintiff, an act taken in reliance on the truth of that representation, proximate cause, and damages. Count II fails on each element, independent of how the polls were produced.

**4. The Petition Alleges No Representation Made to Induce Any Plaintiff to Act.**

On the first element of *Gibson*, and on some of the subsections discussed later, the Court has found *Demuth Development Corp. v. Merck & Co., Inc*. instructive.[196] Accordingly, a brief account of the case is useful. In that case, the plaintiff manufactured and sold an air sterilization appliance that disinfected the air by vaporizing triethylene glycol. The defendant, a chemical and pharmaceutical company, published the Merck Index, an encyclopedia of chemicals and drugs reporting the uses and toxicity of some 10,000 substances.[197] Beginning in 1960, and in some 276,500 copies circulated before August 1974, the Index cross-referenced the human toxicity of triethylene glycol to its entry for ethylene glycol, which described a hazard when ingested.[198] The plaintiff alleged that the entry misstated the toxicity of the chemical, that its customers treated the Index as a reliable authority, and that those customers stopped buying its vaporizer as a result.[199] It sought four million dollars in compensatory and punitive damages on theories of

[193] Pet. ¶ 132.
[194] Pet. ¶ 133.
[195] Pet. ¶ 134.
[196] *Demuth*, 432 F. Supp. at 990.
[197] *Id.* at 991.
[198] *Id.* at 991, 992.
[199] *Id.*

negligent and willful misrepresentation, after an earlier ruling dismissed its product defamation claim because the entry named neither the plaintiff nor its product.[200] The court granted summary judgment to the publisher on both theories. The negligence claim failed because the publisher owed the plaintiff no duty in respect of its publication of information about the chemical.[201] The willful misrepresentation claim failed for the reason that governs this element. The plaintiff "was not misled into acting or refraining to act by anything Merck said," and its "sole claim [was] that its customers relied on the Index statement."[202] A claim in that form, the court held, is insufficient as a matter of law.[203]

On the representation element, *Demuth* shows that the Selzer Defendants are easily addressed. The Petition alleges no relationship between any Plaintiff and J. Ann Selzer or Selzer & Company. It alleges no communication from either of them to any Plaintiff and no transaction of any kind. Selzer sold a poll to a newspaper. She said nothing to these Plaintiffs, and the Petition does not claim otherwise. As noted in the *Demuth* case, dismissal of the party was warranted where the plaintiff could identify no relationship of the parties, "arising out of contract or otherwise," that "in morals or good conscience" placed the party under a duty toward the plaintiff or its business.[204]

The Press Defendants require a different answer because the Petition alleges that the polls reached the Plaintiffs. Each Plaintiff pleads that he or she read the Register and the two articles and was deceived by them, and Trump and Miller-Meeks plead that they acquired them.[205] The Court accepts that a representation reached the Plaintiffs. The Petition says so on its face.

---

[200] *Id.*
[201] *Id.* at 993.
[202] *Id.* at 994.
[203] *Id.*
[204] *Id.* at 993; Selzer Defs.' Mem. at 20.
[205] Pet. ¶¶ 105-07.

The problem with the Plaintiff's claim, however, is that the element deals with *inducement* rather than receipt. Reading a statement is not the same as acting on it. *Demuth* illustrates that a claim built on the reliance *of other people* fails as a matter of law. In that case, the plaintiff "was not misled into acting or refraining to act by anything Merck said," and its "sole claim [was] that its customers relied on the Index statement."[206] In this case, Paragraph 137 alleges that the polls affected the Plaintiffs' races. That allegation describes what voters did after reading the polls. It does not describe anything *any Plaintiff* did because of them.

The other elements fail in the same way. The Selzer Defendants point out that materiality, scienter, and intent to deceive each assume a representation about a transaction the plaintiff is considering. The Restatement sections Selzer cites support that reading.[207] The Petition places no Plaintiff in a transaction with any Defendant.

**5. No Plaintiff Acted in Reliance on the Truth of the Polls.**

The sixth *Gibson* element requires that the plaintiff "acted in reliance on the truth of the representation and was justified in relying on the representation."[208] It has two halves. The Plaintiffs fail both, and the second failure follows from their own allegations.

**a. The act.** The Court will begin with the act. The element requires *conduct in reliance of a statement*. There is no liability unless the misrepresentation increased the risk of the plaintiff acting in reliance on it.[209] Paragraph 136 of the Petition pleads this element: "Given Selzer's historic accuracy and the Des Moines Register's general reputation for accuracy, Plaintiffs justifiably relied on the Defendant Polls."[210] That sentence identifies no purchase, no decision,

[206] *Demuth*, 432 F. Supp. at 994.
[207] Restatement (Second) of Torts §§ 531, 538; *B&B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976); Selzer Defs.' Reply at 22.
[208] *Gibson*, 621 N.W.2d at 400.
[209] *Spreitzer*, 779 N.W.2d at 741; Press Defs.' Br. at 49.
[210] Pet. ¶ 136.

and no course of conduct. It states a conclusion and stops. Earlier in the Petition, however, Trump alleges that he expended extensive time and resources, including direct federal campaign expenditures, "to mitigate and counteract the harms of the Defendants' conduct."[211] Miller-Meeks alleges that she expended extensive time and resources for the same purpose.[212] Their Resistance says the polls were intended to induce consumers, including the Plaintiffs, into wrongly believing that the Democratic candidates were outperforming Republicans, and that "Plaintiffs took action to counteract that 'fact.'"[213]

The Court takes those allegations at face value, but it does not help the Plaintiffs. Acting to counteract a statement is not acting in reliance on its truth. It is the opposite. A candidate who spends money to answer a poll because he believes the poll is wrong has acted on his disbelief. *Gibson* requires reliance "on the truth of the representation." Money spent to correct what a party regards as a falsehood is not money spent in reliance on it. The only act the Petition alleges is therefore the wrong kind of act to support a claim of fraudulent misrepresentation.

