# EXHIBIT 3

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

**IN THE IOWA DISTRICT COURT FOR POLK COUNTY**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, an individual, U.S. REPRESENTATIVE MARIANNETTE MILLER-MEEKS, an individual, and FORMER STATE SENATOR BRADLEY ZAUN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>J. ANN SELZER, SELZER & COMPANY, DES MOINES REGISTER AND TRIBUNE COMPANY, and GANNETT CO., INC.,<br><br>Defendants. | Case No. CVCV069420<br><br>**DEFENDANTS J. ANN SELZER AND SELZER & COMPANY'S REPLY BRIEF** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. Dismissal is Required Under Iowa's Notice Pleading Standard. ..... 2

II. The First Amendment and the Iowa Constitution Bar Plaintiffs' Claims. ..... 6

A. Plaintiffs Fail to Address the Constitutional Barriers to Their Claims. ..... 7

B. Plaintiffs' Case is Built on Three Demonstrably False Propositions of Law. ..... 11

1. Election Polls and Reporting on Them Are Not "Commercial Speech." ..... 11

2. Election Polls are Fully Protected News and Political Commentary. ..... 14

3. The First Amendment Protects Against Civil Liability. ..... 16

III. Plaintiffs' Claims are Facially Deficient Under Iowa Law. ..... 18

A. Plaintiffs Have no Viable ICFA Claim Against Selzer. ..... 19

B. Plaintiffs Have no Viable Claim for Fraudulent Misrepresentation. ..... 21

C. Plaintiffs Have no Viable Claim for Negligent Misrepresentation. ..... 23

IV. Plaintiffs' Arguments Violate Iowa Rule of Civil Procedure 1.413(1). ..... 26

CONCLUSION ..... 28

CERTIFICATE OF SERVICE ..... 30

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

## TABLE OF AUTHORITIES

**Cases**

*281 Care Comm. v. Arneson*,
638 F.3d 621 (8th Cir. 2011)........ 8, 10, 18

*281 Care Comm. v. Arneson*,
766 F.3d 774 (8th Cir. 2014)........ 8, 18

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023)........ 13

*B&B Asphalt Co. v. T.S. McShane Co.*,
242 N.W.2d 279 (Iowa 1976)........ 22

*Banks v. Beckwith*,
762 N.W.2d 149 (Iowa 2009)........ 26

*Barkema v. Williams Pipeline Co.*,
666 N.W.2d 612 (Iowa 2003)........ 3

*Barnhill v. Iowa Dist. Ct. for Polk Cnty.*,
765 N.W.2d 267 (Iowa 2009)........ 26, 27

*Bawek v. Kawasaki Motors Corp., U.S.A.*,
313 N.W.2d 501 (Iowa 1981)........ 2, 6

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989)........ 12

*Below v. Skarr*,
569 N.W.2d 510 (Iowa 1997)........ 6

*Betz v. Mathisen*,
30 N.W.3d 240 (Iowa 2026)........ 5

*Blatty v. N.Y. Times Co.*,
728 P.2d 1177 (Cal. 1986)........ 9

*Bost v. Illinois State Board of Elections*,
607 U.S. 71 (2026)........ 20

*Brandt v. Weather Channel, Inc.*,
42 F. Supp. 2d 1344 (S.D. Fla. 1999)........ 19, 25

*Brunkhorst v. Iowa Pub. Emps. Ret. Sys.*,
No. 8-363/07-1340, 2008 Iowa App. LEXIS 1137 (Iowa Ct. App. Oct. 29, 2008)........ 3

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

*Cent. Hudson Gas & Electric Corp. v. Public Service Comm'n of N.Y.*,
447 U.S. 557 (1980) .......... 12

*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) .......... 7

*Cincinnati v. Discovery Network*,
507 U.S. 410 (1993) .......... 13

*City of Keene v. Cleaveland*,
118 A.3d 253 (N.H. 2015) .......... 5

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1983) .......... 14

*Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*,
412 U.S. 94 (1973) .......... 14

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 25

*Cousins v. Goodier*,
283 A.3d 1140 (Del. 2022) .......... 5

*Daily Herald, Co. v. Munro*,
838 F.2d 380 (9th Cir. 1988) .......... 15

*Davidson & Jones, Inc. v. New Hanover Cnty.*,
255 S.E.2d 580 (N.C. Ct. App. 1979) .......... 25, 26

*Des Moines Area Dairy Queen Store Operators & Owners, Inc. v. Wapello Dairies, Inc.*,
226 N.W.2d 9 (Iowa 1975) .......... 6

*Dier v. Peters*,
815 N.W.2d 1 (Iowa 2012) .......... 23

*Donald J. Trump for President, Inc. v. N.Y. Times Co.*,
No. 152099/2020 (N.Y. Sup. Ct. NY County March 9, 2021) .......... 17

*Donald J. Trump for President, Inc. v. WP Co. LLC,*
No. 20-626, 2023 WL 1765193 (D.D.C. Feb. 3, 2023) .......... 17

*FEC v. Ted Cruz for Senate*,
596 U.S. 289 (2022) .......... 20

*Fla. Bar v. Went For It, Inc.*,
515 U.S. 618 (1995) .......... 12

*Gibson v. ITT Hartford Ins. Co.*,
621 N.W.2d 388 (Iowa 2001) ........................................ 23

*Gutter v. Dow Jones, Inc.*,
490 N.E.2d 898 (Ohio 1986)........................................ 24, 25

*Harris v. Warner*,
527 P.3d 314 (Ariz. 2023)........................................ 5

*Haupt v. Miller*,
514 N.W.2d 905 (Iowa 1994) ........................................ 6

*Hawkeye By-Products, Inc. v. State*,
419 N.W.2d 410 (Iowa 1988) ........................................ 21

*Hutchinson v. Miller*,
797 F.2d 1279 (4th Cir. 1986)........................................ 20

*Ill. ex rel. Madigan v. Telemarketing Assocs., Inc*.,
538 U.S. 600 (2003) ........................................ 8, 11

*Infinite Energy, Inc. v. Pardue*,
713 S.E.2d 456 (Ga. Ct. App. 2011) ........................................ 4

*Jacobus v. Trump*,
51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017) ........................................ 5

*Joseph Burstyn, Inc. v. Wilson*,
343 U.S. 495 (1952)........................................ 14

*King v. State*,
818 N.W.2d 1 (Iowa 2012) ........................................ 3, 5

*Kingsway Cathedral v. Iowa Dep't of Transp.*,
711 N.W.2d 6 (Iowa 2006) ........................................ 2, 3

*Kulish v. W. Side Unlimited Corp.*,
545 N.W.2d 860 (Iowa 1996) ........................................ 6

*M.H. ex rel. Callahan v. State*,
385 N.W.2d 533 (Iowa 1986) ........................................ 6

*Manhart v. WESPAC Found., Inc.*,
No. 24-cv-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) ........................................ 7

*Mehmedovic v. Tyson Foods, Inc.*,
21 N.W.3d 412 (Iowa 2025) ........................................ 4, 21

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

*Mills v. Alabama*,
384 U.S. 214 (1966) ........ 15

*Mohsen v. Veridian Credit Union*,
733 F. Supp. 3d 754 (N.D. Iowa 2024) ........ 26

*N.Y. Times Co. v. Sullivan,*
376 U.S. 254 (1964) ........ 14, 16, 25

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958) ........ 17

*Ohralik v. Ohio State Bar Ass'n.*,
436 U.S. 447 (1978) ........ 12

*Olthaus v. Niesen*,
232 N.E.3d 932 (Ohio Ct. App. 2023) ........ 5

*Palleson v. Jewell Co-op. Elevator*,
219 N.W.2d 8 (Iowa 1974) ........ 26

*Parra v. Jackson*,
171 N.E.3d 452 (Ohio Ct. App. 2021) ........ 4

*Pitts v. Farm Bureau Life Ins. Co.*,
818 N.W.2d 91 (Iowa 2012) ........ 23

*Plagmann v. City of Davenport*,
165 N.W. 393 (Iowa 1917) ........ 21

*Postal Fin. Co. v. Langton*,
166 N.W.2d 806 (Iowa 1969) ........ 21

*Rees v. City of Shenandoah*,
682 N.W.2d 77 (Iowa 2004) ........ 3

*Sain v. Cedar Rapids Cmty. Sch. Dist.*,
626 N.W.2d 115 (Iowa 2001) ........ 23, 24