**b. Justification.** As to the issue of justification, Iowa applies a subjective test, which asks whether these plaintiffs, "in view of their own information and intelligence, had a right to rely on the representations."[214] A plaintiff may not rely blindly.[215] And a person "may not justifiably rely on a professional representation if 'red flags' signal such reliance is unwarranted."[216]

Paragraph 136 rests the Plaintiffs' justification on Selzer's historic accuracy. The rest of the Petition dismantles that premise. The Petition alleges that the premise of the Harris Poll "was

[211] Pet. ¶ 124.
[212] Pet. ¶ 125.
[213] Pls.' Resistance at 35.
[214] *Hammes v. JCLB Props. LLC*, 764 N.W.2d 552, 556 (Iowa Ct. App. 2008); *Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980); Press Defs.' Br. at 49-50.
[215] *Spreitzer*, 779 N.W.2d at 737; Selzer Defs.' Mem. at 29-30.
[216] *Young ex rel. Young v. Rally Appraisal, L.L.C.*, 928 N.W.2d 660, 2019 WL 1486608, at *4 (Iowa Ct. App. 2019) (unpublished table decision); Selzer Defs.' Mem. at 30.

so implausible that no objective pollster could have honestly advanced it."[217] It alleges that every other mainstream Iowa poll showed Trump comfortably ahead.[218] It alleges that the poll stood "[i]n sharp contrast to common sense, electoral history, all other public polls, and Harris's internal polling."[219] It recites contemporaneous coverage of the poll, including an article headed as reporting on an outlier poll.[220] It alleges that Selzer had missed the 2018 governor's race, the 2020 Senate race, and the 2022 attorney general's race.[221] And it alleges that "[a]ny responsible pollster or journalist with experience in Iowa politics would recognize the clear inaccuracy of the Defendant Polls."[222] The Press Defendants receive the same allegations.[223]

Paragraph 136 and those allegations cannot both be true. A party who pleads that a deception was obvious to every informed observer has pleaded away his own justification for believing it. The more thoroughly the Plaintiffs establish that the polls were fabricated and that the fabrication was apparent on its face, the less they can maintain that they justifiably believed the numbers.

The Court put this contradiction to counsel for the Plaintiffs at argument, and observed that Trump had publicly rejected the poll within a day of its publication. Counsel answered that the reliance requirement comes from Illinois authority and that the Court should not read an element into the statute. He identified no act taken in reliance.[224] That answer addresses the statutory claim in Count I. It does not reach the common law element at issue here, which no party disputes exists.

---

[217] Pet. ¶ 47.
[218] Pet. ¶ 49.
[219] Pet. ¶ 53.
[220] Pet. ¶ 63.
[221] Pet. ¶¶ 29-34.
[222] Pet. ¶ 133; Selzer Defs.' Mem. at 30.
[223] Press Defs.' Br. at 50-51.
[224] Tr. 64:14-21 (question of the Court); Tr. 64:22-65:14 (argument of counsel for Plaintiffs).

**6. The Injuries Alleged Are Not Losses the Law of Fraud Compensates.**

Paragraph 137 states the injury in two ways. The Plaintiffs allege that the polls impacted their races, and that the Plaintiffs, as readers of the Register and of Selzer's polls, "were entitled to accurate information, not to be misled by fraudulent misrepresentations."[225] Neither is a loss this tort redresses.

The first is harm produced by what the electorate did after reading the polls, and *Demuth* holds that a claim based on third-party reliance fails as a matter of law.[226] Election damages are in any event speculative, for the reasons given in the introduction to Part VI.[227] And a rule that treated merely foreseeable third-party reliance as sufficient would produce liability without limit.[228]

The second is not a pecuniary loss at all. It is a claim to have been told the truth. Lying is not fraud, because lying by itself "lacks an essential element of a fraud claim: proof of detrimental reliance or actual harm to the plaintiff."[229]

Iowa recognizes two measures of damages for fraudulent misrepresentation, and the Petition pleads neither.[230] The first is out-of-pocket damages, which compensate a "pecuniary loss suffered as a result of the recipient's reliance upon the misrepresentation," measured by "the difference between the value of what [the party] has parted with and the value of what [the party] has received."[231] The second is benefit-of-the-bargain damages, which place the defrauded party "in the same financial position as if the fraudulent representation[] had been in fact true."[232] Iowa

[225] Pet. ¶ 137.
[226] *Demuth*, 432 F. Supp. at 994.
[227] *Horsey*, 230 F.2d at 322-23; Selzer Defs.' Mem. at 24.
[228] *Charles Schwab*, 883 F.3d at 91-92; Selzer Defs.' Mem. at 24.
[229] *Kepler*, 879 F. Supp. 2d at 1009 n.1; Selzer Defs.' Mem. at 17.
[230] *Midwest Home Distrib.*, 585 N.W.2d at 739-41; Press Defs.' Br. at 51.
[231] *Putman v. Walther*, 973 N.W.2d 857, 864 (Iowa 2022); *Midwest Home Distrib.*, 585 N.W.2d at 739; *Cornell v. Wunschel*, 408 N.W.2d 369, 380 (Iowa 1987).
[232] *Cornell*, 408 N.W.2d at 380.

has adopted the Restatement rule that ties the second measure to a transaction with the defendant, so that where a plaintiff "has not entered into any transaction with the defendant but has suffered his pecuniary loss through reliance upon the misrepresentation in dealing with a third person," benefit-of-the-bargain damages are unavailable.[233] The Plaintiffs advance no benefit-of-the-bargain theory.[234]

The Plaintiffs assert that they pleaded an out-of-pocket loss by alleging that they expended resources to mitigate the harms of the polls.[235] That answer does not fit out-of-pocket damages. Out-of-pocket damages require that the plaintiff parted with something of value and received something of lesser value from the defendant.[236] No Plaintiff paid anything to any Defendant, and no Defendant gave any Plaintiff anything in exchange. Money a candidate spends answering a publication is a cost of a campaign. It is not the difference between what he gave and what he got.