*Schmidt v. Mahoney*,
659 N.W.2d 552 (Iowa 2003) ........ 5

*Shumate v. Drake Univ.*,
846 N.W.2d 503 (Iowa 2014) ........ 2

*Smith v. California*,
361 U.S. 147 (1959) ........ 14

*Smith v. State*,
324 N.W.2d 299 (Iowa 1982) ........ 2

*Stancik v. CNBC*,
420 F. Supp. 2d 800 (N.D. Ohio 2006) ........ 18, 25

*Sw. Publ'g Co. v. Horsey*,
230 F.2d 319 (9th Cir. 1956) ........ 20

*Taylor v. McNichols*,
243 P.3d 642 (Idaho 2010) ........ 5

*Telescope Media Grp. v. Lucero*,
936 F.3d 740 (8th Cir. 2019) ........ 13, 14

*Terrace Hill Soc'y Found. v. Terrace Hill Comm'n*,
6 N.W.3d 290 (Iowa 2024) ........ 3

*Trobaugh v. Sondag*,
668 N.W.2d 577 (Iowa 2003) ........ 3

*Trump v. British Broad. Corp.*,
No. 1:25-cv-25894 (S.D. Fla. June 8, 2026) ........ 17

*Trump v. Cable News Network, Inc.*,
684 F. Supp. 3d 1269 (S.D. Fla. 2023) ........ 17

*Trump v. Clinton*,
161 F.4th 671 (11th Cir. 2025) ........ 17

*Trump v. Clinton*,
653 F. Supp. 3d 1198 (S.D. Fla. 2023) ........ 28

*Trump v. Dow Jones & Co., Inc.*,
No. 1:25-cv-23232, 2026 WL 1453673 (S.D. Fla. May 22, 2026) ........ 17

*Trump v. N.Y. Times*,
800 F. Supp. 3d 1297 (M.D. Fla. 2025) ........ 17

*Trump v. Trump*,
189 N.Y.S.3d 430 (N.Y. Sup. Ct. 2023) ........ 17

*Tumminello v. Bergen Evening Record, Inc.*,
454 F. Supp. 1156 (D.N.J. 1978) ........ 25

*Unertl v. Bezanson*,
414 N.W.2d 321 (Iowa 1987) ........ 6

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

*United States v. Alvarez*,
567 U.S. 709 (2012) ........ passim

*United States v. Nat'l Treasury Emps. Union*,
513 U.S. 454 (1995) ........ 14

*United States v. Stevens,*
559 U.S. 460 (2010) ........ 6, 7

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976) ........ 13

*Van Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*,
783 N.W.2d 684 (Iowa 2010) ........ 24

*W. Reserve Life Assur. Co. of Ohio v. Bratton*,
464 F. Supp. 2d 814 (N.D. Iowa 2006) ........ 23

*Wash. League for Increased Transparency & Ethics v. Fox News*,
No. 81512-1-I, 2021 WL 3910574 (Wash. Ct. App. Aug. 30, 2021) ........ 9

*Weizberg v. City of Des Moines*,
923 N.W.2d 200 (Iowa 2018) ........ 4

*White v. Harkrider*,
990 N.W.2d 647 (Iowa 2023) ........ 2, 3, 4, 23

*Winter v. G.P. Putnam's Sons*,
938 F.2d 1033 (9th Cir. 1991) ........ 15

*York v. Ohio State Highway Patrol*,
573 N.E.2d 1063 (1991) ........ 4

*Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*,
471 U.S. 626 (1985) ........ 12

**Statutes**

Iowa Code
§ 714H.2(4) ........ 19
§ 714H.3 ........ 19

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

**Rules**

Iowa R. Civ. P.
1.413(1) .......... 26, 28
1.421(1)(f) .......... 2

**Treatises**

Restatement (Second) of Torts (A.L.I. 1977)
§ 328D cmt. a .......... 26
§ 328D cmt. d .......... 26
§ 531 .......... 22
§ 538 .......... 22
§ 552 cmt. h .......... 24

WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS
§ 105 (4th ed. 1971) .......... 11, 22

**Other Authorities**

Kathy Kiely & Lyrissa Barnett Lidsky,
*Trump Lawsuits Seek to Muzzle Media, Posing Serious Threat to Free Press*, THE CONVERSATION (Jan. 12, 2026) .......... 17

SAMANTHA BARBAS,
ACTUAL MALICE: CIVIL RIGHTS AND FREEDOM OF THE PRESS IN *N.Y. TIMES V. SULLIVAN* (Univ. of Cal. Press 2023) .......... 17

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

## INTRODUCTION

Plaintiffs assert that Defendants "attempt to reframe and trivialize" their well-pleaded claims,[1] but that would be redundant. Plaintiffs' claims could not be more trivial on their own, as they are nothing more than political puffery. Yet Plaintiffs' abuse of the legal process to chase their baseless and bizarre conspiracy theories is anything but trivial. The Selzer Defendants made clear at the outset that this case is frivolous, brought only for a political purpose and to impose costs and burdens on parties the President perceives as his adversaries. As the Motion to Dismiss observed, Plaintiffs have never been able to locate a single case that supports their claims and predicted "that will still be true when this pleading cycle ends." D0063, Selzer Defs.' Br. Supp. Mot. to Dismiss at 2 (03/30/2026) ("Mot."). Plaintiffs' resistance vindicates that prediction.

It is now clear Plaintiffs' strategy is nothing more than an attempt to lower the legal bar and to skip right to discovery, thus imposing the costs and burdens that are the whole point of this exercise. *See* Opp. at 8–9, 12–13, 16–17, 19–22, 24–25, 27, 29–30, 32, 34, 36, 45, 50 (citing notice pleading standard twenty-eight times). In doing so, they misstate the Iowa standard for notice pleading, which calls for dismissal of legally deficient causes of action. Mot. 7–8. And the stakes at issue here are far from trivial: The sitting President of the United States is trying to reduce Iowa's motion to dismiss standard to a nullity so he can conduct invasive discovery of a major American newspaper and its news sources regarding their election coverage.

---

[1] D0085, Pls.' Br. in Res. to Defs.' Mot. to Dismiss at 1 (06/04/2026) ("Opp.").

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

## ARGUMENT

### I. Dismissal is Required Under Iowa's Notice Pleading Standard.

Plaintiffs' principal defense that the Selzer Defendants "conflat[e] federal standards for pleading with notice-pleading in our state," Opp. 30, misrepresents the Motion. Selzer cited Iowa Rule 1.421(1)(f) and Iowa cases dismissing claims at the pleading stage. Mot. at 7–8. Instead of meaningfully engaging with those authorities, Plaintiffs liberally use the phrase "notice pleading" as if its mere repetition were an argument. It isn't. Iowa notice pleading requires dismissal when, as here, the petition shows no legally viable claim.

The Iowa Supreme Court's formulation is straightforward: "A motion to dismiss challenges a petition's legal sufficiency," and dismissal is proper when the petition shows "the claim or claims are legally deficient and the plaintiff has no right of recovery as a matter of law." *White v. Harkrider*, 990 N.W.2d 647, 650 (Iowa 2023). This standard is deferential when it comes to factual detail, but it does not excuse the absence of a legal basis, which is the problem in this case.

In short:

- Notice pleading "does not create a duty where it would otherwise not exist." *Bawek v. Kawasaki Motors Corp., U.S.A.*, 313 N.W.2d 501, 502 (Iowa 1981).

- It does not create a private statutory remedy the legislature did not provide. *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507–08, 516 (Iowa 2014) (affirming dismissal because the statute granted access rights to service-dog trainers but did not create an implied private right of action).

- It does not invent an unrecognized tort. *Smith v. State*, 324 N.W.2d 299, 301–02 (Iowa 1982) (reversing denial of motion to dismiss because Iowa law does not recognize an independent tort for negligent investigation of a crime).

- And where the petition's own allegations show no legal right to relief, the court must dismiss those claims. *Kingsway Cathedral v. Iowa Dep't of Transp.*, 711 N.W.2d 6, 8 (Iowa 2006) (reversing denial of motions to dismiss because plaintiff alleged enough facts to show that as a matter of law it had no viable takings claim).

Plaintiffs ignore both the statutory standard and the analysis in these cases. *See* Mot. 7–8.

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

Instead, Plaintiffs cite a handful of cases for the unexceptional proposition that a petition need not plead detailed facts when it gives fair notice of a legally recognized claim. Opp. 8–9 (citing *Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004); *Terrace Hill Soc'y Found. v. Terrace Hill Comm'n*, 6 N.W.3d 290, 296 (Iowa 2024); *Brunkhorst v. Iowa Pub. Emps. Ret. Sys.*, No. 8-363/07-1340, 2008 Iowa App. LEXIS 1137, at *10 (Iowa Ct. App. Oct. 29, 2008)). But Plaintiffs' claims do not fail for lack of factual detail; they fail because they "alleged enough facts to enable us to conclude [they] failed to state such a claim." *Kingsway Cathedral*, 711 N.W.2d at 8.