Two further points come from the introduction to Part VI and apply here without much comment. The first concerns whose money the Petition describes as belonging to their campaigns.[237] The second is that damages are an essential element of the claim, not a matter to be sorted out later.[238] Both of these issues further support a lack of damages recoverable under the claim.

The Plaintiffs' final response is that none of the damages cases the Press Defendants cite arose on a motion to dismiss, and that they are entitled to discovery before their damages are

---

[233] Restatement (Second) of Torts § 549 cmt. g; *Cornell*, 408 N.W.2d at 380, 382; *Dier*, 815 N.W.2d at 9-11; Press Defs.' Br. at 52-53.
[234] Press Defs.' Reply at 33.
[235] Pls.' Resistance at 36.
[236] Press Defs.' Reply at 34.
[237] Pet. ¶ 124; *Cruz*, 596 U.S. at 294; Press Defs.' Br. at 51; Selzer Defs.' Reply at 19-20.
[238] *Briehl*, 172 F.3d at 630; Selzer Defs.' Mem. at 23.

tested.[239] Subsection 2 answers the general form of that argument. The specific answer is that the question here is not how much the Plaintiffs lost. It is whether what they describe is the kind of loss this tort compensates. That is a question of law, and the Petition supplies everything needed to answer it.

**7. Conclusion on Count II.**

Count II fails as a matter of law. A false statement is fraud only when the defendant made it to the plaintiff for the purpose of inducing the plaintiff to act, only when the plaintiff acted in reliance on its truth, and only when that reliance was justified and produced a loss the law of fraud compensates.

The Petition satisfies none of those requirements. It alleges no representation made to any Plaintiff for the purpose of inducing that Plaintiff to act. It alleges no act taken in reliance on the truth of the polls, and the acts it does allege were taken to counteract the polls rather than to rely on them. It alleges facts that defeat any claim of justifiable reliance. And it alleges no loss of the kind the law of fraud compensates. Each of these is a defect of law. Count II is dismissed.

**C. Count III. Negligent Misrepresentation**

**1. The Elements and the Claim.**

Count III alleges negligent misrepresentation against all Defendants, and the Plaintiffs plead it in the alternative to Count II.[240] If the Court finds that the misrepresentations were not intentional, the Plaintiffs ask that the same conduct be judged as negligence.[241]

Both sets of Defendants use the six-element statement of *McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*: (1) the defendant was in the business or profession of supplying information

[239] Pls.' Resistance at 36.
[240] Pet. ¶¶ 139-56.
[241] Pet. ¶ 140.

to others, (2) the defendant intended to supply information to the plaintiff or knew that the recipient intended to supply it to the plaintiff, (3) the information was false, (4) the defendant knew or reasonably should have known that the information was false, (5) the plaintiff reasonably relied on the information in the transaction that the defendant intended the information to influence, and (6) the false information was the proximate cause of damage to the plaintiff.[242] Judge Ebinger used the same statement.[243] The Plaintiffs articulate the claim through the Restatement. Iowa "has adopted the definition of the tort of negligent misrepresentation found in the Restatement (Second) of Torts," and the Plaintiffs set out section 552 in full.[244] The Court applies the *McLeodUSA* statement, and it does so without contradicting anything the Plaintiffs have argued. Section 552 limits liability to the loss suffered "by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information," and only "through reliance upon it in a transaction that he intends the information to influence."[245] Those are the same two limits the *McLeodUSA* elements carry, and they are the limits that impact this count.

Paragraph 139 of the Petition realleges the first 138 paragraphs. On duty, the count alleges that newspaper journalists and pollsters are professionals with advanced training, that they are "supposed and expected to be in the business of supplying accurate, reliable information to others," that they do not deal with their readers "in an adversarial or arms-length setting," that readers of newspapers and online media "as well as political candidates who are covered by the media and polling" are "part of the limited class of foreseeable third parties who rely on the

---

[242] *McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677, 692 (N.D. Iowa 2007); Press Defs.' Br. at 54; Selzer Defs.' Mem. at 32 (quoting *Doe v. Grinnell Coll.*, 473 F. Supp. 3d 909, 937 (S.D. Iowa 2019)).

[243] *Donnelly*, 829 F. Supp. 3d 696.

[244] *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 30 (Iowa 2012) (citing *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 111 (Iowa 2012)); Pls.' Resistance at 37.

[245] Pls.' Resistance at 37.

information provided by these professionals," and that the Defendants have a pecuniary interest in supplying information because that is how they keep readers and clients.[246] On breach, the decision to publish is alleged to have been unreasonable and, given what the Defendants knew about prior Iowa elections and about other Iowa polling, "reckless or at minimum, negligent."[247] On loss, the Plaintiffs allege an ascertainable pecuniary loss consisting of "the value of the false content that they acquired, purchased, and consumed as well as expenditures and losses relating to their races."[248]

**2. Duty.**

The first element of the tort is a legal duty. "As with all negligence actions, an essential element of negligent misrepresentation is that the defendant must owe a duty of care to the plaintiff."[249] That duty "arises only when the information is provided by persons in the business or profession of supplying information to others."[250] What this tort requires, however, is a "special relationship of advice and guidance."[251] Whether the duty exists is "always a question of law for the court."[252] The Court decides it now, on the pleading.