Plaintiffs commit the same error in citing the "no conceivable set of facts" language. Opp. 8–9. They cite *Trobaugh* and *Barkema* for the rule that dismissal is proper only where no state of facts or no conceivable set of facts would entitle the plaintiff to relief. *Id.* (citing *Trobaugh v. Sondag*, 668 N.W.2d 577, 580 (Iowa 2003) and *Barkema v. Williams Pipeline Co.*, 666 N.W.2d 612, 614 (Iowa 2003)). But "conceivable … facts" must support the claims actually pled. *Barkema*, 666 N.W.2d at 614. In other words, notice pleading does not allow Iowa courts to create new causes of action to fit a plaintiff's grievance. *See King v. State*, 818 N.W.2d 1, 37 (Iowa 2012) (Cady, C.J., concurring specially) ("Reviewing courts do not, however, consider any conceivable allegations, only any conceivable facts that support the allegations made.").

Plaintiffs' discussion of *White* illustrates their superficial and misleading treatment of the notice pleading standard. They cite Justice McDermott's separate opinion for its criticism of motions to dismiss. Opp. 9 (citing *White*, 990 N.W.2d at 657 (McDermott, J., concurring in part and dissenting in part)). But the majority applied Iowa's pleading standard claim-by-claim, affirmed dismissal of the state constitutional tort claims, ***reversed*** the denial of dismissal on intentional infliction of emotional distress and trespass, and allowed only the assault claim to

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

proceed. *White*, 990 N.W.2d at 657. That result matters. *White* did not deny the defendants' motion to dismiss wholesale; it properly dismissed the claims that failed as a matter of law. But Plaintiffs ignore the precise aspects of that case that are binding on this Court.

*Weizberg* is no better for Plaintiffs. They cite it for the proposition that motions to dismiss should generally not be granted. Opp. 9; *Weizberg v. City of Des Moines*, 923 N.W.2d 200, 217 (Iowa 2018). The claims that survived there were constitutional challenges to an automated traffic-enforcement program where factual development could make the claim viable. *Weizberg*, 923 N.W.2d at 217–19. Yet the Court affirmed dismissal of the plaintiffs' preemption argument because it turned on the law, not on a missing factual detail. *Id.* at 219–20. Again, Plaintiffs cherry-pick cautionary dicta and skip the holding that undermines their point.[2]

Plaintiffs' out-of-state cases are even further afield. Plaintiffs rely on three cases for the proposition that a plaintiff need not prove malice or obtain discovery before surviving a motion to dismiss. Opp. 20–21. Those cases allow for factual development beyond the pleading stage but still require legally cognizable claims. They do not apply Iowa law, and they do not hold that a plaintiff may impose fraud liability for protected election polling without pleading a legally cognizable claim. *See Infinite Energy, Inc. v. Pardue*, 713 S.E.2d 456, 463 (Ga. Ct. App. 2011) (discussing notice pleading in context of defamation claim); *Parra v. Jackson*, 171 N.E.3d 452, 460 (Ohio Ct. App. 2021) (discussing notice pleading in context of wrongful death and related tort claims against public officials); *York v. Ohio State Highway Patrol*, 573 N.E.2d 1063, 1065 (Ohio 1991) (discussing notice pleading in context of tort claims against public officials).

[2] Plaintiffs also invoke *Mehmedovic* to argue that even claims with heightened proof requirements remain subject to Iowa's ordinary notice-pleading standard. Opp. 19 (citing *Mehmedovic v. Tyson Foods, Inc.*, 21 N.W.3d 412, 424, 426 (Iowa 2025)). That does not help them avoid dismissal, however, because Plaintiffs' claims fail *any* standard of review.

In fact, courts in notice-pleading jurisdictions routinely dismiss defamation and speech-based tort claims at the pleading stage based on First Amendment concerns when the legal defect appears on the face of the complaint. A survey of these cases reveals that courts in notice-pleading jurisdictions do not hesitate to dismiss claims early where the challenged speech is political commentary, protected opinion, not reasonably provable as false, or otherwise constitutionally protected.[3] Notably, the lead Plaintiff in this case regularly takes advantage of this as a defamation defendant. *See, e.g.*, *Jacobus v. Trump*, 51 N.Y.S.3d 330, 335, 342–43 (N.Y. Sup. Ct. 2017) (dismissing defamation claim under New York's liberal pleading standard because campaign-trail statements were loose, figurative, hyperbolic, and not susceptible of objective verification). Plaintiffs' suggestion that notice pleading makes dismissal unavailable until discovery is simply wishful thinking.

Iowa courts likewise are not shy about dismissing legally deficient claims before burdening Defendants with unnecessary discovery. *See, e.g.*, *Betz v. Mathisen*, 30 N.W.3d 240, 250 (Iowa 2026) (affirming dismissal of defamation claims on statute-of-limitations grounds); *King*, 818 N.W.2d at 31, 34–35 (affirming dismissal of constitutional and statutory education claims); *Schmidt v. Mahoney*, 659 N.W.2d 552, 556 (Iowa 2003) (affirming dismissal because physician

[3] *See, e.g.*, *Harris v. Warner*, 527 P.3d 314, 321–22 (Ariz. 2023) (reversing denial of motion to dismiss and directing dismissal with prejudice of defamation claim arising from political commentary because the challenged statements were either subjective criticism incapable of verification or protected political exaggeration); *Olthaus v. Niesen*, 232 N.E.3d 932, 943–44 (Ohio Ct. App. 2023) (affirming dismissal of defamation and related claims under Ohio's notice-pleading standard because the challenged statements were constitutionally protected opinion); *Cousins v. Goodier*, 283 A.3d 1140, 1143–44 (Del. 2022) (affirming dismissal under Delaware's liberal pleading standard where statements about a public controversy were not reasonably read to state or imply provably false defamatory facts); *City of Keene v. Cleaveland*, 118 A.3d 253, 260–61 (N.H. 2015) (affirming dismissal of speech-based tort claims under liberal pleading standard because the First Amendment protected the challenged protest activity); *Taylor v. McNichols*, 243 P.3d 642, 665–66 (Idaho 2010) (affirming dismissal under notice-pleading standard where the claims rested on privileged litigation communications).

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

owed no duty to injured third party); *Below v. Skarr*, 569 N.W.2d 510, 512 (Iowa 1997) (affirming dismissal because Iowa did not recognize the asserted common-law claim); *Kulish v. W. Side Unlimited Corp.*, 545 N.W.2d 860, 863 (Iowa 1996) (affirming dismissal because Iowa law did not recognize parents' claim for loss of consortium of an adult child); *Haupt v. Miller*, 514 N.W.2d 905, 911 (Iowa 1994) (affirming dismissal of negligent-misrepresentation claim because the petition did not allege facts showing defendants were in the business of supplying information); *Unertl v. Bezanson*, 414 N.W.2d 321, 324, 327 (Iowa 1987) (affirming dismissal because liberal pleading rules could not create a duty where none existed); *M.H. ex rel. Callahan v. State*, 385 N.W.2d 533, 538, 540 (Iowa 1986) (affirming dismissal of negligence claims because no common-law or statutory duty supported liability); *Bawek*, 313 N.W.2d at 502 (affirming dismissal because no common-law or statutory duty existed); *Des Moines Area Dairy Queen Store Operators & Owners, Inc. v. Wapello Dairies, Inc.*, 226 N.W.2d 9, 13 (Iowa 1975) (affirming dismissal where petition failed to allege facts necessary to state statutory or common-law claims).

In short, Plaintiffs' Petition does not fail because it lacks factual detail; it fails because the facts alleged simply do not line up with any cognizable causes of action.

## II. The First Amendment and the Iowa Constitution Bar Plaintiffs' Claims.

Plaintiffs also misrepresent the arguments in the Motion to Dismiss, asserting Defendants are "trying to hide behind a blanket First Amendment immunity defense created from whole cloth." Opp. 2. But the question is not one of "immunity"; it is whether Plaintiffs' "fraudulent news" claims fit within any recognized First Amendment exception. As explained in the Motion, speech is presumptively protected unless it falls in one of the specifically defined categories (*e.g.*, obscenity, child pornography, defamation, fraud, incitement, fighting words, and speech integral to criminal activity). *United States v. Stevens,* 559 U.S. 460, 468–70 (2010); *see* Mot. 8–21. Consequently, Plaintiffs' claims fail as a matter of law because the speech issue does not fit within

any unprotected category and cannot be dressed up as fraud. *See infra* Section II.A. Plaintiffs further claim that most of Defendants' arguments "go to the weight and sufficiency of the evidence supporting the claims," Opp. 1, but this, too, is false. The Selzer Defendants demonstrated why "false news" has never been a cognizable claim under the law. Mot. 9–15. Paradoxically, it is the Plaintiffs who try to rely on factual "evidence" to support their fictitious claims, but to no avail.[4]

### A. Plaintiffs Fail to Address the Constitutional Barriers to Their Claims.

The Plaintiffs do not seriously engage with the First Amendment and Article I, Section 7 issues in this case. The Selzer Defendants documented how our Nation's expressive freedoms are predicated on the principle that the government cannot be the arbiter of truth, Mot. 9–12, and that this is especially true for political discourse and election coverage. *Id*. at 12–13. It is black-letter law that the First Amendment presumptively protects speech in all but a few specified areas that are not subject to expansion by government actors or enterprising litigants. *Id*. at 14–15; *see also Stevens*, 559 U.S. at 472. As the Supreme Court recently reaffirmed, "[t]he First Amendment is no word game. And the rights it protects cannot be renamed away or their protections nullified by 'mere labels.'" *Chiles v. Salazar*, 146 S. Ct. 1010, 1023 (2026).