Count III is the plainest of the three counts. As previously stated, the Court assumes for purposes of this Motion the numbers were invented and that the Defendants knew it when they published. The assumption concerns the content of what was published. Duty concerns the relationship between the people who published and the people suing over it. "[P]roviding false

---

[246] Pet. ¶¶ 146, 147, 148, 149, 151.

[247] Pet. ¶ 154.

[248] Pet. ¶ 156.

[249] *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 124 (Iowa 2001); Selzer Defs.' Mem. at 30; Press Defs.' Br. at 54.

[250] *Id.* (citing *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 492 (Iowa 2000)).

[251] *In re Estate of Maddigan*, No. 03-0048, 2004 WL 1159659, at *2 (Iowa Ct. App. May 26, 2004); *see Jensen v. Sattler*, 696 N.W.2d 582, 588 (Iowa 2005) ("Absent a special relationship giving rise to a duty of care, a plaintiff cannot establish negligent misrepresentation."); Press Defs.' Br. at 54.

[252] *Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*, 888 N.W.2d 644, 649 (Iowa 2016) (quoting *Fry v. Mount*, 554 N.W.2d 263, 265 (Iowa 1996)); Press Defs.' Br. at 55.

information is not enough to sustain a negligent misrepresentation claim."[253] As such, a relationship either existed before the poll was published or it did not, and how the poll was made cannot create one.

**3. Neither Defendant Is in the Business or Profession of Supplying Information to These Plaintiffs.**

The phrase "business or profession of supplying information to others" does not mean in this tort what it means in ordinary speech. A newspaper supplies information in the ordinary sense. That is what a newspaper is. Iowa law asks a narrower question, looking to the nature of the relationship between the purveyor and consumer of information, not to the subject matter of the transaction between the plaintiff and the defendant.[254] The defendant must act "in an advisory capacity," must be "manifestly aware of the use that the information will be put," and must "intend[] to supply it for that purpose."[255]

The class of defendants who satisfy that test is small. Iowa has placed accountants, abstractors, attorneys, appraisers, school guidance counselors, and investment brokers within it.[256] A home inspection company that prepares a report knowing that prospective buyers will rely on it in deciding whether to buy a building may be liable if the report is inaccurate and a buyer relies on it to his detriment.[257]

The classes of defendants the Iowa Courts have excluded are as instructive as those they have included. The Courts have excluded a dealer of milking machine equipment because it was not in the business of supplying information, even though it made representations about the

[253] *W. Reserve Life Assur. Co. of Ohio v. Bratton*, 464 F. Supp. 2d 814, 841 (N.D. Iowa 2006) (citing *Sain*, 626 N.W.2d at 124-25); Selzer Defs.' Reply at 23.
[254] *Sain*, 626 N.W.2d at 125; Press Defs.' Br. at 55.
[255] *Conveyor Co. v. Sunsource Tech. Servs.*, 398 F. Supp. 2d 992, 1014 (N.D. Iowa 2005); Press Defs.' Br. at 55.
[256] *Sain*, 626 N.W.2d at 123 (citing *Ryan v. Kanne*, 170 N.W.2d 395, 402 (Iowa 1969)); *Pitts*, 818 N.W.2d at 111-12; Selzer Defs.' Reply at 23.
[257] *Burbach v. Radon Analytical Lab'ys, Inc.*, 652 N.W.2d 135, 138 (Iowa 2002); Selzer Defs.' Mem. at 33.

product in connection with the sale, because it was in the business of selling and servicing merchandise.[258] The Iowa Supreme Court has since restated that the tort is unavailable against product manufacturers and product sellers who supply information about a product in connection with its sale.[259] A seller negotiating the sale of his own business fell outside the class because the parties dealt at arm's length in a commercial transaction.[260] An employer negotiating with an employee fell outside it, and the tort will not lie for an alleged wrongful termination.[261] Bank officers fell outside it where the pleadings failed to show they were engaged in the business of supplying information.[262] What unites these cases is that the defendant and the plaintiff stood on opposite sides of a transaction, or the information passed as an incident of something else the defendant was selling or doing. The Defendants here stand further outside the class than any of these defendants did. In each of those cases the parties at least dealt with one another. No Plaintiff dealt with any Defendant at all.

In this case it is clear that neither Defendant stood in a position recognized by Iowa Courts in relationship to any Plaintiff. No Plaintiff hired J. Ann Selzer or Selzer & Company. No Plaintiff hired the Des Moines Register.[263] Whatever duty Selzer owed, she owed to the newspaper that contracted for her work.[264]

Judge Ebinger reached this conclusion on these facts, and the reasoning is worth setting out rather than summarizing.

> Donnelly's negligent misrepresentation claim fails because a pollster and a general circulation newspaper reporting on the results of an election poll are not in the business or profession of supplying information to a limited class of others who

[258] *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 581 (Iowa 1990).
[259] *Barnhill v. Iowa Dist. Ct. for Polk Cnty.*, 765 N.W.2d 267, 274 (Iowa 2009); *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 372 (Iowa 2014).
[260] *Freeman v. Ernst & Young*, 516 N.W.2d 835, 838 (Iowa 1994).
[261] *Alderson v. Rockwell Int'l Corp.*, 561 N.W.2d 34, 36 (Iowa 1997).
[262] *Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994).
[263] Press Defs.' Br. at 56.
[264] Selzer Defs.' Mem. at 31.