Yet Plaintiffs' entire case is predicated on relabeling the publication of an election poll as "fraud," Opp. 10–18, while insisting they are not required to plead the elements of fraud, *id*. at 34, 36. That is not how the Supreme Court and the Eighth Circuit see it. *See* Mot. 15–18. The Court

[4] Plaintiffs lean heavily on an op-ed written by James Pierson of the Manhattan Institute for their factual assertions, Opp. 3–4, but this says nothing about how their asserted facts—even if taken as true—could support any cognizable claim. And this is not the first case where reliance on a Manhattan Institute article has been found not to support a frivolous cause of action. *See Manhart v. WESPAC Found., Inc.*, No. 24-cv-08209, 2025 WL 2257408, at *15–16, *18 (N.D. Ill. Aug. 7, 2025) (granting motion to dismiss and awarding sanctions for bringing an action for an improper purpose that was not supported by existing law, or nonfrivolous arguments for extending or modifying the law), appeal docketed, No. 25-2382 (7th Cir. argued Apr. 9, 2026).

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

has explained that "[s]imply labeling an action one for 'fraud' … will not carry the day." *Ill. ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 617 (2003); *United States v. Alvarez*, 567 U.S. 709, 720–22 (2012) (declining to recognize a First Amendment exception for even knowingly false speech); *281 Care Comm. v. Arneson*, 638 F.3d 621, 634 n.2 (8th Cir. 2011) (*Arneson I*) (citing *Madigan*, 538 U.S. at 620) (noting the boundaries of "what is considered fraudulent speech" and holding that it does not include "all false speech, or even all knowingly false speech"); *281 Care Comm. v. Arneson*, 766 F.3d 774, 783 (8th Cir. 2014) (*Arneson II*) ("There is no free pass around the First Amendment.").

The Supreme Court has made clear that any attempt to bring a fraud claim without satisfying its essential elements "would support swift dismissal." *Madigan*, 538 U.S. at 617. Plaintiffs' argument that they need not prove their case "at the motion to dismiss stage" and that they instead need only assert fraud, Opp. 34, misses the point. This is not just a failure to plead essential elements, as Plaintiffs try to characterize it. *Id*. at 29. It is an attempt to conjure claims where the necessary elements *are entirely absent* even on the facts Plaintiffs allege. Among other things, the factual predicates essential to any fraud or misrepresentation claim—false representation of fact and a legal duty—simply do not exist here. Mot. 17–18, 20. There can be no "misrepresentation" where there has never been a "representation." The Selzer Defendants never communicated directly with any of the plaintiffs or solicited anything from them; they have no relationship, business or otherwise, with any of the Plaintiffs. *Id*. at 26–27, 29, 30–31. As the Selzer Defendants explained, the constitutional boundaries that fence off unprotected categories of speech are inextricably intertwined with the statutory or common law elements of any fraud claim. *Id*. at 17–18.

This very basic principle governs any attempt to impose liability on speech alleged to be constitutionally unprotected. For example, in *Blatty v. N.Y. Times Co.*, 728 P.2d 1177 (Cal. 1986), the California Supreme Court upheld dismissal of various claims (including trade libel) arising from an author's allegation the *Times* failed to include his novel on its best-seller list. *Blatty*, 728 P.2d at 1178. The court rejected Blatty's "creative pleading" and held that the federal and state constitutions "establish an absolute bar to liability." *Id.* at 1181, 1184. The reason was simple: The threshold requirement that a false statement be "of and concerning" plaintiff could never be established against a publication that did not mention the author or his book. *Id.* at 1182. It was not that the First Amendment "immunized" the *Times*; it was that the claims failed even to describe defamatory speech as the law defines it, along contours the Constitution requires. No amount of discovery can cure such a fundamental defect.

So it is here, where the Defendants have made no representations of any kind to the Plaintiffs and have entered no transactions with them. The essential elements that define fraud are missing. This is why *every court* that has confronted efforts to bring "fraud" claims in connection of news coverage has immediately dismissed them, recognizing them as an affront to the First Amendment. *See* Mot. 1 n.1 (collecting cases), 19; *see, e.g.*, *Wash. League for Increased Transparency & Ethics v. Fox News*, No. 81512-1-I, 2021 WL 3910574, at *4–5 (Wash. Ct. App. Aug. 30, 2021) ("[N]one of the limited exceptions to the First Amendment apply[.]"). Notably, the Plaintiffs do not address these cases at all.

Instead, Plaintiffs offer an out-of-context collection of one-liners from defamation and commercial speech cases to suggest false speech is not "immunized" by the First Amendment. Opp. 16. That is precisely the line of argument the Supreme Court *rejected* in *Alvarez*. Responding to the government's citation of the same cases that now appear in Plaintiffs' Resistance, the Court

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

explained that "isolated statements in some earlier decisions do not support the Government's submission that false statements, as a general rule, are beyond constitutional protection." *Alvarez*, 567 U.S. at 718–19. It emphasized that the Court "has never endorsed the categorical rule the Government advances: that false statements receive no First Amendment protection." *Id*. at 719; *see also Arneson I*, 638 F.3d at 635 ("Supreme Court precedent does not currently recognize knowingly false speech as a category of unprotected speech.").

The Supreme Court and the Eighth Circuit have explained why litigants cannot mix and match theories as Plaintiffs do here. *Alvarez* identified fraud as a different and unique category of unprotected speech because that exception is confined to false claims made to "secure moneys or other valuable considerations, [such as] offers of employment." 567 U.S. at 723; *see also id*. at 734 (Breyer, J., concurring) ("Fraud statutes … typically require proof of a misrepresentation that is material, upon which the victim relied, and which caused actual injury."). To expand the concept of fraud "absent any evidence that the speech was used to gain a material advantage" would unleash "a broad censorial power unprecedented in this Court's cases or in our constitutional tradition." *Id.* at 723; *see also Arneson I*, 638 F.3d at 634 n.2 (rejecting application of fraud principles "to all knowingly false speech" because "the Supreme Court has carefully limited the boundaries of what is considered fraudulent speech"). Expansively redefining fraud in the way Plaintiffs advocate here would cast a chilling effect that "the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom." *Alvarez*, 567 U.S. at 723.

Plaintiffs fail to cite *Arneson I* or *Arneson II* at all and pay only scant attention to *Alvarez*, devoting just one sentence to an attempt to distinguish it. Opp. 17. But this abbreviated treatment only illustrates their confusion. They claim they have "sustained actual damages" because of what

they call "Defendants' false, misleading, and deceptive conduct," *id.*, but even if the Court were to accept all Plaintiffs' fanciful allegations, they are not describing fraud. To qualify as fraud, the statement must be made by the defendant in the context of persuading the plaintiff to "part[] with money, or property of value, in reliance upon the defendant's representations." WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 105, at 684 (4th ed. 1971). *See* Mot. 29. Plaintiffs' claims instead boil down to assertions that false things were said to the general population and bad things happened to Plaintiffs as a result. Whatever that may be, it isn't fraud, and it cannot sustain any cause of action.[5]

**B. Plaintiffs' Case is Built on Three Demonstrably False Propositions of Law.**

Plaintiffs' claim that the poll at issue lacks constitutional protection rests on three false assumptions: (1) that the polls and the *Register*'s reports on them are commercial speech; (2) that election polling is not "news" protected by the First Amendment; and (3) that there is no government action here and therefore no constitutional problem. Opp. 10–18. These propositions are not just unsupported; they are not seriously debatable. And the few cases Plaintiffs *do* cite, when read in full, only undermine their argument.