> knowingly rely on the information. The relationship between a newspaper and the public is fundamentally different from the relationship between an accountant or attorney and his or her client. There is no "limited class of persons" a newspaper contemplates will use the information the paper publishes.[265]

The Plaintiffs make one affirmative argument on this element. They argue that the Defendants acted in their professional capacity and had a pecuniary interest in the poll, because the Selzer Defendants prepared it for the Press Defendants, the Press Defendants advertised it on the front page in "a marketing blitz to sell newspapers and digital subscriptions," and Selzer has acknowledged that "the polling industry is predicated on getting people to pay money for their products."[266] A pecuniary interest is one condition of liability under section 552, but it is not the whole of the rule. The Restatement the Plaintiffs quote requires that the supplier act "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest." It then separately requires that the information be supplied "for the guidance of others in their business transactions," and it limits liability to a defined group for whose benefit and guidance the supplier intends the information.[267] The Plaintiffs have taken one requirement out of a rule they set out themselves and treated it as the rule.

The Press Defendants point out where the argument leads. If a pecuniary interest in publishing were enough to create an advisory relationship with every reader, then "every for-profit newspaper, broadcaster, media outlet, blogger, and even social media influencer would owe a supplemental duty of care to every reader, listener, or viewer of their content and for every subject of their commentary."[268] The Court does not believe the cause of action can reach that far.

---

[265] *Donnelly*, 829 F. Supp. 3d 696; Selzer Defs.' Mem. at 30-31.
[266] Pls.' Resistance at 38; Pet. ¶¶ 23-26, 67, 151.
[267] Pls.' Resistance at 37.
[268] Press Defs.' Reply at 36.

**4. The Polls Were Not Supplied for the Benefit and Guidance of Plaintiffs.**

The second element fails for a related reason, and it would fail even if the Defendants belonged to the class of information suppliers.

An advisor's duty does not run to everyone who might read what the advisor writes. It extends only "to persons for whose benefit and guidance the [advisor] knows the information is intended."[269] Iowa drew that line on purpose. "Instead of using foreseeability of harm to limit the scope of the duty of care," Iowa "rel[ies] upon a stricter standard of knowledge."[270]

The Petition pleads the opposite of what this element requires. Paragraph 1 alleges that the poll was "published online" and "nationally distributed."[271] No paragraph alleges that any Defendant intended any of these three Plaintiffs to rely on the poll, or knew that someone else intended them to, and no Plaintiff's campaign retained any Defendant for advice or for polling.[272]

The Plaintiffs answer this failure by arguing foreseeability. They allege that "the foreseeability of harm helps support the imposition of a duty of care," that candidates covered by polling are foreseeable third parties, and that the Defendants "could foresee that reporting obviously inaccurate polling results would harm their readers and the subjects of their polls."[273] Foreseeability is the test *Sain* declined to use for this element.[274]

The Plaintiffs' one responsive authority is *Burbach*, which they read to hold that dismissal is improper where a defendant has "knowledge that its report would be reviewed and potentially relied upon by a limited but foreseeable class of persons."[275] *Burbach* is

[269] *Sain*, 626 N.W.2d at 123 (quoting *Ryan*, 170 N.W.2d at 403); Press Defs.' Br. at 56.
[270] *Id.*; *see* Restatement (Second) of Torts § 552 cmt. h (liability exists only as to "those persons for whose benefit and guidance it is supplied"); Selzer Defs.' Reply at 24.
[271] Press Defs.' Br. at 56; Press Defs.' Reply at 36.
[272] Press Defs.' Br. at 56-57.
[273] Pet. ¶¶ 144, 147, 150.
[274] *Sain*, 626 N.W.2d at 123.
[275] Pls.' Resistance at 39 (citing *Burbach*, 652 N.W.2d at 138).

distinguishable, however. The inspector in *Burbach* knew that his report would be used by the people deciding whether to buy a particular building.[276] The class was limited because a transaction defined it. The only class the Plaintiffs identify here is everyone who read the newspaper. That is not a limited class. It is the general public described in other words.

**5. No Court the Parties Cite Imposes a Duty Running from a Publisher to Its Audience.**

The conclusion above is not a peculiarity of Iowa law. "If a newspaper prints incorrect information, if a scientist publishes careless statements in a treatise, or if an oil company prints an inaccurate road map, they cannot be 'liable' to those of the general public who read their works absent some special relationship between [the] writer and reader."[277] "[N]ews broadcasters do not owe the general public a heightened duty of care."[278] A newspaper reader "does not fall within a special limited class (or group) of foreseeable persons" who may bring the claim, because "a contrary result would in effect extend liability to all the world."[279]

The reason these courts give is practical. A publication "offered to the general public" carrying information "of a general nature" that "is not specifically tailored to [the] financial situation of any individual subscriber" creates no relationship with any individual reader, and a contrary rule would place on the press the "intolerable burden" of proving "that its efforts to determine the accuracy of any given report were reasonable."[280] A duty running "to a wide range of readers or TV viewers would have a chilling effect which is unacceptable under our Constitution."[281]

---

[276] Selzer Defs.' Mem. at 33.

[277] *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140, 148 (5th Cir. 1971); Selzer Defs.' Mem. at 31.

[278] *Stancik*, 420 F. Supp. 2d at 808; Selzer Defs.' Mem. at 31; Press Defs.' Br. at 57.