**1. Election Polls and Reporting on Them Are Not "Commercial Speech."**

Plaintiffs' Resistance is littered with assertions that election polls are not "news" but are instead "for-profit *products* that were *paid for* by DMR and Gannett and created by Selzer and S&C in exchange for payment." *Id.* at 11 (overemphasis in original). Their argument is predicated

[5] Plaintiffs' treatment of *Madigan* is even more superficial, citing it only once for the unexceptional point that "the First Amendment does not shield fraud." Opp. 17 (quoting *Madigan*, 538 U.S. at 612). Plaintiffs omit the *Madigan* Court's admonitions that fraud has exacting pleading requirements that warrant "swift dismissal" if not met and that litigants cannot avoid First Amendment limits simply by alleging "fraud." *Madigan*, 538 U.S. at 617.

entirely on characterizing the polls (and the *Register*'s reporting on them) as "false commercial speech." *Id.* at 12–13. They describe Selzer's discussion of her findings in news interviews as "commercial promotional efforts." *Id.* at 14. Plaintiffs are so committed to this line of argument that they quote three times (in italics) a statement Selzer made in a Fox News interview that "the polling industry is predicated on getting people to pay money for their products." *Id.* at 11, 15, 38. But this is not the mic-drop moment Plaintiffs want it to be.

Their entire argument is premised on the false notion that because Selzer & Company and the *Register* are for-profit businesses, Plaintiffs' claims fall within the purview of consumer fraud "rather than constitutionally protected legitimate journalism or political opinion." *Id.* at 11. Plaintiffs cite no authority to support this obvious fallacy—for none exists—and the few cases they cite at page 13 of their brief merely attest to the existence of the commercial speech doctrine. *Id.* at 13. But as the case law makes crystal clear, "commercial speech" is not speech someone was paid to produce, as Plaintiffs vehemently assert. Instead, the commercial speech doctrine set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557 (1980), applies to *advertising*—speech that does no more than propose a commercial transaction. The cases cited in the Opposition clearly explain the distinction between profit-*motivated* speech and "commercial speech," but Plaintiffs omit these references entirely.[6] And Plaintiffs' errors are

[6] *See, e.g.*, *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989) ("[S]peech that *proposes* a commercial transaction … is what defines commercial speech" and not just "speech for profit.… Some of our most valued forms of fully protected speech are uttered for a profit."); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457–58 (1978) (distinguishing between regulation of in-person solicitation by lawyers and "political expression or an exercise of associational freedom"); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 634–35 (1995) ("This case … concerns pure commercial advertising[.]"); *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 637 (1985) ("[T]he speech at issue in this case [is] advertising pure and simple[.]") (all cited at Opp. 13).

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

not limited to sins of omission—they also lift sentence fragments from cases that stand for *the opposite* point for which they are cited.

For example, Plaintiffs quote part of a sentence from *Cincinnati v. Discovery Network,* 507 U.S. 410, 423 (1993), that "much of the material in ordinary newspapers is commercial speech," presumably to support their position that newspapers are, or can be, commercial speakers subject to fraud claims. Opp. 14. However, far from supporting their argument, the Supreme Court made that observation solely to explain why the commercial speech doctrine *did not apply*. *Discovery Network*, 507 U.S. at 426–28 ("the distinction Cincinnati has drawn has absolutely no bearing on the interests it has asserted"); *see also id.* at 420 ("speech does not lose its First Amendment protection because money is spent to project it") (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976)).

But the problem is not just that Plaintiffs lack any legal authority; it is that they aggressively ignore overwhelming and unanimous precedent to the contrary. The Supreme Court and the Eighth Circuit frequently reaffirm the basic concept that speakers do not "shed their First Amendment protections by employing the corporate form to disseminate their speech. This fact underlies our cases involving everything from movie producers to book publishers to newspapers." *303 Creative LLC v. Elenis*, 600 U.S. 570, 594 (2023). Rather, "commercial and corporate entities, including utility companies and newspapers, have received First Amendment protection" because they "contribute to the discussion, debate, and the dissemination of information and ideas that the First Amendment seeks to foster." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 751–52 (8th Cir.

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

2019) (citations omitted). Cases supporting this constitutional truism are almost too numerous to mention, and *there are no contrary holdings*.[7]

**2. Election Polls are Fully Protected News and Political Commentary.**

Plaintiffs' bald assertion that opinion polling during a presidential election is not "news," Opp. 11, is even more nonsensical. Like their other core premises, this claim is backed by zero authority, except this time, Plaintiffs don't even go through the motion of citing case law. Rather, they merely assert that the Iowa Poll was a "for-profit product[]" and that Defendants were "actively engaged in selling a *product* to consumers, not reporting the news or engaging in political speech." *Id.* (again, overemphasis in original). Of course, this merely restates the false claim that for-profit news organizations lack constitutional protection. Under Plaintiffs' theory, the First Amendment excludes news organizations if they pay opinion writers, expert analysts, or, as in this case, a well-regarded pollster to measure voter sentiment. This simply ignores that the First Amendment bars abridging freedom "of the press." U.S. Const. amend. I.

[7] *See, e.g.*, *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465, 470 (1995) (First Amendment protects federal employees' right to "seek compensation for their expressive activities in their capacity as citizens" as well as "the public's right to read and hear what the employees [produce]"); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n.5 (1983) ("[T]he degree of First Amendment protection is not diminished merely because the newspaper or speech is sold rather than given away."); *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 117 (1973) ("The power of a privately owned newspaper to advance its own political, social, and economic views is bounded by only two factors: first, the acceptance of a sufficient number of readers—and hence advertisers—to assure financial success; and, second, the journalistic integrity of its editors and publishers."); *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 266 (1964) ("That the Times was paid for publishing the advertisement is immaterial in this connection as is the fact that newspapers and books are sold."); *Smith v. California*, 361 U.S. 147, 150 (1959) ("[T]he free publication and dissemination of books and other forms of the printed word furnish very familiar applications of these constitutionally protected freedoms. It is of course no matter that the dissemination takes place under commercial auspices."); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment.").

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

Plaintiffs' labelling the poll a "product" changes nothing and has no bearing on its status as news. Courts have rightly been vigilant against efforts like this to use creative pleading to avoid First Amendment scrutiny. For example, in *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991), the Ninth Circuit held that the publisher of *The Encyclopedia of Mushrooms* could not be held liable for false statements in the book when purchasers became critically ill after ingesting poison mushrooms in reliance on its representations. The court rejected the plaintiffs' various theories—including "products liability, breach of warranty, negligence, negligent misrepresentation, and false representation[]"—and explained that characterizing a book as a product "do[es] not take into consideration the unique characteristics of ideas and expression." *Id.* It observed that no other court "has chosen the path to which the plaintiffs point," *id.* at 1036; *see also id.* at 1036 n.6 (collecting cases), and concluded that the First Amendment precluded such an approach, *id.* at 1037; *see also id*. at 1037 n.8 (collecting cases). As the court put it, a "book containing Shakespeare's sonnets consists of two parts, the material and the print therein, and the ideas and expression thereof. The first may be a product, but the second is not." *Id.* at 1034.

The Selzer Defendants established that the poll and its publication lie in the heartland of what the First Amendment protects. Mot. 12–13. *See Mills v. Alabama*, 384 U.S. 214, 219 (1966) ("The Constitution specifically selected the press, which includes not only newspapers, books, and magazines, but also humble leaflets and circulars … to play an important role in the discussion of public affairs."); *Daily Herald, Co. v. Munro*, 838 F.2d 380, 384 (9th Cir. 1988) (election polling is "speech protected by the First Amendment" both because it "requires a discussion between pollster and voter" and the resulting poll itself "is speech"). Plaintiffs' bare assertions to the contrary carry no weight.

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

### 3. The First Amendment Protects Against Civil Liability.

Finally, Plaintiffs assert the First Amendment does not bar their claims by asserting "there is no government action here at all, as the litigation is brought by Plaintiffs who are private parties." Opp. 14;[8] *see also id*. at 10 ("this case has nothing to do with a government attempt to chill private speech"); *id.* at 11 ("Plaintiffs have brought no claims relating to government suppression of political speech."); *id.* at 12 (this case is not "fueled by a government attempt to engage in suppression of the free press"). Once again, without a whiff of authority, Plaintiffs try to wave away decades of well-established law. And they again ignore the case law Defendants cite holding that the First Amendment protects against private civil actions. Mot. 11–12.

Plaintiffs' "no government action here" claim astoundingly appears on the same page of their brief, Opp. 12, that cites *New York Times v. Sullivan*, in which the Supreme Court held the opposite: that the conduct of state civil courts implicates the First Amendment. 376 U.S. at 277 ("What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law[.]"). *Sullivan* is particularly apt here, as that case involved attempts to use defamation law and private lawsuits as a tool to cripple the press because of its coverage of the civil rights movement:

> Sullivan's lawsuit was one of a string of libel lawsuits brought by Southern segregationist officials against Northern media outlets in a massive regional vendetta intended to intimidate them and to prevent them from reporting on the civil rights movement. … By the end of 1961, the Times confronted over $6 million in potential libel judgments and the possibility of bankruptcy. The newspaper pulled its reporters out of Alabama to avoid further libel trouble. By 1964, CBS and the Associated Press, among other media companies, faced over $288 million in damages in libel cases brought by segregationist officials.