[279] *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986) (applying Restatement (Second) of Torts § 552); Press Defs.' Br. at 57; Selzer Defs.' Reply at 24.

[280] *Ginsburg v. Agora, Inc.*, 915 F. Supp. 733, 739 (D. Md. 1995) (citing *Daniel v. Dow Jones & Co.*, 520 N.Y.S.2d 334, 339 (N.Y. Civ. Ct. 1987)); Press Defs.' Br. at 57.

[281] *Tumminello v. Bergen Evening Rec., Inc.*, 454 F. Supp. 1156, 1160 (D.N.J. 1978); Selzer Defs.' Mem. at 31.

*Brandt v. Weather Channel, Inc.*, which the Court raised from the bench, is the closest analogue. It was a wrongful death action against a broadcaster of weather forecasts. The court refused to impose a duty running from the broadcaster to its viewers, described the theory as a "novel and unprecedented expansion of the scope of tort law," and observed that "[p]redicting possible future events whose outcome is uncertain is not an exact science for which a [publisher] should be held liable."[282] Counsel for the Selzer Defendants explained the case in answer to the Court's question and added that a duty running from a broadcaster to its audience would produce liability without limit.[283]

*Demuth*, which is discussed previously, states the rule and the reason for it in a single passage. Even "a reasonable anticipation that the statement will be communicated to others whose identity is unknown to the defendant, or even knowledge that the recipient intends to make some commercial use of it in dealing with unspecified third parties, is not sufficient to create a duty of care towards them."[284] The rule exists to avoid "[t]he spectre of unlimited liability, with claims devastating in number and amount crushing the defendant because of a momentary lapse from proper care."[285] The plaintiff in that case could identify "no relationship of the parties, arising out of contract or otherwise," which "in morals or good conscience, placed Merck under any duty towards plaintiff or its business."[286] No Plaintiff here alleges a relationship of any kind with J. Ann Selzer or Selzer & Company, and counsel for the Selzer Defendants made that point again at argument.[287]

---

[282] *Brandt*, 42 F. Supp. 2d at 1345-46; Selzer Defs.' Mem. at 19; Selzer Defs.' Reply at 25.
[283] Tr. 20:19-21:17.
[284] *Demuth*, 432 F. Supp. at 993-94 (quoting W. Prosser, Law of Torts 708 (4th ed. 1971)).
[285] *Id.*
[286] *Id.* at 993; Selzer Defs.' Mem. at 20.
[287] Tr. 16:12-17, 20:10-14.

The Court put the consequence of the Plaintiffs' theory to their counsel directly. Asked whether the theory would expose meteorologists and sports commentators to liability to anyone who acted on a forecast or a prediction, counsel answered that it would not, "as proven by the fact that you don't see those cases being brought."[288] The absence of such suits is not a limiting principle. It is the reason a limiting principle has not yet been needed.

**6. The Remaining Elements Fail.**

The absence of a duty disposes of Count III. The Court, however, addresses the remaining elements because each fails on its own.

The fifth element requires that the plaintiff "reasonably relied on the information in the transaction that the [defendant] intended the information to influence," and the reliance must be justified.[289] Previously, the Court explained why the Petition alleges no act taken in reliance on the polls, and that analysis applies here as well. The element in this claim also carries a requirement that Count II does not. The reliance must occur in a transaction the supplier intended the information to influence, and the Petition alleges no transaction at all.[290]

The sixth element requires that the false information proximately caused the damage, which means that "but for [the Defendants'] negligence . . . [the P]laintiffs' injury would not have occurred."[291] Paragraph 156 of the Petition alleges two losses, both of which are problematic. The campaign expenditures belong to entities distinct from the candidates who brought this suit,[292] and election losses are speculative because "[t]here may be not less than a

---

[288] Tr. 61:23-62:9.

[289] *McLeodUSA*, 469 F. Supp. 2d at 692; *Union Cnty. v. Piper Jaffray & Co.*, 741 F. Supp. 2d 1064, 1112 (S.D. Iowa 2010) (citing *Pollmann v. Belle Plaine Livestock Auction, Inc.*, 567 N.W.2d 405, 409-10 (Iowa 1997)); Press Defs.' Br. at 57-58.

[290] Selzer Defs.' Mem. at 33.

[291] *Boone Cnty. Comm. Credit Union v. Masel*, No. 02-0822, 2003 WL 1050344, at *4 (Iowa Ct. App. Mar. 12, 2003) (citing *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999)); Press Defs.' Br. at 58.

[292] *Cruz*, 596 U.S. at 294.

thousand factors which enter into the vagaries of an election. . ."[293] A claim to have been given accurate information is not a pecuniary loss.[294]

**7. The Plaintiffs' Alternative Theories.**

The Resistance raises two theories that appear nowhere in Count III of the Petition. Both replies point that out.[295] The Court addresses them on the merits.