[8] One of whom happens to be the sitting President of the United States.

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

*See* SAMANTHA BARBAS, ACTUAL MALICE: CIVIL RIGHTS AND FREEDOM OF THE PRESS IN *N.Y. TIMES V. SULLIVAN* 2 (Univ. of Cal. Press 2023). The President has long used the same playbook, but the First Amendment protections articulated in *Sullivan* have been instrumental in blunting his long-running personal vendetta against the press.[9]

This case is just a variation on the same strategy, with the difference being that defamation at least is a well-established tort. Here, the First Amendment issues are even more pressing because Plaintiffs are trying to manufacture unprecedented civil law claims (alleging fraud where its essential elements are missing) to penalize election coverage they dislike.[10] Plaintiffs insist there

[9] *See, e.g., Trump v. Dow Jones & Co., Inc.*, No. 1:25-cv-23232, 2026 WL 1453673 (S.D. Fla. May 22, 2026) (dismissing $10 billion defamation suit over alleged Epstein birthday letter); *Trump v. N.Y. Times*, 800 F. Supp. 3d 1297 (M.D. Fla. 2025) (dismissing $15 billion defamation suit claiming the newspaper served as a "mouthpiece" for Democrats); Order to Show Cause, *Trump v. British Broad. Corp.*, No. 1:25-cv-25894 (S.D. Fla. June 8, 2026), ECF No. 69 (order to show cause why $10 billion defamation claim should not be dismissed and attorneys sanctioned); *Trump v. Clinton*, 161 F.4th 671 (11th Cir. 2025) (affirming dismissal of "racketeering" claims that defendants had promoted a "false narrative" about Trump and upholding award of sanctions); *Trump v. Trump*, 189 N.Y.S.3d 430, 434–36 (N.Y. Sup. Ct. 2023) (dismissing $100 million defamation claim over coverage of Trump's tax returns and ordering plaintiff to pay fees because suit lacked "a substantial basis in law"); *Trump v. Cable News Network, Inc*., 684 F. Supp. 3d 1269 (S.D. Fla. 2023) (dismissing $500 million defamation claim over reports that Trump engaged in "big lie" tactics); *Donald J. Trump for President, Inc. v. N.Y. Times Co*., No. 152099/2020 (N.Y. Sup. Ct. NY County March 9, 2021) (dismissing defamation claim based on op-ed column); *Donald J. Trump for President, Inc. v. WP Co. LLC,* No. 20-626, 2023 WL 1765193 (D.D.C. Feb. 3, 2023) (dismissing defamation claims over op-ed columns). The President "has been involved in more than 4,000 lawsuits" over the course of his life, and when it comes to suing the press, he "appears to use lawsuits as a strategic weapon designed to silence his enemies and critics—who sometimes seem to be one and the same in his eyes." Kathy Kiely & Lyrissa Barnett Lidsky, *Trump Lawsuits Seek to Muzzle Media, Posing Serious Threat to Free Press*, THE CONVERSATION (Jan. 12, 2026), https://theconversation.com/trump-lawsuits-seek-to-muzzle-media-posing-serious-threat-to-free-press-272850.

[10] This is another parallel to the campaigns to suppress speech that led to *Sullivan*. In addition to libel actions, local officials also "trumped up charges" that civil rights organizations failed to comply with state business laws. BARBAS, *supra*, at 43. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958) ("It is not of moment that the State has here acted solely through its judicial branch, for whether legislative or judicial, it is still the application of state power which we are asked to scrutinize.").

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

is nothing to see here, and that their efforts do not even raise any First Amendment question. Opp. 10–12, 14. But this is the very reason the Eighth Circuit refused to import fraud liability into a different context in *Arneson*: doing so would open "a Pandora's box to disingenuous politicking." *Arneson II*, 766 F.3d at 796; *see also Arneson I*, 638 F.3d at 634 n.2 ("To the extent that defendants also argue in favor of application of fraud principles to all knowingly false speech, we reject the argument, noting the Supreme Court has carefully limited the boundaries of what is considered fraudulent speech."). Stretching the concept of fraud as Plaintiffs advocate would unleash "a broad censorial power unprecedented in this Court's cases or in our constitutional tradition." *Alvarez*, 567 U.S. at 723.

**III. Plaintiffs' Claims are Facially Deficient Under Iowa Law.**

Plaintiffs' claims are also fatally deficient under state law. No factual development can change the reality that Iowa tort law does not allow recovery under the theories Plaintiffs plead. Plaintiffs' theory of the law, if accepted, would provide losing sports bettors a cause of action against experts on ESPN whose predictions they relied on to place wagers. And it would provide farmers a cause of action against the local news meteorologist whose forecast they relied on to plant crops after the predicted final freeze of winter.[11]

Every court to consider claims like those offered here has dismissed them on the pleadings—and for good reason. There is nothing discovery could unearth which would create a legal duty for news or sports commentators to "get it right" for the viewing public. *See, e.g.*, *Stancik v. CNBC*, 420 F. Supp. 2d 800, 808–09 (N.D. Ohio 2006) (dismissing negligence claim against

---

[11] Plaintiffs' response to Selzer's standing argument does not add any detail about a personal, *legally cognizable* injury suffered by Plaintiffs; it only argues that the Petition's use of "including" adequately pleads damages. Opp. 23–24. But those vague allegations about damages still do not save the Plaintiffs from dismissal because all Plaintiffs' claims are legally deficient.

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

CNBC on the pleadings because no legal duty existed for host Jim Cramer to render accurate financial analysis and holding "an appeal from this decision could not be taken in good faith"); *Brandt v. Weather Channel, Inc.*, 42 F. Supp. 2d 1344, 1345–46 (S.D. Fla. 1999) (dismissing tort claims against Weather Channel on the pleadings, holding it owed no legal duty to viewers who alleged they "relied" on the network's forecasts, such that the plaintiffs "cannot sustain a cause of action against this Defendant under any theory"), *aff'd*, 204 F.3d 1123 (11th Cir. 1999)). So too, here.

**A. Plaintiffs Have no Viable ICFA Claim Against Selzer.**

The court must dismiss Plaintiffs' ICFA claim against Selzer because it falls outside the plain text of the statute. Under the ICFA, a defendant's asserted "deception" or "fraud" must be "in connection with the advertisement, sale, or lease of consumer merchandise," defined as "merchandise offered for sale or lease, or sold or leased, primarily for personal, family, or household purposes." Iowa Code §§ 714H.2(4), 714H.3. As Selzer's Motion explained, Mot. 26–27, a comprehensive political opinion poll independently commissioned by a media outlet and *not sold to consumers* is not "consumer merchandise" like a bar of soap or lawnmower. Plaintiffs can't buy anything from Selzer, and don't allege otherwise.

In response, Plaintiffs attempt a bait-and-switch, now pointing to the *Register* as the relevant "consumer merchandise" for their ICFA claim against Selzer and arguing Selzer's poll was "in connection" with sale of the paper. Opp. 30–32. But Selzer's poll is not a material representation *about* the *Register*, it is part of the *contents* of the *Register*. *See supra* 14–15. A newspaper's contents are not representations about the newspaper. Advertisements for the paper are. Warranties are. But Plaintiffs do not allege Selzer made representations *about* the newspaper.

Plaintiffs' remaining arguments fare no better. On damages, Selzer's brief explained that because Plaintiffs filed this suit in their individual capacities, they are precluded from claiming

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

"damage" to their campaigns. Mot. 22 ("[A] campaign is 'a legal entity distinct from the candidate.'" (quoting *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 294 (2022)). Plaintiffs misrepresent both cases offered in response. They say *Cruz* held that financial damage to a campaign gives equal rise to a claim for damage by the candidate. It did not. *Cruz* addressed a First Amendment challenge to a federal limit of $250,000 for a candidate's committee repaying a pre-election loan from the candidate if the repayment is beyond 20 days after the election. 596 U.S. at 293–94. The Court held Senator Ted Cruz, who loaned his committee $260,000 prior to the election, had standing to challenge the limit because, absent relief, Senator Cruz personally would be out $10,000. *Id.* at 295–96. Plaintiffs allege nothing remotely similar here. The other case Plaintiffs rely on, *Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026), provides even less support. First, Plaintiffs fail to inform this Court that the portion of *Bost* they cite is from the dissent. *See* Opp. 25 (citing *Bost*, 607 U.S. at 95 (Jackson, J., dissenting)). And even then, the passage from the dissent merely recites *Cruz*'s holding. *Bost*, 607 U.S. at 95 (Jackson, J., dissenting).