The first is that the Defendants negligently failed to keep the poll from leaking. The Plaintiffs point to the Register's "longstanding policy of secrecy," to industry standards for protecting polling information, and to the allegation that Selzer showed the poll to a nephew who worked for a competing polling firm.[296] The theory does not describe negligent misrepresentation. A duty to keep information secret and a duty to supply information accurately are different duties, and Count III pleads only the second. The Plaintiffs allege no obligation of secrecy owed to them, by contract or otherwise.[297] Their own authorities make the point, because each involves a duty arising from a relationship the parties actually had, an architect performing his contract and a financial institution holding its customers' data.[298] The leak allegations are also not directed at the Press Defendants.[299]

The second theory is res ipsa loquitur. The Plaintiffs argue that the inference applies both to the poll results and to the leak, because the Defendants alone controlled the polling data and the odds against the error were one in three and a half million.[300] Res ipsa loquitur does not

---

[293] *Horsey*, 230 F.2d at 322-23.
[294] *Kepler*, 879 F. Supp. 2d at 1009 n.1.
[295] Selzer Defs.' Reply at 25; Press Defs.' Reply at 37.
[296] Pls.' Resistance at 39-40; Pet. ¶¶ 54, 58, 61.
[297] Selzer Defs.' Reply at 25.
[298] *Davidson & Jones, Inc. v. New Hanover Cnty.*, 255 S.E.2d 580, 584 (N.C. Ct. App. 1979); *Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 763 (N.D. Iowa 2024); Pls.' Resistance at 40; Selzer Defs.' Reply at 25-26.
[299] Press Defs.' Reply at 37.
[300] Pls.' Resistance at 40 (citing *Brewster v. United States*, 542 N.W.2d 524, 529 (Iowa 1996)); Pet. ¶¶ 1, 17, 66, 69.

create a duty. It "is only a rule of evidence, not of substantive tort law," and it is a method of proving that an existing duty was breached.[301] The doctrine assumes the element this count lacks. However improbable a polling error may be, improbability is not a relationship.[302]

**8. Conclusion on Count III.**

Count III fails as a matter of law. Iowa confines negligent misrepresentation to those who supply information in an advisory capacity to a limited group they know will use it for a particular purpose, and it permits recovery only where the plaintiff relied on the information in a transaction the supplier intended it to influence and the information proximately caused a pecuniary loss.

The Petition satisfies none of those requirements. A pollster who conducts a survey for a newspaper and a newspaper that publishes the results to whoever cares to read them do not stand in that position toward the candidates the survey measured, and the Petition pleads no relationship between any Defendant and any Plaintiff. It alleges no act taken in reliance on the polls and no transaction the polls were intended to influence. The losses it describes belong to entities distinct from the candidates who brought this suit or are speculative. Each of these is a defect of law.

Notice pleading does not save the claim. It "does not create a duty where it would otherwise not exist."[303] "[T]he liberality of our pleading rules cannot overcome the fact that the plaintiffs have failed to show the existence of a legal duty owed to them."[304] Where no legal duty exists, the Iowa Supreme Court has "approved disposition by means of [a motion to dismiss],"[305]

---

[301] *Palleson v. Jewell Co-op. Elevator*, 219 N.W.2d 8, 13 (Iowa 1974); *see Banks v. Beckwith*, 762 N.W.2d 149, 152 (Iowa 2009); Selzer Defs.' Reply at 26.
[302] Press Defs.' Reply at 37.
[303] *Bawek*, 313 N.W.2d at 502; Selzer Defs.' Mem. at 32.
[304] *Unertl*, 414 N.W.2d at 324; Selzer Defs.' Mem. at 32.
[305] *Schmidt*, 659 N.W.2d at 556.

and it has affirmed the dismissal of a negligent misrepresentation claim where the petition did not allege facts showing that the defendants were in the business of supplying information.[306] That is this case. Count III is dismissed.

**D. Conclusion on the State Law Grounds for Dismissal.**

The three counts fail for reasons unrelated to the truth of the polls. Each cause of action the Plaintiffs invoke requires a connection between these parties that the Petition never pleads. Chapter 714H requires a consumer transaction. Fraud requires a representation made to a Plaintiff for the purpose of inducing that Plaintiff to act, followed by an act taken in reliance on it. Negligent misrepresentation requires a supplier of information standing in an advisory relationship to a limited group it knows will use the information for a particular purpose. The Petition describes something different. It describes a poll published to whoever cared to read it, and injuries suffered by candidates in an election. The Court has assumed throughout that the published methodology was not followed, that the numbers were invented, and that the Defendants knew it when they published. That assumption establishes falsity. Falsity is not the element these claims lack. They lack a transaction, a relationship, and a loss of the kind these causes of action compensate.

That leaves the Plaintiffs' discovery objection, and the Court answers it directly, because counsel gave the Court a concrete list from the bench. Asked what facts discovery would develop, counsel for the Plaintiffs identified how the poll was conducted, whether a poll was conducted at all, what was known and understood by the participants in the publication process, what decisions were made about reweighting the sampled populations, and what the Register's political reporters were telling the editorial team.[307]

---

[306] *Haupt*, 514 N.W.2d at 910; Selzer Defs.' Mem. at 32; Selzer Defs.' Reply at 6.
[307] Tr. 51:2-21, 53:4-13, 64:5-11.

Every item on that list is an account of how the poll was made. None of it supplies an act in connection with the advertisement, sale, or lease of consumer merchandise. None of it supplies a consumer transaction between these parties. None of it supplies a legal duty running from a pollster or a newspaper to a candidate. None of it identifies an act any Plaintiff took in reliance on the poll. And none of it converts an electoral injury into an ascertainable pecuniary loss. Counsel for the Press Defendants made the same answer in rebuttal, going through the list and concluding that discovery would not turn the Iowa Poll into a proposal for a consumer transaction, would not demonstrate a consumer transaction, would not demonstrate reliance, and would not establish legally cognizable damages.[308] The Court finds that answer correct.

This ground alone requires dismissal of all three counts.

## VII. THE REQUEST FOR SANCTIONS

The Selzer Defendants ask the Court to order the Plaintiffs to show cause why they should not be found in violation of Iowa Rule of Civil Procedure 1.413(1).[309] The Press Defendants make no such request.[310] The Court denies the request.