Plaintiffs' damages theory boils down to an assertion that Selzer's poll affected how Iowans viewed them and how they voted. But "courts do not sit to award post-election damages to defeated candidates." *Hutchinson v. Miller*, 797 F.2d 1279, 1287 (4th Cir. 1986). That is because "[t]here may be not less than a thousand factors which enter into the vagaries of an election," and making damages for the "loss of an election" inherently "speculative and conjectural." *Sw. Publ'g Co. v. Horsey*, 230 F.2d 319, 322–23 (9th Cir. 1956). This is even more true where candidates *won* their elections, as here. Based on the plain text of the ICFA and under basic principles of tort law, the Court must dismiss Plaintiffs' statutory fraud claim.

### B. Plaintiffs Have no Viable Claim for Fraudulent Misrepresentation.

Plaintiffs falsely insist "there are no" Iowa cases even "addressing the viability of a motion to dismiss" a fraud claim on the pleadings. Opp. 34. But no less than the Iowa Supreme Court has sustained dismissal of fraud claims on the pleadings when, as here, a plaintiff claims "fraud," but their allegations do not amount to fraud. Affirming such a dismissal, the Iowa Supreme Court explained that "to call a thing a 'fraud,' without a statement of facts constituting fraud, is not an issuable allegation." *Postal Fin. Co. v. Langton*, 166 N.W.2d 806, 808 (Iowa 1969) (quoting *Plagmann v. City of Davenport*, 165 N.W. 393, 394 (Iowa 1917)). That is because "[f]raud … has reference to conduct, words, or representations which partake in some material degree of artifice or deception employed to deceive, cheat, or circumvent another." *Plagmann*, 165 N.W. at 394.[12] In *Plagmann*, the court explained that "there is not an allegation in the entire petition which in any proper or legal sense amounts to a charge of fraud." *Id.*[13]

Here, as in *Postal Finance* and *Plagmann*, Plaintiffs have "call[ed] a thing a 'fraud' without a statement of facts constituting fraud." *Postal Finance*, 166 N.W.2d at 808. The "representations" Plaintiffs purport to rely on are the findings of Selzer's poll, but that has nothing to do with fraud. The "representation" element pertains to a statement made to induce another into entering a

---

[12] *Plagmann*, unlike *Postal Finance*, occurred post-trial rather than on the pleadings. *See Plagmann*, 165 N.W. at 394. The *Postal Finance* court, however, cited *Plagmann*'s critique of the deficiency of the complaint in that action as support for its decision to affirm dismissal of a fraud claim at the pleadings stage. *Postal Finance*, 166 N.W.2d at 808.

[13] The Iowa Supreme Court continues to sustain dismissals of fraud claims on the pleadings when the claim is legally unsustainable. *See Mehmedovic v. Tyson Foods, Inc.*, 21 N.W.3d 412, 426 (Iowa 2025) (affirming dismissal on the pleadings of employee's fraudulent misrepresentation claim against employer arising out of a workplace injury, holding Iowa's workers compensation statute did not "permit[] a plaintiff to pursue an intentional tort claim for work-related injuries against an employer"); *see also Hawkeye By-Products, Inc. v. State*, 419 N.W.2d 410, 411–12 (Iowa 1988) (holding trial court correctly dismissed fraudulent misrepresentation claim against state employee on the pleadings because sovereign immunity barred the claim as a matter of law).

transaction, such as a false statement made by a seller to a buyer. *See* WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 105, at 684 (4th ed. 1971); *see also Alvarez*, 567 U.S. at 722–23 (distinguishing false statements generally from fraud, which is designed to "secure moneys or other valuable considerations, [like] offers of employment"). Yet Plaintiffs point to no representations by Selzer for the purpose of inducing *anyone* (much less *Plaintiffs*) into a purchase.

Plaintiffs also botch the elements of materiality, scienter, and intent to deceive. Materiality refers to whether a defendant made a false representation about a sufficiently critical aspect of a transaction that affected the plaintiff's decision about whether to proceed with the contemplated transaction. *See* Restatement (Second) of Torts § 538 (A.L.I. 1977). Same with scienter. A plaintiff must establish that the defendant not only made a knowingly false material statement but did so while making a representation to plaintiff about a contemplated transaction. *See* Restatement (Second) of Torts § 531 ("One who makes a fraudulent misrepresentation is subject to liability … for pecuniary loss suffered by [plaintiff] through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced."). Likewise with intent to deceive. The plaintiff must show not just that the defendant made false representation with knowledge of its falsity, but did so in the context of attempting to deceive a plaintiff into entering into a transaction. *See B&B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976) ("The element of intent to deceive is closely related" to scienter and "is ordinarily established from the same evidence which proves the element of scienter."). On all three elements, Plaintiffs cut out the transaction-inducement element of fraud—the *sine qua non* ingredient that makes fraud a cognizable cause of action—in hope the Court does not notice the misdirection.

Plaintiffs then take issue with the case the Selzer Defendants cited for the elements of fraudulent misrepresentation, insisting the case "was decided post-trial." Opp. 34 (citing *Gibson*

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

*v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001)). True, but irrelevant. Claims have elements at every stage of litigation. It would be impossible to assess whether a claim is "legally deficient" *without* reference to the claim's elements. *White*, 990 N.W.2d at 650. For example, in *Dier v. Peters*, the Iowa Supreme Court assessed a trial court's dismissal of a fraudulent misrepresentation claim by walking through each of the eight elements and discussing whether the plaintiff alleged sufficient facts meeting each element. 815 N.W.2d 1, 8–10 (Iowa 2012). Plaintiffs here, like in *Postal Finance*, have called their set of allegations "fraud" despite the fact their allegations do not amount to fraud. Here, as there, the Court should dismiss the claim on the pleadings.

**C. Plaintiffs Have no Viable Claim for Negligent Misrepresentation.**

Plaintiffs' negligent misrepresentation claim also fails because Selzer had no legal duty to supply them with information. Under Iowa law, "providing false information is not enough to sustain a negligent misrepresentation claim." *W. Reserve Life Assur. Co. of Ohio v. Bratton*, 464 F. Supp. 2d 814, 841 (N.D. Iowa 2006). Instead, there must be a "special relationship" between the plaintiff and defendant such that the defendant assumed a legal duty to supply the plaintiff with accurate information. *Id.* (citing *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 124–25 (Iowa 2001)). That is absent here. Selzer has *no* relationship with Plaintiffs, let alone one that would trigger a special duty under Iowa law.

The cases Plaintiffs cite hold that when a party hires an expert to supply information, or there is otherwise a preexisting legal duty between the expert and the recipient, that expert can be liable to the one who engaged them if the performance of those duties falls below the standard of care. *See Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 111–12 (Iowa 2012) (noting Iowa has adopted a "more restricted view of liability" for negligent misrepresentation and explaining "[w]e have found accountants, appraisers, school guidance counselors and investment brokers all

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

fall within this class of potential defendants.") (collecting cases). Plaintiffs have not explained, and provide no law to support, their position that newspaper readers and television watchers are in a "special relationship" with the outlet (much less with its news sources).

Plaintiffs' Resistance correctly notes that under Iowa law "those liable are only those who supply information in an advisory capacity and are manifestly aware of how the information will be used and intend to supply it for that purpose." Opp. 37 (quoting *Van Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 691 (Iowa 2010)). But they ignore their own statement of the law and never explain how Selzer "supplied information" to them "in an advisory capacity." Selzer had no contract with Plaintiffs, express or implied, and Plaintiffs do not argue otherwise.

Plaintiffs argue "Defendants were acting in their professional capacity when they prepared and published the Iowa Poll." Opp. 38. But the pertinent question is whether Selzer had a professional relationship and a legal duty to supply *Plaintiffs* with information. *See* Restatement (Second) of Torts § 552 cmt. h (liability for negligent misrepresentation exists only as "to those persons for whose benefit and guidance it is supplied"); *Sain*, 626 N.W.2d at 123 (Iowa "continue[s] to utilize the Restatement (Second) of Torts section 552 to help define the tort."). She did not, and Plaintiffs offer no authority creating a legal duty between a media outlet and its readers, or with an independent pollster and the politicians whose public support the pollster measures. A newspaper reader "does not fall within a special limited class (or group) of foreseeable persons" that could maintain a negligent misrepresentation claim because "a contrary result would in effect extend liability to all the world." *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986) (applying Restatement (Second) of Torts § 552).

In short, Plaintiffs are asking the Court to hold that consumers of news should have a cause of action against news providers that get a story wrong through negligence. But that request is squarely foreclosed by *New York Times Co. v. Sullivan*, 376 U.S. at 287–88 (evidence against newspaper supporting "at most a finding of negligence" was "constitutionally insufficient to show the recklessness … required for a finding of actual malice"); *see also Counterman v. Colorado*, 600 U.S. 66, 79 (2023) (negligence standard is insufficient to impose liability on speech). Moreover, as *Gutter* explained, "even assuming that … publication without confirmation constituted recklessness—a doubtful proposition itself—plaintiff may still not recover because, under traditional tort principles, he was not one to whom the defendants owed any particular duty of care." 490 N.E.2d at 901 (quoting *Tumminello v. Bergen Evening Record, Inc.*, 454 F. Supp. 1156, 1159–60 (D.N.J. 1978)).