The rule provides in relevant part:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation.[311]

[308] Tr. 79:24-80:10.
[309] Selzer Defs.' Mem. at 18, 19; Selzer Defs.' Reply at 26, 27, 28; Tr. 22:4-23:23, 75:3-76:19.
[310] The Press Defendants' briefs do not seek relief under rule 1.413(1).
[311] Iowa R. Civ. P. 1.413(1); Selzer Defs.' Reply at 26.

Two parts of that certification matter here. A filing must be well grounded in fact. It must also be warranted either by existing law or by a good faith argument for the extension, modification, or reversal of existing law. This case presents the second alternative.

The Court must directly address the Selzer Defendants' argument. They observe that an attorney who asks a court to change the law must acknowledge controlling precedent with candor and honesty while asserting reasons to modify or change it,[312] and that sanctions may be appropriate where an attorney has no authority to support a novel claim.[313] They further observe that they put the question to the Plaintiffs and received no answer.[314] The Resistance does not address the rule.

The Court nonetheless declines to find a violation because the Plaintiffs asked this Court to extend existing law. Count I asked the Court to read chapter 714H to reach the contents of a newspaper rather than a representation about merchandise offered for sale. Counts II and III asked the Court to recognize claims for fraudulent and negligent misrepresentation brought by persons who never dealt with the Defendants. Each request required the law to move. The Court has declined to move it, and has explained at length why. But the rule does not measure a filing by whether its argument prevails. It asks whether the argument was advanced in good faith as a request to extend, modify, or reverse the law.[315]

Two features of the briefing satisfy the Court that it was. The Plaintiffs identified the elements of each claim, offered a construction of the statutory text, and advanced affirmative positions on commercial speech, on foreseeability as a source of duty, and on res ipsa loquitur.

---

[312] *Barnhill v. Iowa Dist. Ct. for Polk Cnty.*, 765 N.W.2d 267, 279 (Iowa 2009); Selzer Defs.' Mem. at 18; Selzer Defs.' Reply at 26, 27.

[313] *Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 495 (Iowa 2009); Selzer Defs.' Mem. at 18.

[314] Selzer Defs.' Reply at 26, 27; Tr. 23:7-10, 76:2-8; Tr. 65:20-66:17.

[315] Iowa R. Civ. P. 1.413(1).

The Court rejected each, but each was an argument rather than a bare assertion. Beyond that, no Iowa appellate court has answered the questions the Plaintiffs raise. No Iowa decision holds that the contents of a newspaper can or cannot be consumer merchandise under chapter 714H, and none decides whether a pollster owes a duty of care to the candidates a poll measures. A litigant may ask a court to answer a question the appellate courts have not reached, and may lose, without exposing counsel to sanction.

The Court does not reach the separate contention that this action was interposed for an improper purpose.[316] That contention rests on matters outside the Petition, and a motion to dismiss is not the occasion to resolve it.

The request for an order to show cause is denied.

## VIII. CONCLUSION AND ORDER

The Motions to Dismiss are granted on two separate and independent grounds. First, the Iowa Poll and its reporting are fully protected political speech, and the Petition does not allege the elements that would place that speech within the fraud exception. The First Amendment bars Counts I, II, and III. Second, and independently, the Petition states no claim under Iowa law. Count I alleges no prohibited act in connection with the advertisement, sale, or lease of consumer merchandise, no ascertainable loss of money or property, and no reliance. Count II alleges no representation made to induce any Plaintiff to act and no act taken in reliance on the truth of the polls. Count III alleges no duty running from a pollster or a newspaper to a candidate. Either ground would require the same result on its own.

The dismissal is with prejudice. Iowa Rule of Civil Procedure 1.946 provides that all dismissals other than those governed by rule 1.943, and other than those for want of jurisdiction

[316] Selzer Defs.' Reply at 27, 28.

or improper venue, operate as adjudications on the merits unless the ruling specifies otherwise.[317] A dismissal for failure to state a claim is none of the excepted kinds. Neither ground of this ruling concerns the Court's power to hear the case. The holding that the speech is protected and the holding that the Petition omits elements each claim requires both go to the legal sufficiency of what is pleaded, and a ruling of that kind adjudicates the merits.[318]

**IT IS THEREFORE ORDERED**, the Motions to Dismiss filed by Defendants J. Ann Selzer and Selzer & Company and Defendants Des Moines Register and Tribune Company and Gannett Co., Inc. are GRANTED. Counts I, II, and III of the Petition are dismissed with prejudice.[319] The Plaintiffs' request to enjoin the publication of further polls is DENIED.[320] Defendants J. Ann Selzer and Selzer & Company's motion for an order to show cause under Iowa Rule of Civil Procedure 1.413(1) is DENIED.

Costs of this action are assessed to the Plaintiffs.

**IT IS SO ORDERED.**

[317] Iowa R. Civ. P. 1.946.

[318] *State ex rel. Iowa Dep't of Hum. Servs. v. Mundie*, 436 N.W.2d 60 (Iowa 1989); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 8 (Iowa 2005); s*ee Hane v. State*, 38 N.W.3d 202 (Iowa Ct. App. 2026).

[319] Press Defs.' Br. at 64; Press Defs.' Reply at 41; Selzer Defs.' Mem. at 33, 34.

[320] Pet. ¶ 127.

State of Iowa Courts

| **Case Number** | **Case Title** |
|---|---|
| CVCV069420 | PRESIDENT TRUMP ET AL VS J ANN SELZER ET AL |
| **Type:** | ORDER REGARDING DISMISSAL |

So Ordered

Scott J. Beattie, District Court Judge,
Fifth Judicial District of Iowa

Electronically signed on 2026-09-23 15:50:38