Plaintiffs then shift to a new theory for negligent misrepresentation, arguing Selzer negligently failed to prevent the poll from "leaking." But there are several problems with this. Chiefly, Selzer owed no legal duty to Plaintiffs to not "leak" the poll; it was *Selzer's poll*, and Plaintiffs do not allege Selzer had any contractual or legal duty to Plaintiffs to keep the results a secret. Second, the theory fails basic logic: Plaintiffs fail to explain how they could have suffered legal harm from a poll *intended* for public release "leaking." And third, though Plaintiffs argue "a complete binding contract between the parties is not a prerequisite to a duty to use due care," Opp. 40 (quoting *Davidson & Jones, Inc. v. New Hanover Cnty.*, 255 S.E.2d 580, 584 (N.C. Ct. App. 1979)), there must be *some* relationship between the parties (for example, quasi-contract) for a duty to exist, and there is none here. *See, e.g.*, *Brandt*, 42 F. Supp. 2d at 1345–46 (Weather Channel owes no duty to viewers); *Stancik*, 420 F. Supp. 2d at 808 (holding same for CNBC). Most telling is that Plaintiffs' only proffered cases are decisions imposing a duty on an "architect, in the

performance *of his contract*" and "a party collecting private data *from its customers*." Opp. 40 (quoting *Davidson & Jones*, 255 S.E.2d at 584 and *Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 763 (N.D. Iowa 2024)). That paucity of support shows just how far into left field Plaintiffs' theory strays.

Nor may Plaintiffs create a duty with Selzer by invoking *res ipsa loquitur*. This narrow doctrine allows a factfinder to infer a breached legal duty when an injury happens which (1) "was caused by an instrumentality under the exclusive control and management of the defendant," and (2) ordinarily would not occur "if reasonable care had been used." *Banks v. Beckwith*, 762 N.W.2d 149, 152 (Iowa 2009). Medical instruments left inside surgery patients and barrels falling on building occupants are classic examples. *See* Restatement (Second) of Torts § 328D cmt. a (barrels); *id.* § 328D cmt. d (surgical sponges). But *res ipsa loquitur* does not *create* a legal duty, it is simply a method of establishing a breach of an existing duty. *See Palleson v. Jewell Co-op. Elevator*, 219 N.W.2d 8, 13 (Iowa 1974) ("The doctrine of *res ipsa loquitur* is only a rule of evidence, not of substantive tort law."). Again, no duty exists here.

## IV. Plaintiffs' Arguments Violate Iowa Rule of Civil Procedure 1.413(1).

Plaintiffs' counsel have failed to explain how this case is not an abuse of the system. As the Selzer Defendants observed, lawyers must acknowledge controlling precedent and eschew frivolous arguments. *Barnhill v. Iowa Dist. Ct. for Polk Cnty.*, 765 N.W.2d 267, 279 (Iowa 2009). Mot. 18–19. Specifically, Iowa Rule of Civil Procedure 1.413(1) provides in relevant part:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation.

Now that this pleading cycle is complete, it is clear that this requirement has been violated.

Notwithstanding the latitude of notice pleading and the space lawyers must have to advance creative arguments, there is a corollary obligation to understand existing law and articulate why change is warranted. *Barnhill*, 765 N.W.2d at 279 ("[T]he attorney must acknowledge controlling precedent with 'candor and honesty' while asserting reasons to modify or change existing law."). Plaintiffs' Resistance fails to grapple with binding law and does not articulate any reason why the law should change. Nor can Plaintiffs explain bringing state law claims against Selzer, with whom they have no business relationship of any kind. Selzer challenged Plaintiffs to explain why this case should not be considered frivolous, Mot. 18, but received no response.

But the reasons this case is frivolous go way beyond this latest failure to respond. This case was entirely baseless from its inception, brought by a serial abuser of the judicial process.[14] Beyond past instances of abuse, this one in particular is frivolous because Plaintiffs presented a theory of liability that has never been accepted by any court in any jurisdiction.[15] It is frivolous because Plaintiffs have failed to either acknowledge existing law or propose any coherent theory of liability.[16] And it is frivolous because of the way Plaintiffs have dealt with precedent—ignoring key cases altogether and cherry-picking sentence fragments from others while mischaracterizing their holdings.[17] These lapses cannot be excused as the kind of forgivable oversight that can happen

[14] Mot. 1–2; *see* D0050, Mem. Supp. Renewed Mot. Stay at 1322 (01/06/2026) (collecting cases), *see supra* n.9.

[15] Mot. 1 n.1 (collecting cases), *see supra* at 6–17.

[16] Mot. 13–18; *see supra* at 6–17.

[17] *See supra* at 6–10 (failure to address dismissal of "fraudulent news" cases); *id*. at 10–11 (failure to address *Arneson I* and *II*); *id*. at 11–13 (mischaracterizing holdings in commercial speech cases); *id*. at 15–17 (ignoring central holding in *Sullivan* that the First Amendment limits private civil actions).

in fast-paced litigation: Plaintiffs have advanced these claims for more than a year and a half, yet have come no closer to finding any support for them in the multiple rounds of briefing.

Worse, Plaintiffs' conduct in this case runs contrary to the usual course of litigation, where arguments evolve and become more sophisticated as advocates respond to one another. Not here: After Plaintiffs were confronted in their federal case with overwhelming authority that speech for-profit is not "commercial speech" (the central pillar of all their false claims), they made no changes to their argument *at all* and filed essentially the same resistance brief as over a year ago.[18] At least since April 2025, when the Selzer Defendants filed their reply brief in the federal case, Plaintiffs have been fully aware that unanimous case law rejects their claims about what is—or is not—"commercial speech." Their refusal to engage on this issue is a red flag that this case was not brought for a legitimate purpose. *See, e.g.*, *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1210 (S.D. Fla. 2023), *aff'd*, 161 F.4th 671 (11th Cir. 2025) (President Trump is "a prolific and sophisticated litigant who is repeatedly using the courts to seek revenge on political adversaries.").

This Court should order Plaintiffs to show cause why they should not be found in violation of Iowa Rule of Civil Procedure 1.413(1).

## CONCLUSION

Plaintiffs' claims are not just wrong—they are ridiculous. The only fraud in this case is Plaintiffs' attempted fraud on the court.

Dated: June 27, 2026

Respectfully Submitted,

/s/ *Robert Corn-Revere* .
Robert Corn-Revere*†
(DC Bar No. 375415)

[18] *Compare* Pl.'s Mem. of Law in Opp'n to Selzer Defs.' Mot. to Dismiss, *Trump v. Selzer*, No. 4:24-cv-449, ECF 105 (S.D. Iowa August 29, 2025) (attached as Exhibit 1); Selzer Defs.' Reply Br. Supp. Mot. to Dismiss, *Trump v. Selzer*, No. 4:24-cv-449, ECF 109 (S.D. Iowa September 2, 2025) (attached as Exhibit 2).

E-FILED 2026 JUN 27 3:51 PM POLK - CLERK OF DISTRICT COURT

Conor T. Fitzpatrick*
(Mich. Bar No. P78981)
**FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION (FIRE)**
700 Pennsylvania Ave., SE; Suite 340
Washington, DC 20003
(215) 717-3473
bob.corn-revere@fire.org
conor.fitzpatrick@fire.org

Greg Greubel
(Iowa Bar No. AT0015474)
Adam Steinbaugh*
(Cal. Bar No. 304829)
**FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION (FIRE)**
510 Walnut St., Suite 900
Philadelphia, PA 19106
(215) 717-3473
greg.greubel@fire.org
adam@fire.org

Matthew A. McGuire, AT0011932
**NYEMASTER GOODE, P.C.**
700 Walnut St., Suite 1300
Des Moines, IA 50309
(515) 283-8014
mmcguire@nyemaster.com

*Attorneys for Defendants*
*J. Ann Selzer and Selzer & Company*

* *Admitted pro hac vice.*
† *Lead counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2026, I electronically filed the foregoing document with the Clerk of Court by using the Iowa Judicial Branch electronic filing system which will send a notice of electronic filing to the following:

Edward Andrew Paltzik
TAYLOR DYKEMA PLLC
914 E. 25th Street
Houston, TX 77009
Email: edward@taylordykema.com

Alan R. Ostergren
ALAN R. OSTERGREN, PC
500 East Court Avenue, Suite 420
Des Moines, IA 50309
Email: alan.ostergren@ostergrenlaw.com

/s/ *Robert Corn-Revere*